NOT YET SCHEDULED FOR ORAL ARGUMENT

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

BRIAN WRENN, et al.,      )      Case No. 15-7057
                     )
     Plaintiffs-Appellees,   )
                     )
     v.                   )
                     )
DISTRICT OF COLUMBIA, et al.,  )
                     )
     Defendants-Appellants.  )
                     )
_____)

### Memorandum of Points and Authorities in Opposition to Defendants' Motion for Stay Pending Appeal

Plaintiffs-Appellees Brian Wrenn, Joshua Akery, Tyler Whidby, and Second Amendment Foundation, Inc., respectfully submit their Memorandum of Points and Authorities in Opposition to Defendants' Motion for Stay Pending Appeal.

Dated: June 22, 2015        Respectfully submitted,

                                  Alan Gura
                                  Gura & Possessky, PLLC
                                  105 Oronoco Street, Suite 305
                                  Alexandria, VA 22314
                                  703.835.9085/703.997.7665

                      By:   /s/ Alan Gura         
                                Alan Gura
                                Attorney for Appellees

# Table of Contents

Table of Authorities.............................................. ii

Preliminary Statement............................................ 1

Statement of Facts.............................................. 2

Summary of Argument........................................... 5

Argument....................................................... 6

    I.    This Circuit Has Not Adopted the "Mandatory/
           Prohibitive" Test, which is Inapposite as the
           Injunction is Prohibitive............................ 6

    II.   Defendants Must Establish All Four Stay Factors........ 8

    III.  Defendants Have No Likelihood of Success
           on the Merits...................................... 10

    IV.  Defendants Will Not Suffer Irreparable Harm.......... 17

    V.   The Equities, and the Public Interest, Weigh
           Against a Stay..................................... 20

Conclusion..................................................... 20

# Table of Authorities

Cases

*Aamer* v. *Obama*,
742 F.3d 1023 (D.C. Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Bsharah* v. *United States*,
646 A.2d 993 (D.C. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Columbia Hosp. for Women Found.* v. *Bank of Tokyo-Mitsubishi*,
1998 U.S. App. LEXIS 7871 (D.C. Cir. Apr. 17, 1998). . . . . . . . . . 7

*Davis* v. *Billington*, No. 10-0036-RBW,
2014 U.S. Dist. LEXIS 175213 (D.D.C. Dec. 19, 2014) . . . . . . . . 7

*Davis* v. *Pension Benefit Guar. Corp.*,
571 F.3d 1288 (D.C. Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Dearth* v. *Holder*,
641 F.3d 499 (D.C. Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . 18

*District of Columbia* v. *Heller*,
554 U.S. 570 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11, 12, 18

*Drake* v. *Filko*,
724 F.3d 426 (3d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Drake* v. *Filko*,
No. 12-1150 (3d Cir. Aug. 27, 2013). . . . . . . . . . . . . . . . . . . . . . 13

*Eley* v. *District of Columbia*,
47 F. Supp. 3d 1 (D.D.C. 2014). . . . . . . . . . . . . . . . . . . . . . . . . 10

*Ezell* v. *City of Chicago*,
651 F.3d 684 (7th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Friends for All Children, Inc.* v. *Lockheed Aircraft Corp.*,
746 F.2d 816 (D.C. Cir. 1984). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Gillis* v. *United States*,
400 A.2d 311 (D.C.1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Gordon* v. *Holder*,
721 F.3d 638 (D.C. Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . 10, 20

*Guttenberg* v. *Emery*,
26 F. Supp. 3d 88 (D.D.C. 2014). . . . . . . . . . . . . . . . . . . . . . . . . 10

*Heller* v. *District of Columbia*,
670 F.3d 1244 (D.C. Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Hertz* v. *Bennett*,
294 Ga. 62, 751 S.E.2d 90 (2013).. . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Brickey*,
8 Idaho 597, 70 P. 609 (1902). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Kachalsky* v. *Cnty. of Westchester*,
701 F.3d 81 (2d. Cir. 2012).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Maricopa County* v. *Lopez-Valenzuela*,
135 S. Ct. 428 (2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*McCullen* v. *Coakley*,
134 S. Ct. 2518 (2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*McDonald* v. *City of Chicago*,
561 U.S. 742 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Moore* v. *Madigan*,
702 F.3d 933 (7th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Mosby* v. *Devine*,
    851 A.2d 1031 (R.I. 2004).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Nat'l Rifle Ass'n of Am., Inc.* v. *McCraw*,
    719 F.3d 338 (5th Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Nken* v. *Holder*,
    556 U.S. 418 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Palmer* v. *District of Columbia*,
    59 F. Supp. 3d 173 (D.D.C. 2014). . . . . . . . . . . . . . . . . . . 3, 7, 8, 13

*Palmer* v. *District of Columbia*,
    D.C. Cir. No. 14-7180.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Parker* v. *District of Columbia*,
    478 F.3d 370 (D.C. Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*People* v. *Aguilar*,
    2013 IL 112116.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*People* v. *Yanna*,
    297 Mich. App. 137, 824 N.W.2d 241 (Mich. Ct. App. 2012). . . . 12

*People* v. *Zerillo*,
    219 Mich. 635, 189 N.W. 927 (1922). . . . . . . . . . . . . . . . . . . . . . 14

*Peruta* v. *Cnty. of San Diego*,
    742 F.3d 1144 (9th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . 12-15

*Peruta* v. *Cnty. of San Diego*,
    781 F.3d 1106 (9th Cir. 2015). . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Schubert* v. *De Bard*,
    398 N.E.2d 1339 (Ind. App. 1980). . . . . . . . . . . . . . . . . . . . . . . 14

*State* v. *Christian*,
354 Ore. 22, 307 P.3d 429 (2013).............................. 12

*Strange* v. *Searcy*,
135 S. Ct. 940 (2015) ...................................... 17

*Turner Broadcasting System, Inc.* v. *FCC*,
520 U.S. 180 (1997) ....................................... 14

*Virginia Petroleum Jobbers Ass'n* v. *FPC*,
259 F.2d 921 (D.C. Cir. 1958). ............................ 5, 10

*Wash. Metro. Area Transit Comm'n* v. *Holiday Tours, Inc.*,
559 F.2d 841 (D.C. Cir. 1977). ........................... 5, 10

*Winter* v. *Natural Res. Def. Council, Inc.*,
555 U.S. 7 (2008). ....................................... 9, 10

*Woollard* v. *Gallagher*,
712 F.3d 865 (4th Cir. 2013). ............................ 12

*Woollard* v. *Sheridan*,
863 F. Supp. 2d 462 (D. Md. 2012). ....................... 13


Statutes, Rules and Regulations

24 D.C.M.R. § 2333.1.................................... 4

24 D.C.M.R. § 2333.4.................................... 4

D.C. Act 17-690, 56 D.C. Reg. 1162 (Jan. 16, 2009)................ 2

D.C. Act 19-366, 59 D.C. Reg. 5691 (May 25, 2012). ............... 2

D.C. Code § 22-4504(a). ................................ 2, 4

D.C. Code § 22-4506(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

D.C. Code § 7-2509.11(1)(A). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

D.C. Code § 7-2509.11(1)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Other Authorities

Cramer, Clayton E., *Violence Policy Center's
    Concealed Carry Killers: Less Than It
    Appears* (June 28, 2012). Available at SSRN:
    http://ssrn.com/abstract=2095754. . . . . . . . . . . . . . . . . . . . . . . . . 20

FBI, *Uniform Crime Reports: Crime in the United States 2013*, Table 4,
    available at http://www.fbi.gov/about-us/cjis/ucr/crime-in-the-u.s/2013/
    crime-in-the-u.s.-2013/tables/4tabledatadecoverviewpdf/table_4_
    crime_in_the_united_states_by_region_geographic_division_and_
    state_2012-2013.xls (last visited June 12, 2015). . . . . . . . . . . . . 18

Mike DeBonis, "Security, not street crime, at risk after
    gun ruling, D.C. Police Chief Cathy Lanier says,"
    *Washington Post*, July 30, 2014, available at
    http://www.washingtonpost.com/local/dc-politics/
    security-not-street-crime-at-risk-after-gun-ruling-
    dc-police-chief-cathy-lanier-says/2014/07/30/f8b17e1c
    -1808-11e4-9e3b-7f2f110c6265_story.html
    (last visited June 12, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## PRELIMINARY STATEMENT

The District Court's narrow injunction leaves intact all Washington, D.C. laws regulating the carrying of handguns in the interest of public safety. Nothing prevents Defendants from disarming dangerous individuals, and from enforcing the city's myriad rules regarding gun carry safety training; which guns can be carried; and how, when, and where those guns may be carried. If any of these rules overreach, they are nonetheless beyond the injunction's scope.

The District Court went no further than upholding the unremarkable proposition that the Government may not ration the exercise of fundamental rights it dislikes. And in the end, Defendants concede that right-rationing—as they put it, the government's ability "to exercise some control over the quantity of handguns carried in public," Motion at 19—is what this case is all about. Given the parties' shared conception of the dispute, this need not be a hard case.

Defendants have failed to establish any of the four elements required to obtain stays pending appeal, however much this Court might relax or balance these factors. The motion should be denied.

Defendants forbid the carrying of handguns for self-defense "without a license issued pursuant to District of Columbia law." D.C. Code § 22-4504(a).[1] The first violation of this section by a non-felon is punishable by a fine and imprisonment of up to five years.

From 1932 until 2009, Section 22-4506(a) purportedly authorized the city's Police Chief to issue handgun carry licenses. This section was repealed, effective May 20, 2009. See D.C. Act 17-690, 56 D.C. Reg. 1162, 1165 (Jan. 16, 2009). Repealing the Chief's authority to license handgun carriage had no practical consequence, as "[i]t [was] common knowledge . . . that with very rare exceptions licenses to carry pistols have not been issued in the District of Columbia for many years and [were] virtually unobtainable." *Bsharah* v. *United States*, 646 A.2d 993, 996 n.12 (D.C. 1994). Section 22-4504(a), which had read as it does today, was subsequently modified to eliminate the reference to an exemption for individuals licensed to carry handguns. See D.C. Act 19-366, 59 D.C. Reg. 5691, 5697 (May 25, 2012).

---

[1]Unless otherwise noted, all further statutory references are to the District of Columbia Code.

Defendants thus barred District residents who could register handguns in the wake of *District of Columbia* v. *Heller*, 554 U.S. 570 (2008) from carrying those handguns on city streets for self-defense. Defendants further prohibited non-residents from registering guns, subjecting armed visitors to additional criminal liability for possessing unregistered firearms and ammunition.

On August 6, 2009, Plaintiff-Appellee Second Amendment Foundation, Inc. ("SAF") and four of its members who had been denied handgun registrations either for declaring an intent to carry those handguns in public, or for non-residence, brought suit challenging the District's prohibition on the carrying of handguns for self-defense and its gun-registration residency requirement. The District Court entered judgment for these plaintiffs last July. *Palmer* v. *District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014). On April 2, 2015, this Court granted Defendants' motion to dismiss their appeal from that judgment. *Palmer* v. *District of Columbia*, D.C. Cir. No. 14-7180.

Having abandoned the effort to impose a *de jure* ban on handgun carriage, Defendants opted to revive the discretionary licensing regime under which no one could recall licenses being issued. The City Council

reinstated Section 22-4504(a)'s allowance for licensed handgun carry, as well as Section 22-4506(a), providing that the Police Chief "may" issue a license "if it appears that the applicant has good reason to fear injury to his or her person or property or has any other proper reason for carrying a pistol, and that he or she is a suitable person to be so licensed." At a minimum, a "good reason" to carry a handgun

> require[s] a showing of a special need for self-protection distinguishable from the general community as supported by evidence of specific threats or previous attacks that demonstrate a special danger to the applicant's life.

D.C. Code § 7-2509.11(1)(A). "[A]ny other proper reason . . . at a minimum include[s] types of employment that require the handling of cash or other valuable objects that may be transported upon the applicant's person." D.C. Code § 7-2509.11(1)(B); see also 24 D.C.M.R. § 2333.1, *et seq*. "The fact that a person resides in or is employed in a high crime area shall not by itself establish a good reason to fear injury to person or property for the issuance of a concealed carry license." 24 D.C.M.R. § 2333.4.

On February 3, 2015, SAF and three of its members who had been denied handgun carry licenses for lack of "good" or "proper" reason brought this lawsuit, challenging Section 22-4506(a)'s discretionary

nature and the "good"/"proper" reason requirements as a violation of

their Second Amendment rights. Plaintiffs did *not* challenge the

handgun registration scheme, the licensing requirement, or any other

provision restricting the carriage of handguns—including the training

and background check requirements, restrictions on the types of guns

that may be carried, and the District's time, place and manner rules.

On June 10, 2015, Defendants appealed from the District Court's May

18, 2015 order preliminarily enjoining the challenged provisions.

## SUMMARY OF ARGUMENT

Defendants argue for an inapposite "mandatory/prohibitive" analysis

from which this circuit has shied away. And seeking another judicial

thumb on their scale, Defendants rest on obsolete precedent purporting

to hold that some of the traditional elements required to obtain a stay

—likelihood of success on the merits, irreparable harm, a favorable

balance of the equities, and the public interest[2]—are all-but optional.

Indeed, Defendants suggest that they are entitled to stay the District

Court's injunction merely by raising a legal controversy.

---

[2] *Wash. Metro. Area Transit Comm'n* v. *Holiday Tours, Inc.*, 559 F.2d 841, 842-43 (D.C. Cir. 1977); *Virginia Petroleum Jobbers Ass'n* v. *FPC*, 259 F.2d 921, 925 (D.C. Cir. 1958).

Even were this Court to rewrite the rules in Defendants' favor, a complete view of the facts, and of the relevant precedent, does not suggest that Defendants' appeal is likely to succeed. True, Defendants *might* prevail, but their odds of doing so are not particularly strong.

Nor can Defendants establish that they will suffer irreparable harm. The question is not whether guns facilitate crime and mayhem—in the wrong hands, they do. But this case is not about "guns for everyone." Rather, the question is whether guns in the hands of individuals who pass stringent, safety-based licensing requirements, and who are subject to meaningful regulations, pose any harm. The evidence points in only one direction: no. The presumptive equitable balance and public interest in favor of enforcing fundamental constitutional rights cement the conclusion that Defendants cannot sustain their burden.

ARGUMENT

## I. THIS CIRCUIT HAS NOT ADOPTED THE "MANDATORY/PROHIBITIVE" TEST, WHICH IS INAPPOSITE AS THE INJUNCTION IS PROHIBITIVE.

Defendants make much of the fact that the District Court's injunction is allegedly "mandatory," in the sense that it allegedly altered the status quo, rather than "prohibitory" of new conduct, and thus preserved the status quo. Motion at 9, 18. Mandatory injunctions,

argue Defendants, require a higher showing. "In this circuit, however, no case seems to squarely require a heightened showing." *Friends for All Children, Inc.* v. *Lockheed Aircraft Corp.*, 746 F.2d 816, 834 n.31 (D.C. Cir. 1984); *Columbia Hosp. for Women Found.* v. *Bank of Tokyo-Mitsubishi*, 1998 U.S. App. LEXIS 7871, at *2 (D.C. Cir. Apr. 17, 1998); *Davis* v. *Billington*, No. 10-0036-RBW, 2014 U.S. Dist. LEXIS 175213, at *22 n.15 (D.D.C. Dec. 19, 2014) ("the standard has yet to be adopted—or rejected—by th[is] Circuit").

And for good reason. At least where a (recent) legislative enactment is at issue, from what point is the "status quo" measured? Defendants fail to explain why this Court must assume that the "status quo" began with the challenged provisions' enactment. Previous authorization for gun carry licenses having long fallen into desuetude, the City repealed Defendant Lanier's authority to issue handgun carry licenses in 2009. Consequently, for a brief time in *Palmer*'s wake, Americans were free to carry handguns throughout Washington, D.C., without proving a special reason for doing so or even bothering with a license. Many did.

The injunction did not change the "status quo"—*Defendants* did when they adopted the challenged regulations. Plaintiffs immediately

sued upon Defendants' commencement of "good"/ "proper" reason denials, and the District Court restored the status quo that existed prior to Defendants' new practice.

Erring on the side of caution, the District Court employed the mandatory/prohibitive test, though it did not aid Defendants. Were this Court inclined to break such new ground, it should be careful to set the "status quo" clock at the state of affairs that preceded the city's initiation of the controversy. Arbitrarily pegging the "status quo" at the new scheme's inception merely rigs the analysis in the government's favor. In any event, the injunction here is prohibitive, not mandatory. The District Court has only prevented Defendants from rejecting individuals qualified under the Defendants' regime, and barred application of the "good"/"proper" reason requirement. Defendants are free to add, remove, or amend their licensing criteria.[3]

II.    DEFENDANTS MUST ESTABLISH ALL FOUR STAY FACTORS.

Defendants claim that "the required likelihood of success will vary with the balance of other factors," Motion at 8 (quotation omitted), and

---

[3]Defendants also had the option of pressing their luck in *Palmer* on behalf of a flat ban.

that "to warrant a stay pending appeal '[i]t will ordinarily be enough that the [appellant] has raised serious legal questions," *id.* at 15 (quotation omitted). "[G]iven the District's strong likelihood of success on appeal, it would be entitled to a stay regardless" of whether it established irreparable harm. *Id.* at 16.

This has not been the law since *Winter* v. *Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008), which held that a likelihood of success on the merits did not relieve the petitioner from proving the likelihood, rather than mere possibility, of irreparable injury. "A stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, even if irreparable injury might otherwise result to the appellant." *Nken* v. *Holder*, 556 U.S. 418, 427 (2009) (quotations omitted); *id.* at 433. "When considering success on the merits and irreparable harm, courts cannot dispense with the required showing of one simply because there is a strong likelihood of the other." *Id.* at 438 (Kennedy, J., concurring). Accordingly,

> [i]n this circuit, it remains an open question whether the "likelihood of success" factor is an "independent, free-standing requirement," or whether, in cases where the three other factors strongly favor issuing an injunction, a plaintiff need only raise a "serious legal question" on the merits.

*Aamer* v. *Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014) (quotation

omitted). The question should not remain open—all four factors must

be proven. *Gordon* v. *Holder*, 721 F.3d 638, 659 (D.C. Cir. 2013)

(Kavanaugh, J., concurring); *Davis* v. *Pension Benefit Guar. Corp.*, 571

F.3d 1288, 1295-96 (D.C. Cir. 2009) (Kavanaugh, J., concurring); *Eley*

v. *District of Columbia*, 47 F. Supp. 3d 1, 20-21 (D.D.C. 2014);

*Guttenberg* v. *Emery*, 26 F. Supp. 3d 88, 100 (D.D.C. 2014).

In any event, the pre-*Winter/Nken* standard cannot overcome the

weakness of Defendants' overall showing.

III.   DEFENDANTS HAVE NO LIKELIHOOD OF SUCCESS ON THE MERITS.

In asserting "a substantial indication of probable success," *Wash.

Metro.*, 559 F.2d at 843 (quoting *Virginia Petroleum*, 259 F.2d at 925),

"[i]t is not enough that the chance of success on the merits be 'better

than negligible.' . . . [m]ore than a mere 'possibility' of relief is

required." *Nken*, 556 U.S. at 434 (quotations omitted). Defendants'

success is far from a substantial probability.

Defendants helpfully concede that this case concerns the

rationing of rights, not more, not less: "This case involves important

constitutional questions that affect the [government's ability] to

exercise some control over the quantity of handguns carried in public." Motion at 19. In other words, "the right to bear arms is inherently a social evil, therefore, we should have less of it. Q.E.D." But why should the Court defer to the Police Chief's vision of how many people should exercise their fundamental rights? Why not "control the quantity of handguns" in private homes, since the City Council believes that's horribly dangerous as well? What if Defendants set "the quantity of handguns" at zero? And may Defendants limit the number of people exercising *other* rights unpopular with government officials? "The right to keep and bear arms . . . is not the only constitutional right that has controversial public safety implications." *McDonald* v. *City of Chicago*, 561 U.S. 742, 783 (2010).

Further making Plaintiffs' case, Defendants offer that "[w]ithout this standard," allowing it to ration gun permits, "the District becomes a 'right-to-carry' regime." Motion at 17. In a practical sense, that is correct. But as a matter of law, the District is a "'right-to-carry' regime" by virtue of the constitutional provision "guarantee[ing] the individual *right* to possess *and carry* weapons in case of confrontation." *Heller*, 554 U.S. at 592 (emphasis added).

Defendants avoided disputing Plaintiffs' fundamental right to carry handguns for self-defense outside the home when they dismissed the *Palmer* appeal, and for good reason. *Heller* aside, most courts accept the right to bear arms in public,[4] including two of the three courts that have upheld regulations similar to the District's.[5] At the federal appellate level, only the Third Circuit, over a strong dissent, disputed this much, and even that opinion "recognize[d] that the Second Amendment's individual right to bear arms *may* have some application beyond the home." *Drake* v. *Filko*, 724 F.3d 426, 431 (3d Cir. 2013).

Standing alone, the fact that three circuits have upheld similar regulations is meaningless. It is the quality, not the quantity, of

----

[4]See, *e.g., Peruta* v. *Cnty. of San Diego*, 742 F.3d 1144 (9th Cir. 2014), *reh'g en banc granted*, 781 F.3d 1106 (9th Cir. 2015); *Nat'l Rifle Ass'n of Am., Inc.* v. *McCraw*, 719 F.3d 338 (5th Cir. 2013) (upholding carry restrictions on adults under age 21 after assuming right exists)*; Moore* v. *Madigan*, 702 F.3d 933 (7th Cir. 2012); *People* v. *Aguilar*, 2013 IL 112116, ¶ 20; *Hertz* v. *Bennett*, 294 Ga. 62, 70, 751 S.E.2d 90, 96 (2013) (Blackwell, J., concurring); *State* v. *Christian*, 354 Ore. 22, 44 n.11, 307 P.3d 429, 443 n.11 (2013); *People* v. *Yanna*, 297 Mich. App. 137, 146, 824 N.W.2d 241, 246 (Mich. Ct. App. 2012); *In re Brickey*, 8 Idaho 597, 70 P. 609 (1902).

[5]*Woollard* v. *Gallagher*, 712 F.3d 865, 876 (4th Cir. 2013); *Kachalsky* v. *Cnty. of Westchester*, 701 F.3d 81, 93 (2d. Cir. 2012); see also *id.* at 89 & n.10.

decisions that counts. Sometimes, the minority position respecting Second Amendment rights proves correct. See, *e.g.*, *Parker* v. *District of Columbia*, 478 F.3d 370 (D.C. Cir. 2007). And while the reheard panel opinion in *Peruta* may not currently be the Ninth Circuit's law, it represents the considered judgment of two federal appellate judges bound and subject to persuasion by the same precedent that operates here, where the question remains open. *Palmer*, too, followed *Peruta*, and Defendants chose not to fight that decision.

Moreover, the picture is not confined to the three opinions Defendants endorse. Maryland's law was initially struck down, *Woollard* v. *Sheridan*, 863 F. Supp. 2d 462 (D. Md. 2012), and four Third Circuit judges voted to rehear *Drake*, see Order Sur Petition for Rehearing, *Drake* v. *Filko*, No. 12-1150 (3d Cir. Aug. 27, 2013). Those opinions could have easily come out differently. The Seventh Circuit, which rejected the Second Circuit's holding that the interest in self-defense is less important outside the home, *Moore*, 702 F.3d at 941, thereby foreclosed the District's sort of regulation, which may explain why Illinois's legislature responded with a shall-issue law. And state courts have long rejected the District's discretionary approach to

licensing the right to bear arms. See *Schubert* v. *De Bard*, 398 N.E.2d 1339 (Ind. App. 1980); *People* v. *Zerillo*, 219 Mich. 635, 189 N.W. 927 (1922); cf. *Mosby* v. *Devine*, 851 A.2d 1031, 1050 (R.I. 2004).

Contrary to Defendants' assertions, the District Court was faithful to the Supreme Court's opinion in *Heller* as well as to this Court's opinion in "*Heller II*," *Heller* v. *District of Columbia*, 670 F.3d 1244 (D.C. Cir. 2011). In Defendants' formulation, intermediate scrutiny requires courts to "defer" not only to their views of what measures might advance an important public interest, but also to their self-serving opinion that a regulation comports with constitutional rights.

But the latter function—the measuring of constitutional fit—is judicial, not legislative. And neither *Heller II*, nor the decision it followed, *Turner Broadcasting System, Inc.* v. *FCC*, 520 U.S. 180 (1997) ("*Turner II*"), hold that "intermediate scrutiny" is fancy legalese for "rubber stamp." The District Court was faithful to both opinions.

As the Ninth Circuit explained *Turner II*,

In Part II.A. of *Turner*, the Court applied deference to the legislature's judgment regarding the first portion of the intermediate scrutiny analysis: whether there was a "real harm" amounting to an important government interest and "whether [the statutory provisions at issue] will alleviate it in a material way." *Turner*, 520

U.S. at 195. But in Part II.B, when assessing "the fit between the asserted interests and the means chosen to advance them," the Court applied no such deference. *Id.* at 213. Instead, it required the government to prove that the statute did not burden the right "substantially more . . . than is necessary to further [the government's legitimate] interests." *Id.* at 214.

*Peruta*, 742 F.3d at 1177 (quotation omitted). Accordingly, *Heller II*'s formulation of intermediate scrutiny requires *actual scrutiny*:

> [T]he District must establish a tight 'fit' between the registration requirements and an important or substantial governmental interest, a fit that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective . . . the means chosen [may] not [be] substantially broader than necessary to achieve that interest.

*Heller II*, 670 F.3d at 1258 (quotations omitted).

Accepting at face value the City Council's conclusion that carrying handguns is socially harmful, and the supposition that reducing handgun carrying thereby reduces the harm associated with that activity, there would still remain the essential question of whether such a scheme is "substantially broader than necessary." *Id.* The Supreme Court has just confirmed that intermediate scrutiny requires that regulations be "narrowly tailored." *McCullen* v. *Coakley*, 134 S. Ct. 2518, 2535 (2014). Of course Defendants would prefer that they essentially act as the judges in their own case, but that is not what

precedent requires. Plaintiffs do not agree that intermediate scrutiny is the correct test, but the District Court applied it correctly.

Because barring the community at large from exercising a fundamental right cannot be a narrowly-tailored way of addressing misuse of that right, it is not "important . . . that the preliminary injunction is based on a record that will be developed substantially before final judgment." Motion at 14. Whether the District's law makes for good or bad policy is irrelevant. Even were Plaintiffs to stipulate that carrying handguns for self-defense is net negative for society, so what? It is also, like many controversial policies, enshrined in the Constitution. The city made the exact same arguments about the right to keep handguns at home. May the city limit handgun possession only to those with an exceptional need for home self-defense, demanding proof that applicants suffer a specific threat of burglary?

It may well be that rationing Second Amendment rights will make society safer. That may also hold true for First Amendment or Fourth Amendment rights. Many economists dispute the Sixteenth Amendment's wisdom. But this Court does not sit to "prove" that a constitutional provision is or is not desirable.

IV.   DEFENDANTS WILL NOT SUFFER IRREPARABLE HARM.

Nobody likes to be enjoined. But Defendants' claim that they are irreparably harmed per se whenever any of their laws are enjoined, and to a degree warranting an automatic stay, Motion at 16-17, overstates matters. As Justice Thomas's dissent cited by Defendants makes clear, the Supreme Court has abandoned any reflexive inclination to grant stays whenever the Government is enjoined. *Strange* v. *Searcy*, 135 S. Ct. 940, 941 (2015) (Thomas, J., dissenting); see also *Maricopa County* v. *Lopez-Valenzuela*, 135 S. Ct. 428 (2014) (Thomas, J., respecting denial of application for stay). Nor would such a bias be appropriate.

There is something ironic about Defendants claiming that individuals denied the right to bear arms are not thereby injured, because their fear of criminal violence is speculative, while at once asserting that the City will suffer imminent and severe criminal violence and mayhem if law-abiding, licensed individuals are armed. Both arguments are unfounded.

Whether the Second Amendment secures the right to shoot others in self-defense is an interesting, but irrelevant question. Every American legal system recognizes a right to use handguns in self-defense outside

the home—including the District's. *Gillis* v. *United States*, 400 A.2d

311, 313 (D.C.1979). At issue here is the right to "wear, bear, or carry

[arms] upon the person or in the clothing or in a pocket, for the purpose

. . . of being armed and ready for offensive or defensive action in a case

of conflict with another person." *Heller*, 554 U.S. at 584 (quotation

omitted); *id.* at 592 (right to "*carry* weapons in case of confrontation").

Defendants barred Plaintiffs from carrying arms for the purpose of

defensive action in case of confrontation, inflicting a constitutional

injury. Cf. *Dearth* v. *Holder*, 641 F.3d 499 (D.C. Cir. 2011).

"Infringements of this right cannot be compensated by damages." *Ezell*

v. *City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011).

Defendants are entitled to their belief that "educated judgments

about the best statistical models suggest[] that right-to-carry laws are

associated with substantially higher rates of [crime]." Motion at 11-12.

But according to the latest full-year FBI crime rate figures, for 2013,[6]

the average violent crime rates in jurisdictions where the carrying of

---

[6] *See* FBI, *Uniform Crime Reports: Crime in the United States 2013*, Table 4, available at http://www.fbi.gov/about-us/cjis/ucr/ crime-in-the-u.s/2013/crime-in-the-u.s.-2013/tables/4tabledatadecovervi ewpdf/table_4_crime_in_the_united_states_by_region_geographic_divis ion_and_state_2012-2013.xls (last visited June 12, 2015).

handguns was tightly restricted on a "may issue" basis or completely forbidden was 456.46 per 100,000 people, substantially higher than the national rate of 367.9 violent crimes per 100,000 people.[7]

Defendants' lackadaisical reaction to the injunction belies their claims of imminent harm. They waited over a week to seek a stay from the District Court. Having been rebuffed, they waited another four days to repeat the request, and then waited over another week from the District Court's second denial to notice their appeal. This is simply not the conduct of a city imperiled by a preliminary injunction. But it is consistent with Defendant Lanier's candid reaction to the *Palmer* decision: "Law-abiding citizens that register firearms, that follow the rules, are not our worry."[8]

---

[7] *Id.* (averaging Massachusetts, 404.0; New Jersey, 285.6; New York, 389.8; Illinois, 372.5 [Illinois began issuing permits on a shall-issue basis in 2014]; **District of Columbia, 1289.1**; Maryland, 467.8; California, 396.2; Hawaii, 245.3; and Puerto Rico, 257.8. Plaintiffs excluded Delaware (479.1), where concealed carry permits are generally unavailable but open carrying is permissible).

[8] Mike DeBonis, "Security, not street crime, at risk after gun ruling, D.C. Police Chief Cathy Lanier says," *Washington Post*, July 30, 2014, available at http://www.washingtonpost.com/local/dc-politics/security-not-street-crime-at-risk-after-gun-ruling-dc-police-chief-cathy-lanier-says/2014/07/30/f8b17e1c-1808-11e4-9e3b-7f2f110c6265_story.html (last visited June 12, 2015).

On this point, the data backs up Defendant Lanier. Forty-four states respect the right to bear arms, usually by licensing objectively-qualified applicants. Several of these states track licensees' crime rates, and find them negligible. See Opp. To Admin. Stay, June 12, 2015, at 10-11.[9]

V. THE EQUITIES, AND THE PUBLIC INTEREST, WEIGH AGAINST A STAY.

The harm in denying a fundamental constitutional right plainly outweighs any speculative harm to Defendants. And it is "obvious" that "enforcement of an unconstitutional law is always contrary to the public interest." *Gordon*, 721 F.3d at 653 (citations omitted).

CONCLUSION

The motion for a stay pending appeal should be denied.

Dated: June 22, 2015                    Respectfully submitted,

                                        Alan Gura
                                        Gura & Possessky, PLLC
                                        105 Oronoco Street, Suite 305
                                        Alexandria, VA 22314
                                        703.835.9085/703.997.7665

                                By:     /s/ Alan Gura
                                        Alan Gura

_____

[9]Advocacy group efforts to paint a menacing portrait of licensees are often loose with the facts, if not fraudulent. Cramer, Clayton E., *Violence Policy Center's Concealed Carry Killers: Less Than It Appears* (June 28, 2012). Available at SSRN: http://ssrn.com/abstract=2095754

CERTIFICATE OF SERVICE

I certify that on this 22nd day of June, 2015, I filed the foregoing electronically with the Clerk of the Court using the CM/ECF System. I further certify that I will submit any required paper copies to the Court. I further certify that counsel for Defendants-Appellants is a registered CM/ECF user and will be served via the CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 22nd day of June, 2015.

/s/ Alan Gura
Alan Gura

*Counsel for Plaintiffs-Appellees*