NOT YET SCHEDULED FOR ORAL ARGUMENT

No. 15-7057

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

BRIAN WRENN, *et al.*,
APPELLEES,

v.

DISTRICT OF COLUMBIA, *et al.*,
APPELLANTS.

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

**REPLY OF APPELLANTS IN SUPPORT OF
A STAY PENDING APPEAL**

KARL A. RACINE
Attorney General for the District of Columbia

TODD S. KIM
Solicitor General

LOREN L. ALIKHAN
Deputy Solicitor General

HOLLY M. JOHNSON
Assistant Attorney General
Office of the Solicitor General

Office of the Attorney General
441 4th Street, NW, Suite 6§§00S
Washington, D.C. 20001
(202) 442-9890
holly.johnson@dc.gov

For more than a century, the District of Columbia has regulated the carrying of handguns in public by any individual who cannot demonstrate a particularized need for self-protection. *See* Committee on the Judiciary and Public Safety, D.C. Council, Report on Bill 20-930, at 2-3 (Nov. 26, 2014) ("Comm. Rep."). For much of that time, the District generally banned the possession of handguns. D.C. Code §§ 7-2501.01(12), 7-2502.01(a), 7-2502.02(a)(4) (2001). When the Supreme Court found this ban unconstitutional in *District of Columbia v. Heller*, 554 U.S. 570 (2008) ("*Heller I*"), the Council of the District of Columbia amended the law to allow use of handguns for self-defense within the home, which *Heller I* found to be the core right enshrined in the Second Amendment. D.C. Code § 7-2502.02(a)(4); *Heller I*, 554 U.S. at 628-30. After the district court (Scullin, J.) found the District's new regime deficient, *Palmer v. District of Columbia*, 59 F. Supp. 3d 173 (D.D.C. 2014), the District amended its laws again to allow the public carrying of handguns, and in doing so revived its longstanding "good reason" provision, thereby ensuring that the public-safety risks associated with public carrying were incurred only when an individual could demonstrate a need distinguishable from that of the general public. D.C. Act 20-621 § 3(b) (Feb. 6, 2015).

This Court should stay, pending appeal, a preliminary injunction barring the District from enforcing its "good reason" standard against any named plaintiff or member of the Second Amendment Foundation. A stay will allow the District to

uniformly enforce this longstanding provision, which the Council has found necessary to reduce crime and promote public safety, while the appeal proceeds.

## DISCUSSION

### I. The District Is Likely To Succeed On The Merits Of Its Appeal.

Intermediate scrutiny applies here, as the district court held and the plaintiffs appear to concede for purposes of this motion. (They purport to disagree with its application but offer no discussion of why it would not apply. Opp. 15-16.) It requires "a tight 'fit' between the [challenged law] and an important or substantial governmental interest." *Heller v. District of Columbia*, 670 F.3d 1244, 1258 (D.C. Cir. 2011) ("*Heller II*"). The plaintiffs concede that binding precedent required the district court to defer to the Council's predictive judgment as to "whether there was a 'real harm' amounting to an important government interest and 'whether [the statutory provisions at issue] will alleviate it in a material way.'" Opp. 14; *see Turner Broad. Sys. v. FCC*, 520 U.S. 180, 196 (1997) ("*Turner II*") ("[D]eference must be accorded to [Congress's] findings as to the harm to be avoided and to the remedial measures adopted for that end."); *Heller II*, 670 F.3d at 1269 (same).

The district court, however, refused to defer to the Council's judgment that the "good reason" standard would promote public safety. ECF Record Document ("RD") 13, at 16-17. It disregarded empirical studies the Council found persuasive (which associate right-to-carry regimes with substantially higher rates of

aggravated assault, rape, robbery and murder), and substituted its *own* predictive judgment, finding "[no] relationship between reducing the risk to other members of the public and/or violent crime and the ['good reason' standard]." RD 13, at 17. This "erroneous premise as to the pertinent law," in itself, strongly indicates that the District will prevail. *Ambach v. Bell*, 686 F.2d 974, 979 (D.C. Cir. 1982).

The plaintiffs do not defend this finding—for purposes of this motion, they "[a]ccept[] at face value the . . . Council's conclusion that carrying handguns is socially harmful, and . . . that reducing handgun carrying thereby reduces the harm associated with that activity." Opp. 15; *see* Opp. 10-16. They instead argue that the "good reason" standard fails intermediate scrutiny because it is "substantially broader than necessary" to alleviate this harm. Opp. 15. But their analysis rests on a flawed assumption: that the Supreme Court in *Heller I* made the entire nation a "'right-to-carry' regime" "as a matter of law." Opp. 11. The Court did no such thing. *See* 554 U.S. at 626-27 & n.26, 628-30, 636. The plaintiffs' mistake of law leaves their intermediate-scrutiny analysis stunted—they never actually address whether the "good reason" standard is narrowly tailored because they presume that their right to publicly carry a handgun is so "enshrined in the Constitution" that the District's reasons for regulating their carrying are "irrelevant." Opp. 16.

The plaintiffs cannot demonstrate that they are likely to prevail by assuming that they already have. Neither the Supreme Court nor this Court has found *any*

3

right to carry handguns in public, and the District has offered historical evidence that its "good reason" standard does not even implicate the Second Amendment. RD 9 at 13-15; *accord Drake v. Filko*, 724 F.3d 426, 431-32 (3d Cir. 2013) (holding "good reason" requirement "longstanding" within meaning of *Heller I*).

Even if the "good reason" provision does implicate the Second Amendment, it is likely to survive intermediate scrutiny. The Second, Third, and Fourth Circuits have all upheld virtually identical provisions, holding that the right to publicly carry a handgun is not a "core" Second Amendment right. *See Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 93 (2d Cir. 2012); *Drake*, 724 F.3d at 436; *Woollard v. Gallagher*, 712 F.3d 865, 876 (4th Cir. 2013). The plaintiffs argue that "the picture is not confined to [these] three opinions," pointing to individual judges who have voiced disagreement. Opp. 13-14. But none of these stray votes has commanded a majority of an appellate panel in an opinion that was not subsequently withdrawn. As the plaintiffs themselves note, to warrant interim relief (such as a preliminary injunction), "'[m]ore than a mere "possibility" of [success on the merits] is required.'" Opp. 10 (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). And that is what they cannot show. To be sure, it is possible that this Court will be swayed by the dissent in *Drake* or the vacated panel decision in *Peruta v. County of San Diego*, 742 F.3d 1144 (9th Cir. 2014), *vacated*, 781 F.3d 1106 (9th Cir. 2015), but for purposes of measuring likelihood of success on

4

appeal, the appropriate consideration should be of the uniform body of appellate precedents squarely holding that "good reason" regimes are constitutional.

The plaintiffs defend the district court's conclusion that no legislative deference is warranted for "measuring . . . constitutional fit." Opp. 14. This, too, is likely to be rejected on appeal. Neither *Turner II* nor *Heller II* maintains such a distinction. *See Turner II*, 520 U.S. at 194 ("In reviewing the constitutionality of a statute, 'courts must accord substantial deference to the predictive judgments of [the legislature].'"); *Heller II*, 670 F.3d at 1259 (similar). Nor does such a distinction make sense. If the Council is better equipped to determine "the degree to which [the District's] interests should be promoted" and whether the "good reason" standard will do so, it is also better equipped to predict whether this can be achieved through less-intrusive means. *Turner II*, 520 U.S. at 193; *see id.* at 221 (finding Congress's rejection of less-intrusive measure "reasonable" because it was based on "substantial evidence"). Of course courts should not simply "rubber stamp" a challenged law. *See* Opp. 14. But when, as here, the legislature *undisputedly* has based a predictive judgment on substantial evidence, its judgment is entitled to deference. *Turner II*, 520 U.S. at 186.

The Council found the "good reason" standard necessary to prevent "substantially higher rates of aggravated assault, rape, robbery and murder." Comm. Rep. 17. The plaintiffs suggest that the District can "add, remove, or

amend their licensing criteria," Opp. 8, but they have not suggested an alternative measure to protect the public from the risks associated with public carrying while ensuring that those with a particularized need can carry a handgun for self-defense. Indeed, they appear to misunderstand the "good reason" standard—they refer to it as a "rationing" scheme, suggesting that the District will issue only a fixed number of licenses. Opp. 1, 10, 11, 16. But no such quota exists; there is no limit to the number of licenses that can be issued. Rather, as the analyses in *Kachalsky*, *Woollard*, and *Drake* demonstrate, the "good reason" standard is an essential component of a scheme crafted to balance public safety with the needs of individuals particularly at risk—it is this very provision that provides the "tight fit" needed to survive intermediate scrutiny.

II. **The Balance Of The Equities Favors A Stay To Preserve The Status Quo While This Court Considers The District's Appeal.**

   A. **Absent a stay, the District and the public face irreparable harm.**

The District offered two reasons why the equities favor a stay pending appeal. *First*, as the Chief Justice has noted, "any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury." *Maryland v. King*, 133 S. Ct. 1, 3 (2012) (Roberts, C.J., in chambers). The plaintiffs argue against "any reflexive inclination to grant stays whenever the Government is enjoined." Opp. 17. But a presumption of irreparable harm is fully warranted here, where the preliminary injunction is based

6

on a novel constitutional challenge to a key provision in a public safety law, and the injunction is based on an undeveloped record.

The plaintiffs also claim that it is the District who has altered the status quo—that the preliminary injunction simply preserves the law as it existed before the District revived its licensing regime. Opp. 7-8. They urge the Court to measure the status quo from the "brief time in *Palmer*'s wake" when "Americans were free to carry handguns . . . without . . . even bothering with a license." Opp. 7, 8. This, however, is not a reasonable way to assess the harm to the public, which has supported the "good reason" standard for more than a century and, since 2008, a complete ban on public carrying. Contrary to the plaintiffs' argument, the "status quo" is not limited to the five days between July 24, 2014, when the district court enjoined the District's longstanding ban on carrying handguns, and July 29, 2014, when the court stayed that injunction so the District could enact a licensing regime. *See Palmer* RD 51, 53. In fact, the stay order was issued "*nunc pro tunc*," eliminating any gap in the District's licensing laws. *Palmer*, RD 53, at 2.

Moreover, the plaintiffs do not respond at all to the District's argument that it has an interest in the *uniform* application of its laws—not disparate regimes for the general public versus members of the Second Amendment Foundation and the named plaintiffs. This alone demonstrates irreparable injury at least sufficient to warrant a stay of the preliminary injunction.

7

*Second*, a stay will promote the public safety objectives that prompted the Council to enact the "good reason" standard in the first instance. As explained, the Council's predictive judgments deserve deference. *Turner II*, 520 U.S. at 195; *Heller II*, 670 F.3d at 1258-59. And it explicitly found, based on empirical studies, expert testimony, and the reasoned analysis of other state laws enacting—and court decisions upholding—similar licensing regimes, that an increase in the number of handguns carried in public increases the risk of violent crime and the burden on the District's police force. Comm. Rep. 4-7, 17-19. The plaintiffs disagree with the Council's findings, Opp. 6, 19-20, but they have cited no authority suggesting that *their* predictive judgment is entitled to deference.[1]

As a distraction from the actual equities, the plaintiffs claim that the District's "lackadaisical reaction to the injunction belies their claims of imminent harm." Opp. 19. But, as the District has explained, it was simply abiding by the appellate rule that a party seeking a stay pending appeal "must ordinarily move

---

[1] The plaintiffs argue that there is no evidence that "guns in the hands of individuals who pass stringent, safety-based licensing requirements, and who are subject to meaningful regulations, pose any harm." Opp. 6. But the studies relied on by the Council were based on regimes that enforced similar standards, and those regimes were nevertheless associated with substantially higher rates of violent crime. Comm. Rep. 17. Even "stringent, safety-based licensing requirements" cannot preclude the possibility that someone who satisfies these requirements will misuse his weapon. All citizens are law-abiding until they break the law, and a government cannot know in advance who will do so.

first in the district court" or "show that moving first in the district court would be impracticable." Fed. R. App. P. 8(a)(1), 2(A). As detailed in the District's motion, the District promptly and thoroughly exhausted any opportunity to obtain a stay in the district court before seeking such relief here. The District came to this Court only after the district court denied the District's motion for an administrative stay, calendared argument on the stay motion for July 7, 2015—*six weeks* after the District had filed its stay motion, RD 17, at 2—and subsequently denied the District's request to expedite the briefing schedule and forgo argument to facilitate a quick decision on the merits, RD 22. The District's attempts were not futile. The District had reason to believe its requests would be granted, given that the district court's scheduling of argument on July 7 appeared to be dictated by the travel schedule of Judge Scullin, who presides in the Northern District of New York. *See* RD 13, at 23. In offering to forgo argument, the District hoped the district court would rule quickly. *See* RD 19, at 4-5. It did not, and the District, having exhausted all avenues of relief before the district court, then appropriately and timely moved for relief in this Court.[2]

---

[2] On June 24, 2015, Judge Scullin canceled the July 7 hearing due to a change in his schedule, indicating that he will rule on the submitted documents without argument, but without providing any time frame for that decision. RD 29. There is thus no reason for this Court to wait for Judge Scullin to rule before issuing a decision on the stay.

9

### B. Plaintiffs cannot demonstrate irreparable harm if a stay is issued.

The plaintiffs cannot demonstrate any particularized reason to fear "actual and not theoretical" injury if the status quo is maintained while this appeal is pending. *Wisconsin Gas v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985). Indeed, their standing to challenge the "good reason" standard rests on their inability to satisfy it. *See* RD 6-3, 6-4, 6-5 (affidavits of named plaintiffs). They rely instead on their claim that they will automatically suffer irreparable harm from the denial of a "fundamental constitutional right." Opp. 20. But, as discussed, such a right has not yet been recognized, and it is doubtful this litigation on a preliminary injunction will change that.

Moreover, as the District explained in its motion (and the plaintiffs do not dispute), the right to keep and bear arms has no intrinsic value—unlike the rights enshrined in the First Amendment, it is not an end in itself, the deprivation of which automatically establishes irreparable harm. Rather, it is "the inherent right of self-defense" that is "central to the Second Amendment." *Heller I*, 554 U.S. at 628. If no occasion arises where a handgun is needed for self-defense, its absence cannot cause harm. Given that the plaintiffs' theory is that they should be able to carry handguns *without* showing any particularized need, a stay should issue.

### CONCLUSION

This Court should stay the preliminary injunction pending appeal.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TODD S. KIM
Solicitor General

LOREN L. ALIKHAN
Deputy Solicitor General

/s/ Holly M. Johnson
HOLLY M. JOHNSON
Assistant Attorney General
Bar Number 476331
Office of the Solicitor General

Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001
(202) 442-9890
(202) 715-7713 (fax)
June 2015          holly.johnson@dc.gov

# CERTIFICATE OF SERVICE

I certify that on June 25, 2015, electronic copies of this reply were served through the Court's ECF system, to:

Alan Gura, Esq.
Gura & Possessky, PLLC
105 Oronoco Street, Suite 305
Alexandria, VA 22314

                                            /s/ Holly M. Johnson
                                            HOLLY M. JOHNSON