NOT YET SCHEDULED FOR ORAL ARGUMENT

———————————

No. 15-7057

———————————

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

BRIAN WRENN, *et al.*,
APPELLEES,

V.

DISTRICT OF COLUMBIA, *et al.*,
APPELLANTS.

———————————

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

———————————

**STATUTORY ADDENDUM**

———————————

KARL A. RACINE
Attorney General for the District of Columbia

TODD S. KIM
Solicitor General

LOREN L. ALIKHAN
Deputy Solicitor General

HOLLY M. JOHNSON
Assistant Attorney General
Office of the Solicitor General

Office of the Attorney General
441 4th Street, NW, Suite 600S
Washington, D.C. 20001
(202) 442-9890
holly.johnson@dc.gov

# TABLE OF CONTENTS

License to Carry a Pistol Amendment Act of 2014, D.C. Law 20-279 ................1

D.C. Metropolitan Police Department regulations for issuance of concealed-carry licenses, 24 DCMR § 2331 *et seq.*.............................................................16

D.C. Metropolitan Police Department regulations establishing Concealed Pistol Licensing Review Board, 1 DCMR § 1200 *et seq.* ...................................33

District of Columbia Organic Act, 2 Stat. 103 (1801) .........................................52

D.C. Code of 1818 at 253-54 ...............................................................................58

Revised Code of the District of Columbia of 1857 at 570 ..................................60

An Act to Prevent the Carrying of Dangerous Weapons in the City of Washington (Nov. 4, 1857) ...................................................................................64

An Act to Prevent the Carrying of Concealed and Dangerous Weapons in the City of Washington (Nov. 18, 1858) ....................................................................65

An Act to punish the carrying or selling of deadly or dangerous weapons, 27 Stat. 116 (1892)...............................................................................................66

An Act to control the possession, sale, transfer and use of pistols and other dangerous weapons, 47 Stat. 651, ch. 465, § 4 (1932) ........................................68

An Act to amend the law of the District of Columbia relating to the carrying of concealed weapons, 57 Stat. 586, ch. 296 (1943) ...........................................73

ENROLLED ORIGINAL

AN ACT

## D.C. ACT 20-621

IN THE COUNCIL OF THE DISTRICT OF COLUMBIA

### FEBRUARY 6, 2015

To amend the Firearms Control Regulations Act of 1975 to permit a person to register a firearm
for self-defense in his or her place of business, to provide a Freedom of Information Act
exception for pistol registration information, to specify application requirements for
applying for a license to carry a concealed pistol, to specify the duration of such licenses
and requirements for renewal of licenses, to establish duties of licensees, to provide for
revocation of licenses, to create a criminal offense of carrying while consuming alcohol
or while impaired, to specify prohibitions on licensees, to establish a Concealed Pistol
Licensing Review Board, to provide a Freedom of Information Act exception for license
information, to specify penalties for violations, and to require the Mayor to issue rules;
and to amend An Act To control the possession, sale, transfer, and use of pistols and
other dangerous weapons in the District of Columbia, to provide penalties, to prescribe
rules of evidence, and for other purposes to authorize the Chief of Police to issue licenses
to carry a concealed pistol to District residents and non-residents provided certain
conditions are met.

BE IT ENACTED BY THE COUNCIL OF THE DISTRICT OF COLUMBIA, That this
act may be cited as the "License to Carry a Pistol Amendment Act of 2014".

Sec. 2. The Firearms Control Regulations Act of 1975, effective September 24, 1976
(D.C. Law 1-85; D.C. Official Code § 7-2501.01 *et seq.*), is amended as follows:
    (a) Section 201(b)(4) (D.C. Official Code § 7-2502.01(b)(4)) is amended by striking the
phrase "the home" and inserting the phrase "the home or place of business" in its place.
    (b) Section 202(a)(4)(C) (D.C. Official Code § 7-2502.02(a)(4)(C)) is amended to read as
follows:
        "(C) Any person who seeks to register a pistol:
                "(i) For use in self-defense within that person's home or place of
business; or
                "(ii) As part of the application process for a license to carry a
concealed pistol pursuant to section 902; or".
    (c) Section 203(a)(4) (D.C. Official Code § 7-2502.03(a)(4)) is amended as follows:
        (1) Subparagraph (D) is amended by striking the word "or" at the end.
        (2) Subparagraph (E) is amended by adding the word "or" at the end.
        (3) A new subparagraph (F) is added to read as follows:

1

Addendum 1

ENROLLED ORIGINAL

"(F) Violation of section 503 of the Omnibus Public Safety and Justice Amendment Act of 2009, effective December 10, 2009 (D.C. Law 18-88; D.C. Official Code § 22-3133);".

(d) A new section 211a is added to read as follows:

"Sec. 211a.  Freedom of information exception.

"Any record regarding a person  who has applied for, received, or had revoked any registration issued pursuant to this title shall not be made available as a public record under section 202 of the Freedom of Information Act of 1976, effective March 25, 1977 (D.C. Law 1-96; D.C. Official Code § 2-532).".

(e) Section 706(a) (D.C. Official Code § 7-2507.06(a)) is amended by striking the phrase "Except as provided in sections 205, 208, 702, and 807" and inserting the phrase "Except as provided in sections 205, 208, 702, 807, and Title IX" in its place.

(f) A new Title IX is added to read as follows:

"TITLE IX – LICENSES TO CARRY A PISTOL.

"Sec. 901.  Definitions.

"For the purposes of this title, the term:

"(1) "Child" means a person under 18 years of age.

"(2) "Concealed pistol" means a loaded or unloaded pistol carried on or about a person entirely hidden from view of the public, or carried on or about a person in a vehicle in such a way as it is entirely hidden from view of the public.

"(3) "Law enforcement officer" means a sworn member of the Metropolitan Police Department or of any other law enforcement agency operating and authorized to make arrests in the District of Columbia, and includes an MPD reserve officer, a special police officer appointed pursuant to section 202 of An Act Making appropriations to provide for the expenses of the government of the District of Columbia for the fiscal year ending June thirtieth, nineteen hundred, and for other purposes, approved March 3, 1899 (30 Stat. 1057; D.C. Official Code § 5-129.02), and a campus and a university special police officer appointed pursuant to the College and University Campus Security Amendment Act of 1995, effective October 18, 1995 (D.C. Law 11-63; 6A DCMR § 1200 et seq.).

"(4) "License" means a license to carry a concealed pistol issued pursuant to section 6 of the Pistols and Other Dangerous Weapons Act.

"(5) "Licensee" means a person who has been issued a license pursuant to section 6 of the Pistols and Other Dangerous Weapons Act.

"(6) "MPD" means the Metropolitan Police Department.

"(7) "Section 6 of the Pistols and Other Dangerous Weapons Act" means section 6 of An Act To control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia, to provide penalties, to prescribe rules of evidence, and for other purposes, approved July 8, 1932 (47 Stat. 650; D.C. Official Code § 22-4506).

"Sec. 902. Application requirements.

"(a) A person who submits an application pursuant to section 6 of the Pistols and Other Dangerous Weapons Act shall certify and demonstrate to the satisfaction of the Chief that he or she:

2

Addendum 2

**ENROLLED ORIGINAL**

"(1) Is at least 21 years of age;

"(2) Meets all of the requirements for a person registering a firearm pursuant to this act, and has obtained a registration certificate for the pistol that the person is applying to carry concealed;

"(3)(A) Does not currently suffer from a mental illness or condition that creates a substantial risk that he or she is a danger to himself or herself or others; or

(B) If he or she has suffered in the previous 5 years from a mental illness or condition that created a substantial risk that he or she was a danger to himself or herself or others, no longer suffers from a mental illness or condition that creates a substantial risk that he or she is a danger to himself or herself or others;

"(4) Has completed a firearms training course or combination of courses, conducted by an instructor (or instructors) certified by the Chief, which includes at least 16 hours of training, and covers the following:

"(A) Firearm safety;

"(B) Firearm nomenclature;

"(C) Basic principles of marksmanship;

"(D) Care, cleaning, maintenance, loading, unloading, and storage of pistols;

"(E) Situational awareness, conflict management, and use of deadly force;

"(F) Selection of pistols and ammunition for defensive purposes; and

"(G) All applicable District and federal firearms laws, including the requirements of this act, An Act To control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia, to provide penalties, to prescribe rules of evidence, and for other purposes, approved July 8, 1932 (47 Stat. 650; D.C. Official Code § 22-4501 *et seq.*), and District law pertaining to self-defense;

"(5) Has completed at least 2 hours of range training, conducted by an instructor certified by the Chief, including shooting a qualification course of 50 rounds of ammunition from a maximum distance of 15 yards (45 feet); and

"(6) Has complied with any procedures the Chief may establish by rule.

"(b) An applicant shall satisfy the requirements of subsection (a)(4) and (a)(5) of this section with a certification from a firearms instructor that the applicant:

"(1) Demonstrated satisfactory completion of the requirements of subsection (a)(4) and (a)(5) of this section; and

"(2) Possesses the proper knowledge, skills, and attitude to carry a concealed pistol.

"(c) An applicant may be exempt from some or all of the requirements of subsection (a)(4) and (a)(5) of this section if the applicant has submitted evidence that he or she has received firearms training in the United States military or has otherwise completed firearms training conducted by a firearms instructor that, as determined by the Chief, is equal to or greater than that required under subsection (a)(4) and (a)(5) of this section.

"(d) An applicant for a license may satisfy any component of the requirements of subsection (a)(4) and (a)(5) of this section by demonstrating to the satisfaction of the Chief that

3

# Addendum 3

**ENROLLED ORIGINAL**

the applicant has met that particular component as part of a successful application to carry a concealed pistol issued by the lawful authorities of any state or subdivision of the United States.

"(e)(1) An applicant shall sign an oath or affirmation attesting to the truth of all the information required by section 6 of the Pistols and Other Dangerous Weapons Act and this section.

"(2) Any declaration, certificate, verification, or statement made for purposes of an application for a license to carry a concealed pistol pursuant to this act shall be made under penalty of perjury pursuant to section 401 of the District of Columbia Theft and White Collar Crimes Act of 1982, effective December 1, 1982 (D.C. Law 4-164; D.C. Official Code § 22-2402).

"(f) An applicant is required to appear for an in-person interview at the MPD headquarters for purposes including verification of the applicant's identity and verification of the information submitted as part of the application process for a license.

"(g) Any person whose application has been denied may, within 15 days after the date of the notice of denial, appeal to the Concealed Pistol Licensing Review Board established pursuant to section 908.

"Sec. 903. Expiration and renewal of licenses.

"(a) A license shall expire no later than 2 years after the date of issuance unless revoked by the Chief or renewed pursuant to this title.

"(b)(1) A license shall be eligible for renewal if:

"(A) The licensee continues to meet the requirements of section 6 of the Pistols and Other Dangerous Weapons Act and section 902, except that:

"(i) With regard to section 902(a)(4), only 4 hours of such training shall be required for renewal; and

"(ii) With regard to section 902(a)(5), the licensee shall provide proof of 2 hours of range practice within the previous 12 months; and

"(B) The licensee follows any procedures the Chief may establish by rule.

"(2) Timely renewal shall be the responsibility of the licensee, pursuant to any procedures the Chief may establish by rule.

"(c) Any person whose renewal application has been denied may, within 15 days after the date of the notice of denial, appeal to the Concealed Pistol Licensing Review Board established pursuant to section 908.

"Sec. 904. Duties of licensees.

"(a) A licensee shall comply with all limits and conditions of the license.

"(b) A licensee shall notify the Chief in writing:

"(1) Immediately upon discovery of the loss, theft, or destruction of the license and include the circumstances of the loss, theft, or destruction, if known; and

"(2) Within 30 days after a change in the licensee's name or address as it appears on the license.

"(c) A licensee shall have on or about his or her person each time the pistol is carried in the District:

"(1) The license; and

4

Addendum 4

**ENROLLED ORIGINAL**

"(2) The registration certificate for the pistol being carried, issued pursuant to this act.

"(d) If a law enforcement officer initiates an investigative stop of a licensee carrying a concealed pistol pursuant to section 6 of the Pistols and Other Dangerous Weapons Act, the licensee, and any other licensee carrying a concealed pistol pursuant to section 6 of the Pistols and Other Dangerous Weapons Act who is with the stopped licensee at the time of the investigative stop, shall:

"(1) Disclose to the officer that he or she is carrying a concealed pistol;

"(2) Present the license and registration certificate;

"(3) Identify the location of the concealed pistol; and

"(4) Comply with all lawful orders and directions from the officer, including allowing a pat down of his or her person and permitting the law enforcement officer to take possession of the pistol for so long as is necessary for the safety of the officer or the public.

"(e) The duties set forth in this section are in addition to any other requirements imposed by this act or applicable law.

"(f) In addition to any other penalty provided by law, a person who violates this section shall be subject to revocation of his or her license.

"Sec. 905. Revocation and suspension of licenses.

"(a)(1) The Chief may limit or revoke a license upon a finding that the licensee no longer meets the requirements of section 6 of the Pistols and Other Dangerous Weapons Act and this title, or as a penalty as specified in this act.

"(2) The United States Attorney for the District of Columbia, the Attorney General for the District of Columbia, or any person may apply to the MPD at any time for limitation or revocation of a license.

"(3) Any person having knowledge that a licensee no longer meets the requirements of this act or the requirements of section 6 of the Pistols and Other Dangerous Weapons Act may so notify the Chief or any other law enforcement officer who may take such action as may be appropriate.

"(4) Before a limitation or revocation taking effect, the Chief shall serve a notice of intent to limit or revoke the license. The limitation or revocation shall take effect unless the licensee requests an appeal to the Concealed Pistol Licensing Review Board established pursuant to section 908 no later than 15 days after the date of the notice of intent.

"(b)(1) The Chief may summarily suspend or limit, without a hearing, a license, when the Chief has determined that the conduct of a licensee presents an imminent danger to the health and safety of a person or the public.

"(2) At the time of the summary suspension or limitation of a license, the Chief shall provide the licensee with written notice stating the action that is being taken, the basis for the action, and the right of the licensee to request a hearing.

"(3) A licensee shall have the right to request a hearing within 72 hours after service of notice of the summary suspension or limitation of the license. The Concealed Pistol Licensing Review Board shall hold a hearing within 72 hours after receipt of a timely request, and shall issue a written decision within 72 hours after the hearing.

Addendum 5

"Sec. 906. Carrying a pistol while impaired.

"(a)  A licensee shall not carry a pistol while he or she is consuming alcohol.

"(b)  A licensee shall not carry a pistol while impaired.

"(c)  Upon establishing reasonable suspicion that a licensee has been consuming drugs or alcohol, a licensee's failure to submit to one or more field sobriety, breathalyzer, or urine tests, administered to determine whether the licensee is impaired while carrying a pistol, shall be grounds for summary suspension of the license pursuant to section 905(b).

"(d) In addition to any other penalty provided by law, any person who violates this section shall be subject to revocation of his or her license.

"(e) For the purposes of this section, the term "impaired" means a licensee has consumed alcohol or other drug or drugs and that it has affected the licensee's behavior in a way that can be perceived or noticed.

"Sec. 907. Prohibitions on carrying licensed pistols.

"(a) No person holding a license shall carry a pistol in the following locations or under the following circumstances:

"(1) A building or office occupied by the District of Columbia, its agencies, or instrumentalities;

"(2) The building and grounds, including any adjacent parking lot, of an childcare facility, preschool, public or private elementary or secondary school; or a public or private college or university;

"(3) A hospital, or an office where medical or mental health services are the primary services provided;

"(4) A penal institution, secure juvenile residential facility, or halfway house;

"(5) A polling place while voting is occurring;

"(6) A public transportation vehicle, including the Metrorail transit system and its stations;

"(7) Any premises, or portion thereof, where alcohol is served, or sold and consumed on the premises, pursuant to a license issued under Title 25 of the District of Columbia Official Code; provided, that this prohibition shall not apply to premises operating under a temporary license issued pursuant to D.C. Official Code § 25-115, a C/R, D/R, C/H, D/H or caterer license issued pursuant to D.C. Official Code § 25-113, or premises with small-sample tasting permits issued pursuant to D.C. Official Code § 25-118, unless otherwise prohibited pursuant to subsection (b)(3) of this section;

"(8) A stadium or arena;

"(9) A gathering or special event open to the public; provided, that no licensee shall be criminally prosecuted unless:

"(A) The organizer or the District has provided notice prohibiting the carrying of pistols in advance of the gathering or special event and by posted signage at the gathering or special event; or

"(B) The licensee has been ordered by a law enforcement officer to leave the area of the gathering or special event and the licensee has not complied with the order;

Addendum 6

ENROLLED ORIGINAL

"(10) The public memorials on the National Mall and along the Tidal Basin, and any area where firearms are prohibited under federal law or by a federal agency or entity, including U.S. Capitol buildings and grounds;

"(11) The area around the White House between Constitution Avenue, N.W., and H Street, N.W., and between 15th Street, N.W., and 17th Street, N.W.;

"(12) The U.S. Naval Observatory and its grounds, and from the perimeter of its fence to the curb of Massachusetts Avenue, N.W., from 34th Street, N.W., south on Massachusetts Avenue, N.W., to Observatory Circle, N.W.;

"(13)(A) When a dignitary or high-ranking official of the United States or a state, local, or foreign government is moving under the protection of the MPD, the U.S. Secret Service, the U.S. Capitol Police, or other law enforcement agency assisting or working in concert with MPD, within an area designated by the Chief, the Chief of the U.S. Secret Service, or the Chief of the U.S. Capitol Police, or a designee of any of the foregoing, that does not include any point at a distance greater than 1,000 feet from the moving dignitary or high-ranking official; provided, that no licensee shall be criminally prosecuted unless:

"(i) The law enforcement agency provides notice of the designated area by the presence of signs, law enforcement vehicles or officers acting as a perimeter, or other means to make the designated area of protection obvious;

"(ii) The District or federal government has provided notice prohibiting the carrying of pistols along a designated route or in a designated area in advance of the event, if possible, and by posted signage along a route or in a designated area; or

"(iii) The licensee has been ordered by a law enforcement officer to leave the designated area and the licensee has not complied with the order.

"(B) For the purposes of this paragraph, the term "moving" shall include any planned or unplanned stops, including temporary stops, in locations open to the public.

"(14) When demonstration in a public place is occurring, within an area designated by the Chief or his or her designee, or other law enforcement agency, that does not include any point at a distance greater than 1,000 feet from the demonstration; provided, that no licensee shall be criminally prosecuted unless:

"(A) The law enforcement agency provides notice of the designated area by the presence of signs, law enforcement vehicles or officers acting as a perimeter, or other means to make the designated area of the demonstration obvious;

"(B) The District or federal government has provided notice prohibiting the carrying of pistols along or within a demonstration route or designated area in advance of the event, if possible, and by posted signage along a demonstration route or designated area; or

"(C) The licensee has been ordered by a law enforcement officer to leave the designated area and the licensee has not complied with the order; or

"(15) Any prohibited location or circumstance that the Chief determines by rule; provided, that for spontaneous circumstances, no criminal penalty shall apply unless the licensee has notice of the prohibition and has failed to comply.

"(b)(1) The carrying of a concealed pistol on private residential property shall be presumed to be prohibited unless otherwise authorized by the property owner or person in

7

Addendum 7

control of the premises and communicated personally to the licensee in advance of entry onto the residential property.

"(2) The carrying of a concealed pistol in a church, synagogue, mosque, or other place where people regularly assemble for religious worship shall be presumed to be prohibited unless the property is posted with conspicuous signage allowing the carrying of a concealed pistol, or the owner or authorized agent communicates such allowance personally to the licensee in advance of entry onto the property; provided, that such places may not authorize the carrying of a concealed pistol where services are conducted in locations listed in subsection (a) of this section.

"(3)  The carrying of a concealed pistol on private property that is not a residence shall be presumed to be permitted unless the property is posted with conspicuous signage prohibiting the carrying of a concealed pistol, or the owner or authorized agent communicates such prohibition personally to the licensee.

"(c) Whenever a licensee carries a concealed pistol and approaches any prohibited location, or is subject to any prohibited circumstance, under subsection (a) or (b) of this section, the licensee shall:

"(1) If the licensee is in a vehicle or if a vehicle is readily available, immediately secure the pistol in the manner prescribed in section 4b(b) of An Act To control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia, to provide penalties, to prescribe rules of evidence, and for other purposes, effective May 20, 2009 (D.C. Law 17-388; D.C. Official Code § 22-4504.02(b)); or

"(2) If the licensee does not have a vehicle available, immediately leave the prohibited location or circumstance.

"(d) A licensee shall not be in violation of this section:

"(1) While he or she is traveling along a public street, road, or highway, including an adjacent public sidewalk that touches the perimeter of any of the premises where the carrying of a concealed pistol is prohibited under subsection (a) or subsection (b) of this section if the concealed pistol is carried on his or her person in accordance with this act, or is being transported by the licensee in accordance with section 4b of An Act To control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia, to provide penalties, to prescribe rules of evidence, and for other purposes, effective May 20, 2009 ( D.C. Law 17-388; D.C. Official Code § 22-4504.02); or

"(2) While driving a vehicle into and immediately parking at any location listed in subsection (a)(2) of this section for the purpose of picking up or dropping off a student or a child; provided, that the licensee shall secure the concealed pistol in accordance with section 4b(b) of An Act To control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia, to provide penalties, to prescribe rules of evidence, and for other purposes, effective May 20, 2009 (D.C. Law 17-388; D.C. Official Code § 22-4504.02(b)), before leaving the parked vehicle.

"(e) A licensee shall not carry a pistol openly or otherwise in a manner that is not concealed.

8

# Addendum 8

**ENROLLED ORIGINAL**

"(f) In addition to any other penalty provided by law, any person who violates this section shall be subject to revocation of his or her license.

"(g) For the purposes of this section, the term:

"(1) "Demonstration" means one or more persons demonstrating, picketing, speechmaking, marching, holding a vigil, or engaging in any other similar conduct that involves the communication or expression of views or grievances and that has the effect, intent, or propensity to attract a crowd or onlookers. The term "demonstration" does not include the casual use of property by visitors or tourists that does not have the effect, intent, or propensity to attract a crowd or onlookers.

"(2) "Public place" means a place to which the general public has access and a right to occupy for business, entertainment, or other lawful purpose. The term "public place" is not limited to a place devoted solely to the uses of the public, and includes:

"(A) The front or immediate area or parking lot of a store, restaurant, tavern, shopping center, or other place of business;

"(B) A public building, including its grounds and curtilage;

"(C) A public parking lot;

"(D) A public street, sidewalk, or right-of-way;

"(E) A public park; and

"(F) Other public grounds.

"(3) "Public transportation vehicle" means any publicly owned or operated commercial vehicle, including any DC Circulator bus, DC Streetcar, MetroAccess vehicle, Metrobus, or Metrorail train.

"(4) "Residence" means a building wholly or partly used or intended to be used for living and sleeping by human occupants, together with any fences, walls, sheds, garages, or other accessory buildings appurtenant to the building, and the area of land surrounding the building and actually or by legal construction forming one enclosure in which such a building is located, but does not include adjacent common areas or commercial property contained in any part of the building.

"Sec. 908.  Concealed Pistol Licensing Review Board.

"(a) There is established a Concealed Pistol Licensing Review Board ("Board") for the purpose of hearing appeals from:

"(1) A denial of an application or renewal application for a license to carry a concealed pistol in the District pursuant to this act;

"(2) A summary suspension or limitation of a license to carry a concealed pistol; or

"(3) A limitation or revocation of a license to carry a concealed pistol.

"(b)(1) The Board shall consist of 7 members as follows:

"(A) The United States Attorney ("USAO") for the District of Columbia or his or her designee; provided, that if the USAO declines to provide a representative, the Mayor shall appoint a person who is a former employee of the USAO;

"(B) The Attorney General for the District of Columbia or his or her designee;

9

# Addendum 9

**ENROLLED ORIGINAL**

"(C) A mental health professional employed by the Department of Behavioral Health, appointed by the Mayor;

"(D) A former sworn officer of a law enforcement agency other than the MPD, appointed by the Mayor;

"(E) Three public members appointed by the Mayor, as follows:

"(i) One mental health professional; and

"(ii) Two District residents with experience in the operation, care, and handling of firearms.

"(2) The appointment of members designated by subsection (b)(1)(D) and (b)(1)(E) of this section shall be made in accordance with the following provisions:

"(A) Each member shall be appointed for a term of 4 years, and shall continue to serve during that time as long as the member remains eligible for the appointment;

"(B) A member may be reappointed;

"(C) A Board member whose term has expired may continue to serve as a member until a replacement member has been appointed;

"(D) A person appointed to fill a vacancy occurring before the expiration of a term shall serve for the remainder of the term or until a successor has been appointed; and

"(E) A member may be removed by the appointing authority only for incompetence, neglect of duty, or misconduct.

"(3) The Mayor shall select a chairperson.

"(4) Members shall serve without compensation, but shall be compensated for actual and necessary expenses incurred in the performance of their official duties.

"(c) Four members of the Board shall constitute a quorum, except that 2 members shall be a quorum when hearing panels of 3 members are assigned by the Board to conduct a hearing and make a final decision required by this section. Each hearing panel shall contain at least one member designated by subsection (b)(1)(A), (B), or (D) of this section.

"(d)(1) Within 30 days after the effective date of the License to Carry a Pistol Amendment Act of 2014, passed on 2nd reading on December 17, 2014 (Enrolled version of Bill 20-930) , the Mayor, by rule, shall establish hearing procedures for a contested case review of any appeal, including the manner and time of appeals, and procedures for the Board to assign panels of 3 Board members to conduct such hearings and issue final decisions, pursuant to subsection (c) of this section.

"(2) The rules shall include that the burden of production of evidence, and the burden of persuasion, at a hearing before the Board shall be upon the applicant or licensee that is challenging a denial of an application or renewal application or limitation or revocation of a license.

"(e) The meetings and hearings conducted by the Board shall be confidential and not open to the public.

"(f) Any person, including the Chief, aggrieved by a final action of the Board  may file an appeal in accordance with Title I of the District of Columbia Administrative Procedure Act, approved October 21, 1968 (82 Stat. 1204; D.C. Official Code § 2-501 *et seq.*).

"Sec. 909.  Freedom of information exception; report.

Addendum 10

**ENROLLED ORIGINAL**

"(a) Any record regarding a person who has applied for, received, or had revoked a license shall not be made available as a public record under section 202 of the Freedom of Information Act of 1976, effective March 25, 1977 (D.C. Law 1-96; D.C. Official Code § 2-532); provided, that aggregate data, excluding any personal identifying information, may be used for the purposes of the public report in subsection (b) of this section.

"(b) Every 2 years, the MPD shall make public a report that includes the following information:

"(1) The total number of valid licenses; and

"(2) For the most recent 2-year period:

"(A) The number of applications for a license received;

"(B) The number of licenses issued;

"(C) The number of licenses renewed, suspended, revoked, or denied;

"(D) The number of licensees convicted of a crime involving a pistol, classified by type of crime;

"(E) The number of pistols for which a license was issued that were reported lost or stolen; and

"(F) The number of pistols for which a license was issued that were found or recovered as stolen that were unreported by a licensee as lost or stolen.

"Sec. 910. Penalties.

"(a)(1) Except as otherwise provided in this title, a person convicted of a violation of a provision of this title, or rules or regulations issued under the authority of this title, shall be fined not more than the amount set forth in section 101 of the Criminal Fine Proportionality Amendment Act of 2012, effective June 11, 2013 (D.C. Law 19-317; D.C. Official Code § 22-3571.01), or imprisoned for not more than 180 days.

"(2) Civil fines, penalties, and fees may be imposed as alternative sanctions for any infraction of the provisions of this title, or any rules or regulations issued under the authority of this title.

"(b) All prosecutions for violations of this title shall be brought in the name of the District of Columbia and prosecuted by the Office of the Attorney General for the District of Columbia.

"Sec. 911. Rules.

"The Chief of the MPD, pursuant to Title I of the District of Columbia Administrative Procedure Act, approved October 21, 1968 (82 Stat. 1204; D.C. Official Code § 2-501 *et seq.*), shall issue rules to implement the provisions of the License to Carry a Pistol Amendment Act of 2014, passed on 2nd reading on December 17, 2014 (Enrolled version of Bill 20-930), including rules:

"(1) To establish criteria for determining when an applicant has, pursuant to section 6 of the Pistols and Other Dangerous Weapons Act:

"(A) Demonstrated a good reason to fear injury to his or her person, which shall at a minimum require a showing of a special need for self-protection distinguishable from the general community as supported by evidence of specific threats or previous attacks that demonstrate a special danger to the applicant's life;

11

# Addendum 11

**ENROLLED ORIGINAL**

        "(B) Demonstrated any other proper reason for carrying a concealed pistol, which shall at a minimum include types of employment that require the handling of cash or other valuable objects that may be transported upon the applicant's person; and

        "(C) Demonstrated the applicant's suitability to carry a concealed pistol, which shall at a minimum include evidence that the applicant meets the requirements of section 902;

        "(2) To establish the type and amount of ammunition that may be carried concealed by a licensee;

        "(3) To establish the methods by which a pistol may be carried, including any standards for safe holstering;

        "(4) To establish all application forms, investigation procedures, background checks, and fees necessary to process an application for a license to carry a concealed pistol;

        "(5) To specify any procedures or requirements specific to non-residents who apply to carry a concealed pistol pursuant to section 6 of the Pistols and Other Dangerous Weapons Act, with regard to the registration requirements in this act;

        "(6) To specify requirements for signage on any private premises where the owner or person in control of the premises prohibits the carrying of a concealed pistol pursuant to section 907(b); and

        "(7) To establish procedures for the renewal of licenses.".

    Sec. 3. An Act To control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia, to provide penalties, to prescribe rules of evidence, and for other purposes, approved July 8, 1932 (47 Stat. 650; D.C. Official Code § 22-4501 *et seq.*), is amended as follows:

    (a) Section 4(a) (D.C. Official Code § 22-4504(a)) is amended as follows:

        (1) The lead-in language is amended as follows:

        (A) Strike the phrase "a pistol" and insert the phrase "a pistol, without a license issued pursuant to District of Columbia law" in its place.

        (B) Strike the phrase "capable of being so concealed".

        (2) Paragraph (1) is amended by striking the phrase "a pistol" and inserting the phrase "a pistol, without a license issued pursuant to District of Columbia law" in its place.

    (b) Section 6 (D.C. Official Code § 22-4506) is revived as of the effective date of the License to Carry a Pistol Emergency Amendment Act of 2014, effective October 9, 2014 (D.C. Act 20-447; 61 DCR 10765), and is amended to read as follows:

    "Sec. 6. Issuance of a license to carry a pistol.

    "(a) The Chief of the Metropolitan Police Department ("Chief") may, upon the application of a person having a bona fide residence or place of business within the District of Columbia, or of a person having a bona fide residence or place of business within the United States and a license to carry a pistol concealed upon his or her person issued by the lawful authorities of any State or subdivision of the United States, issue a license to such person to carry a pistol concealed upon his or her person within the District of Columbia for not more than 2 years from the date of issue, if it appears that the applicant has good reason to fear injury to his

# Addendum 12

or her person or property or has any other proper reason for carrying a pistol, and that he or she is a suitable person to be so licensed.

"(b) A non-resident who lives in a state that does not require a license to carry a concealed pistol may apply to the Chief for a license to carry a pistol concealed upon his or her person within the District of Columbia for not more than 2 years from the date of issue; provided, that he or she meets the same reasons and requirements set forth in subsection (a) of this section.

"(c) For any person issued a license pursuant to this section, or renewed pursuant to section 903 of the Firearms Control Regulations Act of 1975, passed on 2nd reading on December 17, 2014 (Enrolled version of Bill 20-930), the Chief may limit the geographic area, circumstances, or times of the day, week, month, or year in which the license is effective, and may subsequently limit, suspend, or revoke the license as provided under section 905 of the Firearms Control Regulations Act of 1975, passed on 2nd reading on December 17, 2014 (Enrolled version of Bill 20-930).

"(d) The application for a license to carry shall be on a form prescribed by the Chief and shall bear the name, address, description, photograph, and signature of the licensee.

"(e) Except as provided in section 905(b) of the Firearms Control Regulations Act of 1975, passed on 2nd reading on December 17, 2014 (Enrolled version of Bill 20-930), any person whose application has been denied or whose license has been limited or revoked may, within 15 days after the date of the notice of denial or notice of intent, appeal to the Concealed Pistol Licensing Review Board established pursuant to section 908 of the Firearms Control Regulations Act of 1975, passed on 2nd reading on December 17, 2014 (Enrolled version of Bill 20-930).".

Sec. 4. Section 101 of the Omnibus Public Safety and Justice Amendment Act of 2009, effective December 10, 2009 (D.C. Law 18-88; D.C. Official Code § 22-2511), is repealed.

Sec. 5. Fiscal impact statement.
The Council adopts the fiscal impact statement in the committee report as the fiscal impact statement required by section 602(c)(3) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(3)).

Sec. 6. Effective date.
This act shall take effect following approval by the Mayor (or in the event of veto by the Mayor, action by the Council to override the veto), a 60-day period of congressional review as

Addendum 13

**ENROLLED ORIGINAL**

provided in section 602(c)(2) of the District of Columbia Home Rule Act, approved December 24, 1973 (87 Stat. 813; D.C. Official Code § 1-206.02(c)(2)), and publication in the District of Columbia Register.

_____

Chairman
Council of the District of Columbia

_____

Mayor
District of Columbia
APPROVED
February 6, 2015

14

Addendum 14



# COUNCIL OF THE DISTRICT OF COLUMBIA

## WASHINGTON, D.C. 20004

Docket No. **B20-930**

[  ] ITEM ON CONSENT CALENDAR
[ X ] ACTION & DATE

### ADOPTED FIRST READING, 12/2/2014

[ X ] VOICE VOTE
RECORDED VOTE ON REQUEST

**APPROVED**

ABSENT

[  ] ROLL CALL VOTE – Result                                                                ( ............ )

| Councilmember | Aye | Nay | NV | AB | Councilmember | Aye | Nay | NV | AB | Councilmember | Aye | Nay | NV | AB |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chmn. Mendelson | X | | | | Cheh | X | | | | Orange | X | | | |
| Alexander | X | | | | Evans | X | | | | Wells | X | | | |
| Bonds | X | | | | Graham | X | | | | | | | | |
| Bowser | X | | | | Grosso | | X | | | | | | | |
| Catania | X | | | | McDuffie | X | | | | | | | | |
| X – Indicate Vote | | | | | AB – Absent | | | | | NV – Present, Not Voting | | | | |

CERTIFICATION RECORD

_____
Secretary to the Council

1 · 14 · 15
Date

[  ] ITEM ON CONSENT CALENDAR
[ X ] ACTION & DATE

### ADOPTED FINAL READING, 12/17/2014

[ X ] VOICE VOTE
RECORDED VOTE ON REQUEST

**APPROVED**

ABSENT

[  ] ROLL CALL VOTE – Result                                                                ( ............ )

| Councilmember | Aye | Nay | NV | AB | Councilmember | Aye | Nay | NV | AB | Councilmember | Aye | Nay | NV | AB |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chmn. Mendelson | X | | | | Cheh | X | | | | Orange | X | | | |
| Alexander | X | | | | Evans | X | | | | Wells | X | | | |
| Bonds | X | | | | Graham | X | | | | | | | | |
| Bowser | X | | | | Grosso | | X | | | | | | | |
| Catania | X | | | | McDuffie | X | | | | | | | | |
| X – Indicate Vote | | | | | AB – Absent | | | | | NV – Present, Not Voting | | | | |

CERTIFICATION RECORD

_____
Secretary to the Council

1 · 14 · 15
Date

[  ] ITEM ON CONSENT CALENDAR
[  ] ACTION & DATE
[  ] VOICE VOTE
RECORDED VOTE ON REQUEST
ABSENT

[  ] ROLL CALL VOTE – Result                                                                ( ............ )

| Councilmember | Aye | Nay | NV | AB | Councilmember | Aye | Nay | NV | AB | Councilmember | Aye | Nay | NV | AB |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Chmn. Mendelson | | | | | Cheh | | | | | Orange | | | | |
| Alexander | | | | | Evans | | | | | Wells | | | | |
| Bonds | | | | | Graham | | | | | | | | | |
| Bowser | | | | | Grosso | | | | | | | | | |
| Catania | | | | | McDuffie | | | | | | | | | |
| X – Indicate Vote | | | | | AB – Absent | | | | | NV – Present, Not Voting | | | | |

CERTIFICATION RECORD

_____
Secretary to the Council

Date

## Addendum 15

USCA Case #15-7057     Document #1570118     Filed: 08/27/2015     Page 18 of 76

## METROPOLITAN POLICE DEPARTMENT

### NOTICE OF FINAL RULEMAKING

The Chief of the Metropolitan Police Department (Chief), pursuant to the authority under Section 911 of the License to Carry a Pistol Second Emergency Amendment Act of 2014 (Act), signed January 6, 2015 (D.C. Act 20-0564; 62 DCR 866 (January 23, 2015)), and any substantially similar emergency, temporary, or permanent versions of this legislation, hereby gives notice of the adoption of amendments to Chapter 23 (Guns and Other Weapons) of Title 24 (Public Space and Safety) of the District of Columbia Municipal Regulations (DCMR).

This rulemaking is part on ongoing process to establish procedures for licensing by the Metropolitan Police Department (MPD) of persons to carry a concealed pistol for self-defense. A 2014 court decision determined that such a licensing scheme must be in place before the District of Columbia can enforce its criminal provisions against carrying firearms openly or concealed. As a result of the injunction issued in that decision, there is an immediate need to protect the health, safety, security, and welfare of District residents by having a licensing scheme immediately implemented, as further described in the License to Carry a Pistol Emergency Declaration Resolution, effective September 23, 2014 (Res. 20-615; 61 DCR 10491 (October 10, 2014)).

Additionally, a court decision was issued on May 18, 2015, which may affect the "good reason" or "other proper reason" requirement for some concealed pistol applicants. (Memorandum-Decision and Order, *Wrenn v. District of Columbia*, No. 15-cv-162 (FJS) (D.D.C. May 18, 2015 http://mpdc.dc.gov/sites/default/files/dc/sites/mpdc/page_content/attachments/WrennOrder51815 grantingPI.pdf)

A Notice of Second Emergency and Proposed Rulemaking was published in the *D.C. Register* on March 6, 2015 at 62 DCR 2803. No comments were received and no changes have been made to this final rulemaking. A Notice of Third Emergency Rulemaking was published in the *D.C. Register* on July 17, 2015 (62 DCR ___).

The Chief adopted these rules as final on June 12, 2015 and they will become effective upon publication of this notice in the *D.C. Register.*

### SUMMARY OF LICENSING SCHEME

The Act delegates rulemaking authority to the Chief to implement the concealed carry licensing scheme re-instituted by the Act.  The Act permits the Chief to issue a concealed pistol carry license to a person who: 1) a) demonstrates: good reason to fear injury to his or her person or property; or b) has any other proper reason for carrying a pistol; and 2) is a suitable person to be so licensed. This rulemaking establishes standards by which the Chief will exercise the discretion the Act vests in him or her for each of the above requirements.  The rulemaking also establishes application and investigation procedures. The rulemaking does not cover all regulations required by the Act for the licensing of concealed pistols.  A future rulemaking will establish procedures for the renewal of concealed pistol licenses; a separate rulemaking issued by the Mayor has established procedures for the Concealed Pistol Licensing Review Board.

1

Some of the standards the Chief will use to consider license applications were established in the Act by the Council of the District of Columbia (Council). The Council derived the standards found in similar "may issue" handgun licensing or permitting schemes in the States of Maryland (good and substantial reason standard), New Jersey (justifiable need standard), and New York (proper cause standard). All of these schemes have been sustained as constitutional by U.S. Courts of Appeals. Additionally, some of the standards in these regulations have been adapted from the above states and earlier MPD regulations. Many of the application and investigation procedures were adapted from Maryland regulations. Key portions of the rulemaking include:

Good Reason To Fear Injury To Person Or Property

These regulations include the Act's standards for "good reasons to fear injury to person or property" which includes "showing a special need for self-protection distinguishable from the general community as supported by evidence of specific threats or previous attacks which demonstrate a special danger to the applicant's life."

The requirement of "showing a special need for self-protection distinguishable from the general community as supported by evidence of specific threats or previous attacks" includes language from New Jersey regulations defining the term "justifiable need" as well as New York City's regulations defining the term "proper cause". The requirement that the threats or attacks "demonstrate a special danger to applicant's life" includes language contained in New Jersey regulations defining "justifiable need."

The standard that a high crime area by itself does not establish good cause is language that appeared in the District's prior concealed carry regulations and also appears in New York regulations.

Other Proper Reason for Carrying a Pistol

These regulations establish standards for "other proper reasons for carrying a pistol." One standard is employment of a type that requires the handling of large amounts of cash or other highly valuable objects that must be transported upon the applicant's person." This standard, in some form, is found in the laws or regulations of Maryland, New Jersey, and New York City.

Another standard is "the need for a parent, son, daughter, sibling or other adult member of the immediate family to provide protection of a family member who is physically or mentally incapacitated to a point where he or she cannot act in defense of himself or herself, and the family member who is physically or mentally incapacitated can demonstrate a good reason to fear injury to his or her person." That standard was adapted from a similar standard that appeared in MPD's prior regulations.

Suitability To Obtain A Concealed Carry License

These regulations establish standards for suitability to obtain a concealed carry license, which include completion of a firearms safety and proficiency training course. Firearms safety and proficiency training courses are required by Maryland, New Jersey, Illinois, and many other states.

2

Addendum 17

USCA Case #15-7057     Document #1570118     Filed: 08/27/2015     Page 20 of 76

The suitability standard excludes applicants who are addicts or habitual users of alcohol or controlled substances, exhibit a propensity for violence or instability, or suffer from mental illness of a type that should prevent the carrying of a pistol. All of these standards are present and applied in Maryland, New Jersey, and New York. They were also part of MPD's prior regulations.

The Council has narrowed the mental health standard that was present in the prior regulations. The prior regulations required a showing of a "sound mind." Indications of an unsound mind included suffering from "any mental disorder" occurring during the previous five (5) years. The Act and this rulemaking limit the mental health determination to a mental illness or condition that creates a substantial risk that an applicant is a danger to himself or others. The consideration of mental health issues creating a danger to self or others is found in some form in both Maryland and New York.

Additionally, the Chief adapted language in the prior regulations to provide that an applicant with a mental health history that would otherwise render an applicant ineligible can submit a notarized report under oath from a registered psychologist or psychiatrist. The applicant must have a bona fide patient relationship with the psychologist or psychiatrist, have been examined within six (6) months prior to submitting the statement, and have been found that he or she is no longer suffering from any mental disorder, illness, or condition that creates a substantial risk that he or she is a danger to himself or herself or others.

Preliminary Approval Option

These regulations establish three (3) methods for an applicant to satisfy the firearms training requirements established by the Act. An applicant may first obtain a certificate of completion for the required firearms training and submit the certificate as part of an application.

The Act also provides certain circumstances under which an applicant may also submit a request for an exemption from the firearms training as part of the application.

Lastly, the applicant may submit a statement of intent to complete firearms training after the Chief considers all other matters contained in the application and issues a preliminary approval. The last method was designed to allow an applicant to receive a determination of eligibility for a conceal carry license before he or she would have to expend time and money to complete the required firearms training.

**Chapter 23, GUNS AND OTHER WEAPONS, of Title 24 DCMR, PUBLIC SPACE AND SAFETY, is amended as follows:**

**Section 2331, FEES, is amended to read as follows:**

| 2331 | FEES |
|------|------|

2331.1     The following fees shall be charged in connection with the services provided under this chapter:

        (a)     Accident reports – $3.00;

3

Addendum 18

USCA Case #15-7057    Document #1570118    Filed: 08/27/2015    Page 21 of 76

(b)     Arrest records – $7.00;

(c)     Fingerprints – $35.00;

(d)     Firearm registration – $13.00;

(e)     Firearms training instructor certification – $400.00;

(f)     Transcript of records – $3.00; and

(g)     License to carry a pistol – $75.00.

**New Sections 2332 through 2348 are added to read as follows:**

**2332        LICENSES FOR CONCEALED PISTOLS**

2332.1      A person is eligible for issuance of a license to carry a concealed pistol (concealed carry license or license) only if the person:

(a)     Is twenty-one (21) years of age;

(b)     Meets all of the requirements for a person registering a firearm pursuant to the Firearms Control Regulations Act of 1975 (the Act), effective September 24, 1976 (D.C. Law 1-85; D.C. Official Code §§ 7-2501.01 *et seq.* (2012 Repl. & 2014 Supp.));

(c)     Possesses a pistol registered pursuant to the Act;

(d)     Does not currently suffer nor has suffered in the previous five (5) years from any mental illness or condition that creates a substantial risk that he or she is a danger to himself or herself or others; provided, that if the person no longer suffers such mental illness or condition, and that person has provided satisfactory documentation required under § 2337.3, then the Chief may determine that this requirement has been met;

(e)     Has completed a firearms training course, or combination of courses, conducted by an instructor (or instructors) certified by the Chief;

(f)     Has a bona fide residence or place of business:

(1)     Within the District of Columbia;

(2)     Within the United States and a license to carry a pistol concealed upon his or her person issued by the lawful authorities of any State or subdivision of the United States; or

4

Addendum 19

USCA Case #15-7057     Document #1570118     Filed: 08/27/2015     Page 22 of 76

(3)     Within the United States and meets all registration and licensing requirements pursuant to the Act;

(g)     Has demonstrated to the Chief good reason to fear injury to his or her person or property or has any other proper reason for carrying a pistol; and

(h)     Is a suitable person to be so licensed.

## 2333     GOOD REASON TO FEAR INJURY TO PERSON OR PROPERTY

2333.1     A person shall demonstrate a good reason to fear injury to his or her person by showing a special need for self-protection distinguishable from the general community as supported by evidence of specific threats or previous attacks which demonstrate a special danger to the applicant's life.

2333.2     For the purposes of satisfying the specifications of § 2333.1, a person shall allege, in writing, serious threats of death or serious bodily harm, any attacks on his or her person, or any theft of property from his or her person. The person shall also allege that the threats are of a nature that the legal possession of a pistol is necessary as a reasonable precaution against the apprehended danger.

2333.3     The person shall provide all evidence of contemporaneous reports to the police of such threats or attacks, and disclose whether or not the applicant has made a sworn complaint to the police or the courts of the District of Columbia concerning any threat or attack.

2333.4     The fact that a person resides in or is employed in a high crime area shall not by itself establish a good reason to fear injury to person or property for the issuance of a concealed carry license.

## 2334     OTHER PROPER REASON FOR CONCEALED CARRY LICENSE

2334.1     A person may allege any other proper reason that the Chief may accept for obtaining a concealed carry license which may include:

(a)     Employment of a type that requires the handling of large amounts of cash or other highly valuable objects that must be transported upon the applicant's person; or

(b)     The need for a parent, son, daughter, sibling, or other adult member of the immediate family to provide protection of a family member who is physically or mentally incapacitated to a point where he or she cannot act in defense of himself or herself, and the family member who is physically or mentally incapacitated can demonstrate a good reason to fear injury to his or her person by showing a special need for self-protection distinguishable from the general community as supported by evidence of specific threats or previous attacks which demonstrate a special danger to the applicant's life in the manner described in § 2333.

5

Addendum 20

USCA Case #15-7057     Document #1570118     Filed: 08/27/2015     Page 23 of 76

**2335**      **SUITABILITY TO OBTAIN A CONCEALED CARRY LICENSE**

2335.1      A person is suitable to obtain a concealed carry license if he or she:

     (a)      Meets all of the requirements for a person registering a firearm pursuant to the Act;

     (b)      Has completed a firearms training course, or combination of courses, conducted by an instructor (or instructors) certified by the Chief;

     (c)      Is not presently an alcoholic, addict, or habitual user of a controlled dangerous substance, unless the habitual use of a controlled dangerous substance is under licensed medical direction;

     (d)      Has not exhibited a propensity for violence or instability that may reasonably render the person's possession of a concealed pistol a danger to the person or another; and

     (e)      Does not currently suffer nor has suffered in the previous five (5) years from any mental disorder, illness or condition that creates a substantial risk that he or she is a danger to himself or herself or others, or if the Chief has determined that the person is suitable based upon documentation provided by the person pursuant to § 2337.3.

**2336**      **FIREARMS TRAINING COURSE REQUIRMENTS**

2336.1      To satisfy the firearms training eligibly requirement of § 2332.1(e), a person shall obtain a certificate of completion from an instructor (or instructors) certified by the Chief that includes at least sixteen (16) hours of training, and covers the following:

     (a)      Firearm safety, including firearm safety in the home, a discussion of prevention of access by minors, locking and storing of firearms, and use of safety devices such as secure lock boxes;

     (b)      Firearm nomenclature;

     (c)      The basic principles of marksmanship;

     (d)      The care, cleaning, maintenance, loading, unloading, and storage of pistols;

     (e)      Situational awareness, conflict management, and use of deadly force;

     (f)      Selection of pistols and ammunition for defensive purposes; and

6

(g)     All applicable District and federal firearms laws, including the requirements of the Act, An Act To control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia, to provide penalties, to prescribe rules of evidence, and for other purposes, approved July 8, 1932 (47 Stat. 650; D.C. Official Code §§ 22-4501 *et seq.*), and District law pertaining to self-defense.

2336.2     In addition to the requirements of § 2336.1, a person shall complete at least two (2) hours of range training, including shooting a qualification course of fifty (50) rounds of ammunition from a maximum distance of fifteen (15) yards (forty-five (45) feet), and receiving a qualifying score of seventy percent (70%) as certified by the instructor.

2336.3     The Chief may, on a case by case basis, exempt a person from the requirements of §§ 2336.1 and 2336.2 if the person submits evidence that he or she has received firearms training in the U.S. military or has otherwise completed firearms training conducted by a firearms instructor that, as determined by the Chief, is equal to or greater than that required by the Act.

2336.4     An applicant may submit to the Chief the application required under § 2337 without including the certificate of completion of training required by this section; provided that if the Chief preliminarily approves the application pursuant to § 2339, the applicant has forty-five (45) days to submit the certificate of completion and successfully complete the range training.

**2337**     **CONCEALED CARRY APPLICATIONS**

2337.1     A complete concealed carry license application shall be submitted to the Firearms Registration Section in the format and on forms prescribed by the Chief.

2337.2     The application shall include:

(a)     The applicant's name, address, driver's license number or other government issued photo identification number, place and date of birth, height, weight, race, sex, eye and hair color, occupation, and home and work telephone numbers, and email (optional);

(b)     If applying as a District resident or business owner, proof of a bona fide District residence or place of business;

(c)     Evidence of completion or intent to complete the firearms training requirements in § 2336 by:

(1)     Proof of the applicant's completion of a firearm training course within the past two (2) years in the manner prescribed by the Chief in § 2336;

7

**009787**
Addendum 22

USCA Case #15-7057        Document #1570118        Filed: 08/27/2015        Page 25 of 76

(2)     Support for the applicant's request for an exemption from the firearm training course requirement as permitted by the Act; or

(3)     If the applicant chooses to seek a preliminary approval pursuant to § 2339, then the applicant shall certify that he or she will provide proof of completion of the firearms training requirements within forty-five (45) days of the Chief's provisional approval of the application pursuant to § 2339;

(d)     A complete set of the applicant's fingerprints, taken and submitted in the manner prescribed by the Chief on the application;

(e)     A declaration by the applicant as to whether or he or she currently suffers or has suffered in the previous five (5) years from any mental disorder, illness, or condition that creates a substantial risk that he or she is a danger to himself or herself or others.  If the applicant attests to suffering from any mental disorder, illness, or condition, the applicant shall sign an authorization to disclose any treatment records related to those circumstances;

(f)     An authorization by the applicant to the Department of Behavioral Health, or any other similar agency or department of another state to disclose to the Chief information as to whether the applicant:

(1)     Suffers from a mental illness or condition and has a history of violence; or

(2)     Has been voluntarily or involuntarily committed to a mental health facility or an institution that provides treatment or services for individuals with a mental illness or condition;

(g)     Proof, including any documents, statements of third parties taken under oath and before a notary, or personal statements of the applicant to demonstrate to the Chief that the person has good reason to fear injury to his or her person or property or has any other proper reason for carrying a pistol;

(h)     Any information reasonably required by the Chief, as part of the application form or materials, to complete an investigation required by § 2338;

(i)     A declaration by the applicant that the applicant is not prohibited under federal or District law, or state law of the applicant's residence, from possessing a handgun;

(j)     A declaration by the applicant, under the penalty of perjury, that all information in the application is true and accurate; and

8

Addendum 23

USCA Case #15-7057       Document #1570118       Filed: 08/27/2015       Page 26 of 76

(k)     A declaration by the applicant acknowledging that the applicant shall be responsible for compliance with all federal and District laws, rules, regulations, and procedures that are applicable to this license.

2337.3     The Chief may find the applicant has satisfied the requirements of § 2331.1(d) if the applicant submits a notarized report under oath from a registered psychologist or psychiatrist, with which the applicant has bona fide patient relationship, stating that the psychologist or psychiatrist has examined the applicant within six (6) months prior to submitting the statement and found the applicant to no longer be suffering from any mental illness or condition that creates a substantial risk that he or she is a danger to himself or herself or others.

2337.4     The application must be accompanied by the fees for Fingerprints and License to carry a pistol listed in §§ 2331.1(c) and (g), respectively.

2337.5     The Chief may waive some or the entire application fee for good cause shown on the application.

2337.6     Any knowing material omission or false statement made by or provided by the applicant may be considered grounds for denial of a conceal carry license, or revocation for a license falsely obtained, and may subject the person to criminal prosecution for perjury.

**2338          INVESTIGATION OF APPLICATION**

2338.1     The Chief shall conduct an investigation of every applicant within a reasonable period of time after receipt of a completed application.

2338.2     The following areas shall be a part of the investigation of every applicant and shall be considered by the Chief in determining whether a concealed carry license shall be issued:

(a)     Age of the applicant;

(b)     Occupation, profession, or employment of the applicant;

(c)     Verification of the applicant's eligibility, including a firearms training course completion certificate from a certified trainer;

(d)     Verification of the information supplied by the applicant in the application;

(e)     Information received from personal references and other persons interviewed;

(f)     Information received from business or employment references as may be necessary in the discretion of the investigator;

9

Addendum 24

USCA Case #15-7057      Document #1570118      Filed: 08/27/2015      Page 27 of 76

(g)     Criminal record of applicant, including any juvenile record.

(h)     Medical or mental health history of applicant as it may pertain to the applicant's fitness to carry, wear, or transport a handgun;

(i)     Psychiatric or psychological background of the applicant as it may pertain to the applicant's fitness to carry, wear, or transport a handgun;

(j)     The applicant's propensity for violence or instability that could reasonably render the applicant's wearing, carrying, or transporting of a handgun a danger to the applicant or to others;

(k)     The applicant's use of intoxicating beverages or drugs;

(l)     The reasons given by the applicant for carrying, wearing, or transporting a handgun, and whether those reasons demonstrate good cause;

(m)     Whether the permit is necessary as a reasonable precaution for the applicant against apprehended danger; and

(n)     Any other areas the Chief determines are reasonably necessary to determine if the applicant is eligible to obtain a concealed carry license.

## 2339      PRELIMINARY APPROVAL

2339.1      The Chief shall issue a preliminary approval to carry a concealed pistol or provide a written denial of the application within a reasonable time after receiving an application containing all required supporting documents, with the exception of proof of completion of the firearms training requirements. A reasonable period of time shall normally be within ninety (90) days; however, the time may be extended by the Chief for an additional ninety (90) days where there is good cause for additional time to complete the investigation and the applicant is so notified in writing.

2339.2      After completing the investigation of the application, the Chief shall either:

(a)     Deny the application pursuant to § 2340; or

(b)     Issue a preliminary approval of the application.

2339.3      If the Chief issues a preliminary approval of the application, it shall:

(a)     Be in writing;

(b)     Notify the applicant that he or she has forty-five (45) days from the date of the preliminary approval to provide proof of completion of the firearms training course requirements in §§ 2336.1 and 2336.2; and

10

USCA Case #15-7057     Document #1570118     Filed: 08/27/2015     Page 28 of 76

(c)     Notify the applicant that the Chief may deny the application pursuant to § 2340 if the applicant fails to provide the documentation required under paragraph (b) within the allotted time.

2339.4     If the applicant provides the information required under § 2339.3(b), the application shall be deemed complete and the Chief shall issue the license pursuant to § 2340.

**2340          ISSUANCE OR DENIAL**

2340.1     The Chief shall issue a license to carry a concealed pistol or provide a written denial of the application within a reasonable time after receiving a completed application. A reasonable period of time shall normally be within ninety (90) days; however, the time may be extended by the Chief for an additional ninety (90) days where there is good cause for additional time to complete the investigation and the applicant is so notified in writing.

2340.2     A completed application shall satisfy all the requirements prescribed by the Chief including evidence that applicant has satisfied the firearms training requirements in § 2336.

2340.3     A written denial provided by the Chief shall contain the reasons the application was denied and a statement of the applicant's appeal rights.

2340.4     The Chief may limit the geographic area, circumstances, or times of the day, week, month, or year in which a license is valid or effective.

2340.5     Unless otherwise limited or revoked by the Chief pursuant to § 2341, a concealed carry license expires two (2) years from the date of issuance.

**2341          REVOCATION, LIMITATION, AND SUMMARY SUSPENSION**

2341.1     The Chief may revoke a concealed carry license on a finding that the licensee:

(1)     No longer satisfies one or more of the concealed carry license qualifications set forth in the Act or any regulation authorized by the Act; or

(2)     Failed to comply with one or more requirements or duties imposed upon the licensee by the Act or any regulation authorized by the Act.

2341.2     A concealed carry license may be limited, after its issuance, as described in § 2340.4, upon a finding by the Chief that such limitation is necessary to protect the health, safety, security, or welfare of the District and its residents.

2341.3     The Chief shall provide a written notice of revocation or limitation to a person whose license is revoked or limited. The written notice shall contain:

11

Addendum 26

(a)     The reasons the license was revoked or limited; and

(b)     A statement that the revocation or limitation will take effect unless the licensee requests an appeal to the Concealed Pistol Licensing Review Board (Board) no later than fifteen (15) days after the receipt of the notice of revocation or limitation.

2341.4     Unless a licensee has requested an appeal pursuant to § 2341.6(b), a licensee whose concealed carry license is revoked shall return the license to the Firearms Registration Section within fifteen (15) days after receipt of the notice of revocation.

2341.5     The Chief may summarily suspend or limit, without a hearing, a concealed carry license, when the Chief has determined that the conduct of the licensee presents an imminent danger to the health and safety of a person or the public.

2341.6     At the time of the summary suspension or limitation of a concealed carry license, the Chief shall provide the licensee with written notice stating:

(a)     The action that is being taken;

(b)     The basis for the action; and

(c)     The right of the licensee to request a hearing with the Board pursuant to § 2341.7.

2341.7     A licensee shall have the right to request a hearing by the Board within seventy-two (72) hours after service of notice of the summary suspension or limitation of the concealed carry license. The Board shall hold a hearing within seventy-two (72) hours after receipt of a timely request and shall issue a written decision within seventy-two (72) hours after the hearing.

2341.8     Upon receipt of a summary suspension notice issued pursuant to § 2341.6, the licensee shall immediately return his or her suspended license to the Chief.

2341.9     If the Board does not sustain a summary suspension, the suspended concealed carry license shall be returned to the licensee.

**2342        APPEAL**

2342.1     With the exception of an appeal of a summary suspension or limitation of a license, a person whose original or renewal license application is denied or whose license is revoked or limited may submit a written request to the Board to review the decision of the Chief within fifteen (15) days after receipt of the notice of denial, revocation, or limitation.

12

**2343**          **AMMUNITION CARRIED BY LICENSEE**

2343.1          A person issued a concealed carry license by the Chief, while carrying the pistol, shall not carry more ammunition than is required to fully load the pistol twice, and in no event shall that amount be greater than twenty (20) rounds of ammunition.

2343.2          A person issued a concealed carry license by the Chief may not carry any restricted pistol bullet as that term is defined in the Act.

**2344**          **PISTOL CARRY METHODS**

2344.1          A licensee shall carry any pistol in a manner that it is entirely hidden from view of the public when carried on or about a person, or when in a vehicle in such a way as it is entirely hidden from view of the public.

2344.2          A licensee shall carry any pistol in a holster on their person in a firmly secure manner that is reasonably designed to prevent loss, theft, or accidental discharge of the pistol.

**2345**          **NON-RESIDENT APPLICATIONS FOR CONCEALED CARRY LICENSE**

2345.1          A non-resident of the District, as defined by the Act, may apply to the Firearms Registration Section for a concealed carry license upon a showing that the applicant meets all of the eligibility requirements of § 2332.

2345.2          A non-resident may satisfy some or all of the firearms training requirements in § 2336 by providing proof of completion of a firearms training course in another state or subdivision of the United States.

2345.3          A non-resident shall obtain a certification from a firearms trainer that the applicant has received and completed training in District firearms law and the District law of self-defense.

2345.4          A non-resident must demonstrate to the Chief that he or she has a good reason to fear injury to his or her person or property, as defined by the Act and these regulations, by showing that the fear is from a cause that will likely be present in the District and is not a cause that is likely to be present only in another jurisdiction.

2345.5          A non-resident must demonstrate to the Chief that he or she has any other proper reason for carrying a pistol, as defined by the Act and these regulations, by showing that the other proper reason exists in the District.

13

USCA Case #15-7057       Document #1570118       Filed: 08/27/2015       Page 31 of 76

**2346      SIGNAGE TO PREVENT ENTRANCE BY CONCEALED CARRY LICENSEE ONTO NON-RESDIENTIAL PRIVATE PROPERTY**

2346.1      Signs stating that the carrying of firearms is prohibited on any private property shall be clearly and conspicuously posted at any entrance, open to the public, of a building, premises, or real property.

2346.2      A sign shall be considered conspicuous if it is at least eight (8) inches by ten (10) inches in size and contains writing in contrasting ink using not less than thirty-six (36) point type.

**2347      FIREARMS TRAINING INSTRUCTOR CERTIFICATION**

2347.1      Any person providing firearms training to an applicant for a concealed carry license shall obtain a valid certification issued by the Chief in accordance with this section.

2347.2      A certified firearms training instructor shall obtain proof of certification from the Chief before providing instruction to an applicant for a concealed carry license.

2347.3      Upon a person's satisfactory completion of a required firearms training course, a certified firearms training instructor shall:

   (a)      Provide the person a firearms training certificate that includes:

      (1)      The person's name and date of birth;

      (2)      The instructor's name;

      (3)      The length in hours of the course;

      (4)      The date of course completion;

      (5)      The location of the training;

      (6)      A declaration certifying that the course met the minimum standards prescribed by the Act and the Chief; and

      (7)      A declaration certifying that the person completed the course; and

   (b)      Submit the requisite information to the Firearms Registration Section.

2347.4      A certified firearms training instructor application shall be submitted to the Security Officers Management Branch in the format prescribed by the Chief.

2347.5      The certified firearms training instructor application shall:

(a)    Meet, with the exception of Section 203(a)(13)(A) of the Act (D.C. Official Code § 7-2502.03(a)(13)(A) (2012 Repl. & 2014 Supp.)), all of the requirements for a person registering a firearm pursuant to the Firearms Control Regulations Act of 1975 (the Act), effective September 24, 1976 (D.C. Law 1-85; D.C. Official Code §§ 7-2501.01 *et seq.* (2012 Repl. & 2014 Supp.));

(b)    Include the applicant's name, address, driver's license or other government issued photographic identification, place and date of birth, home address and telephone number, work address and telephone number, email address, name and location of firing range to be used to provide training, and business website address (optional);

(c)    Include proof of the applicant's formal training in the care, safety, and use of firearms, which may be satisfied pursuant to the conditions stated in Section 902(c) of the Act;

(d)    Include proof of the applicant's minimum of one (1) year of experience in instruction in the care, safety, and use of handguns; and

(e)    Include a detailed syllabus describing the methods and materials the trainer will use to conduct the firearms training for a concealed carry license.

2347.6    Any person licensed by the Chief as of the effective date of the Act to provide firearms instruction training to special police officers and who is seeking to be certified under this section shall not be required to pay the fees listed under § 2331.1; provided, that he or she shall pay the fees upon renewal of his or her firearms instructor license in March 2015.

2347.7    Upon receipt of a properly completed application, the Chief shall issue a certification or denial to the applicant within a reasonable time.

2347.8    A certified firearms training instructor license expires two (2) years from the date of issuance.

**2348**    **SAFE STORAGE OF FIREARMS AT A PLACE OF BUSINESS**

2348.1    No registrant shall store or keep any firearm on any premises under his or her control if he or she knows or reasonably should know that a minor or a person prohibited from possessing a firearm under D.C. Official Code § 22-4503 can gain access to the firearm.

2348.2    When not in storage, each registrant shall carry the firearm on his or her person or within such close proximity that he or she can readily retrieve or use it as if he or she carried it on his or her person; provided, that the firearm is entirely hidden from view of the public.

15

USCA Case #15-7057    Document #1570118    Filed: 08/27/2015    Page 33 of 76

2348.3    If the firearm is stored at a place of business, it shall be stored in a gun safe, locked box, or other secure device affixed to the property.

**Section 2399, DEFINITIONS, is amended by adding the following definitions:**

2399    **DEFINITIONS**

**Board** – means the Concealed Pistol Licensing Review Board.

**Bona fide patient relationship** – means a relationship between a psychiatrist or psychologist and a patient in which:

(a)    A complete assessment of the patient's mental health history, current mental health condition, and a current mental health examination has taken place; and

(b)    Where the psychiatrist or psychologist has responsibility for the ongoing care and mental health treatment of the patient.

**Bona fide residence** – means a dwelling place of a person that is documented by two (2) or more of the following:

(a)    Voter registration indicating the address of the dwelling place;

(b)    Motor vehicle registration indicating the address of the dwelling place;

(c)    Motor vehicle driver permit indicating the address of the dwelling place;

(d)    Withholding and payment of individual income taxes indicating the address of the dwelling place including:

(1)    Copies of certified District or state income tax returns; and

(2)    Copies of certified federal tax returns filed with the U.S. Internal Revenue Service;

(e)    Certified deed or lease or rental agreement for real property indicating the address of the dwelling place;

(f)    Cancelled checks or receipts for mortgage or rental payments;

(g)    Utility bills and payment receipts indicating the address of the dwelling place;

16

Addendum 31

USCA Case #15-7057    Document #1570118    Filed: 08/27/2015    Page 34 of 76

      (h)    A copy of a bank account statement in the name of the applicant at the address of the dwelling place;

      (i)    Copies of credit card or brokerage account statements mailed to the applicant at the address of the dwelling place; or

      (j)    Copies of automobile insurance statements mailed to the applicant at the address of the dwelling place.

**Licensee** – means a person issued a license for a concealed pistol.

**Place of business** – means a business that is located in an immovable structure at a fixed location, as documented by a business license or certificate of occupancy, and that is operated and owned entirely, or in substantial part, by a firearm registrant.

**Security Officers Management Branch** – a part of the Police Business Services Division of the Metropolitan Police Department, located at 2000 14th Street, N.W., Washington, D.C. 20009.

**Section 2399, DEFINITIONS, is amended by amending the definition of Chief to read as follows:**

**Chief** – means the Chief of the Metropolitan Police Department or his or her designee.

17

Addendum 32

# OFFICE OF THE CITY ADMINISTRATOR

## NOTICE OF FINAL RULEMAKING

The City Administrator, on behalf of the Mayor, pursuant to the authority under Title IX of the Firearms Regulations Control Act of 1975 (Act), effective January 6, 2015 (D.C. Act 20-564; 62 DCR 866 (January 23, 2015)), and any substantially similar emergency, temporary, or permanent versions of this legislation, and Mayor's Order 2015-036, dated January 9, 2015, hereby gives notice of the adoption of an amendment to Chapter 12 (Concealed Pistol Licensing Review Board) of Title 1 (Mayor and Executive Agencies) of the District of Columbia Municipal Regulations (DCMR).

This rulemaking is necessary to amend procedures for the Concealed Pistol Licensing Review Board (Board) to provide for the conduct of appeals by summary disposition for any denials of an application for a concealed pistol license issued by the Chief of the Metropolitan Police Department (Chief), where those appeals do not require an oral evidentiary hearing because the appeal does not include a dispute concerning a material fact. *See Kourouma v. FERC*, 723 F.3d 274, 278 (D.C. Cir. 2013). Additionally, the rulemaking amends the procedures for calculating time when required acts are done by mailing, and establishes procedures for the Board to stay an appeal and submit any issue to the Chief or the appellant for the Chief or appellant's consideration, documentation, or explanation.

A Notice of Emergency and Proposed Rulemaking was published in the *D.C. Register* at 62 DCR 2095 on February 13, 2015 and a Notice of Second Emergency and Proposed Rulemaking was published in the *D.C. Register* at 62 DCR 5525 on May 1, 2015. No comments were received to the May 1, 2015 notice and no changes have been made to the rulemaking.

The rules were adopted as final on August 10, 2015 and will become effective upon publication in the *D.C. Register*.

**A new Chapter 12, CONCEALED PISTOL LICENSING REVIEW BOARD, is added to Title 1 DCMR, MAYOR AND EXECUTIVE AGENCIES, to read as follows:**

### CHAPTER 12   CONCEALED PISTOL LICENSING REVIEW BOARD

| Sec. | Title |
|------|-------|
| 1200 | GENERAL PROVISIONS |
| 1201 | COMPUTATION OF TIME |
| 1202 | REQUEST FOR APPEAL |
| 1203 | NOTICE OF CONTESTED CASE HEARING |
| 1204 | APPEARANCES AND REPRESENTATION |
| 1205 | SERVICE OF PAPERS |
| 1206 | RECORD OF MEETINGS AND HEARINGS |
| 1207 | MEETINGS AND HEARINGS |
| 1208 | EVIDENCE |
| 1209 | PRE-HEARING CONFERENCES AND DISCOVERY |
| 1210 | SUMMARY DISPOSITION |
| 1211 | [RESERVED] |

1

Addendum 33

| | |
|---|---|
| 1212 | STIPULATIONS |
| 1213 | CONTINUANCES |
| 1214 | NONAPPEARANCE OF PARTIES AND DEFAULTS |
| 1215 | ASSIGNMENT OF BOARD MEMBERS TO HEARING PANELS |
| 1216 | INTERPRETERS |
| 1217 | SPECIFIC RULES OF HEARING PROCEDURE |
| 1218 | BURDEN OF PROOF |
| 1219 | POST-HEARING PROCEDURES |
| 1220 | PROPOSED FINDINGS |
| 1221 | FINAL DECISION |
| 1222 | RECONSIDERATION |
| 1223 | SUBPOENAS AND DEPOSITIONS |
| 1224 | SERVICE OF SUBPOENA OR NOTICE OF DEPOSITION |
| 1225 | TRANSCRIPTS: CITATION AND COST |
| 1226 | SUMMARY SUSPENSION HEARING |
| 1299 | DEFINITIONS |

**1200**     **GENERAL PROVISONS**

1200.1     The purpose of this chapter is to implement Section 908 of the Firearms Regulations Control Act of 1975, effective January 6, 2015 (D.C. Act 20-564; 62 DCR 866 (January 23, 2015)), to establish review and hearing procedures for the Concealed Pistol Licensing Review Board (Board) created by the Act.

1200.2     In any conflict within this chapter between general and specific provisions, the specific provisions shall govern.

1200.3     In any conflict between this chapter and any provision of the Act, the Act shall govern.

1200.4     Any reference to "the Board" shall mean the Concealed Pistol Licensing Review Board created by the Act, or any hearing panel authorized to issue summary dispositions, conduct hearings, and render final decisions by the Act.

1200.5     The Board may, for good cause shown, waive any of the provisions of this chapter if, in the judgment of the Board, the waiver will not prejudice the rights of any party and is not otherwise prohibited by law.

**1201**     **COMPUTATION OF TIME**

1201.1     In computing any period of time prescribed or allowed by these rules or by any applicable statute, the day of the act, event, or default from which the designated period of time begins to run shall not be included.

1201.2     The last day of the computed period shall be included unless it is a Saturday, Sunday, or legal holiday, in which event the period shall run until the end of the next day which is not a Saturday, Sunday, or legal holiday.

2

Addendum 34

1201.3   When the period of time prescribed or allowed is less than seven (7) days, intermediate Saturdays, Sundays, and legal holidays shall be excluded from the computation unless an applicable statute expressly provides otherwise.

1201.4   For the purposes of this chapter, "legal holiday" means the following:

(a)   New Year's Day;

(b)   Martin Luther King Jr.'s Birthday;

(c)   President's Day;

(d)   District of Columbia Emancipation Day;

(e)   Memorial Day;

(f)   Independence Day (4th of July);

(g)   Labor Day;

(h)   Columbus Day;

(i)   Veterans Day;

(j)   Thanksgiving Day;

(k)   Christmas Day; and

(l)   Any other day designated a legal holiday by the President of the United States or the District of Columbia government.

1201.5   When an act is required or allowed to be done at or within a specified time, the Board may at any time in its discretion and for good cause shown, do either of the following:

(a)   With or without motion or notice, order the period enlarged, if a request for enlargement of time is made before the expiration of the period originally prescribed or as extended by a previous order; or

(b)   Upon motion made after the expiration of the specified period, permit the act to be done where the failure to act was the result of excusable neglect.

1201.5   When an act is required to be taken within a specified period of time after the receipt of a notice, pleading, or filing, and the notice, pleading, or filing is sent by United States Mail, commercial carrier, or District of Columbia inter-agency mail, the period of time within which the required act must be taken shall begin five (5) calendar days after the date such mailing is shown to have been sent. A party

3

Addendum 35

may provide proof that a document has been sent by postmark, proof of service, or other evidence.

1201.6    Notwithstanding Subsection 1201.5, an appellant's request for appeal shall be considered timely filed if it is physically received by the Board within fifteen (15) days after the date of the receipt of the notice of the Chief's final action from which the appeal is being requested.

**1202    APPEALS**

1202.1    Within the time periods established by the Act, a person may file an appeal with the Board if the Chief of the Metropolitan Police Department (Chief) has:

   (a)    Denied the person's application or renewal application for a license to carry a concealed pistol in the District pursuant to the Act; or

   (b)    Issued a limitation or revocation of a license to carry a concealed pistol pursuant to the Act.

1202.2    An appeal shall be submitted in writing to the Board at the address contained in any notice of final action of the Chief that was issued to the person. The request for appeal shall be filed within fifteen (15) days after the date of the appellant's receipt of the notice of the Chief's final action from which the appeal is being requested. The request for appeal may be filed by hand delivery, electronic mail, or by U.S. Mail or other delivery service, provided that the request for appeal is received by the Board within fifteen (15) days after the date of the appellant's receipt of the notice of the Chief's final action.

1202.3    The appeal need not follow any specific format, although blank forms may be created and made available by the Board. An appeal should contain the following information:

   (a)    A short description of the Chief's final action being appealed;

   (b)    A description of reasons why the Chief's final action was in error and the relief sought from the Board;

   (c)    A copy of the Chief's final action being appealed;

   (e)    The appellant's full name, address, email address, and telephone and fax numbers, as well as the same information for any attorney representing the appellant in the appeal; and

   (f)    All written materials that the appellant wishes the Board to consider at any hearing.

1202.4    Not later than ten (10) days after receipt of the appeal, the Chairperson of the Board shall:

4

011126

Addendum 36

(a)    Assign a three (3) member panel (Panel) and appoint a presiding member (Presiding Member) to review the appeal or assign the appeal to the full Board;

(b)    Send to the Chief a copy of the appeal, a notice of the names of the three (3) member panel and Presiding Member, if applicable, and a notice to provide the Board with information concerning the final action that is the subject of the appeal; and

(c)    Send a notice to the appellant of receipt of the appeal, the names of the three (3) member panel, and the Presiding Member, if applicable.

1202.5    Not later than ten (10) days after receipt of any information provided by the Chief pursuant to § 1202.4(b), the Board or Panel shall meet to determine if based upon the information submitted by the appellant and Chief the appeal should be resolved through a summary disposition or by a contested case hearing.

1202.6    If the Board or Panel determines that, based upon the materials submitted by the appellant and the Chief, the matters in dispute appear to be appropriate for summary disposition, the Board or Panel shall follow the procedures in § 1210.

1202.7    If the Board or Panel determines that a contested case hearing is appropriate for the resolution of the appeal, then it shall issue a notice of hearing to the appellant and Chief.  The hearing shall be scheduled to take place on a date not less than thirty (30) or more than forty-five (45) days from the date of the notice.

**1203**    **NOTICE OF CONTESTED CASE HEARING**

1203.1    A notice of hearing issued by the Board shall:

(a)    Provide the time, date, and location of the hearing;

(b)    Reference applicable statutes, rules, or regulations;

(c)    State the matters in dispute;

(d)    Advise the parties that they may be represented by counsel or other representative of their choosing;

(e)    Advise the parties that they may present oral testimony through themselves or witnesses and they may seek to have the attendance of a witness compelled by subpoena; provided, that the name of any witness to be presented by a party is submitted to the opposing party not less than ten (10) days prior to the date of the hearing;

(f)    Advise the parties that they may present any relevant written or recorded statements made by the parties and any books, papers, documents, photographs, tangible objects, or other evidence which is in their possession for consideration by the Board; provided, that copies of such

5

Addendum 37

evidence is delivered to the opposing party not less than ten (10) days prior to the date of the hearing;

(g) Advise the parties that any witness may be cross-examined by the opposing party or questioned by any member of the Board;

(h) Advise the parties that, pursuant to the Act, the burden of proof, the burden of production of evidence, and the burden of persuasion is on the appellant;

(i) Advise the parties that they may present rebuttal evidence within any limits established by the Presiding Member;

(j) Advise the parties that they may apply for the services of a qualified interpreter if they or a witness is deaf, hearing impaired, or cannot readily understand or communicate the spoken English language;

(k) Advise the appellant that failure to appear for the hearing will, absent good cause to permit the hearing to be rescheduled, result in the Board entering a dismissal of the appeal and sustaining the final action of the Chief; and

(l) Advise the parties of the date, time, and location or manner of any pre-hearing conference.

**1204    APPEARANCES AND REPRESENTATION**

1204.1    In a proceeding before the Board, any person or party may:

(a) Appear on his or her own behalf; or

(b) Be represented by any other person duly authorized in writing to do so.

1204.2    An authorization provided pursuant to § 1204.1(b) shall be in a manner prescribed by the Board, and shall state either that the individual is an attorney duly licensed to practice law in the District or, if not an attorney duly licensed to practice law in the District of Columbia, that the authorization includes the power of the agent or representative to bind the person in the matter before the Board.  An attorney licensed to practice law by a jurisdiction within the United States may represent a person before the Board.

**1205    SERVICE OF PAPERS**

1205.1    Any paper required to be served upon a party shall be served upon him or her or upon the representative designated by him or her, or on any person otherwise designated by law to receive service of papers.

6

Addendum 38

1205.2    When a party has appeared through an attorney or representative, service shall be made upon the attorney or representative of record.

1205.3    Service may be made by personal delivery, by mail, by email, or as otherwise authorized by law.

1205.4    Service upon a party shall be completed as follows:

(a)    By personal delivery: On handing the paper to the person to be served, or leaving it at his or her office with his or her administrative assistant or time clerk or other person in charge, or, if there is no one in charge, leaving it in a conspicuous place in the office; or, if the office is closed or the person to be served has no office, by leaving it at his or her usual place of residence with some person of suitable age and discretion then residing in that place;

(b)    By email: Upon sending the paper electronically to his or her email address or to the email address of his or her attorney or representative as listed on the written appearance submitted pursuant to § 1204.

(c)    By mail: On depositing the paper in the United States mail, properly stamped and addressed to the address provided by a person on any application for license or that appears on any license issued by the Chief; or

(d)    Upon being served in the specific manner prescribed by an order of the Board made in any proceeding.

1205.5    Proof of service, stating the name and address of the person on whom served and the manner and date of service, shall be shown for each document served.

1205.6    Proof of service may be made by filing with the Board any of the following:

(a)    A written acknowledgment of the party served or his or her attorney of record;

(b)    A certificate of the attorney of record if he or she has made the service; or

(c)    A certificate of the person making the service.

1205.7    For the purposes of this chapter, the phrase "filing with the Board," means the actual or electronic delivery to, and physical or electronic receipt by, the Board of pleadings and other papers.

1205.8    All documents filed with the Board relating to a hearing shall bear a caption which identifies the appellant, the Board's case or reference number, and the title of the pleading or document.

7

Addendum 39

USCA Case #15-7057     Document #1570118     Filed: 08/27/2015     Page 42 of 76

1205.9      All documents filed with the Board shall be printed on letter-sized paper using a font no smaller than twelve (12) point.

**1206      RECORD OF MEETINGS AND HEARINGS**

1206.1      All meetings of the Board whether open or closed shall be recorded by electronic means; provided, that if a recording is not feasible, detailed minutes of the meeting shall be kept.

1206.2      Changes in the official transcript may be made only when they involve errors affecting substance and upon the filing of a motion by a party to correct a transcript with the Board.

1206.3      Copies of any motion to correct a transcript shall be served simultaneously on all opposing parties or legal representatives.

1206.4      Objections to the motion to correct a transcript shall be filed with the Board within five (5) days and served upon the parties.

1206.5      The transcript may be changed by the Board at a public meeting to reflect any corrections.

**1207      MEETINGS AND HEARINGS**

1207.1      Hearings of the Board shall be scheduled as needed for the purpose of receiving evidence and testimony on specific matters.

1207.2      Meetings and hearings shall be held at the time and place the Presiding Member designates.

1207.3      The Presiding Member may conduct all or part of any prehearing conference or decision meeting by telephone, television, video conference, or other electronic means.

1207.4      An evidentiary hearing may be conducted by telephone, television, video conference, or other method only if:

         (a)      All parties consent; or

         (b)      The Presiding Member finds that this method will not impair reliable determination of the credibility of testimony, and each party must be given an opportunity to attend, hear, and be heard at the proceeding as it occurs.

1207.5      A Board member attending a decision meeting may vote even if the member did not attend any or all of the prior meetings or hearings on a matter before the Board; provided that the Board member has read the transcript or listened to or viewed any available electronic recording of the prior meetings or hearings he or she did not attend and the Board member has reviewed the complete record.

8

Addendum 40

USCA Case #15-7057    Document #1570118    Filed: 08/27/2015    Page 43 of 76

| 1208 | **EVIDENCE** |
|---|---|

1208.1    Evidence shall be taken in conformity with Section 10(b) of the District of Columbia Administrative Procedure Act, effective October 21, 1968 (82 Stat. 1204; D.C. Official Code § 2-509(b) (2012 Repl.)).

1208.2    The Presiding Member may permit rebuttal evidence.

1208.3    Any party objecting to the admissibility of evidence shall state the grounds of the objection(s) relied upon.

1208.4    A party may place on the record a statement summarizing any evidence excluded by the Presiding Member.

1208.5    If excluded evidence consists of documentary evidence, a copy of the evidence shall be marked for identification and shall constitute the offer of proof.

1208.6    The Presiding Member, in his or her discretion, may receive into evidence certified copies of documents in place of the originals.

1208.7    If a party is offering materials contained in a book or larger document, that party shall plainly designate the relevant portions.  The remaining material contained in that book or document shall be excluded.

1208.8    No document or other writing shall be accepted for the record after the close of the hearing, except with the consent of the Presiding Member after due notice to the opposing parties and only when the receipt of the document will not unfairly affect the interest of a party.

1208.9    Witnesses may be examined or cross-examined by each member of the Board, or any party or the party's representative.

1208.11    The Presiding Member may admit hearsay evidence during an evidentiary hearing if the Presiding Member determines it will be relevant and material to the resolution of any factual issue in dispute in the matter before the Board.

**1209    PRE-HEARING CONFERENCES AND DISCOVERY**

1209.1    Prior to any scheduled evidentiary hearing, the Presiding Member may require that the appellant and/or his or her attorney or representative appear for a pre-hearing conference with the Chief and/or the Chief's representative to consider the following:

    (a)    Simplification of the issues;

    (b)    The necessity or desirability of amendments to the issues in dispute;

9

Addendum 41

USCA Case #15-7057    Document #1570118    Filed: 08/27/2015    Page 44 of 76

      (c)     The possibility of obtaining the admission of facts and documents which will avoid unnecessary proof;

      (d)     Limitation of the number of witnesses;

      (e)     Other matters which may aid in the disposition of the appeal; and

      (f)     Whether or not the use of any pre-hearing discovery is necessary to a fair adjudication of the appeal, what form the discovery may take, and any schedule for such discovery.

1209.2     The Presiding Member may issue a pre-hearing statement which recites the action taken at the conference, the amendments allowed to the issues in dispute, and the agreements made by the parties as to any of the matters considered which limit the issues for hearing to those issues not disposed of by admissions or agreements of counsel or parties.

1209.3     The Presiding Member may issue a pre-hearing order concerning the timing and manner of discovery and any pretrial motions or orders.

**1210**     **SUMMARY DISPOSITION**

1210.1     The Board may resolve an appeal through a summary disposition when the Board determines that the resolution of the appeal does not include a dispute concerning a material fact.

1210.2     If the Board determines that an appeal may be appropriate for summary disposition, the Board shall send a notice to the applicant that:

      (a)     Contains the materials submitted to the Board by the Chief;

      (b)     Advises the appellant that he or she has ten (10) days from receipt of the notice to submit any written argument to the Board, and serve a copy on the Chief, concerning:

          (1)     The existence of any material fact in dispute that would require an evidentiary hearing; and

          (2)     The appellant's views on why the Chief's exercise of discretion in denying the appellant's application was arbitrary and capricious or was not supported by reliable, probative, and substantial evidence.

1210.2     Within ten (10) days after receipt of a written argument by the appellant, the Chief shall file with the Board, and serve a copy on the appellant, a written response on the issue of the presence of a dispute of material fact, and any rebuttal argument concerning the Chief's exercise of discretion.

10

Addendum 42

1210.3   After receipt of the Chief's response, the Board may at its discretion conduct an informal hearing at which the parties may appear and present oral argument on issues identified by the Board.

1210.4   After receipt of the Chief's response and the conclusion of any informal hearing, the Board shall meet and determine whether or not there is a dispute of material fact and, if they so find, issue a notice of a contested case hearing. If the Board determines there is not a dispute of material fact, then the Board shall issue a decision to sustain the final action of the Chief, reverse the action of the Chief, or modify the decision of the Chief, and also include in the decision the basis for its decision to proceed by summary disposition.

**1211        STAYS OF APPEALS**

1211.1   At any point in an appeal, if the Board determines that it is necessary or appropriate for resolution of the appellant's appeal, the Board may stay any action on the appeal and submit any issue to the Chief or the appellant for the Chief or appellant's consideration, documentation, or explanation.

1211.2   The Chief or appellant ("responding party") shall have ten (10) days after receipt of any submission by the Board pursuant to § 1211.1 to file a response with the Board and serve a copy on the opposing party.

1211.3   Within (10) days after receipt of a response served by the responding party pursuant to § 1210.6 the opposing party shall file a response with the Board and serve a copy on the responding party.

1211.4   After review of the responses filed by the Chief and the appellant the Board shall lift its stay and proceed with consideration of the appeal.

**1211        [RESERVED]**

**1212        STIPULATIONS**

1212.1   Apart from stipulations reached during or as a result of the pre-hearing conference, the parties may stipulate in writing at any stage in the proceeding or orally during the hearing any relevant fact or the contents or authenticity of any document.

1212.2   Post-conference stipulations may be received as evidence.

1212.3   Parties may also stipulate the procedure to be followed in the proceeding and such stipulation may, on motion of all parties, be approved by the Presiding Member and govern the conduct of the proceeding.

**1213        CONTINUANCES**

11

Addendum 43

1213.1    A hearing scheduled to be conducted before the Board shall not be delayed by a continuance unless a motion for the continuance is made not less than five (5) days before the scheduled hearing date.

1213.2    A continuance shall not be granted unless the motion for continuance, in the Board's opinion, sets forth good and sufficient cause for the continuance.

1213.3    Conflicting engagements of counsel or a party's representative, or absence of counsel or a party's representative, shall not be regarded as sufficient cause for continuance unless set forth in a motion filed promptly after notice of the hearing has been given. The employment of new counsel or a new representative shall not be regarded as sufficient cause for continuance unless a motion for continuance is filed promptly after the party becomes aware that the employment of the former counsel or representative will end.

**1214       NONAPPEARANCE OF PARTIES AND DEFAULTS**

1214.1    The Presiding Member may wait a reasonable length of time for a party to appear before beginning a proceeding. After a reasonable time, however, if a party who has received notice has not appeared, the Presiding Member may proceed as follows:

(a)    The Presiding Member may proceed with the hearing, obtain the testimony of those persons present, and, on the basis of the testimony and the record, the Board may issue a decision in the case;

(b)    The Presiding Member, for good cause, may postpone the hearing without taking testimony; or

(c)    In the case of the appellant failing to appear, the Presiding Member, with the concurrence of a majority of the members present, may dismiss the appeal and sustain the decision of the Chief.

**1215       ASSIGNMENT OF BOARD MEMBERS TO HEARING PANELS**

1215.1    Board members shall sit on hearing panels in such order and at such times as the Chairperson of the Board directs.

1215.2    In determining the composition of a hearing Panel, the Chairperson shall:

(a)    Comply with the requirements of Section 908(c) of the Act;

(b)    Assign the Board member designated by the Director of the Department of Behavioral Health, or the public member who qualifies as mental health professional, to any hearing panel at which an issue concerning the mental health of the appellant will be adjudicated; and

12

Addendum 44

USCA Case #15-7057    Document #1570119    Filed: 08/27/2015    Page 47 of 76

(c)     Make hearing assignments in a manner that equitably divides the workload among the Board members.

1215.3     In the sole discretion of the Chairperson, a hearing may be assigned to the full Board.

1215.4     Any decision of a hearing Panel shall be the final decision of the Board with no right of any party to request consideration by the full Board; provided, a party may request reconsideration, rehearing, or re-argument before the Panel pursuant to Section 1222.


**1216**          **INTERPRETERS**

1216.1     The Board shall ascertain before the hearing whether an interpreter will be required, pursuant to the notice issued pursuant to Subsection 1203.1, and shall make appropriate arrangements if an interpreter is required.

1216.2     An oath or affirmation shall be administered to the interpreter orally or in writing.

**1217**          **SPECIFIC RULES OF HEARING PROCEDURE**

1217.1     A party may cross-examine any other party or person, except that the Presiding Member may rule a question out of order when it is irrelevant, immaterial, or unduly repetitious.

1217.2     Witnesses shall be examined and cross-examined orally under oath or affirmation.

1217.3     The order of procedure at the hearing shall be as follows:

(a)     Call to order and opening comments by the Presiding Member;

(b)     Consideration of pending motions and procedural matters;

(d)     The appellant's case;

(e)     The Chief's case; and

(g)     Any rebuttal offered by the appellant.

1217.4     In an evidentiary hearing, no decision or order of the Board shall be made except upon the exclusive record of the proceedings before the Board.

Addendum 45

USCA Case #15-7057    Document #1570182    Filed: 08/27/2015    Page 48 of 76

## 1218    BURDEN OF PROOF

1218.1    In all cases before the Board the appellant has the burden of persuading the Board that the Chief's final action should be reversed or modified based on substantial evidence.

1218.2    The appellant has the burden of producing evidence that (1) the appellant met all the non-discretionary requirements of the Act, and (2) that having met all the non-discretionary requirements of the Act, the Chief's exercise of discretion was not supported by reliable, probative, and substantial evidence.

## 1219    POST-HEARING PROCEDURES

1219.1    The record shall be closed at the end of the hearing, except that the record may be kept open for a stated period for the receipt of specific exhibits, information, or legal briefs, as directed by the Chairperson or Presiding Member.

1219.2    Prior to issuing the final decision, the Board may, on its own motion, reopen the record and require further hearing or briefing on designated issues before the Board.

1219.3    Notice of a further hearing along with a designation of issues shall be forwarded to any party who participated in the earlier proceedings, or his or her legal representative. Notice shall be given at least fourteen (14) days prior to the date set for further hearing.

## 1220    PROPOSED FINDINGS

1220.1    The Board may request parties to submit proposed findings of fact and conclusions of law for the consideration of the Board within the time the Presiding Member may direct.

1220.2    Copies of proposed findings and conclusions shall be served by each party upon the opposing party.

## 1221    FINAL DECISION

1221.1    Within ninety (90) days after the conclusion of a hearing, the Board shall render its decision in writing, setting forth findings of fact and conclusions of law and giving the reasons for its decision.

1221.2    The findings and conclusions in the decision shall be governed by and based upon the evidence adduced at the hearing along with any other evidence in the record.

1221.4    A decision shall be supported by substantial evidence on the record. Pursuant to the substantial evidence rule, courts shall uphold an administrative determination of fact if on the entire record the determination is rationally supportable and could have been arrived at reasonably.

Addendum 46

1221.5    The decision shall sustain, reverse, or modify the final action as requested by the appellant or the Chief.

1221.6    The decision shall include an instruction that the appellant or the Chief may pursue judicial review in the manner provided by the Act.

**1222**     **RECONSIDERATION**

1222.1    Any motion for reconsideration, rehearing, or re-argument of a final decision in a contested case proceeding shall be filed by a party within ten (10) days of the order having become final. The motion shall be served upon the opposing party. The Board shall not receive or consider any motion for reconsideration, rehearing, or re-argument of a final decision in a contested case proceeding that is filed prior to the order having become final.

1222.2    A motion for reconsideration, rehearing, or re-argument shall state specifically the respects in which the final decision is claimed to be erroneous, the grounds of the motion, and the relief sought.

1222.3    Within seven (7) days after a motion has been filed and served, an opposing party may file a response in opposition to or in support of the motion.

1222.4    Neither the filing nor the granting of the motion shall stay a decision unless the Board orders otherwise.

1222.5    A motion for reconsideration, rehearing, or re-argument shall not be a prerequisite to judicial review.

**1223**     **SUBPOENAS AND DEPOSITIONS**

1223.1    The Board may require by subpoena the attendance and testimony of witnesses and the production of documentary evidence.

1223.2    Each subpoena issued by the Board shall include the following:

(a)      The name of the respondent;

(b)      The title of the action;

(c)      A specification of the time allowed for compliance with the subpoena; and

(d)      (1)      A command to the person to whom it is directed to attend and give testimony at a time and place specified in the subpoena; or

15

Addendum 47

(2)     A command to the person to whom it is directed to produce and permit inspection and copying of the books, papers, documents, or tangible things designated in the subpoena.

1223.3     Any party may, by a written motion, request the Board to subpoena particular persons or evidence.

1223.4     A request for subpoena shall state the relevancy, materiality, and scope of the testimony or documentary evidence sought, including, as to documentary evidence, the identification of all documents desired and the facts to be proven by them in sufficient detail to indicate materiality and relevance.

1223.5     Any person to whom a subpoena is directed may, prior to the time specified in the subpoena for compliance, request the Board to quash or modify the subpoena.

1223.6     Any application to quash a subpoena shall be accompanied by a brief statement of the reasons supporting the motion to quash.

1223.7     The Board may quash or modify the subpoena upon a showing of good cause.

1223.8     Upon written notice and for extraordinary circumstances, such as the need to preserve testimony or the need to obtain testimony from a non-resident witness or party, the Board may order testimony to be taken by deposition, before any person who is designated by the Board to administer oaths.  Such deposition may be conducted by video conference or other electronic means approved by the Board.

**1224**     **SERVICE OF SUBPOENA OR NOTICE OF DEPOSITION**

1224.1     A subpoena or notice of deposition may be served by any person who is not a party and is not less than eighteen (18) years of age. Service of a subpoena or notice upon a person named therein shall be made by delivering a copy of the subpoena to the person and, if the person's attendance is commanded, by tendering to that person the fees for one (1) day's attendance and the mileage allowed by law. When the subpoena is issued on behalf of the United States or the District of Columbia or an officer or agency thereof, fees and mileage need not be tendered.

1224.2     Witnesses are entitled to a witness fee of forty dollars ($40) per day and the cost of public transportation to the proceeding or a mileage fee calculated at seventeen cents (17¢) per mile.

1224.3     Service of a subpoena or notice of deposition, and fees, to an individual may be made by any of the following means:

(a)     Handing the subpoena or notice to the person;

(b)     Leaving the subpoena or notice at the person's District government office with the person in charge of the office;

16

Addendum 48

USCA Case #15-7057    Document #1570182    Filed: 08/27/2015    Page 51 of 76

(c)     Leaving the subpoena or notice at the person's dwelling place or usual place of abode with some person of suitable age and discretion then residing in that dwelling place or abode; or

(d)     Mailing the subpoena or notice by registered or certified mail to the person at the person's last known address.

1224.4     When the person to be served is not an individual, a copy of the subpoena or notice of the deposition and fees shall be delivered by one (1) of the following ways:

(a)     Handing the subpoena or notice to a registered agent for service;

(b)     Handing the subpoena or notice to any officer, director, or agent in charge of any office of that person; or

(c)     Mailing the subpoena or notice by registered or certified mail to the representative at his or her last known address.

1224.5     The individual serving a subpoena shall file with the Board a return of service setting forth the facts establishing proper service.

1224.6     The Board may, upon the failure by any person to obey a subpoena served upon that person, apply to the D.C. Superior Court for an order requiring the person to appear before the Board to give testimony, produce evidence, or both. If a person fails to obey the order without an adequate excuse, the Board may apply for an order that the person be held by the court for contempt.

**1225     TRANSCRIPTS: CITATION AND COSTS**

1225.1     All proceedings, except for settlement conferences, shall be recorded. The recording is the official record of what occurred at the proceeding.

1225.2     Any party may obtain a copy of the recording of a hearing at the party's expense.

1225.3     Transcripts of the recording of the proceedings shall be prepared by a qualified reporter or transcriber who shall personally certify that he or she is not a party or counsel to a party or otherwise related to or employed by a party or counsel in the case; that he or she has no material interest in the outcome of the case; and that the transcript represents the testimony and proceedings of the case as recorded.

1225.4     In filings, a party may only rely upon a transcript prepared according to this section.

1225.5     Unless otherwise stipulated by the parties or ordered by Board, if a party cites to a portion of a transcript, the entire transcript of the case must be filed with the Board, and a copy must be served on the opposing party.

17

Addendum 49

1225.6      In any case in which a party files a petition for review in the District of Columbia Court of Appeals, the Board will arrange for the preparation and filing of a transcript without charge only if the Court of Appeals has permitted the petitioner to proceed *in forma pauperis*. In all other cases, the Board will arrange for preparation and filing of a transcript only after the Board receives payment for the cost of preparing the transcript.

**1226**      **SUMMARY SUSPENSION HEARINGS**

1226.1      Any person subject to a summary suspension or summary limitation of a license issued pursuant to the Act shall have the right to request a hearing to the Board, in the manner described in § 1202.3, within seventy-two (72) hours after service of notice of the summary suspension or limitation of the license on the Board.

1226.2      The Board shall hold a hearing within seventy-two (72) hours after receipt of a timely request for hearing.

1226.3      The Board shall notify the Chief and the appellant of the date and location of the hearing as soon as practical.

1226.4      The Chief shall have the burden of production and the burden of persuasion for the summary suspension.

1226.5      A summary evidentiary hearing shall be conducted in a manner that provides opportunity to the licensee to challenge the basis of the Chief's suspension action through the presentation of documentary evidence and testimony, as well as the ability to examine and cross-examine any witness.

1226.6      If the Board sustains the suspension, it shall issue a written decision setting forth its findings of facts and conclusions of law. The decision to sustain the suspension shall expire within thirty (30) days after the decision is issued unless the Chief has served the licensee a notice of intent to revoke pursuant to Section 905 of the Act. If the Chief has served the licensee a notice of intent to revoke pursuant to Section 905 of the Act, the summary suspension shall remain in effect until the Chief revokes the permit or, if a timely request for an appeal of the notice of revocation has been filed with the Board, the conclusion of the notice of revocation appeal.

1226.7      Any decision of the Board to sustain a suspension shall be a temporary decision and not a final action. There is no right of appeal from a decision of the Board to sustain a summary suspension action. An appeal must follow a final decision of the Board to sustain a revocation of the license that was the subject of the summary suspension and the appeal must be based on the facts and conclusions that formed the basis of the final decision.

18

Addendum 50

**1299**      **DEFINITIONS**

1299.1      For the purposes of this chapter, the term:

"**Act**" – means Title IX of the Firearms Regulations Control Act of 1975, effective January 6, 2015 (D.C. Act 20-564; 62 DCR 866 (January 23, 2015)) and any substantially similar emergency, temporary, or permanent versions of this legislation.

"**Board**" – means the Concealed Pistol Licensing Review Board created by the Act, or any hearing panel authorized to conduct hearings and render final decisions by the Act.

"**Chairperson**" – means the Chairperson of the Board.

"**Chief**" – means the Chief of the Metropolitan Police Department or his or her designee.

"**Panel**" – means a hearing panel authorized by the Act and comprised of three (3) members of the Board designated to review an appeal, conduct any evidentiary hearing, and render any temporary or final decision on the appeal.

"**Presiding Member**" – means the Board member presiding over a Panel, or the Chairperson when an appeal is assigned to the full Board.

Addendum 51

one thousand seven hundred and ninety-six, intituled "An act laying duties upon carriages for the conveyance of persons, and repealing the former act for that purpose," as limits the duration of said act, shall be and the same is hereby repealed, and said act is hereby continued in force, without limitation of time.

riages," &c. continued without limitation. May 28, 1796, ch. 37.

APPROVED, February 25, 1801.

———

STATUTE II.

CHAP. XII.—*An Act declaring the consent of Congress to an act of the state of Maryland, passed the twenty-eighth day of December, one thousand seven hundred and ninety-three, for the appointment of a Health Officer.*

Feb. 27, 1801.

[Expired.]

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the consent of Congress be, and is hereby granted and declared, to the operation of an act of the General Assembly of Maryland, passed the twenty-eighth day of December, one thousand seven hundred and ninety-three, intituled "An act to appoint a health officer for the port of Baltimore, in Baltimore county," so far as to enable the state aforesaid to collect a duty of one cent per ton, on all vessels coming into the district of Baltimore from a foreign voyage, for the purposes in said act intended.

SEC. 2. *And be it further enacted,* That this act shall be in force for three years, from the passing thereof, and from thence to the end of the next session of Congress thereafter, and no longer.

Continued by Act of March 1, 1805, ch. 19.

APPROVED, February 27, 1801.

———

STATUTE II.

CHAP. XIII.—*An Act to allow the transportation of goods, wares and merchandise, to and from Philadelphia and Baltimore, by the way of Appoquinimink and Sassafras.*

Feb. 27, 1801.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That any goods, wares and merchandise, which lawfully might be transported to or from the city of Philadelphia and Baltimore, by the way of Elkton, Bohemia or Frenchtown, and Port Penn, Appoquinimink, New Castle, Christiana Bridge, Newport or Wilmington, shall and may lawfully be transported, to and from the city of Philadelphia and Baltimore, by the way of Appoquinimink and Sassafras river, and shall be entitled to all the benefits and advantages, and shall be subject to all the provisions, regulations, limitations and restrictions, existing in the case of goods, wares and merchandise, transported by any of the routes before mentioned.

Goods imported into Baltimore or Philadelphia may be transported by Appoquinimink and Sassafras rivers.

1799, ch. 22.

APPROVED, February 27, 1801.

———

STATUTE II.

CHAP. XV.—*An Act concerning the District of Columbia.(a)*

Feb. 27, 1801.

SECTION 1. *Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the

Laws of Virginia and Mary-

(a) District of Columbia.  The acts for the government and administration of justice in the District of Columbia, are:
1. An act for establishing the temporary and permanent seat of the government of the United States, July 16, 1790, chap. 28.
2. An act supplementary to an act entitled, "An act concerning the District of Columbia," March 3, 1801, chap. 24.
3. An act concerning the District of Columbia, February 27, 1801, chap. 15.
4. An act additional to an act amendatory of an act entitled, "An act concerning the District of Columbia," May 3, 1802, chap. 52.
5. An act to amend the judicial system of the United States, April 29, 1802, chap. 31, sec. 24.
6. An act for the relief of insolvent debtors within the District of Columbia, March 3, 1803, chap. 31.
7. An act to extend the jurisdiction of justices of the peace in the recovery of debts, in the District of Columbia, March 1, 1823, chap. 24.
8. An act respecting the adjournment of the circuit court of the District of Columbia, March 3, 1825.

SCA Case #15-7057     Document #1570118     Filed: 08/27/2015     Page 55 of 7

104                SIXTH CONGRESS.  Sess. II. Ch. 15.  1801.

land continued in force in the district.

laws of the state of Virginia, as they now exist, shall be and continue in force in that part of the *District of Columbia*, which was ceded by the said state to the United States, and by them accepted for the permanent seat of government; and that the laws of the state of Maryland,

---

9. An act altering the times of holding the circuit courts in the District of Columbia, May 20, 1826, chap. 131.

10. An act to establish a criminal court in the District of Columbia, July 7, 1838, chap. 192.

11. An act to restrain the circulation of small notes as a currency in the District of Columbia, and for other purposes, July 7, 1838, chap. 212.

12. Resolution directing the manner in which certain laws of the District of Columbia shall be executed, March 2, 1839.

13. An act for granting possessions, enrolling conveyances and securing the estates of purchasers within the District of Columbia, May 31, 1832, chap. 112.

14. An act changing the times of holding the courts in the District of Columbia, May 31, 1832, chap. 114. Act of February 30, 1839, chap. 30.

The decisions of the courts of the United States upon this and other statutes relating to the District of Columbia, and other questions arising in the district, have been :

The act of Congress of 27 February, 1801, concerning the District of Columbia, directs that writs of error shall be prosecuted in the same manner, under the same regulations, and the same proceedings *shall be had thereon, as is or shall be provided* in case of writs of error on judgments, or appeals upon orders or decrees, rendered in the circuit courts of the United States.  United States *v.* Hooe et al., 1 Cranch, 318 ; 1 Cond. Rep. 322.

By the separation of the District of Columbia from the state of Maryland, the residents in that part of Maryland which became a part of the district ceased to be citizens of the state.  Reilly, Appellant *v.* Lamar et al., 2 Cranch, 344 ; 1 Cond. Rep. 419.

A citizen of the District of Columbia, could not be discharged by the insolvent law of Maryland, out of the district.  *Ibid.*

A citizen of the District of Columbia, cannot maintain an action in the circuit court of the United States, out of the district ; he not being a citizen of a state within the meaning of the provision in the law of the United States, regulating the jurisdiction of the courts of the United States.  Hepburn and Dundas *v.* Ellzey, 2 Cranch, 445 ; 1 Cond. Rep. 444.

A justice of the peace, in the District of Columbia, is an officer of the government of the United States ; and is exempt from militia duty.  Wise *v.* Withers, 3 Cranch, 331 ; 1 Cond. Rep. 552.

Under the sixth and eighth sections of the act of assembly of Virginia, of the 22d of December, 1794, property pledged to the Mutual Assurance Society, &c. continues liable for assessments, on account of the losses insured against, in the hands of a bona fide purchaser, without notice.  The Mutual Assurance Society *v.* Watts' Ex'r, 1 Wheat. 279 ; 3 Cond. Rep. 570.

A mere change of sovereignty produces no change in the state of rights existing in the soil ; and the cession of the District of Columbia to the national government did not affect the lien created by the above act on real property situate in the town of Alexandria ; though the personal character or liability of a member of the society could not be thereby forced on a purchaser of such property.  *Ibid.*

Congress has authority to impose a direct tax on the District of Columbia, in proportion to the census directed to be taken by the constitution.  Loughborough *v.* Blake, 5 Wheat. 317 ; 4 Cond. Rep. 660.

Congress, when legislating for the District of Columbia, under the fifth section of the first article of the constitution, is still the legislature of the Union, and its acts are the laws of the United States.  Cohens *v.* Virginia, 6 Wheat. 264 ; 5 Cond. Rep. 90.

An act of the legislature of Maryland, passed the 19th of December, 1791, entitled " An act concerning the territory of Columbia, and the city of Washington," which, by the 6th section, provides for the holding of lands by " foreigners," is an enabling act ; and applies to those only who could not take lands without the provisions of that law.  It enables a " foreigner" to take in the same manner as if he were a citizen.  Spratt *v.* Spratt, 1 Peters, 343.

A foreigner who becomes a citizen, is no longer a foreigner, within the view of the act.  Thus, after purchase, lands vested in him as a citizen ; not by virtue of the act of the legislature of Maryland, but because of his acquiring the rights of citizenship.  *Ibid.*

Land in the county of Washington, and District of Columbia, purchased by a foreigner, before naturalization, was held by him under the law of Maryland, and might be transmitted to the relations of the purchasers, who were foreigners : and the capacity so to transmit those lands, is given, absolutely, by this act, and is not affected by his becoming a citizen ; but passes to his heirs and relations, precisely as if he had remained a foreigner.  *Ibid.*

The supreme court of the United States has jurisdiction of appeals from the orphans' court, through the circuit court for the county of Washington, by virtue of the act of Congress of February 13, 1801 ; and by the act of Congress subsequently passed, the matter in dispute, exclusive of costs, must exceed the value of one thousand dollars, in order to entitle the party to an appeal.  Nicholls et al. *v.* Hodges' Ex'rs, 1 Peters, 565.

The statute of Elizabeth is in force in the District of Columbia.  Cathcart et al. *v.* Robinson, 5 Peters, 264.

The levy court of Washington county is not entitled to one half of all the fines, penalties, and forfeitures imposed by the circuit court in cases at common law, and under the acts of Congress, as well as the acts of assembly of Maryland, adopted by Congress as the law of the District of Columbia.  Levy Court of Washington *v.* Ringgold, 5 Peters, 451.

The supreme court of the United States has no jurisdiction of causes brought before it, upon a certificate of division of opinion of the judges of the circuit court for the District of Columbia.  The appellate jurisdiction, in respect to that court, extends only to its final judgments and decrees.  Ross *v.* Triplett. 3 Wheat. 600 ; 4 Cond. Rep. 351.

By the insolvent law of Maryland, of January 3, 1800, the chancellor of Maryland could not discharge one who was an inhabitant of the District of Columbia, after the separation from Maryland, unless previous

SCA Case #15-7057    Document #1570118    Filed: 08/27/2015    Page 56 of 7

SIXTH CONGRESS. Sess. II. Ch. 15. 1801. 105

as they now exist, shall be and continue in force in that part of the said district, which was ceded by that state to the United States, and by them accepted as aforesaid.

Sec. 2. *And be it further enacted,* That the said district of Columbia shall be formed into two counties; one county shall contain all that part of said district, which lies on the east side of the river Potomac, together with the islands therein, and shall be called the county of Washington; the other county shall contain all that part of said district, which lies on the west side of said river, and shall be called the county of Alexandria; and the said river in its whole course through said district shall be taken and deemed to all intents and purposes to be within both of said counties.

*[marginal note]* It shall be formed into two counties.

*[marginal note]* Washington county.

*[marginal note]* Alexandria county.

Sec. 3. *Be it further enacted,* That there shall be a court in said district, which shall be called the circuit court of the district of Columbia; and the said court and the judges thereof shall have all the powers by law vested in the circuit courts and the judges of the circuit courts of the United States. Said court shall consist of one chief judge and two assistant judges resident within said district, to hold their respective offices during good behaviour; any two of whom shall constitute a quorum; and each of the said judges shall, before he enter on his office, take the oath or affirmation provided by law to be taken by the

*[marginal note]* Circuit court established in it.

*[marginal note]* To consist of one chief judge and two assistant judges.

---

to that separation he had entitled himself to a discharge by performing all the requisites of the act. Reilly *v.* Lamar et al. 2 Cranch, 344; 1 Cond. Rep. 419.

No appeal or writ of error lies, in a criminal case, from the judgment of the circuit court of the District of Columbia, to the supreme court of the United States: the appellate jurisdiction given by the act of Congress, is confined to civil cases. United States *v.* More, 3 Cranch, 159; 1 Cond. Rep. 480.

There is, in the District of Columbia, no division of powers between the general and the state governments. Congress has the entire control over the district, for every purpose of government: and it is reasonable to suppose that, in organizing a judicial department in the district, all the judicial power, necessary for the purpose of government, would be vested in the courts of justice. Kendall, Postmaster General *v.* The United States, 12 Peters, 524.

The circuit court of the United States, for the District of Columbia, has a right to award a mandamus to the postmaster-general of the United States, requiring him to pass to the credit of certain contractors for conveying the mail of the United States, a sum found to be due to them by the solicitor of the treasury of the United States, the solicitor acting under the special provisions of an act of Congress. *Ibid.*

There can be no doubt, that, in the state of Maryland, a writ of mandamus might be issued to an executive officer, commanding him to perform a ministerial act, required of him by the laws: and if it would lie in that state, there can be no good reason why it should not lie in the District of Columbia, in analogous cases. *Ibid.*

The powers of the supreme court of the United States, and of the circuit courts of the United States, to issue writs of mandamus, granted by the fourteenth section of the judiciary act of 1789, is only for the purpose of bringing the case to a final judgment or decree, so that it may be reviewed. The mandamus does not direct the inferior court how to proceed, but only that it must proceed, according to its own judgment, to a final determination; otherwise it cannot be reviewed in the appellate court. It is different in the circuit court of the District of Columbia, under the adoption of the laws of Maryland, which included the common law. *Ibid.*

The power of the circuit court of the District of Columbia, to exercise the jurisdiction to issue a writ of mandamus to a public officer, to do an act required of him by law, results from the third section of the act of Congress of February 27, 1804; which declares that the court and judges thereof shall have all the powers by law vested in the circuit courts of the United States. The circuit courts referred to, were those established by the act of February 13, 1801. The repeal of that law, fifteen months afterwards, and after that law had gone into operation, under the act of February 27, 1801, could not in any manner affect that law, any further than was provided by the repealing act. *Ibid.*

The circuit courts of the United States, sitting in the states of the Union, have no jurisdiction in a case in which a citizen of the District of Columbia is plaintiff. Westcott's Lessee *v.* Inhabitants, &c. Peters' C. C. R. 45.

The act of Congress of June, 1822, authorizes any person to whom administration has been granted in the states of the United States, to prosecute claims by suits in the District of Columbia, in the same manner as if the same had been granted by proper authority, in the District of Columbia, to such persons. The power is limited by its terms to the institution of suits, and does not authorize suits against an executor or administrator. The effect of this law was to make all debts due by persons in the District of Columbia, not local assets, for which the administrator was bound to account in the courts of the district, but general assets which he had full authority to receive, and for which he was bound to account in the courts of the state from which he derived his letters of administration. Vaughan et al. *v.* Northup et al., 15 Peters' Rep. 1.

The courts of the United States in the District of Columbia, have a like jurisdiction upon personal property, with the courts in England, and in the states of the Union; and in the absence of statutory provisions, in the trial of them they must apply the same common law principle which regulates the mode of bringing such actions, the pleadings and the proof. M'Kenna *v.* Fiske, 17 Peters' Rep. 245.

Addendum 54

SCA Case #15-7057　Document #1570118　Filed: 08/27/2015　Page 57 of 7

106　　　　　　SIXTH CONGRESS. Sess. II. Ch. 15. 1801.

judges of the circuit courts of the United States; and said court shall have power to appoint a clerk of the court in each of said counties, who shall take the oath and give a bond with sureties, in the manner directed for clerks of the district courts in the act to establish the judiciary of the United States.

*Sessions of the court in Washington county,*

SEC. 4. *Be it further enacted,* That said court shall, annually, hold four sessions in each of said counties, to commence as follows, to wit: for the county of Washington, at the city of Washington, on the fourth

*in Alexandria county.*

Mondays of March, June, September and December; for the county of Alexandria, at Alexandria, on the second Mondays of January, April, July, and the first Monday of October.

*Subjects for the cognizance of the court.*

SEC. 5. *Be it further enacted,* That said court shall have cognizance of all crimes and offences committed within said district, and of all cases in law and equity between parties, both or either of which shall be resident or be found within said district, and also of all actions or suits of a civil nature at common law or in equity, in which the United States shall be plaintiffs or complainants; and of all seizures on land or water, and all penalties and forfeitures made, arising or accruing under the laws of the United States.

*Where local actions shall be commenced.*

*No suits to be brought, but against inhabitants or persons found in the district.*

SEC. 6. *Provided, and be it further enacted,* That all local actions shall be commenced in their proper counties, and that no action or suit shall be brought before said court, by any original process against any person, who shall not be an inhabitant of, or found within said district, at the time of serving the writ

*A marshal to be appointed for the district.*

SEC. 7. *Be it further enacted,* That there shall be a marshal for the said district, who shall have the custody of the gaols of said counties, and be accountable for the safe keeping of all prisoners legally committed therein; and he shall be appointed for the same term, shall take the same oath, give a bond with sureties in the same manner, shall have generally, within said district, the same powers, and perform the same duties, as is by law directed and provided in the case of marshals of the United States.

*Writs of error and appeal.*

SEC. 8. *Be it further enacted,* That any final judgment, order or decree in said circuit court, wherein the matter in dispute, exclusive of costs, shall exceed the value of one hundred dollars, may be re-examined and reversed or affirmed in the supreme court of the United States, by writ of error or appeal,(*a*) which shall be prosecuted in the same manner, under the same regulations, and the same proceedings shall be had therein, as is or shall be provided in the case of writs of error on judgments, or appeals upon orders or decrees, rendered in the circuit court of the United States.

*An attorney to be appointed.*

SEC. 9. *Be it further enacted,* That there shall be appointed an attorney of the United States for said district, who shall take the oath and perform all the duties required of the district attornies of the United

*Allowances to the attorney, marshal and clerks.*

States; and the said attorney, marshal and clerks, shall be entitled to receive for their respective services, the same fees, perquisites and emoluments, which are by law allowed respectively to the attorney, marshal and clerk of the United States, for the district of Maryland.

SEC. 10. *Be it further enacted,* That the chief judge, to be appointed by virtue of this act, shall receive an annual salary of two thou-

---

(*a*) By an act entitled, "An act to limit the right of appeal from the circuit court of the United States for the District of Columbia, passed April 2, 1816, chap. 39, it is provided that no cause shall be removed from the circuit court of the District of Columbia, unless the matter in dispute in the cause shall be of the value of one thousand dollars and upwards. But when a party in a cause shall deem himself aggrieved by any final judgment or decree of the said circuit court, where the matter in dispute shall be of the value of $100, and of less value than $1000, on a petition to a justice of the supreme court, if the said justice shall be of opinion that errors in the proceedings of the court involve questions of law of such extensive interest and operation as to render the final judgment of the supreme court desirable, the case may be removed at the discretion of the said justice.

SCA Case #15-7057    Document #1570118    Filed: 08/27/2015    Page 58 of 7

SIXTH CONGRESS. Sess. II. Ch. 15. 1801. 107

sand dollars, and the two assistant judges, of sixteen hundred dollars each, to be paid quarterly, at the treasury of the United States.(a)

SEC. 11. *Be it further enacted*, That there shall be appointed in and for each of the said counties, such number of discreet persons to be justices of the peace, as the President of the United States shall from time to time think expedient, to continue in office five years; and such justices, having taken an oath for the faithful and impartial discharge of the duties of the office, shall, in all matters, civil and criminal, and in whatever relates to the conservation of the peace, have all the powers vested in, and shall perform all the duties required of, justices of the peace, as individual magistrates, by the laws herein before continued in force in those parts of said district, for which they shall have been respectively appointed; and they shall have cognizance in personal demands to the value of twenty dollars, exclusive of costs; which sum they shall not exceed, any law to the contrary notwithstanding; and they shall be entitled to receive for their services the fees allowed for like services by the laws herein before adopted and continued, in the eastern part of said district.

SEC. 12. *And be it further enacted*, That there shall be appointed in and for each of the said counties, a register of wills, and a judge to be called the judge of the orphans' court, who shall each take an oath for the faithful and impartial discharge of the duties of his office; and shall have all the powers, perform all the duties, and receive the like fees, as are exercised, performed, and received, by the registers of wills and judges of the orphans' court, within the state of Maryland; and appeals from the said courts shall be to the circuit court of said district, who shall therein have all the powers of the chancellor of the said state.

SEC. 13. *And be it further enacted*, That in all cases where judgments or decrees have been obtained, or hereafter shall be obtained, on suits now depending in any of the courts of the commonwealth of Virginia, or of the state of Maryland, where the defendant resides or has property within the district of Columbia, it shall be lawful for the plaintiff in such case upon filing an exemplification of the record and proceedings in such suits, with the clerk of the court of the county where the defendant resides, or his property may be found, to sue out writs of execution thereon, returnable to the said court, which shall be proceeded on, in the same manner as if the judgment or decree had originally been obtained in said court.

SEC. 14. *And be it further enacted*, That all actions, suits, process, pleadings, and other proceedings of what nature or kind soever, depending or existing in the courts of Hustings for the towns of Alexandria and Georgetown, shall be, and hereby are continued over to the circuit courts to be holden by virtue of this act, within the district of Columbia, in manner following; that is to say: all such as shall then be depending and undetermined, before the court of Hustings for the town of Alexandria, to the next circuit court hereby directed to be holden in the town of Alexandria; and all such as shall then be depending and undetermined, before the court of Hustings for Georgetown, to the next circuit court hereby directed to be holden in the city of Washington: *Provided nevertheless*, that where the personal demand in such cases, exclusive of costs, does not exceed the value of twenty dollars, the justices of the peace within their respective counties, shall have cognizance hereof.

SEC. 15. *And be it further enacted*, That all writs and processes whatsoever, which shall hereafter issue from the courts hereby established

*Marginal notes:*

Compensation of the judges.

Justices of the peace to be appointed.

Their jurisdiction.

Registers of wills and judges of the orphans' court to be appointed.

Act of May 19, 1828, ch. 59.

How to obtain execution within the district, upon judgments already rendered in courts of Maryland and Virginia.

Suits in the courts of Hustings for Alexandria and Georgetown continued to the circuit court.

Test of writs.

---

(a) An act concerning the District of Columbia, February 27, 1801, chap. 15; an act to increase the salaries of the judges of the circuit court for the District of Columbia, March 3, 1811; an act to increase the salaries of the judges of the circuit court for the District of Columbia, April 20, 1818; an act concerning the orphans' court of Alexandria county, in the District of Columbia, May 19, 1828, chap. 59.

USCA Case #15-7057          Document #1570118          Filed: 08/27/2015          Page 59 of 76

108                    SIXTH CONGRESS.   Sess. II. Ch. 16, 17, 18.   1801.

within the district, shall be tested in the name of the chief judge of the district of Columbia.

<span style="float:left">Saving of the rights of corporations.</span>

SEC. 16. *And be it further enacted,* That nothing in this act contained shall in any wise alter, impeach or impair the rights, granted by or derived from the acts of incorporation of Alexandria and Georgetown, or of any other body corporate or politic, within the said district, except so far as relates to the judicial powers of the corporations of Georgetown and Alexandria.

APPROVED, February 27, 1801.

STATUTE II.

March 2, 1801.

[Obsolete.]

Act of May 7, 1800, ch. 41.

Certain suits revived.

CHAP. XVI.—*An Act supplementary to an act, intituled "An act to divide the territory of the United States northwest of the Ohio, into two separate governments."*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That all suits, and process and proceedings, which, on the third day of July, one thousand eight hundred, were pending in any court of either of the counties, which by the act intituled "An act to divide the territory of the United States northwest of the Ohio, into two separate governments," has been included within the Indiana territory; and that all suits, process and proceedings, which, on the aforesaid third day of July, were pending in the general court of the territory of the United States northwest of the Ohio, in consequence of any writ of removal or order for trial at bar, had been removed from either of the counties now within the limits of the Indiana territory aforesaid, shall be and they are hereby revived and continued; and the same proceedings, before the rendering of final judgment and thereafter, may and shall be had, in the same courts, in all suits and process aforesaid, and in all things concerning the same, as by law might have been had in case the said territory of the United States northwest of the Ohio had remained undivided.

APPROVED, March 2, 1801.

STATUTE II.

March 2, 1801.

[Repealed.]

District of Massac.

CHAP. XVII.—*An Act to add to the district of Massac, on the Ohio, and to discontinue the district of Palmyra in the state of Tennessee, and therein to amend the act, intituled "An act to egulate the collection of duties on imports and tonnage."*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the district of Massac, in addition to the territory it already possesses, shall include all waters, shores, and inlets, now included within the district of Palmyra, and all rivers, waters, shores and inlets, lying within the state of Tennessee.

District of Palmyra.

Section 16, Act of March 2, 1799, repealed.

SEC. 2. *And be it further enacted,* That from and after the thirtieth day of June next, so much of the "Act to regulate the collection of duties on imports and tonnage," as establishes the district of Palmyra in the state of Tennessee, shall be repealed, except as to the recovery and receipts of such duties on goods, wares and merchandise, and on the tonnage of ships or vessels, as shall have accrued, and as to the recovery and distribution of fines, penalties and forfeitures, which shall have been incurred before and on the said day.

APPROVED, March 2, 1801.

STATUTE II.

March 2, 1801.

[Obsolete.]

CHAP. XVIII.—*An Act making appropriations for the Military establishment of the United States, for the year one thousand eight hundred and one.*

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That for defraying the

USCA Case #15-7057    Document #1572118    Filed 08/27/2015    Page 60 of 76

which such offender may be, upon complaint made to him upon oath that such crime or offence hath been committed, or upon receiving a copy of the indictment or other process, if any, which shall have been found or issued in the said District of Columbia against such offender, to issue his warrant to apprehend such offender, and to cause him, at the expense of the United States, to be arrested and imprisoned or bailed (as the case may require) for trial before such court in the District of Columbia, as may have jurisdiction of the offence ; and copies of the process shall be returned as speedily as may be into the clerk's office of such court, together with the recognizance of bail, and the recognizances of the witnesses for their appearance to testify in the case, if any such shall have been taken : which recognizances the said judge may require on pain of imprisonment ; and the said judge, if bail shall not have been given, shall seasonably issue and the marshal of his district shall execute a warrant for the removal of the offender and the witnesses (in case they shall be in prison) or either of them, (as the case may be) to the said District of Columbia : and the expenses of such arrest, commitment, and removal being ascertained and certified by the judge of the district in which the offender shall have been so arrested, shall be charged by the marshal of the said district in his account with the United States, and shall be allowed by the proper accounting officers of the treasury. And in case such recognizance of bail, or the recognizances of the witnesses should be forfeited, *scire facias* and execution may issue upon a certified copy thereof in any judicial district within the jurisdiction of the United States in which the respective recognitors may reside or may be found.

Sec. 40. No man, great nor small, of what condition soever he be, except the ministers of justice in executing the precepts of the courts of justice, or in executing their office, and such as may be in their

*Marginal notes:*

Punishment of Crimes.

Recognizance.

2 E. 3. c. 3.
2 R. 2. c. 13.
20 R. 2. c. 1.
V.L. 30. c. 21.
Punishing affrays.

USCA Case #15-7067   Document #1570118   Filed: 08/27/2015   Page 61 of 76

**Punishment of crimes.**

**No person to come before the court with force and arms; nor to go about armed, to the terror of the country.**

company assisting them, shall be so hardy as to come with force and arms before the justices or judges of any court within the District of Columbia, or either of their ministers of justice, doing their office, on pain to forfeit his armour to the United States, and his body to prison, at the pleasure of such court; nor go, nor ride armed by night nor by day, in fairs, or markets, or in other places, in terror of the country, upon pain of being arrested and committed to prison by any justice or judge on his own view, or proof by others, and of forfeiture of his armour to the United States; but no person shall be imprisoned for any offence against this act, by a longer space of time than one month.

**1. G. 1. st. 2. c. 5. § 1.**
**Riots, &c.**

**Penalty for not dispersing when ordered.**

Sec. 41. If any persons, to the number of twelve or more, being unlawfully, riotously, and tumultuously assembled together, to the disturbance of the public peace in the District of Columbia, and being required or commanded by any one or more justice or justices of the peace, or by the marshal of the said District, or his deputy, or by the mayor, or other chief officer of any city or town corporate in the said District, where such an assembly shall be, by proclamation, to be made in the name of the United States, in the form or to the effect herein after directed, to disperse themselves, and peaceably to depart to their habitations, or to their lawful business, shall, (notwithstanding such proclamation made) to the number of twelve or more, unlawfully, riotously, and tumultuously remain or continue together by the space of one hour after such request or command made by proclamation, as aforesaid, then such continuing together, to the number of twelve or more, after such request or demand made by proclamation, as aforesaid, shall be adjudged a high misdemeanor, and the offenders therein not being slaves, shall, upon conviction, be confined at hard labour, or in solitude, not exceeding ten years, and may be fined not exceeding one thousand dollars.

THE

# REVISED CODE

OF THE

## DISTRICT OF COLUMBIA,

PREPARED

UNDER THE AUTHORITY OF THE ACT OF CONGRESS,

ENTITLED

"AN ACT TO IMPROVE THE LAWS OF THE DISTRICT OF COLUMBIA,
AND TO CODIFY THE SAME," APPROVED MARCH 3, 1855.

WASHINGTON:

A. O. P. NICHOLSON, PUBLIC PRINTER.

1857.

Addendum 60

Digitized by Google

567

Sec. 2. On the trial of every indictment, the party accused shall be allowed to be heard by counsel, and he may defend himself, and he shall have a right to produce witnesses and proofs in his favor, and to be confronted with the witnesses who are produced against him.

Sec. 3. No person indicted for an offence shall be convicted thereof, unless by confession of his guilt in open court, or by admitting the truth of the charge against him by his plea or demurrer, or by the verdict of a jury, accepted and recorded by the court.

Sec. 4. No person shall be held to answer on a second indictment for any offence of which he has been acquitted by the jury, upon the facts and merits, on a former trial; but such acquittal may be pleaded by him in bar of any subsequent prosecution for the same offence, notwithstanding any defect in the form or in the substance of the indictment on which he was acquitted.

Sec. 5. No person who is charged with any offence against the law, shall be punished for such offence, unless he shall have been duly and legally convicted thereof in a court having competent jurisdiction of the cause and of the person.

## CHAPTER 141.

### OF PROCEEDINGS TO PREVENT AND DETECT THE COMMISSION OF CRIMES.

Section
1. Officers authorized to keep the peace.
2. Complaint ; how made.
3. Arrest.
4. Trial ; recognizance to keep the peace.
5. Party ; when to be discharged.
6. Refusing to recognise, to be committed.
7. Party, when discharged ; and complainant, when to pay costs.
8. Payment of costs in other cases.
9. Appeal allowed.
10. On appeal, witnesses to recognise.
11. Proceedings upon an appeal.
12. Recognizance ; when to remain in force.
13. Persons committed for not recognising ; how discharged.
14. Recognizances to be transmitted to the court.

Section
15. Recognizances ; when to be required on view of the court or magistrate.
16. Persons who go armed may be required to find sureties for the peace, &c.
17. Proceedings when person is suspected of selling liquor contrary to law.
18. Surety may surrender his principal, who may recognise anew.

SEARCH WARRANTS.

19. Search warrants for property stolen.
20. In what other cases to be issued.
21. } Warrant; to whom directed, and when
22. }   and how executed.
23. Property seized may be kept as evidence, and then restored to owner or destroyed.

Addendum 61



discharge the appellant, or may require the appellant to enter into a new recognizance, with sufficient sureties, in such sum and for such time as the court shall think proper, and may also make such order in relation to the costs of prosecution as may be deemed just and reasonable.

Sec. 12. If any party appealing shall fail to prosecute his appeal, his recognizance shall remain in full force and effect, as to any breach of the condition, without an affirmation of the judgment or order of the magistrate, and shall also stand as a security for any costs which shall be ordered by the court appealed to, to be paid by the appellant.

Sec. 13. Any person committed for not finding sureties, or refusing to recognise, as required by the court or magistrate, may be discharged by any judge or justice of the peace on giving such security as was required.

Sec. 14. Every recognizance taken pursuant to the foregoing provisions shall be transmitted by the magistrate to the criminal court on or before the first day of the next term, and shall be there filed by the clerk.

Sec. 15. Every person who shall, in the presence of any officer mentioned in the first section of this chapter, make an affray, or threaten to kill or beat another, or to commit any violence or outrage against his person or property, and every person who, in the presence of such officer, shall contend with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognise for keeping the peace, or being of good behavior, for a term not exceeding one year, and in case of refusal may be committed as before directed.

Sec. 16. If any person shall go armed with a dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury or violence to his person, or to his family or property, he may, on complaint of any person having reasonable cause to fear an injury or breach of the peace, be required to find sureties for keeping the peace for a term not exceeding six months, with the right of appealing as before provided.

Sec. 17. If any justice of the peace suspect any person of selling, by retail, wine or ardent spirits, or a mixture thereof, contrary to law, he shall summon the person and such witnesses as he may think

Addendum 62

Digitized by Google

# CORPORATION LAWS

OF THE

# CITY OF WASHINGTON,

TO THE

## End of the Fiftieth Council,

(To June 3d, 1853, inclusive,)

REVISED AND COMPILED

### BY JAMES W. SHEAHAN,

Under the direction of a Joint Committee, consisting of the Mayor and one member of the Board of Aldermen and one member of the Board of Common Council:

AND, ALSO

### THE ACTS OF INCORPORATION AND OTHER ACTS OF CONGRESS, WITH AN APPENDIX,

TO WHICH ARE ADDED

### THE LAWS ENACTED FROM JUNE 3, 1853 TO JUNE 1, 1860,

EMBRACING THE

### 51st, 52ᴅ, 53ᴅ, 54th, 55th, 56th and 57th Councils.

For Laws passed since June 3, 1853, see Index opposite page 396.

Prepared and Published by order of the Corporation of Washington.

### Washington:
PRINTED BY ROBERT A. WATERS.
1853 & 1860.

Addendum 63

Digitized by Google

1857.]                    75

the limits of this city, shall be fifty dollars per annum, to be paid to this Corporation by the insurance company or agent applying for such license before the issuing thereof; and all licenses under this act shall be issued for one year from the date of the application and payment of the tax, and shall be issued by the Register, under the direction of the Mayor, by whom they shall be signed, and countersigned by the Register, and shall express on their face the name of the insurance company authorized by it to establish an agency in this city, where such company is established or located, the kind of insurance it is authorized to effect, and the name of its agent; and such licenses shall confer authority to establish an agency in this city only to the company and the agent therein named: *Provided*, That a license issued to one insurance company or agent may be transferred to another insurance company or agent: but no such transfer shall be valid, or confer any rights or privileges under it until the transfer has been recorded in the Register's office, and endorsed on the license by the Register: *And provided, also*, That no person shall be authorized, under one license, to act as agent for more than one insurance company, and that that one the company named in such license; and any person offending against the provisions of this section shall be liable for every offence to the fine imposed by the first section of this act.

SEC. 3. *And be it enacted*, That all former acts or parts of acts inconsistent with the provisions of this act be, and the same are hereby repealed: *Provided*, That this act shall not be construed so as to affect licenses for insurance agencies already issued until the expiration of the time for which said licenses have been so issued.—(See page 78, Sheahan's Digest.)

*Approved October* 29, 1857.

---

## CHAP. 5.

##### AN ACT to prevent the carrying of dangerous weapons in the City of Washington.

*Be it enacted by the Board of Aldermen and Board of Common Council of the city of Washington*, That it shall not hereafter be lawful for any person or persons to carry or have about their persons any deadly or dangerous weapons, such as dagger, pistol, bowie knife, dirk knife, or dirk, colt, slung shot, or brass or metal knuckles, within the city of Washington; and any person or persons who shall be duly convicted of so carrying or having on their persons any such weapon shall forfeit and pay upon such conviction not less than twenty nor more than fifty dollars, which fines shall be prosecuted and recovered in the same manner as other penalties and forfeitures accruing to the city are sued for and recovered: *Provided*, That the police officers, members of the Auxiliary Guard, and the military, when on duty, shall be exempt from such penalties and forfeitures.

*Approved November* 4, 1857.
      10

Addendum 64

Case 1:15-cv-00162-FJS   Document 9-3   Filed 02/20/15   Page 3 of 3

ase #15-7057       Document #1570118         Filed: 08/27/2015       Page

stationery, and for all other contingent and necessary expenses of each of said schools; and it shall be the duty of the two Boards to make provision by law for the payment of all such salaries and other necessary expenses, out of any money to the credit of the School Fund, and when that shall be insufficient, out of the General Fund; and all such appropriations shall be subject to the order of the Board of Trustees, from time to time, as the same may be required, to be properly disbursed, and for which, receipts shall in every case, be taken and returned to the Register of the Corporation, for settlement.

SEC. 12. *And be it enacted,* That all acts or parts of acts heretofore passed relative to the Public Schools; to organize and establish a Board of Trustees of the Public Schools, the salary of the Secretary and Treasurer, and the duties of the Board, be, and the same are hereby, repealed.—(See page 261, Sheahan's Digest.)

*Approved November* 12, 1858.

---

## CHAP. 11.

AN ACT to prevent the carrying of concealed and dangerous weapons in the City of Washington.

*Be it enacted by the Board of Aldermen and Board of Common Council of the city of Washington,* That it shall not hereafter be lawful for any person or persons, to carry or have concealed about their persons any deadly or dangerous weapons, such as dagger, pistol, bowie-knife, dirk-knife or dirk, colt, slung-shot, or brass or other metal knuckles, within the city of Washington, and any person or persons who shall be duly convicted of so carrying or having concealed about their persons any such weapon, shall forfeit and pay upon such conviction, not less than twenty dollars nor more than fifty dollars: which fines shall be prosecuted and recovered in the same manner as other penalties and forfeitures accruing to the city, are sued for and recovered; *Provided,* That the Police officers and the members of the Auxiliary Guard, when on duty, shall be exempt from such penalties and forfeitures.

*Approved November* 18, 1858.

---

## CHAP. 12.

AN ACT explanatory of the Seventh section of the "Act regulating Auctions in the City of Washington," approved June fourth, eighteen hundred and twenty-nine.

*Be it enacted by the Board of Aldermen and Board of Common Council of the city of Washington,* That the true intent and meaning of the seventh section of the "Act regulating auctions in the city of Washington," is to prevent two or more persons who shall take a joint license as auctioneers, from having different houses of business or es-

Addendum 65

SCA Case #15-7057    Document #1570118    Filed: 08/27/2015    Page 68 of 7

116    FIFTY-SECOND CONGRESS. Sess. I. Chs. 158, 159. 1892.

submitting plan and estimate for its improvement; and the Chief of Engineers shall submit to the Secretary of War the reports of the local and division engineers, with his views thereon and his opinion of the public necessity or convenience to be subserved by the proposed improvement; and all such reports of preliminary examinations with such recommendations as he may see proper to make, shall be transmitted by the Secretary of War to the House of Representatives, and are hereby ordered to be printed when so made.

<div style="float:left; width:20%">Reports to be sent to House of Representatives and printed.</div>

Sec. 8. For preliminary examinations, contingencies, expenses connected with inspection of bridges, the service of notice required in such cases, the examination of bridge sites and reports thereon, and for incidental repairs for which there is no special appropriation for rivers and harbors, one hundred and twenty-five thousand dollars: *Provided*, That no preliminary examination, survey, project, or estimate for new works other than those designated in this act shall be made: *And provided further*, That after the regular or formal report on any examination, survey, project, or work under way or proposed is submitted, no supplemental or additional report or estimate, for the same fiscal year, shall be made unless ordered by a resolution of Congress. The Government shall not be deemed to have entered upon any project for the improvement of any water way or harbor mentioned in this act until funds for the commencement of the proposed work shall have been actually appropriated by law.

*Appropriation for examinations, etc.*

*Provisos.*
*No survey, etc., unless provided for.*

*No supplemental reports, etc., to be made.*

*No project authorized until appropriation made.*

Approved, July 13, 1892.

---

July 13, 1892.

**CHAP. 159.**—An Act to punish the carrying or selling of deadly or dangerous weapons within the District of Columbia, and for other purposes.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That it shall not be lawful for any person or persons within the District of Columbia, to have concealed about their person any deadly or dangerous weapons, such as daggers, air-guns, pistols, bowie-knives, dirk knives or dirks, blackjacks, razors, razor blades, sword canes, slung shot, brass or other metal knuckles.

*District of Columbia.*
*Carrying concealed weapons forbidden.*

Sec. 2. That it shall not be lawful for any person or persons within the District of Columbia to carry openly any such weapons as hereinbefore described with intent to unlawfully use the same, and any person or persons violating either of these sections shall be deemed guilty of a misdemeanor, and upon conviction thereof shall, for the first offense, forfeit and pay a fine or penalty of not less than fifty dollars nor more than five hundred dollars, of which one half shall be paid to any one giving information leading to such conviction, or be imprisoned in the jail of the District of Columbia not exceeding six months, or both such fine and imprisonment, in the discretion of the court: *Provided,* That the officers, non-commissioned officers, and privates of the United States Army, Navy, or Marine Corps, or of any regularly organized Militia Company, police officers, officers guarding prisoners, officials of the United States or the District of Columbia engaged in the execution of the laws for the protection of persons or property, when any of such persons are on duty, shall not be liable for carrying necessary arms for use in performance of their duty: *Provided, further,* that nothing contained in the first or second sections of this act shall be so construed as to prevent any person from keeping or carrying about his place of business, dwelling house, or premises any such dangerous or deadly weapons, or from carrying the same from place of purchase to his dwelling house or place of business or from his dwelling house or place of business to any place where repairing is done, to have the same repaired, and back again: *Provided further,* That nothing contained in the first or second sections of this act shall be so construed as to apply to any person who shall have been granted a written permit to carry such weapon or weapons by any judge of the police court of the District

*Openly carrying weapons with unlawful intent forbidden.*

*Punishment, first offense.*

*Provisos.*
*Exceptions.*

*Lawful use of weapons.*

*Permits.*

FIFTY-SECOND CONGRESS. Sess. I. Ch. 159. 1892.     **117**

of Columbia, and authority is hereby given to any such judge to grant such permit for a period of not more than one month at any one time, upon satisfactory proof to him of the necessity for the granting thereof; and further, upon the filing with such judge of a bond, with sureties to be approved by said judge, by the applicant for such permit, conditioned to the United States in such penal sum as said judge shall require for the keeping of the peace, save in the case of necessary self-defense by such applicant during the continuance of said permit, which bond shall be put in suit by the United States for its benefit upon any breach of such condition.

SEC. 3. That for the second violation of the provisions of either of the preceding sections the person or persons offending shall be proceeded against by indictment in the supreme court of the District of Columbia, and upon conviction thereof shall be imprisoned in the penitentiary for not more than three years. <span style="float:right">*Punishment, second offense.*</span>

SEC. 4. That all such weapons as hereinbefore described which may be taken from any person offending against any of the provisions of this act shall, upon conviction of such person, be disposed of as may be ordered by the judge trying the case, and the record shall show any and all such orders relating thereto as a part of the judgment in the case. <span style="float:right">*Disposition of weapons taken from offenders.*</span>

SEC. 5. That any person or persons who shall, within the District of Columbia, sell, barter, hire, lend or give to any minor under the age of twenty-one years any such weapon as hereinbefore described shall be deemed guilty of a misdemeanor, and shall, upon conviction thereof, pay a fine or penalty of not less than twenty dollars nor more than one hundred dollars, or be imprisoned in the jail of the District of Columbia not more than three months. No person shall engage in or conduct the business of selling, bartering, hiring, lending, or giving any weapon or weapons of the kind hereinbefore named without having previously obtained from the Commissioners of the District of Columbia a special license authorizing the conduct of such business by such person, and the said Commissioners are hereby authorized to grant such license, without fee therefor, upon the filing with them by the applicant therefor of a bond with sureties to be by them approved, conditioned in such penal sum as they shall fix to the United States for the compliance by said applicant with all the provisions of this section; and upon any breach or breaches of said condition said bond shall be put in suit by said United States for its benefit, and said Commissioners may revoke said license. Any person engaging in said business without having previously obtained said special license shall be guilty of a misdemeanor, and upon conviction thereof shall be sentenced to pay a fine of not less than one hundred dollars nor more than five hundred dollars, of which one half shall be paid to the informer, if any, whose information shall lead to the conviction of the person paying said fine. All persons whose business it is to sell, barter, hire, lend or give any such weapon or weapons shall be and they hereby, are, required to keep a written register of the name and residence of every purchaser, barterer, hirer, borrower, or donee of any such weapon or weapons, which register shall be subject to the inspection of the major and superintendent of Metropolitan Police of the District of Columbia, and further to make a weekly report, under oath to said major, and superintendent of all such sales, barterings, hirings, lendings or gifts. And one half of every fine imposed under this section shall be paid to the informer, if any, whose information shall have led to the conviction of the person paying said fine. Any police officer failing to arrest any person guilty in his sight or presence and knowledge of any violation of any section of this act shall be fined not less than fifty nor more than five hundred dollars <span style="float:right">*Punishment for sale of weapons to minors.*<br>*Special license for dealers in weapons.*<br>*Penalty for dealing without license.*<br>*Register of sales, etc.*<br>*Half of fine to informer.*<br>*Penalty for failure to arrest by officers.*</span>

SEC 6. That all acts or parts of acts inconsistent with the provisions of this act be, and the same hereby are, repealed. <span style="float:right">*Repeal.*</span>

Approved, July 13, 1892.

CA Case #15-7057 Document #1570118 Filed: 08/27/2015 Page 70 c

States, for the purpose of having such communication delivered by the post-office establishment of such foreign country to the post-office establishment of the United States and by it delivered to such addressee in the United States, and as a result thereof such communication is delivered by the post-office establishment of such foreign country to the post-office establishment of the United States and by it delivered to the address to which it is directed in the United States, then such person shall be punished in the same manner and to the same extent as provided in section 1 of this Act: *Provided*, That any person violating this section may be prosecuted either in the district into which such letter or other communication was carried by the United States mail for delivery according to the direction thereon, or in which it was caused to be delivered by the United States mail to the person to whom it was addressed.

Approved, July 8, 1932.

*Punishment for.*
*Proviso.*
*Jurisdiction.*

---

[CHAPTER 465.]

### AN ACT

July 8, 1932.
[H. R. 8754.]
[Public, No. 275.]

To control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia, to provide penalties, to prescribe rules of evidence, and for other purposes.

Unauthorized use, etc., of pistols and other dangerous weapons in District of Columbia.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,*

Definitions.

### DEFINITIONS

"Pistol."

SECTION 1. "Pistol," as used in this Act, means any firearm with a barrel less than twelve inches in length.

"Sawed-off shotgun."

"Sawed-off shotgun," as used in this Act, means any shotgun with a barrel less than twenty inches in length.

"Machine gun."

"Machine gun," as used in this Act, means any firearm which shoots automatically or semiautomatically more than twelve shots without reloading.

"Person."

"Person," as used in this Act, includes, individual, firm, association, or corporation.

"Sell" and "purchase," etc.

"Sell" and "purchase" and the various derivatives of such words, as used in this Act, shall be construed to include letting on hire, giving, lending, borrowing, and otherwise transferring.

"Crime of violence."

"Crime of violence" as used in this Act, means any of the following crimes, or an attempt to commit any of the same, namely: Murder, manslaughter, rape, mayhem, maliciously disfiguring another, abduction, kidnaping, burglary, housebreaking, larceny, any assault with intent to kill, commit rape, or robbery, assault with a dangerous weapon, or assault with intent to commit any offense punishable by imprisonment in the penitentiary.

### COMMITTING CRIME WHEN ARMED

Committing crime of violence when armed. Punishment for.

SEC. 2. If any person shall commit a crime of violence in the District of Columbia when armed with or having readily available any pistol or other firearm, he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than five years; upon a second conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for a term of not more than ten years; upon a third conviction for a crime of violence so committed he may, in addition to the punishment provided for the

crime, be punished by imprisonment for a term of not more than fifteen years; upon a fourth or subsequent conviction for a crime of violence so committed he may, in addition to the punishment provided for the crime, be punished by imprisonment for an additional period of not more than thirty years.

### PERSONS FORBIDDEN TO POSSESS CERTAIN FIREARMS

SEC. 3. No person who has been convicted in the District of Columbia or elsewhere of a crime of violence shall own or have in his possession a pistol, within the District of Columbia.

### CARRYING CONCEALED WEAPONS

SEC. 4. No person shall within the District of Columbia carry concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon.

### EXCEPTIONS

SEC. 5. The provisions of the preceding section shall not apply to marshals, sheriffs, prison or jail wardens, or their deputies, policemen or other duly appointed law-enforcement officers, or to members of the Army, Navy, or Marine Corps of the United States or of the National Guard or Organized Reserves when on duty, or to the regularly enrolled members of any organization duly authorized to purchase or receive such weapons from the United States, provided such members are at or are going to or from their places of assembly or target practice, or to officers or employees of the United States duly authorized to carry a concealed pistol, or to any person engaged in the business of manufacturing, repairing, or dealing in firearms, or the agent or representative of any such person having in his possession, using, or carrying a pistol in the usual or ordinary course of such business or to any person while carrying a pistol unloaded and in a secure wrapper from the place of purchase to his home or place of business or to a place of repair or back to his home or place of business or in moving goods from one place of abode or business to another.

Exceptions.
Law enforcement officers.
Army, Navy, or Marine Corps.
National Guard, etc., on duty.
Other organizations.
Carrying to places of assembly, etc.
Manufacturer, etc.

### ISSUE OF LICENSES TO CARRY

SEC. 6. The superintendent of police of the District of Columbia may, upon the application of any person having a bona fide residence or place of business within the District of Columbia or of any person having a bona fide residence or place of business within the United States and a license to carry a pistol concealed upon his person issued by the lawful authorities of any State or subdivision of the United States, issue a license to such person to carry a pistol within the District of Columbia for not more than one year from date of issue, if it appears that the applicant has good reason to fear injury to his person or property or has any other proper reason for carrying a pistol and that he is a suitable person to be so licensed. The license shall be in duplicate, in form to be prescribed by the Commissioners of the District of Columbia and shall bear the name, address, description, photograph, and signature of the licensee and the reason given for desiring a license. The original thereof shall be delivered to the licensee, and the duplicate shall be retained by the superintendent of police of the District of Columbia and preserved in his office for six years.

CA Case #15-7057    Document #1570148    Filed: 08/27/2015    Page 72 o

## SELLING TO MINORS AND OTHERS

Selling to minors or others.

SEC. 7. No person shall within the District of Columbia sell any pistol to a person who he has reasonable cause to believe is not of sound mind, or is a drug addict, or is a person who has been convicted in the District of Columbia or elsewhere of a crime of violence or, except when the relation of parent and child or guardian and ward exists, is under the age of eighteen years.

## TRANSFERS REGULATED

Time, etc., provisions.

SEC. 8. No seller shall within the District of Columbia deliver a pistol to the purchaser thereof until forty-eight hours shall have elapsed from the time of the application for the purchase thereof, except in the case of sales to marshals, sheriffs, prison or jail wardens or their deputies, policemen, or other duly appointed law-enforcement officers, and, when delivered, said pistol shall be securely wrapped and shall be unloaded.   At the time of applying for the purchase

Register to be kept.

of a pistol the purchaser shall sign in duplicate and deliver to the seller a statement containing his full name, address, occupation, color, place of birth, the date and hour of application, the caliber, make, model, and manufacturer's number of the pistol to be purchased and a statement that he has never been convicted in the District of Columbia or elsewhere of a crime of violence.  The seller shall, within six hours after such application, sign and attach his address and deliver one copy to such person or persons as the superintendent of police of the District of Columbia may designate, and shall retain the

Limitation.

other copy for six years.  No machine gun, sawed-off shotgun, or blackjack shall be sold to any person other than the persons designated in section 14 hereof as entitled to possess the same, and then only after permission to make such sale has been obtained from the

Wholesale trade.

superintendent of police of the District of Columbia.  This section shall not apply to sales at wholesale to licensed dealers.

## DEALERS TO BE LICENSED

Dealers to be licensed.

SEC. 9. No retail dealer shall within the District of Columbia sell or expose for sale or have in his possession with intent to sell, any pistol, machine gun, sawed-off shotgun, or blackjack without being licensed as hereinafter provided.  No wholesale dealer shall, within the District of Columbia, sell, or have in his possession with intent to sell, to any person other than a licensed dealer, any pistol, machine gun, sawed-off shotgun, or blackjack.

## DEALERS' LICENSES, BY WHOM GRANTED AND CONDITIONS THEREOF

Conditions, etc., for issuing dealers' licenses.
*Ante*, p. 558.

SEC. 10. The Commissioners of the District of Columbia may, in their discretion, grant licenses and may prescribe the form thereof, effective for not more than one year from date of issue, permitting the licensee to sell pistols, machine guns, sawed-off shotguns, and blackjacks at retail within the District of Columbia subject to the following conditions in addition to those specified in section 9 hereof, for breach of any of which the license shall be subject to forfeiture and the licensee subject to punishment as provided in this Act.

1. The business shall be carried on only in the building designated in the license.

2. The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises where it can be easily read.

SCA Case #15-7057     Document #1570118     Filed: 08/27/2015     Page 73 of 7

3. No pistol shall be sold (a) if the seller has reasonable cause to believe that the purchaser is not of sound mind or is a drug addict or has been convicted in the District of Columbia or elsewhere of a crime of violence or is under the age of eighteen years, and (b) unless the purchaser is personally known to the seller or shall present clear evidence of his identity. No machine gun, sawed-off shotgun, or blackjack shall be sold to any person other than the persons designated in section 14 hereof as entitled to possess the same, and then only after permission to make such sale has been obtained from the superintendent of police of the District of Columbia.

4. A true record shall be made in a book kept for the purpose, the form of which may be prescribed by the Commissioners, of all pistols, machine guns, and sawed-off shotguns in the possession of the licensee, which said record shall contain the date of purchase, the caliber, make, model, and manufacturer's number of the weapon, to which shall be added, when sold, the date of sale. *Records.*

5. A true record in duplicate shall be made of every pistol, machine gun, sawed-off shotgun, and blackjack sold, said record to be made in a book kept for the purpose, the form of which may be prescribed by the Commissioners of the District of Columbia and shall be personally signed by the purchaser and by the person effecting the sale, each in the presence of the other and shall contain the date of sale, the name, address, occupation, color, and place of birth of the purchaser, and, so far as applicable, the caliber, make, model, and manufacturer's number of the weapon, and a statement signed by the purchaser that he has never been convicted in the District of Columbia or elsewhere of a crime of violence. One copy of said record shall, within seven days, be forwarded by mail to the superintendent of police of the District of Columbia and the other copy retained by the seller for six years.

6. No pistol or imitation thereof or placard advertising the sale thereof shall be displayed in any part of said premises where it can readily be seen from the outside. No license to sell at retail shall be granted to anyone except as provided in this section. *Display, etc., forbidden.*

### FALSE INFORMATION FORBIDDEN

SEC. 11. No person, shall, in purchasing a pistol or in applying for a license to carry the same, or in purchasing a machine gun, sawed-off shotgun, or blackjack within the District of Columbia, give false information or offer false evidence of his identity. *False information or evidence forbidden.*

### ALTERATION OF IDENTIFYING MARKS PROHIBITED

SEC. 12. No person shall within the District of Columbia change, alter, remove, or obliterate the name of the maker, model, manufacturer's number, or other mark or identification on any pistol, machine gun, or sawed-off shotgun. Possession of any pistol, machine gun, or sawed-off shotgun upon which any such mark shall have been changed, altered, removed, or obliterated shall be prima facie evidence that the possessor has changed, altered, removed, or obliterated the same within the District of Columbia: *Provided, however,* That nothing contained in this section shall apply to any officer or agent of any of the departments of the United States or the District of Columbia engaged in experimental work. *Alteration, etc., of identification marks, prohibited.* *Proviso. Experimental work.*

### EXCEPTIONS

SEC. 13. This Act shall not apply to toy or antique pistols unsuitable for use as firearms. *Toys, etc., excepted.*

Addendum 71

CA Case #15-7057 72d Document #1570118 Filed: 08/27/2015 Page 74 o

### POSSESSION OF CERTAIN DANGEROUS WEAPONS

*Possession of certain dangerous weapons forbidden.*

SEC. 14. No person shall within the District of Columbia possess any machine gun, sawed-off shotgun, or any instrument or weapon of the kind commonly known as a blackjack, slung shot, sand club, sandbag, or metal knuckles, nor any instrument, attachment, or appliance for causing the firing of any firearm to be silent or intended to lessen or muffle the noise of the firing of any firearms: *Provided, however,* That machine guns, or sawed-off shotguns, and blackjacks may be possessed by the members of the Army, Navy, or Marine Corps of the United States, the National Guard, or Organized Reserves when on duty, the Post Office Department or its employees when on duty, marshals, sheriffs, prison or jail wardens, or their deputies, policemen, or other duly appointed law-enforcement officers, officers or employees of the United States duly authorized to carry such weapons, banking institutions, public carriers who are engaged in the business of transporting mail, money, securities, or other valuables, wholesale dealers and retail dealers licensed under section 10 of this Act.

*Proviso.*
*Exceptions.*

### PENALTIES

*Punishment for violations.*

SEC. 15. Any violation of any provision of this Act for which no penalty is specifically provided shall be punished by a fine of not more than $1,000 or imprisonment for not more than one year, or both.

### CONSTITUTIONALITY

*Invalidity of any provision not to affect remainder.*

SEC. 16. If any part of this Act is for any reason declared void, such invalidity shall not affect the validity of the remaining portions of this Act.

### CERTAIN ACTS REPEALED

*Vol. 31, p. 1328, repealed.*

SEC. 17. The following sections of the Code of Law for the District of Columbia, 1919, namely, sections 855, 856, and 857, and all other Acts or parts of Acts inconsistent herewith, are hereby repealed.

Approved, July 8, 1932.

---

[CHAPTER 466.]

### JOINT RESOLUTION

Making an appropriation to provide transportation to their homes for veterans of the World War temporarily quartered in the District of Columbia.

*July 8, 1932.*
*[H. J. Res. 462.]*
*[Pub. Res., No. 35.]*

*World War veterans. Appropriation for, to provide transportation from District of Columbia to their homes. Post, p. 701.*

*Resolved by the Senate and House of Representatives of the United States of America in Congress assembled,* That to enable the Administrator of Veterans' Affairs, upon the request of any honorably discharged veteran of the World War, temporarily quartered in the District of Columbia, who is desirous of returning to his home, to provide such veteran with railroad transportation thereto prior to July 15, 1932, together with travel subsistence at the rate of 75 cents per day, there is hereby appropriated, out of any money in the Treasury not otherwise appropriated, the sum of $100,000: *Provided,* That all amounts expended under this appropriation in behalf of any veteran shall constitute a lean without interest which, if not repaid to the United States, shall be deducted from any amounts payable to such veteran on his adjusted-service certificate.

*Proviso.*
*Credited as a loan.*

Approved, July 8, 1932.

Addendum 72

586           PUBLIC LAWS—CHS. 295–297—NOV. 4, 8, 1943      [57 STAT.

[CHAPTER 295]

AN ACT

Authorizing the Postmaster General to use post-office clerks and city letter carriers interchangeably.

November 4, 1943
[S. 970]
[Public Law 181]

Postal Service.
Interchange of personnel.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Postmaster General may, in an emergency, when the interest of the Service requires, temporarily assign any post-office clerk to the duties of city delivery carrier or any such carrier to the duties of such clerk and in an emergency, when the interest of the Service requires, may temporarily assign any post-office clerk or city delivery carrier to the duties of a railway postal clerk or any railway postal clerk to the duties of a post-office clerk or city delivery carrier without change of pay-roll status, the compensation of any temporarily assigned employee to be paid from the appropriation made for the work to which he is regularly assigned.

Termination.

SEC. 2. This Act shall terminate on June 30, 1945, or such earlier date as the Congress by concurrent resolution may prescribe.

Approved November 4, 1943.

---

[CHAPTER 296]

AN ACT

To amend the law of the District of Columbia relating to the carrying of concealed weapons.

November 4, 1943
[S. 1151]
[Public Law 182]

District of Columbia.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That section 4 of the Act entitled "An Act to control the possession, sale, transfer, and use of pistols and other dangerous weapons in the District of Columbia, to provide penalties, to prescribe rules of evidence, and for other purposes", approved July 8, 1932 (47 Stat. 651; D. C. Code, 1940 edition, title 22, sec. 3204) be, and it hereby is, amended to read as follows:

Carrying of a pistol or other dangerous weapon.

"SEC. 4. No person shall within the District of Columbia carry either openly or concealed on or about his person, except in his dwelling house or place of business or on other land possessed by him, a pistol, without a license therefor issued as hereinafter provided, or any deadly or dangerous weapon capable of being so concealed."

Approved November 4, 1943.

---

[CHAPTER 297]

AN ACT

To amend the Naval Reserve Act of 1938, as amended.

November 8, 1943
[H. R. 2859]
[Public Law 183]

Naval Reserve Act of 1938, amendments.
56 Stat. 730.
34 U. S. C., Supp.
II, § 857a.
Women's Reserve.
Ranks and ratings.

*Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled,* That the Naval Reserve Act of 1938, as amended, is hereby further amended as follows:

Strike out section 502 and substitute therefor the following:

"SEC. 502. Members of the Women's Reserve may be commissioned or enlisted in such appropriate ranks and ratings, not above the rank of captain, corresponding to those of the Regular Navy, as may be prescribed by the Secretary of the Navy: *Provided,* That there shall not be more than one officer in the grade of captain, exclusive of officers appointed in the Medical Department of the Naval Reserve: *Provided further,* That military authority of officers commissioned under the provisions of this title may be exercised over women of the Reserve only and is limited to the administration of the Women's Reserve."

Grade of captain.

Military authority of officers.

56 Stat. 730.
34 U. S. C., Supp.
II, § 857c.

Strike out section 506 and substitute therefor the following:

## CERTIFICATE OF SERVICE

I certify that on August 27, 2015, electronic copies of this statutory

addendum were served through the Court's ECF system, to:

Alan Gura, Esq.
Gura & Possessky, PLLC
105 Oronoco Street, Suite 305
Alexandria, VA 22314

/s/ Holly M. Johnson
HOLLY M. JOHNSON