**No. 15-7057**

# In the United States Court of Appeals for the District of Columbia Circuit

———————————————

BRIAN WRENN, et al.,
*Plaintiffs-Appellees,*

v.

DISTRICT OF COLUMBIA, et al.,
*Defendants-Appellants.*

———————————————

ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA
CASE NO. 1:15-CV-00162-FJS (THE HONORABLE FREDERICK J. SCULLIN, JR.)

———————————————

## APPENDIX OF HISTORICAL LAWS
## OF *AMICUS CURIAE* EVERYTOWN FOR GUN SAFETY

———————————————

J. ADAM SKAGGS
MARK ANTHONY FRASSETTO
EVERYTOWN FOR GUN SAFETY
P.O. Box 4184
New York, NY 10163

DEEPAK GUPTA
JONATHAN E. TAYLOR
GUPTA WESSLER PLLC
1735 20th Street, NW
Washington, DC 20009
(202) 888-1741
*deepak@guptawessler.com*

*Counsel for Amicus Curiae
Everytown for Gun Safety*

September 3, 2015

# Appendix of Historical Laws

## English statutes and royal proclamations

13 Edw. 1, 102 (1285).................................................................. App. 1

7 Edw. 2, 170 (1313).................................................................. App. 2

Statute of Northampton, 2 Edw. 3, 258, ch. 3 (1328) ........................ App. 3

25 Edw. 3, 320, ch. 2, § 13 (1351) ............................................... App. 4

34 Edw. 3, 364, ch. 1 (1360) ...................................................... App. 10

7 Ric. 2, 35, ch. 13 (1383)......................................................... App. 12

20 Ric. 2, 93, ch. 1 (1396)......................................................... App. 15

*Calendar of the Close Rolls, Henry IV* (Jan. 30, 1409) .................... App. 17

## Early American enactments of the Statute of Northampton

1694 Mass. Laws 12, no. 6 ......................................................... App. 19

1786 Va. Laws 33, ch. 21 ........................................................... App. 22

1792 N.C. Laws 60, ch. 3 ........................................................... App. 23

1795 Mass. Laws 436, ch. 2 ........................................................ App. 27

1801 Tenn. Laws 710, § 6 .......................................................... App. 28

1821 Me. Laws 285, ch. 76, § 1 .................................................. App. 29

1852 Del. Laws 330, ch. 97, § 13................................................. App. 35

1859 N.M. Laws 94, § 2 ............................................................. App. 43

## Other colonial-era American laws

1686 N.J. Laws 289, ch. 9 .......................................................... App. 48

## American good-cause variants of the Statute of Northampton

1836 Mass. Laws 750, § 16 ......................................................... App. 50

1838 Wisc. Laws 381, § 16 ......................................................... App. 54

1841 Me. Laws 709, ch. 169, § 16................................................ App. 55

1846 Mich. Laws 690, ch. 162, § 16............................................. App. 56

1847 Va. Laws 127, ch. 14, § 16.................................................. App. 59

1851 Minn. Laws 526, ch. 112, § 18 ............................................ App. 62

1853 Or. Laws 218, ch. 16, § 17.................................................. App. 66

1861 Pa. Laws 248, 250, § 6 ....................................................... App. 69

1870 W. Va. Laws 702, ch. 153, § 8.............................................. App. 88

1871 Tex. Laws 1322, art. 6512 ....................................................... App. 91

1873 Minn. Laws. 1025, § 17 ......................................................... App. 94

1891 W. Va. Laws 915, ch. 148, § 7 ............................................... App. 95

**Southern "lash and pistol" laws**

1854 Ala. Laws 588, § 3272 ........................................................... App. 97

1861 Ga. Laws 859, § 4413 ........................................................... App. 101

**Post-Civil-War enactments of Northampton-style laws**

1869 N.M. Laws 312, § 1 .............................................................. App. 102

1870 S.C. Laws 403, no. 288, § 4 ................................................. App. 105

1871 Tenn. Laws 81, ch. 90, § 1 ................................................... App. 108

1875 Wyo. Laws 352, ch. 52, § 1 .................................................. App. 109

1881 Ark. Laws 490, ch. 53, § 1907 ............................................. App. 110

1889 Ariz. Laws 16, ch. 13, § 1 .................................................... App. 111

1889 Idaho Laws 23, § 1 .............................................................. App. 112

1901 Mich. Laws 687, § 8 ............................................................ App. 113

1909 Tex. Laws 105 .................................................................... App. 115

**American municipal ordinances**

Nebraska City, Neb., Ordinance no. 7 (1872) ............................... App. 116

Nashville, Tenn., Ordinance ch. 108 (1873) .................................. App. 117

Los Angeles, Cal., Ordinance nos. 35-36 (1878) ........................... App. 119

Salina, Kan., Ordinance no. 268 (1879) ........................................ App. 120

Syracuse, N.Y., Ordinances ch. 27 (1885) .................................... App. 121

Dallas, Tex., Ordinance (1887) .................................................... App. 122

Checotah, Okla., Ordinance no. 11 (1890) .................................... App. 123

New Haven, Conn., Ordinances § 192 (1890) ............................... App. 124

Rawlins, Wyo., Rev. Ordinances art. 7 (1893) .............................. App. 125

Wichita, Kan., Ordinance no. 1641 (1899) ................................... App. 127

McKinney, Tex., Ordinance no. 20 (1899) .................................... App. 129

San Antonio, Tex., Ordinance ch. 10 (1899) ................................. App. 130

*Right of Tithes; and Patronage.*

And if Debate hang in a Spiritual Court for the Right of Tithes, having his Original from the Right of the Patronage, and the Quantity of the same Tithes do pass the fourth part of the value of the Benefice, a Prohibition shall lie.

*Pecuniary Penance.*

Also if a Prelate enjoin Penance pecuniary to any Man for his Sin, if the Money be demanded before Prelates, a Prohibition shall lie.

*Amends for Violence to a Clerk.*

And if any lay violent Hands on a Clerk or Lay-Brother for the (¹) Peace broken, Amends shall be made before the King, and for the Excommunication before a Bishop or Prelate; and if a Corporal Penance be enjoined, which (¹) the Offender will (¹) redeem by giving Money to the Prelate, or to the Party grieved, a Prohibition shall not lie.

*Defamation.*

In Causes of Defamation, Prelates may freely correct the King's Prohibition notwithstanding; first enjoining a Corporal Penance, which, if the Party will redeem, the Prelate may lawfully receive the Money, though the Prohibition be shewed.

      ¹ *King's*    ² *if*    ³ *he may*

Item si contencio sit (¹) de jure decimaȝ, originē hens de jure patronatus, & eaȝ decimaȝ qˀtitas excedat quartam partem ecctie, locū het Regia prohibicio.

Item si Prelatus imponat penā pecuniariam alicui p peċo & petat illam pecuniam, locū het Regia ꝓhibicio, si coram Prelatis pecunia exigat'.

Item si quis manus violentes injecit in clicum, (¹) p (¹) pace Dñi Regis debent emende fieri coram Rege; p excōicacione vero coram (¹) Eꝑo, & si imponat' pena corporalis, quam si reus velit redimĕe dando ꝓlato vel leso pecuniam potest, nec in rhibȝ locus est ꝓhibiċoi.

In diffamacionibȝ [libo⁴] corrigant Prelati regia prohibicione non obstante, [licet porrigat'.⁵]

    ⁴ in Curia Christianitatis    ⁷ vel conversum,
    ⁵ violata   prelato vel   ⁶ libere
    ⁶ prius injungendo penam corporalem, quam si reus redimere velit libere recipiat prelatus pecuniam, licet prohibitio porrigatur.

---

## Statuta Civitatis London.

## STATUTES FOR THE CITY OF LONDON.

THESE be the Articles which Our Lord the King doth command to be well kept in his City of London, for the keeping and maintenance of his Peace.

*None shall walk the Streets armed, after Curfew, &c.*

First, Whereas many Evils, as Murders, Robberies, and Manslaughters have been committed heretofore in the City by Night and by Day, and People have been beaten and evil intreated, and divers other Mischances have befallen against his Peace; It is enjoined that none be so hardy to be found going or wandering about the Streets of the City, after Curfew tolled at St. Martins le Grand, with Sword or Buckler, or other Arms for doing Mischief, or whereof evil suspicion might arise; nor any in any other Manner, unless he be a great Man or other lawful Person of good repute, or their certain Messenger, having their Warrants to go from one to another, with Lanthern in hand. And if any be found going about contrary to the Form aforesaid, unless he have cause to come late into the City, he shall be taken by the Keepers of the Peace and be put into the place of confinement appointed for such Offenders; and on the morrow he shall be brought and presented before the Warden, or the Mayor of the City for the Time being, and before the Aldermen; and according as they shall find that he hath offended, and as the Custom is, he shall be punished.

*Taverns shall not be open after Curfew, &c.*

And Whereas such Offenders as aforesaid going about by Night, do commonly resort and have their Meetings and hold their evil talk in Taverns more than elsewhere, and there do seek for shelter, lying in wait, and watching their time to do Mischief; It is enjoined that none do keep a Tavern open for Wine or Ale, after the tolling of the aforesaid Curfew; but they shall keep their Tavern shut after that hour, and none therein drinking or resorting; Neither shall any Man admit others in his House except in common Taverns, for whom he will not be answerable unto the King's Peace. And if any Taverner be found doing the contrary, the first time he shall be put in pledge by his Tavern drinking cup, or by other good pledge there found, and be amerced forty-pence; and if he be found a second time offending, he shall be amerced half a mark; and the third time Ten Shillings; and the fourth time he shall pay the whole Penalty double, that is to say, Twenty Shillings: And the fifth time he shall be forejudged of his Trade for ever.

*Ex magno Rot. Stat. in Turr. Lond. m. 42, in Cedula.*

CES sont les Articles le queus nře Seigñ' le Rey Comaunde q̃ bien seient gardez en sa Citee de Loundres, p' sa pes garder & enȝ̃rtenir. Primeremēt p' ceo q̃ multz des mals com des murdres, Robberyes, e homycides ont este fetz ca en arrere deinz la Citee de nuyt e de Jour, e gentz Batues e mal tretes, e aut's div̄ses aventures de mal avenuz encontre sa pes; Defendu est q̃ nul seit si hardi estre trove alaunt ne wacraunt p my les Ruwes de la Citee, aꝑs Coeverfu psone a Seint Martyn le g̃nt, a Espeye ne a Bokuyler ne a autre arme p' mal fere, ne dount mal supecion poet avenir; ne en autre maň̃e nule, sil ne seit g̃nt Seign' ou altre prodome de bone conysaunce, ou lour Pleyn message q̃ de els serra garaunty q̃ vount li un a lautre p conduyte de Lumere. E si nul seit trove alant encontre la fourme avandite, ou q̃ il seit encheson de tart venir en vyle, seit p̃s p les Gardeyns de la pes e seit nys en Le Tonel, la quel p' tiels meffesours est assigne, e Lendeneyn seit amene e ꝓsente devant le Gardeyn ou le Meyre de la Citee q̃ p' tens serra, e devant les Aldermans, e solong ceo q̃ il troveront q̃l eit trespasse e a ceo seit coustumers seit puny. E pur ceo q̃ tiels meffesours avauntditz, alant nutauntre, communalment ont lour Recet e lour Covynes, e font lour mauveyses purparlances en taverne plus q̃ aillours, e illockes querent umbrage attendanz e geitant lor tens de mal fere; Defendu est q̃ nul ne tiegne taverne overte de Vyn ne de Cerveyse aꝑs le Coeverfu avantdit psone; mes q̃ il tiegne sa taverne clove aꝑs cel hourte, e nul leinz Bevaunt ne recettant ne en sa mesoun huȝs de Communes tavernes nul ne recette p' quy il ne voillit estre respuignant a la pes le Rey. E si nul tav̄ner seit trove q̃ autrement faceo, primerement seit degage p soen Hanap de la Tav̄ne, ou p altre gage leinz trove, e seit aměcye a quaraunte deniers; E si altre fiez seit trove q̃ ceo faceo, seit aměcye a demy mark e a la tierce fiez a dys souz; e a la quarte fiez paie tute la peyne double, cest asav̄ vynt souz. E la quynte fiez seit forsjuge del mestier p' tutz jourz.

*That none be molested for the Return of Piers de Gaveston.*

THE King to All who these Letters shall see or hear, Greeting. Know Ye that in our Parliament at Westminster, the Sunday next after the Feast of St. Matthew the Apostle, in the Seventh year of our Reign, for certain and expedient Causes, It was provided and granted by Us, and by the Archbishops, Bishops, Abbots, Priors, Earls, and Barons, and all the Commonalty of our Realm, there being at our command, with one accord assented and agreed, That no one, of what estate or condition soever he be, in any time to come be challenged, taken, nor imprisoned, hindered, molested, nor aggrieved, nor into judgement brought by Us, nor by any other at our Suit, nor at the Suit of any other whomsoever, in our Court nor elsewhere, by reason of the return of Monsieur Piers de Gaveston into England, nor of any Aid, Maintenance, Adherance, nor of any Counsel nor Receipt of him, nor Alliance made with him, or for him, by writing or otherwise, nor by reason of tarrying in his Company or Service in any time passed heretofore. And We will that this Grant and Accord be affirmed and established in all its Points, and that each of them be holden and kept for ever. In Witness whereof, &c. Given as above.

*Ex Rot. Pat. 7 Ed. II. P. 1. m. 14. in Cedula.* * De eodem negotio.*

LE Roy, a tuz ceux, qi cestes lfes vront, ou orront Saluta. Sachetz, qen nře plement, cŏmence a Westmoŭster le dimeynch ꝓchein apš la feste de Seint Matheu le Apostle, en lan de nře regne septime, p ꝑteines & covenables enchesons, p'veu est & gňte p no°, & p - - Ercevesqis, Evesqis, Abbes, Priours, Contes & Barons, & tote la cŏmunalte de nře roiaume, illoeqis a nře maundement, uniement assentuz & acorde ; qi nul de quel estat, ou condicion qil soit, en nul temps avenir, soit chalange, pš, ne enpšonetz, empeschez, molestez, ne grevez, nen jugement menez, p no°, ne p autre a nře suite, ne a suite Jautri, qi qil soit, en nře Court ne nulle ꝑt aillors, p encheson du revenir de monř Piers de Gavastoñ en Engleře, ne de eide, meintenaunce, aerdaunce, ne de conseil, ne de recette de li, ne dalliaunce fait a li, ou por li, p escrit ou autrement, ne p' encheson de demorer en sa compaignie, ne en švice, en nul temps passe cea en arrieres. E volons qi ce gňt & acord soit ferm & estable en touz ses pointz, & chescun de eux soit tenu & garde a ꝑpetuite. En tesmoigň, &c. Doñ ut supš.

* This follows on the Patent Roll immediately after the Article given in the Note in page 169. In the Old Printed Copies this Article is intituled "Ne quis occasionetur pro reditu Petri de Gavestoñ." It begins " Edwarde par la grace de dieu &c. as toutz ceux" and ends " Done a Westñ le vii. jour de Novembre lan de nostre reigne septime."

## Statutū sup' Aportam'to Armor'.*
### À STATUTE forbidding Bearing of ARMOUR.

*The King forbids the coming armed to Parliament, &c.*

THE King [to the Justices of his Bench,'] sendeth Greeting. Whereas of late before certain Persons deputed to treat upon sundry Debates had between Us and certain great Men of our Realm, amongst other things it was accorded, That in our next Parliament after, Provision [shall '] be made by Us, and the common assent of the Prelates, Earls, and Barons, that in all Parliaments, [Treatises,²] and other Assemblies, which should be made in the Realm of England [for ever,³] that every Man shall come without all Force and (⁴) Armour, well and peaceably, to the Honour of Us, and the Peace of Us and our Realm; and now in our [next⁵] Parliament at Westminster, after the said Treatise, the Prelates, Earls, Barons, and the Commonalty of our Realm, there assembled [to take⁶] Advice of this Business, have said, that to Us it belongeth, and our part (⁷) is, through our Royal Seigniory, straitly to defend [Force⁸] of Armour, and all other Force against our Peace, at all Times when it shall please Us, and to punish them which shall do contrary, according to [our ⁹] Laws and Usages of our Realm; and (¹⁰) hereunto they are bound to aid Us as their Sovereign Lord at all Seasons, when need shall be: We command you, that ye cause these Things to be read afore you in the said [Bench,"] and there to be enrolled. Given at Westminster, the thirtieth day of October.

And It was commanded to Sir Roger Brabazon and his Fellows, Justices assigned to hold the King's Pleas before him, that these things they do cause to be read before them, and there to be enrolled.

And It was commanded to the Justices of the Bench, that these things they do cause to be read before them in the said Bench, and there to be enrolled.

¹ *to the Lieutenant, the Treasurer and the Barons of the Exchequer,*
² should ⁶ Treaties ⁸ at all times,
³ without ⁷ Old Translations omit. ⁹ taking
⁴ it ⁸ wearing ¹⁰ the
¹¹ that ¹² Exchequer

*Ex Rot. Pat. 7 Ed. II. P. 1. m. 14. in Cedula.*

LE Roy, au Lieutenant, le Tresorier, & as Barons del Eschekier, Salutz. Come nadguaires devant ꝑteines psones deputees a trenter s' ascun debatz, euz, entre no° & ascun de gňtz de nře Roiaume, entre autres choses feust acordez, qi en nře pchein plement apš, p'veaunce se feist p no° & le cŏmun assentement des Prelatz, Contes, & Barons, qi en touz plementz, tretementz, & autres assembletz, qi se ferront en roiaume Dengleře a tuz jours, qi home veigne santz tote force & saunz armes, bien & peisiblement al honur de no°, & a la pays de no° & de nře roiaume; et ja en nře [pchein'] plement a Westñ apš le dirz tretiz, les Prelatz, Contes, Barons, & la Cŏmunalte de nře Roiaume illoeqis assemblez, eu avisement de ceste bosoigne, no° aient dit qi a no° apent, & devons p nře roiale Seignurie, defendre [portement'] darmes, & tote autre force contre nře pais, a totes les foiz qi nous plerra, & punir ceux qi contre vendront, selonc les leys & les usages de nře roiaume ; E qi a ce sont il tenuz de no° aider cŏme leur bon Seignř, totes les foiz qi mester ěra ; Vo° mandons qi cestes choses facetz lire devant vo° en le dit Eschekier, & illoeqis enrouler. Doñ a Westñ le xxx. jour Doctobř.

¶ Et maunde est a Sire Rogier le Brabanzon & ses compaignons, Justices a les pletz le Roy devant lui tenir assignetz, qi cestes choses facent lire devant eux, & illoeis enrouler.

¶ Et maunde est as Justices du Bank, qi cestes choses facent lire devant eux, en dit Bank, & illoeis enrouler.

' Old Printed Copies omit. ' fortement *Old Printed Copies.*

* This Title is in the Margin of the Roll. In the Old Printed Copies this is intituled " Statutum de Defensione portandi Arma ;" and is ascribed to the Seventh Year of King Edward I. The English Title is from the Old Translations.

*27 Ed. I. c. 3.*

Grandfather to our Lord the King that now is, wherein is contained, that Justices assigned to take Assises, if they be Laymen, shall make Deliverance ; and if the one be a Clerk, and the other a Layman, that the Lay Judge, with another of the Country associate to him, shall make Deliverance : Wherefore it is enacted, That such ['Justices'] shall not be made against the Form of the said Statute ; and that the Assises, Attaints, and Certifications be taken before the Justices commonly assigned, which should be good Men and lawful, having Knowledge of the Law, and none other, after the Form of another Statute made in the Time of the said [King Edward the First ;'] and that the Oyers and Terminers shall not be granted but before Justices of the one Bench or the other, or the Justices Errants, and that for great [hurt,] or horrible Trespasses, and of the King's special Grace, after the Form of the Statute thereof ordained in Time of the said Grandfather, and none otherwise.

*Justices of Assise and Gaol-delivery.*

*Oyers and Terminers.*

*III. Riding or going armed in Affray of the Peace.*

ITEM, It is enacted, That no Man great nor small, of what Condition soever he be, except the King's Servants in his presence, and his Ministers in executing of the King's Precepts, or of their Office, and such as be in their Company assisting them, and also [upon a Cry made for Arms to keep the Peace, and the same in such places where such Acts happen,'] be so hardy to come before the King's Justices, or other of the King's Ministers doing their office, with force and arms, nor bring no force in affray of the peace, nor to go nor ride armed by night nor by day, in Fairs, Markets, nor in the presence of the Justices or other Ministers, nor in no part elsewhere, upon pain to forfeit their Armour to the King, and their Bodies to Prison at the King's pleasure. And that the King's Justices in their presence, Sheriffs, and other Ministers (') in their Bailiwicks, Lords of Franchises, and their Bailiffs in the same, and Mayors and Bailiffs of Cities and Boroughs, within the same' Cities and Boroughs, and Borough-Holders, Constables, and Wardens of the Peace within their Wards, shall have Power to execute this Act. And that the Justices assigned, at their coming down into the Country, shall have Power to enquire how such Officers and Lords have exercised their Offices in this Case, and to punish them whom they find that have not done that which pertained to their Office.

*IV. The Statute of Lincoln, 9 Edw. II. concerning Sheriffs, &c. confirmed.*

ITEM, Because the Peace cannot be well kept without good Ministers, as Sheriffs, Bailiffs, and Hundredors, which ought to do Execution as well of the King's Privities as of other Things touching our Lord the King and his People ; It is ordained and established, That the Statute made in the time of King Edward, Father to the King that now is, at Lincoln, containing that Sheriffs, Hundreders, and Bailiffs shall be of such People as have Lands in the same Shires or Bailiwicks, shall be observed in all Points after the Form thereof ; and that Sheriffs and Bailiffs of Fee shall cause their Counties and Bailiwicks to be kept by such as have Lands therein.

*V. The Statute Westminster the Second, 13 Edw. I. chapter 39, concerning the Delivery of Writs to the Sheriff, confirmed.*

ITEM, Where it was ordained by the Statute of Westminster the Second, that they which will deliver their Writs to the Sheriff, shall deliver them in the full County, or in the Rere County, and that the Sheriff or under Sheriff shall thereupon make a Bill ; It is accorded and established, that at what Time or Place in the County a Man doth deliver any Writ to the Sheriff or to the Under-Sheriff, that they shall receive the same Writs, and make a Bill, after the form contained in the same Statute, without taking any Thing therefore ; and if they refuse to make a Bill, others that be present shall set to their Seals ; and if the Sheriff or Under-Sheriff do not return the said Writs, they shall be punished after the form contained in the same Statute ; and also the Justices of Assises shall have power to enquire thereof at every Man's Complaint, and to award Damages, as having respect to the Delay, and to the loss and peril that might happen

' *Commission*
· upon a *Proclamation of Droit of Acomi in time of Peace, and that in Places where such Deeds are to be done,*—See Lib. Rub. Scac. Westm. fo 132 b. a Writ reciting a Grant of K. Richard I. "q⁴ Torrecosita sint in Angl in c. placita : Inħ Sarħ & Wiltoħ : Inħ Warrewich & Kenelingworth : Inħ Stanford & Warneford : Inħ Bristolæ & Mireloħ : Inħ Ilfæ & Tykelilħ. Ita q⁴ pax fœ nre nū infringer, n' potestas Justiciaris minorabit' Nec de l: resiis nris depnū inferet.''
    ' *Grandfather*
    ' *of the King*

nr̃e Seign⁻ le Roi qore est, en quele est contenuz q̃ les Justices as assises p̃ndre assignez ails soient lais, facent les deliv̄ances ; et si lun soit clerc, & lautre lais, q̃ le dit lais, associe a lui un autre du pais, facent la deliv̄ance des gaols ; p qoi acorde est & establi, q̃ tiels Justiceries ne soient mes g̃ntees countre la forme du dit estatut, & q̃ les assises, atteintes, & c̃tifications soient p̃ses devant les Justices cõmunement assignez, q̃ soient bones gentz & loialx & conissantz de la lei, & nemie autres ; solonc la forme dun autre statut fait en temps meisme le ael ; et q̃ les oiers & t̃miners ne soient grantees forsq, ---- devant les Justices de lun Baunk & de lautre, ou les Justices errantz ; & ce p' led & orrible trespas, & de lespeciale g̃ce le Roi, solonc forme de statut de ce ordene en temps meisme le ael ; & nemie autrement.

Ensement acorde est & establi, q̃ nul, g̃nt ne petit de quele condicion qil soit, sauve les ṽantz le Roi en la p̃sence le Roi, & les Ministres le Roi, enfesantz execucion des mandementz le Roi, ou de lour office, & ceux qi sont en lour compaignies, eidantz as ditz ministres, & auxint au cri de fait darmes de pees, & ce en licux ou tielx faitz se ferront, soit si hardi de venir devant les Justices le Roi, ou autres Ministres le Roi enfesant lour office, a force & armes ; ne force mesner en affrai de la pees, ne de chivaucher ne daler arme, ne de nuit ne de jour, en faires, marchees, nen p̃sence des Justices, ne dautres Ministres, ne nule part aillours, sur peine de pdre lour armures au Roi & de lour corps a la prisone a la volunte le Roi. Et q̃ Justices le Roi en lour p̃sences, viscountes & autres Ministres le Roi en lour baillies, seigñs des fraunchises & lour baillifs en yceles, & Meire & Baillifs des Citees & Burghs deinz meismes les Citees & Burghs, Burghaldres, conestables, & gardeins de la pees deinz lour gardes, eient poair affaire execucion de cest acord. Et q̃ Justices assignez, a lour venu en pais, eient poair denquere coment tielx Ministres & seigñs ont use lour office en ce, & de punir ceux qils trov̄unt, qi nount mie fait ce q̃ a lour office appent.

Et p'ce q̃ la pees ne poet mie estre bien garde sauntz bons ministres, come Viscountes, Baillifs, & Hundreders qi deivent faire execucion, auxibien des p'vetez le Roi come dautres choses tochantes le Roi & son poeple, acorde est & establi q̃ lestatut fait en temps le Roi Edward, piere le Roi qore est, a Nicole, contenant q̃ Viscontes, Hundreders & Baillifs soient des gentz eantz t̃res en meismes les Countez, ou baillies, soit garde en touz pointz solonc la forme dycel, & auxint q̃ les Viscountes & Baillifs de fee, facent garder meismes lour Countez & Baillies p gentz eantz t̃res en yceles.

Ensement la ou ordine est, p statut de Westmonst̃ le secund, q̃ ceux q̃ liṽer volent lour briefs as viscountes, les liṽent en plein Counte, ou en rerecounte, & q̃ visconte ou southvisconte facent sur ce bille ; acorde est & establi q̃ a quele heure ou a queu lieu deinz le Counte home livre a viscountes, ou a southvisconntes, briefs, qils les resceivent & facent bille en la forme contenue en le dit estatut, & ce sanz rien p̃ndre ; et sils refusent de faire bille, mettent autres lour sealx qi ṽront p̃sentz ; et si le Visconte ou le Southviscounte ne retorne mie les briefs, soient puniz solonc la forme contenue en le dit estatut ; & jadumeins eient les Justices as assises p̃ndre assignez poair denquer de ce a chescuny pleinte & de agarder damages, eant regard au delai, & a les ptes & pils qi p'ront avenir.

𝔖tatutū apud 𝔚estm̄ in 𝔓'liamento in festo 𝔖'ci 𝔥illarii anno regni 𝔚egis 𝔈. t'cii vicesimo q̄nto tento, f'cm.

A STATUTE made at WESTMINSTER ;
In the Parliament holden in the Feast of Saint Hilary ;
In the Twenty-fifth Year of the Reign of K. EDWARD the Third.

*Ex magno Rot. Stat. in Turr. Lond. m.* 16.

AU plement somonz a Westm̄, en la feste de Seint Hiller lan du regne nr̄e Seign' le Roi Edward Dengleťre vintieme quint, & de France douzieme, nr̄e ť' le Roi del assent des Prelatz, Ducs, Countes, Barons, & de tout la comunalte de son Roialme Dengleťre, au dit plement somons, al hon' de Dieu & de Seinte Eglise, & en amendement de son dit Roialme, ad ordeine & establi les choses soutzescriptes.

En p'mes, p'ce q̄ tresg'untz & tresout'geoues damages & grevances sont faites au poeple p les pn̄o's & p'veo's des vitailles p les hosteux nr̄e ť' le Roi, ma dame la Roigne, & de lo' enfantz, Si est acorde & assentuz en le dit plement, q̄ les pn̄o's & p'veio's des bledz p' les ditz hosteux les p̄ignent p mesure rase, selonc ceo q̄ hōme use pmy le Roialme. Et q̄ touz bledz, feyns, litere & bestaill, & touz aut's vitailles & choses quecq̄nges, queles sont aprendre p' meismes les hosteux, soient p̄sez a q̄ v̄roie value, p les Constables & aut's bons gentz des villes ou tieles prises se feront, sanz ce q̄ p manaces, ou duresces soient les preisours chacez a mettre autre pris q̄ lour p̄ement ne voet, & come curt cōement en les p̄scheins marchees : et q̄ entre les Purveours et ceux des queux les biens p̄ront prises, en la p̄sence des Conestables & preisours, soient tailles tantost faites, saunz ceo q̄ les gentz des queux les biens p̄ront prises soient aillours traitz ou t'vaillez ; & meismes les tailles ensealez des seals les p̄nours des choses isint prises, p les queles tailles gre soit fait as ceux des queux les choses p̄ront issint prises : et si nul pnour ou p̄veour p' les ditz hosteux face p autre mañe, soit meintenant arestu p la villee ou la prise p̄ra faite, et mesne a la p̄scheine gaole, et si de ceo soit atteint, soit la fait de lui come de laron, si la quantite des biens le demand ; selonc ceo q̄un un estatut fait en temps meisme nr̄e ť' le Roi lan de son regne quint, & en un autre estatut fait en temps laid nr̄e Seign' le Roi a' tieles prises, est contenuz plus au plein : et q̄ desore soit contenuz es cōmissions des tieux P'veours et pnours, lentent et la peine contenuz en cest estatut : et q̄ nule cōmission soit faite forsq̄ soulement souz les g'nt ou prive sealx le Roi ; ne q̄ nul hōme soit tenuz de obeier a autre cōmission nen autre mañe q̄ nest dit en avant ; et q̄ meisme lestatut tiegne lieu en touz pointz dev's chescun pnour & p'veour, de chescune mañe des vitailles en chescune ptie du Roialme de quele condition q̄l soit.

Auxint p'ceo q̄ div̄ses opinions ount este einz ces heures qeu cas, q̄nt il avient doit estre dit treson, & en quel cas noun, le Roi a la requeste des Seign's & de la Cōe, ad fait declariasement q̄ ensuit, Cest assavoir ;

AT the Parliament summoned at Westminster in the Feast of St. Hilary, the Year of the Reign of our Lord King Edward the Third [after the Conquest,] of England the Five and twentieth, and of France the Twelfth ; our said Lord the King, by the assent of the Prelates, Earls, Barons, and of all the Commonalty of his Realm of England summoned to the Parliament, to the honour of God and Holy Church, and in Amendment of his said Realm. hath ordained and established the Things underwritten.

FIRST, Forasmuch as great and outrageous damage and grievance hath been done to the People by the Takers and Purveyors of Victuals, for the Houses of our Sovereign Lord the King, the Queen, and their Children ; It is accorded and assented in the said Parliament, That the Takers (') of Corn for the said Houses shall take the same by Measure striked according as it is used through the Land. And that such Corn, Hay, Litter, Bestall and all other Victuals and Things, which shall be taken for the said Houses, shall be [taken '] by the very Value, by the Constable and other good People of the Towns where such Taking shall be made, without that that the Praisers by Menace or Duress shall be driven to set any other Price than their Gift will, and as commonly runneth in the next Markets. And that betwixt the Purveyors and them whose Goods shall be taken in the presence of the Constables and Praisers, Tallies be made incontinently, without that that the People whose Goods shall be taken, shall be drawn or travelled elsewhere, and the same Tallies sealed with the Seals of the Takers of the Things so taken, by which Tallies Gree shall be made to them whose Goods shall be so taken ; and if any Purveyor or Taker for the said Houses, do in any other Manner, he shall be [maintenant '] arrested by the Town where the Taking shall be made, and brought to the next Gaol ; and if he be thereof attainted, it shall be done of him as of a Thief, if the Quantity of the Goods the same require ; according as in a Statute made in the Time of our Sovereign Lord the King that now is, the Fifth Year of his Reign, and in another Statute made in the Time of the King's Grandfather upon such Takings, is contained more at the full : and that from henceforth in the Commissions of such Takers and Purveyors, the Intent and Pain limited in this Statute shall be contained : and that no Commission be made, but only under the King's great Seal or Privy Seal ; nor that no Man be bound to obey [any such Commissions, other or in what Manner '] than is aforesaid ; and that the same Statute take place in all Points against every Taker and Purveyor of every Manner of Victual in every part of the Realm, of what Condition soever he be.

ITEM, Whereas divers Opinions have been before this Time [in what Case Treason shall be said, and in what not ;'] the King, at the Request of the Lords and of the Commons, hath made a Declaration in the Manner as hereafter followeth, that is to say ; When a Man

I.
Corn shall
be taken by
Purveyors
by Measure
striked

Things taken
by Purveyors
shall be
appraised
at the very
Value.

Tallies of
the Goods
taken.

Punishment
for undue
Purveyance
as under Stat.
5 E. III. c. 2.

Purveyors'
Commissions
shall be under
the Great or
Privy Seal.

II.
Declaration
what Offences
shall be
adjudged
Treason.

' *and Purveyors*
' prayzed                ' immediately
' any other Commyssions, or in other manner *MS. Tr.* 2.
' what case should be adjudged Treason, and what not ;

Compassing the Death of the King, Queen, or their eldest Son ; violating the Queen, or the King's eldest Daughter unmarried, or his eldest Son's Wife ; levying War ; adhering to the King's Enemies ; counterfeiting the King's Seals, or Money ; importing counterfeit Money ; killing the Chancellor, Treasurer, or Judges in Execution of their Duty.

The King shall have the Forfeiture of all the Offenders' Lands.

Petit Treason.
Forfeiture of the Lands to the Lords.

New Questions of Treasons shall be decided in Parliament.

Certain Offences not Treason.

In such Cases already happened, the Chief Lords shall have the Escheats.

Saving the King's Year and Waste.

Scire facias to Terre-tenants, &c.

III. Challenge of an Indictor upon an Inquest.

doth compass or imagine the Death of our Lord the King, or of our Lady his [Queen '] or of their eldest Son and Heir ; or if a Man do violate the King's [Companion,'] or the King's eldest Daughter unmarried, or the Wife (') the King's eldest Son and Heir ; or if a Man do levy War against our Lord the King in his Realm, or be adherent to the King's Enemies in his Realm, giving to them Aid and Comfort in the Realm, or elsewhere, and thereof be [probably '] attainted of open Deed by [the People '] of their Condition : And if a Man counterfeit the King's Great or Privy Seal, or his Money ; and if a Man bring false Money into this Realm, counterfeit to the Money of England, as the Money called Lushburgh, or other, like to the said Money of England, knowing the Money to be false, to merchandise or make Payment in Deceit of our said Lord the King and of his People ; and if a Man slea the Chancellor, Treasurer, or the King's Justices of the one Bench or the other, Justices in Eyre, or Justices of Assise, and all other Justices assigned to hear and determine, being in their Places, doing their Offices: And it is to be understood, that in the Cases above rehearsed, [that '] ought to be judged Treason which extends to our Lord the King, and his Royal Majesty : And of such Treason the Forfeiture of the Escheats pertaineth to our Sovereign Lord, as well of the Lands and Tenements holden of other, as of himself : And moreover there is another manner of Treason, that is to say, when a Servant slayeth his Master, or a Wife her Husband, or when a Man secular or Religious slayeth his Prelate, to whom he oweth Faith and Obedience ; and [of such Treason the Escheats ought to pertain '] to every Lord of his own Fee : And because that many other like Cases of Treason may happen in Time to come, which a Man cannot think nor declare at this present Time ; It is accorded, That if any other Case, supposed Treason, which is not above specified, doth happen (') before any Justices, the Justices shall tarry without any going to Judgement of the Treason, till the [Cause '] be shewed [and declared before the King and his Parliament,'] whether it ought to be judged Treason or [other '] Felony. And if percase any Man of this Realm ride armed [covertly "] or secretly with Men of Arms against any other, to slay him, or rob him, or take him, or retain him till he hath made Fine or Ransom for to have his Deliverance, it is not the Mind of the King nor his Council, that in such Case it shall be judged Treason, but shall be judged Felony or Trespass, according to the Laws of the Land of old Time used, and according as the Case requireth. And if in such Case, or other like, before this Time any Justices have judged Treason, and for this Cause the Lands and Tenements have come into the King's hands as Forfeit, the chief Lords of the Fee shall have the Escheats of the Tenements holden of them, whether that the same Tenements be in the King's hands, or in others, by Gift or in other Manner ; Saving always to our Lord the King the Year, and the Waste, and the Forfeitures of Chattels, which pertain to him in the Cases above named ; and that [the Writs "] of Scire facias be granted in such Case against the Land-tenants, without other Original, and without allowing [any Protection "] in the said Suit ; and that of the Lands which be in the King's hands, Writs be granted to the Sheriffs of the Counties where the Lands be, to deliver them out of the King's hands without Delay.

ITEM, It is accorded, That no Indictor shall be put in Inquests upon Deliverance of the Indictees of Felonies or Trespass, if he be challenged for that same cause by him which is so indicted.

' Wife     ' of
' proveably MS. Tr. 2.     ' People     '' it
' such Manner of Treason giveth Forfeiture of Escheats
' of new, MS. Tr. 2.     ' Case
' before the King in his Parliament, and it be declared
'' else     '' openly
'' Writs     '' the Protection of our Lord the King

---

q'nt hõme fait compasser ou ymaginer la mort nře Seign' le Roi, ma dame sa compaigne, ou de lour fitz primer & heir ; ou si hõme violast la compaigne le Roi, ou leisnesce fill le Roi nient marie, ou la compaigne leisne fitz & heir du Roi ; & si hõme leve de guerre contre nře dit Seign' le Roi en son Roialme, ou soit aherdant as enemys nře Seign' le Roi en le Roialme, donant a eux eid ou confort en son Roialme ou p aillours, & de ceo pvablement soit atteint de oŭt faite p gentz de lour condicion : et si hõme contreface [les g'nt ou prive sealx le Roi,'] ou sa monoie, et si hõme apport faus monoie en ceste Roialme contrefaite a la monoie Denglre, sicome la monoie appelle [Lucynburgh'] ou autre semblable a la dite monoie Denglre, sachant la monoie estre faus, p' marchander, ou paiement faire en deceit nře dit Seign' le Roi & son poeple ; et si hõme tuast Chanceller, Tresorer, ou Justice nře Seign' le Roi del un Baunk ou del autre, Justice en Eir & des assises & toutes aut's Justices assignez a oier & t'miner esteiantz en lours places en fesantz lours offices : et tiel a entendre q'n les cases suisnomez doit estre ajugge treson [q̃ sestent'] a nře Seign' le Roi & a sa roial majeste ; et de tiele maũe de treson la forfait'e des eschetes apptient a nře Seign' le Roi, si bien des t'res & teñz tenuz des aut's, come de lui meismes : et oves̃q, ceo il yad autre maũe de treson, cest assavoir q'nt un s̃vant tue son meistre, une fẽme q̃ tue son baron, q'nt hõme seculer ou de religion tue son Prelat, a qi il doit foi & obedience ; & tiele maũe de treson donn forfait'e des eschetes a chescun Seign' de son fee ppre : et p' ceo q̃ plusurs aut's cases de semblable treson p'ront escheer en temps a venir, queux hõme ne p'ra penser ne declarer en p̃sent, assentu est q̃ si autre cas suppose treson q̃ nest especifie p amount aviegne de novel devant ascunes Justices, demoerge la Justice saunz aler au juggement de treson, tanq, p devant nře Seign' le Roi [en'] son plement soit le cas monstree & declarre le quel ceo doit estre ajugge treson ou autre felonie. Et si p cas ascun hõme de cest Roialme chivach arme descovert ou secrement od gentz armees contre ascun autre, p' lui tuer ou derober, ou p' lui p̃ndre & retenir tanqil face fyn ou raunceon p' sa deliṽrance avoir, nest pas lentent du Roi & de son conseil q̃ en tiel cas soit ajugge treson, einz soit ajugge felonie ou t'spas solonc la lei de la t're auncienement usee, & solonc ceo q̃ le cas demand : et si en tieu cas, ou autre semblable devant ces heures, ascune Justice eit ajugge treson, & p celle cause les t'res & teñz soient devenuz en la main nře Seign' le Roi come forfaita, eient les chiefs Seign's de fee lours eschetes des teñz de eux tenuz, le quel q̃ les teñz soient en la main nře Seign' le Roi, ou en la main des aut's, p donn ou en autre maũe ; Sauvant totefoitz a nře Seign' le Roi lan & le wast, & aut's forfait'es des chateux q̃ a lui attenent en les cases suisnomez ; et q̃ briefs de Scire fac̃ ṽs les t'res tenantz soient g'ntez en tieu cas, saunz autre originale & saunz allower la pteccion nře Seign' le Roi en la dite seute ; et q̃ de les t'res q̃ sont en la main le Roi, soit g'nte brief as vicontes des Countees la ou les t'res s̃ront de oster la main le Roi saunz oustre delaie.

Auxint acorde est, q̃ nul enditour soit mys en enquest s' la deliṽrance del endite de t'spas ou de felonie, sil soit chalange p tiele cause p celui qest endite.

' le grant seal le Roi, Rot. Parl. 25 E.3. P. II. nu. vij. (17.)
' Lusseburgh Rot. Parl.     ' q̃ ce estent Rot. Parl.
' & Rot. Parl.

Estre ceo, come contenu soit en la g̃nt Chr̃e des
franchises Dengletr̃e q̃ nul soit pris ne emprisone, ne
ouste de son frank teñ ne de ses franchises ne de
ses franches custumes, sil ne soit p lei de la r̃re ;
Acorde est, assentu & establi, q̃ nul desoz soit pris
p peticion ou suggestion faite a ñre Seign' le Roi ou
a son conseill, sil ne soit p enditement ou p̃sente-
ment des bones & loialx du visnee ou tiele fait se
face, & en due mañe, ou p̃ces fait sur brief origi-
nal a la cõe lei ; ne q̃ nul soit ouste de ses fran-
chises ne de son frãkteñ sil ne soit mesne duement
en respons, & forjugge dyceles p voie de lei ; et si
rien soit fait al encontr̃ soit redresse & tenue p' nul.

Ensemement acorde est & establi, q̃ executours des
executours eient accion des dettes, acomptes, & des
biens emportez du primer testatour, & execucion des
estatutz marchantz & reconisances faites en court
de record au p̃mer Testatour, en meisme la mañe
come le p̃mer testatour aṽoit sil f̃uꝛst en vie, auxi-
bien daccions de temps passe, come de temps avenir,
en toutz cases ou juggementz ne sont pas renduz
ungore entre tieux executours des executours ; mes
q̃ les juggementz a contr̃ire en temps passe, estoient
en lour force ; et q̃ meismes les executours des execu-
tours respoignent a auꝛs de tant come ils aṽeront
recovr̃ des biens du p̃mer testatour, sicome les p̃mers
executours ferroient sils feussent en pleine vie.

Auxint acorde est & assentu, q̃ nul pnour de buche
ou de maerisme al oeps ñre Seign' le Roi, p' oṽeyns
ne p' auꝛs choses faire, coupe, ne abate les arbres de
nully cressantz entour ou dedeinz sa mansion ; et si nul
face au contr̃ire face gre a la ptie du damage au treble,
& eit la prisone dun an, & soit forjugge de son office.

Estre ceo est acorde & establi, q̃ nul Forester ne
Gardein des forestes, ou des chaces, ne nul autre
Ministre, ne face ne coille puꝛe ne nul autre coill-
lect des vitailles ne de nul autre chose, p colour de
son office contre nully volunte, deinz lour baillie
ne dehors, forspris ce qest due dauncien droit.

Auxint acorde est & assentu, q̃ nul hõme soit arte
de trover gentz darmes, hobellers narchers auꝛs q̃
ceux q̃ tiegnent p tiele s̃vice, sil ne soit de cõe assent
& g̃nt fait en plement.    Ensement p'ce q̃ tresgrant
damage & desceit est fait au poeple, p tant q̃ plus's
marchantz usent dachater & poiser leines & auꝛs mar-
chandises p une pois qest appelle Aunsell, acorde est
& establi, q̃ celle pois appelle Aunsell entre achatour
et vendour soit del tout oste, & q̃ chescun vend &
achatte p balances, issint q̃ les balances soient owels &
les leines & auꝛs marchandises owelment poisez p droit
pois ; et q̃ le sak de leine ne poise q̃ vint & sys peres, &
chescun pere poise quatorze livres, & q̃ lestater de la
balance ne encline ne a lune ptie, ne al autre, & q̃ le
pois soit acordant al estandard del Escheker : et si nul
achatour face al encontre, soit grevousement puny si
bien a la seute de ptie come a la seute ñre Seign' le Roi.

Auxint come contenue soit en la g̃nde Chr̃e q̃ une
mesure soit usee p̃tout Engletr̃e, la quele chartre
nad mie este tenu bien en ceo point avant ces heures ;
si est acorde & assentu, q̃ touz les mesures cest asa-
voir bussel, di bussel, & peck, galon, potel & quart,
p toute Engletr̃e deinz franchise & dehors soient acor-
dauntz al estandard ñre Seign' le Roi ; & contiegne
le quartꝛ oet busselx p lestandard & nient plus ; & soit
chescune mesure de blee rase saunz comble, sauvez
de mensuꝛ  les rentes & fermes des Seign's queles soient mesurez
& pond.  p tiele mesure come eles soleient avant ces heures :

ITEM, Whereas it is contained in the Great Charter
of the Franchises of England, that none shall be impri-
soned nor put out of his Freehold, nor of his Franchises
nor free Custom, unless it be by the Law of the Land ;
It is accorded assented, and stablished, That from hence-
forth none shall be taken by Petition or Suggestion
made to our Lord the King, or to his Council, unless
it be by Indictment or Presentment of good and lawful
People of the same neighbourhood where such Deeds
be done, in due Manner, or by Process made by Writ
original at the Common Law ; nor that none be out of
his Franchises, nor of his Freeholds, unless he be duly
brought into answer, and forejudged of the same by
the Course of the Law ; and if any thing be done
against the same, it shall be redressed and holden
for none.

IV.
None shall
be taken upon
Suggestion
without
lawful
Presentment ;

nor disfran-
chised, but
by Course
of Law.

ITEM, It is accorded and stablished, That Executors
of Executors shall have Actions of Debts, Accompts,
and of Goods carried away of the first Testators, and
Execution of Statutes Merchants and Recognizances
made in Court of Record to the first Testator, in the
same Manner as the first Testator should have had if
he were in Life, as well of Actions of the Time past, as
of the Time to come, in all Cases where Judgement
is not yet given betwixt such Executors (') ; but that
the Judgements given to the contrary to this Article in
Times past shall stand in their Force ; and that the
same Executors of Executors shall answer to other of
as much as they have recovered of the Goods of the
first Testators, as the first Executors should do if they
were in full Life.

V.
Executors
of Executors
shall have the
same Rights
and Duties
as the first
Executors.

ITEM, It is accorded and stablished, That no Taker
of Wood nor of Timber to the King's Use for work,
nor for to make other thing, shall cut or cast down the
Trees of any Man growing about or within his House ;
and if any do to the contrary, he shall make Gree to
the Party of his Treble Damage, and to have one year's
Prison and to be forejudged of his office.

VI.
Purveyors
shall not take
Trees about
the Mansion.

MOREOVER It is accorded and stablished, That no
Forester, nor Keeper of Forest or Chase, nor any other
Minister, shall make or gather Sustenance, nor other
Gathering of Victuals, nor other Thing, by colour of
their Office, against any Man's Will, within their Baili-
wick nor without, but that which is due of old Right.

VII.
Keepers of
Forests shall
not exact
Future, &c.
by colour of
Office.

ITEM, It is accorded and assented, That no Man
shall be constrained to find Men of Arms, Hoblers, nor
Archers, other than those which hold by such Services,
if it be not by common Assent and Grant made in
Parliament.

VIII.
No finding
of Men of
Arms, but
by Tenure,
or Grant in
Parliament.

ITEM, Whereas great Damage and Deceit is done to
the People, for that divers Merchants use to buy and
weigh Wools and other Merchandises, by a Weight
which is called Auncel ; It is accorded and established,
That this Weight called Auncel betwixt Buyers and
Sellers, shall be wholly put out ; and that every Person
do sell and buy by the Balance, so that the Balance be
even, and the Wools and other Merchandizes evenly
weighed by right Weight ; so that the Sack of Wool
weigh no more but xxvi Stones, and every Stone to
weigh xiv l. and that the Beam of the Balance do not
bow more to the one part than to the other ; and that
the Weight be according to the Standard of the Ex-
chequer : And if any Buyer do the contrary, he shall
be grievously punished, as well at the Suit of the Party,
as at the Suit of our Lord the King.

IX.
Auncel
Weight
abolished.

Goods shall
be weighed
by Balance.

ITEM, Whereas it is contained in the Great Charter,
that one Measure shall be throughout England, which
Charter hath not been well kept and holden in this
point in Times past ; It is accorded and assented, That
all the Measures, that is to say, Bushels, Half-bushels,
Peck, Gallon, Pottle, and Quart, throughout England,
within Franchises and without, shall be according to
the King's Standard ; and the Quarter shall contain
Eight Bushels by the Standard, and no more ; and every
Measure of Corn shall be striken without Heap, saving
the Rents and Ferms of Lords, which shall be measured
by such Measures as they were wont in Times past.

X.
Magna Carta,
chapter 25.
respecting
Measures
revived and
enforced.

' of Executors

*Justices shall inquire of and punish the Offenders.*

*Saving of Franchises.*

And the Purveyors of the King, of the Queen, and all other, shall make their Purveyances by the same Measure striked in the same manner; and at all Times that shall be needful, [and '] our Lord the King shall assign certain Justices in every County to inquire, hear, and determine upon the Points aforesaid, and upon the same to do Punishment according to the Trespass, as well at the Party's Suit as at the King's; so always, that all Manner of Franchises be saved to the Lords in all Points without Blemish to be made in any Manner.

*XI.*
*Aid to make the King's Son Knight, or to marry his Daughter.*

ITEM, It is assented, That reasonable Aid to make the King's eldest Son Knight, and to marry his eldest Daughter, shall be demanded and levied after the Form of the Statute thereof made, and not in other Manner, that is to say, of every (') Fee holden of the King without mean, Twenty Shillings and no more, and of every twenty pound of Land holden of the King without mean in Socage twenty Shillings and no more.

*XII.*
*None shall take Profit by Exchange of Gold or Silver.*

ITEM, It is accorded, That it shall be lawful for every Man to exchange Gold for Silver, [or Silver for Gold, or for Gold and Silver,'] so that no Man hold (the same as exchanged,'] nor take no Profit for making such Exchange, upon Pain of Forfeiture of the Money so exchanged; except the King's Exchangers, which take Profit of such Exchange, according to the Ordinance afore made.

*XIII.*
*The current Coin shall not be impaired.*

ITEM, It is accorded, That the Money of Gold and Silver which now runneth, shall not be impaired in Weight nor in Allay; but as soon as a good way may be found, the same be put in the antient State, as in the Sterling.

*XIV.*
*Process against Persons indicted of Felony.*

ITEM, It is accorded, That after any Man be indicted of Felony before the Justices in their Sessions to hear and determine, it shall be commanded to the Sheriff to attach his Body by-Writ or by Precept, which is called a Capias; and if the Sheriff return in the same Writ or Precept, that the Body is not found, another Writ or Precept of Capias shall be incontinently made, returnable at three weeks after; and in the same Writ or Precept it shall be comprised, that the Sheriff shall cause to be seised his Chattels, and safely to keep them till the Day of the Writ or Precept returned; and if the Sheriff return, that the Body is not found, and the Indictee cometh not, the Exigend shall be awarded, and the Chattels shall be forfeit, as the Law of the Crown ordaineth; but if he come and yield himself, or be taken by the Sheriff, or by other Minister, before the Return of the second Capias, then the Goods and Chattels shall be saved.

*XV.*
*The Penalty of Purveyors taking more Sheep before shearing Time than are wanted.*

ITEM, Forasmuch as the Takers and Buyers of the King's Prises, do take Sheep from the People betwixt Easter and the Feast of Saint John Baptist, with their Wools, and prise the same at a small Price, and after send them to their own Houses, and do them to be shorn to their own Profit, in deceit of the King, and great Oppression of the People; It is accorded, that no such Taker, Purveyor, nor Buyer, shall take any Sheep before the Time of shearing, but as much as may reasonably suffice till the Time of shearing; and after that Time they shall take as many Sheep shorn, and not other, that may reasonably suffice them for the Time to come: And if any Taker, Purveyor, or Buyer of the Realm, do against the same, and be thereof attainted at the Suit of the King, or of the Party, it shall be done of him as of a Thief or a Robber; and the pain shall be contained in every Commission of such Purveyors.

*XVI.*
*Exception of Nontenure of Parcel.*

ITEM, It is accorded, That by the Exception of Nontenure of Parcel no Writ shall be abated, but for Quantity of the Nontenure which is alledged.

*XVII.*
*Process of Exigent in Debt, Detinue, and Replevin.*

ITEM, It is accorded, That such Process shall be made in a Writ of Debt, and Detinue of Chattels, and taking of Beasts, by Writ of Capias, and by Process of Exigend [by '] the Sheriff's Return, as is used in a Writ of Accompt.

' Omit this Word.　　　' *Knight's*
' *or for Gold, or Silver for Silver or for Gold,*
' *a common Exchange*　　　' *upon*

---

et facent les p'veours le Roi, ma dame la Roigne, & toutz autres, lours p'veances p meismes les mesures rases, & en meisme la maﬁe; & a toutz les foitz q̃ mestier ﬁra, nr̃e Seign' le Roi assignera c̃eines Justices en chescune Countee, denquerr & doier & r̃miner s' les pointz suisditz, & de faire s' ce due punissement, solonc chescun r̃spas, si bien a la seute de ptie, come a la seute le Roi; Issint totes foitz q̃ toutes maﬁes des franchises soient sauvez as Seign's en touz pointz saunz nul emblemissement est faire en ã̃cumq̃ maﬁe.

Estre ceo acorde est & assentu q̃ renable eid, p' faire leisne fitz le Roi Chivaler, & sa eisnesce filt marier, soit demande & leve solonc la forme del estatut ent fait, & nemie en autre maﬁe, cest assavoir de chescun fee (') tenue du Roi saunz meen, vint souldz & nient plus; & de chescun vint livree de r̃re tenue du Roi saunz meen en sokage vint souldz & nient plus.

Ensement acorde est & establi, q̃ bien lise a chescun hõme de chaunger or p' argent ou p' or, ou argent p' argent ou p' or, issint q̃ nul hõme tiegne cõe eschaunge, ne rien pr̃igne de pfit p' tiel eschaunge faire, s' peine de forfait'e de la monoie issint chaungee, forprises les Chaungeours le Roi, les queux pr̃ignent pfit p' tiele eschaunge solonc lordenance avant faite.

Auxint acorde est & establi, q̃ la monoie dor & dargent qore coert, ne soit mie empire, en pois nen alai; mes au plus tost q̃ hõme pusse trover bone voie qele soit mys en launcien estat, come en esterling.

Et auxint est acorde & assentu, q̃ ap̃s ceo q̃ ascun hõme soit endite de felonie devant Justices en lour sessions doier & r̃miner, soit cõmande au viscont dattach son corps, p brief ou pr̃cept qest appelle Capias, & le viscount retourn en le dit brief ou pr̃cept q̃ le corps soit mie trovee, meintenant soit autre brief ou pr̃cept de Capias fait, retournable as trois symeignes ap̃s; & en meisme le brief ou pr̃cept soit compris q̃ le viscount face seisir les chateux & les sauvement garder tanq̃, a jour de brief ou pr̃cept retournable; et si le viscount respoigne q̃ le corps nest pas trovee, ne lendite vient point, soit lexigend agarde & soient les chateux forfaitz, sicome la lei de la corone demand; Mes sil viegne & se rend ou soit pris p viscount ou p autre Ministre devant le retourn del sc̃de Capias, adonq̃s soient les biens & les chateux sauvez.

Ensement p'ce q̃ les achatours & pnours des prises le Roi pnent berbitz du poeple, pentre la Pasch et la fest de Seint Johan od les leines, & les fount preiser a [mene '] pris, & puis les mandent a lours mesons demesne & les fount tounder a lour pfit demesne, en deceit du Roi & g̃nt opp̃ssion du poeple, Si est acorde & assentuz, q̃ nul des tieux Purveours, pnours & achatours ne pr̃igne nules berbitz devant la seisone du toundeson, forsq̃ a tantz q̃ p'ront suffire resonablement tantq̃ au temps du toundison, & ap̃s cel temps pr̃igne il a tantz de berbitz tounduz & nemie aut̃s, come p'ront suffire resonablement p' le temps avenir; et si nul P'veour, pnour ou achatour du Roialme, face al encontre, & de ceo soit atteint a la seute le Roi ou de ptie, soit fait de lui come de laron ou de robbour, & soit la peine contenue en chescune cõmission des tieux p'veours.

Auxint acorde est & assentue, q̃ p excepcion de nounten'e de pcell null brief soit abatu forsq̃ p' la quantite de la nounten'e qest alegge. Ensement acorde est & assentue, q̃ auriele pces soit fait en brief de dette, detenu des chateux, & en prises des avers p brief de Capias, & p pces dexigend, p re-tourri de viscount, sicome est usee en brief dacompt.

* *de Chivaler Rot. Parl.* 25 *E. III. P. II. nu.* xix. (29.)
* *petit Printed Copies*—*mesne Rot. Parl.* xxxj. (41.)

Estre ceo acorde est & assentue, q̃ nient contre-esteant adjournement faite en Eire p brief de libtate pbanda p'chacee en favour des neifs, p' delaier les Seign's de lours acciona deu̅s tieux neifs, soient les Seign's receux dalegger excepcions de villenage contre lours vileins en toutz briefs le quel q̃ les dits briefs de libtate pbanda soient p'chacez p deceit ou en autre mañe, si q̃ les Seign's pussent seisir les corps de lours vileins, auxi bien come ils p'roient devant q̃ tieux briefs de libtate pbanda feurent ordenez & p'chacez.

Auxint come n̅r̅e Seign' le Roi avant ces heures fait p̃teccions as diu̅ses gentz q̃ lui estoient tenuz en ascuñ mañe des dettes, qils ne u̅ront mie empledez des dettes queles ils deivent as aut̅s, tanq̃, ils eussent fait gre a n̅r̅e Seign' le Roi de ceo q̃ lui estoit due p eux p resout de sa p̃rogative, & issint durantes tieles p̃tec-cions nul hôme ad este osee templeter tieux dett's; acorde est & assentue, q̃ nient contresteant tieles p̃teccions les pties qount accions a lours dettours, soient respoundnz en la Courte le Roi p lours det-tours, et si Jugement soit sur ceo rendu p' le pleintif ou demandant, soit lexecucion de cel juggement mys en suspens̃ tanq̃, gre soit fait au Roi de sa dette; et si les Creansours voillent emp̃ndre p' la dette le Roi, soient ils a ceo receuz, & outre eient execucion deu̅s lours dettours de dette a eux due, & auxint recou̅ent deu̅s eux tant come ils p̃ieront p' eux au Roi.

Ensement acorde est & assentue, q̃ les Moneours, & aut̅s gardeins & Ministres de la monoie, receivent plat dor & dargent p pois, & en meisme la mañe deliu̅ent les monoies q̃'nt eles u̅ront faitz p pois, & nemie p nombre, saunz nully targer. Estre ce, come avant ces heures les Botillers n̅r̅e Seign' le Roi & lours deputees soleient p̃ndr̃, & pnent de jour en autre, moult plus des vyns, p colour de lour office al oeps n̅r̅e Seign' le Roi ne besoigneroit, des queux les plus fiebles ils deliu̅ent al oeps n̅r̅e f̃ le Roi, & les meillours en g̃nt nombre ils retiegnent deu̅s eux a vendre & a faire ent lour pfit, & alafoitz ils relessent as marchantz ceo qils ount pris de eaux, p' fines & donnes qils p̃ignent de meismes les marchantz p extor-sion, en g̃nt damage & empou̅issement des ditz mar-chantz; si est acorde & establi q̃ le Seneschal del Hostiel le Roi, & le Tresorer de la Garderobe, man-dent as touz les portz Denglet̅re la ou vyns sont a p̃ndr̃ al oeps le Roi le čtein nombre q̃ le Botiller p̃ndra en chescun port, si q̃ rien soit pris outre cel nombre; et q̃ Meir & Baillifs des ditz portz ĉi-fient les ditz Seneschal & Tresorer le nombre des toneux issint prises p le Botiller ou les lieutenantz, sous les seals des ditz Meir & Baillifs, & p endenture faite entre eaux & les pnours des ditz vines; et en cas qil soit trove q̃ le Botiller ou ses lieu tenantz p̃ignent plus ou p̃ignent lower de nully ou delaie nully p colour de son office, come p arest, face gre de double a la ptie & soit ouste de son office, & eit la prison & soit reint a la volunte le Roi; et le Roi as-signera ses Justices q̃'nt lui plerra denquere sur cestes choses; & respoigne le Botiller sibien p' eux deputees come p' lui meismes, la ou ils ne sont mie sufficeantz.

Auxint p' ce q̃ ascuns p'chacent a la Court de Rome p̃visions, davoir Abbeies & Priories en Englet̅re, en destruccion du Roialme & de seinte religion, acorde est & assentue q̃ chescun q̃ p'chace tieles p̃visions dabbeie ou de priorie, q̃ lui & ses executours & p̃curatours q̃ suent & f̃ount execucion de tieles p̃visions, soient hors de la p̃teccion n̅r̅e Seign' le Roi; & q̃ hôme pusse faire

---

ITEM, It is accorded and assented, that notwithstand-ing adjournment made in Eyre, by Writ of Libertate probanda, purchased in favour of Villaines to delay the Lords of their Actions of such Villaines, the same Lords shall be received to alledge the Exception of Villsinage against their Villaines in all Writs, whether that the said Writs of Libertate probanda were purchased by deceit or in other manner; and that the Lords may seise the Bodies of their Villaines, as well as they might before that the Writs of Libertate probanda were ordained or purchased.

ITEM, Forasmuch as our Lord the King hath made before this Time Protections to divers People, which were bounden to him in some manner of Debt, that they should not be impleaded of the Debts which they owed to other, till they had made Gree to our Lord the King of that which to him was due by them, by reason of his Prerogative; and so during such Protections no Man [hath used, nor *] durst implead such Debtors; It is accorded and assented, That notwithstanding such Protections, the Parties which have Actions against their Debtors, shall be answered in the King's Court by their Debtors; and if Judgement be thereupon given for the Plaintiff or Demandant, the Execution of the same Judgement shall be put in Suspence till Gree be made to the King of his Debt; and if the Creditors will undertake for the King's Debt, they shall be thereunto received, and shall have Execution against the Debtors of the Debt due [and adjudged *] to them, and also shall recover against them as much as they shall pay to the King for them.

ITEM, It is accorded and assented, That the Money-ors, and other Wardens and Ministers of the Money, shall receive Plate of Gold and Silver by the Weight; and in the same Manner shall deliver the Money when it shall be made, by Weight, and not by Number, with-out any tarrying.

ITEM, Whereas before this Time the King's Butlers and their Deputies were wont to take, and daily do take much more Wine, by Colour of their Office, to the King's Use, than they shall need, whereof the worst they deliver to the King's Use, and the best in great Number they retain to themselves, to sell and make thereof their Profit; and sometime they release to Mer-chants that which they have taken of them, for Fines and Gifts, which they take of the same Merchants by Extortion, to the great Damage and Impoverishment of the said Merchants; It is accorded, That the Steward of the King's House, and Treasurer of the Wardrobe, shall send to all the Ports of England, where Wines be to be taken to the King's Use, the certain number which the Butler shall take in every Port, so that nothing be taken over this Number; and that the Mayor and Bailiffs of the said Ports certify the said Steward and Treasurer of the Number of all the Tuns so taken by the Butler or his Lieutenant, under the Seal of the said Mayor and Bailiffs, by Indentures made betwixt them and the Takers of the said Wines; and in case that it be found, that the Butler or his Lieutenant take more, or take Reward of any, or delay any by Colour of his Office, as by arrest, he shall make Gree to the Party of the double, and shall be put out of his Office, and have Imprison-ment, and be ransomed at the King's Will; and the King shall assign his Justices when it shall please him, to enquire upon these Things; and the Butler shall answer as well for his Deputies as for himself, where they be not sufficient.

ITEM, Because that some do purchase in the Court of Rome Provisions, to have Abbies and Priories in England, in Destruction of the Realm, and of Holy Religion; It is accorded, That every Man that pur-chaseth such Provisions of Abbies or Priories, that he and his Executors and Procurators, which do sue and make Execution of such Provisions, shall be out of the King's Protection; and that a Man may do with them as of

XVIII.
Villainage
may be
pleaded,
and a Villaine
seized,
pending a
Writ of
Libertate
probanda.

XIX.
The King's
Debtors
suable not-
withstanding
Protections.

Stay of
Execution,
until Payment
of King's
Debt; or the
Creditors
undertake
for it.

XX.
Plate shall
be received
at the Mint,
and Coin
delivered,
by Weight.

XXI.
Abuses by
the King's
Butlers in
Purveyance
of Wine.

Regulations
therein.

Punishment
of the Butlers.

XXII.
Penalties on
purchasing
Provisions at
Rome, for
Abbies, or
Priories.

*] Old Printed Copies omit these Words.

Enemies of our Sovereign Lord the King and his Realm; And he that offendeth against such Provisors in Body or in Goods, or in other Possessions, shall be excused against all People, and shall never be impeached nor grieved for the same at any Man's Suit.

*de lui come de enemy du Roi & du Roialme; et q̃ celui q̃ face contre tiels p̃visours en corps ou biens ou en aut̃s possessions, soit excuse deṽs touz gentz, & p tant ne soit james greve nempeschee au seute de nully.*

XXIII. Companies of Lombards answerable for the Debts of their Fellows.

ITEM, Whereas much People of the Realm, which have made Contracts with Lombards, that be named of the Companies dwelling in the same Realm, which Lombards after that they have made their Obligations to their Creansours, have suddenly escaped out of the Realm without Agreement made to their said Creansours, in deceit and great damage of the People : It is accorded and assented, That if any Merchant of the Company, knowledge himself bound [by the Manner,'] that the Company shall answer of the Debt. So that another Merchant which is not of the Company, shall not be thereby grieved or impeached.

' in that manner,

*Auxint p'ce q̃ plusurs gentz du Roialme, qont fait contractes ove Lumbardz q̃ sont nomez des compaignies demorantz en meisme le Roialme, queux Lombardz ap̃s qils ount fait lours obligacions a lours Creansours, se sont sodeinement eschapez hors du Roialme, saunz gre faire a les ditz Creansours, en deceit & g'nt damage du poeple ; acorde est & assentuz q̃ si nul marchant de compaignie conue se oblige p la mañe, q̃ la compaignie respoigne de la dette. Issint q̃ autre marchant qi nest mie de la compaignie ne soit p tant grevez nempeschez.*

Of the proclaining the Statute.

The King to the Sheriff of Kent, Greeting. Certain Statutes passed in our Parliament assembled at Westminster in the Feast of St. Hilary last past, by Us, the Prelates, Dukes, Earls, Barons, and others of the Commonalty of our Realm of England, summoned to the said Parliament, We do send to you under our Seal ; charging you to cause the said Statutes to be read in your full County Court, and the same to be strictly observed, and holden. Witness the King at Westminster, the sixth day of March.

Like Writs are directed to all the Sheriffs through England, under the same date.

A like Writ is directed to the Justice of Ireland, changing what ought to be changed, under the same date.

Like Writs are directed to the Persons under-written, under the same date ; that is to say :

William de Shareshull and his Companions, Justices assigned to hold Pleas before the King himself :

John de Stonore and his Companions, Justices of the Common Bench :

The Treasurer and Barons of the Exchequer.

*Rp Viĉ Kanĉ, saltm. Quedam statuta, in p̃iamento nr̃o apud Westm̃ in festo at̃i Hillar̃ p̃x p̃t̃ito convocato, p nos Prelatos Duces Comites Barones & alios de cõitate regni nr̃i Angl̃ ad dc̃m p̃iamentum sũmonitos, edita, tibi mittim̃ᵒ sub pede sigilli nr̃i, mandantes qd statuta p̃dc̃a in pleno Com̃ tuo legi & ea firmit̃ observari & teneri faĉ. T. R. apud Westm̃ vi. die Marĉ.*

*Conĩ bria dirigunt' singulis vicecomitib̃ p Angl̃ sub eadem data.*

*Conĩ bre dirigit' Justiĉ Hib̃ni mutatis mutand sub eadem data.*

*Conĩ bria dirigunt' subscriptis sub eadem data videlt.*

*Will̃o de Shareshull & sociis suis Justiĉ ad pl̃ita coram rege tenend assign.*

*Joh̃ de Stonore & sociis suis Justiĉ de c̃ĩi Banco.*

*Thes̃ & Baronib̃ de scacĉio.*

D' p̃lamac̃õe Statuti.

---

## Ordinacio p' Clero

### fc'a apud Westm̃, anno r. R. E. t'cii vicesimo quinto.

In Margine Rotuli.

### An ORDINANCE for the CLERGY,

Made at Westminster in the Twenty-fifth Year of the Reign of K. Edward III.

---

Statute the Sixth.*

OUR Lord the King, seeing and examining by good Deliberation the Petitions and Articles delivered to him in his Parliament holden at Westminster in the Feast of St. Hilary, the Year of his Reign of England the Five and twentieth, and of France the Twelfth, by the Honourable Father in God, Simon Archbishop of Canterbury, and other Bishops of his Province, upon and for certain Grievances, which they alledged to be done to Holy Church, and to the Clergy, against the Privileges of Holy Church ; and then they prayed, that

Ex magno Rot. Stat. in Turr. Lond. m. 16 d.

*N̄re Seignour le Roi, veues & examinez p bone deliberacion les peticions & articles a lui bailliez en son plement, tenuz a Westmonster en la feste de seint Hillar̃ lan de son regne Denglet̃re vintisme quint, & de France duzzisme, p Lon'able piere en Dieu Simon Erecvesq̃, de Cant̃birs et aut̃s Evesq̃s de sa p̃vince, s' & p̃ ĉeines grevances queles ils disoient estre faites a seinte eglise et a la clergie, encontre les privileges de seinte eglise, & dunk ils prierent q̃ cove-*

* Statute the Third in all former Printed Copies ; and entitled " Statutum pro Clero. A Statute for the Clergy."—It is entered on the Back of the Statute Roll. See the Note to Statute the First of this Year.

to the manifest Destruction and Injury of the said People, and against Justice and the Form of the Statute aforesaid : We will and stedfastly command that our Justice of Ireland for the Time being, in every County and Place through which he shall pass, associating with him a Prelate of the Place, and some Earl or other Nobleman or Knight of that Neighbourhood, concerning the aforesaid Deceits, Extortions, Oppressions, Grievances, and Excesses, and all the Matters abovesaid by those Farmers howsoever committed, and of all their acts and doings in this Behalf, as well at the Suit of Us as of any others whomsoever who shall complain thereof, as well for the Time past as for the Time to come, shall make Enquiry; and against them shall proceed, and the Contempts, Deceits, Extortions, Oppressions, Grievances, and Excesses, and other the Matters aforesaid shall hear and determine, and the Delinquents and Offenders when they shall be found such, shall punish and chastise, according to the Law and Custom of our Land of Ireland before mentioned ; and nevertheless to Us and our Council in England, the Names of those so offending, and the Deceits, Extortions, Oppressions, and Grievances and other Matters aforesaid, under the Seals of him the said Justice and of the others associated with him, distinctly and openly, from Time to Time, for good Cause shall certify.

In Witness whereof, &c. Witness the King at Westminster, the Twenty-fifth Day of October.

By the King Himself and Council.

---

pjudiciũ, & ipsius populi destruccõem & injuriam manifestas, ac cont' justiciam & formã statuti pdci : Volum⁰ & firmi⁰ pcipim⁰ qd Justic' nr Hibñ qui p tempe fūit, in singulis Coṁ & pṽib; p quos t'nsierit, associatis sibi Prelato loci, & aliquo Comite seu alio nobili vel Milite eaǯdem pcīu vicinap, de pdcīs falsitatibꝫ, extorsionibꝫ, oppꝰsionibꝫ, g'vaminibꝫ, & excessibꝫ, & oṁibꝫ supꝺcīs p ipsos firmarios quomodolibet pptis, & de ipop fcīs & gestibꝫ in hac pte, tam ad sectam nram q'm alioꝝ quoꝫcũꝗ, inde conqueri volenciũ tam de tempe p̄rīto q'm futuro inquirat, & ꝯsus eos pcedat, & contemptus, falsitates, extorsiones, oppꝰsiones, g'vamina & excessus, ac alia pdcīa audiat & t'minet, necnon delinquentes & culpabiles cum tales inventi fūint castiget & puniat, sm̄m legem & consuetudinem t're nr̄e Hibñ antedcīas ; & nos & consiliũ nr̄m in Angl de nõibꝫ sic culpabiliũ, ac de falsitatibꝫ, extorsionibꝫ, oppꝰsionibꝫ & g'vaminibꝫ & aliis pdcīs sub sigillis ipsius Justic' & sibi associatoꝝ, distincte & apte de tempore in tempus nichilomin⁰ c̄tificet ex c̄ta causa. [In cujus, &c. T. ꝶ. apud Westm̄ xxv. die Octobr.

p ipsm Regem & Cons̄.']

¹ In cujus rei testimoniũ has t'as nr̄as fieri fecim⁰ patentes. Teste me ipo apud Westm̄ vicesimo quinto die Octobr̄, anno regni nr̄i Angl r'cesimo p̄mo, regni ꝯo nr̄i Franc̄ decimo octavo.

Nos autem Ordinacões Voluntates & pcepta pdc̄a, ac oṁia alia & singla in ir̄is pdc̄is cōtenta rata hentes & g'ta, ea p nob & heredibꝫ nr̄is quantum in nob est, acceptam⁰ approbamus, ratificam⁰ & confirmam⁰, put līe pdc̄e rationabilit' testant'. In cuj⁰, &c. T. ꝶ. apd Westm̄ xxvj die Junii.

*Rot. Pat.* 17 *Ric. II.*

---

## Anno 34° EDWARDI, III. A.D. 1360-1.

### 𝕾tatutũ fc'm in P'liamēto tento apud 𝖂estm̄ ; anno xxxiiijto.

In Margine Hmili.

A STATUTE MADE IN THE PARLIAMENT HOLDEN AT WESTMINSTER ; IN THE THIRTY-FOURTH YEAR.

T HESE be the Things which our Lord the King, the Prelates, Lords, and the Commons have ordained in this present Parliament, holden at Westminster, the Sunday next before the Feast of the Conversion of St. Paul, to be holden and published openly through the Realm (¹)

I. Who shall be Justices of the Peace. Their Jurisdiction over Offenders ; Rioters ; Barators :

FIRST, That in every County of England shall be assigned for the keeping of the Peace, one Lord, and with him three or four of the most worthy in the County, with some learned in the Law, and they shall have Power to restrain the Offenders, Rioters, and all other Barators, and to pursue, arrest, take, and chastise them according their Trespass or Offence ; and to cause them to be imprisoned and duly punished according to the Law and Customs of the Realm, and according to that which to them shall seem best to do by their Discretions and good Advisement ; and also to inform them, and to inquire of all those that have been

Vagabonds ;

Pillers and Robbers in the Parts beyond the Sea, and be now come again, and go wandering, and will not labour as they were wont in Times past ; and to take and arrest all those that they may find by Indictment, or by Surpicion, and to put them in Prison ; and to take of all them that be [not ¹] of good Fame, where they shall be found, sufficient Surety and Mainprise of their good

They may take Surety for good Behaviour:

² *that is in* 1. 9 *;*     ³ All Translations read thus.

---

*Ex magno* Rot. Stat. *in* Turr. Lond. *m.* 10.

C ES sont les choses queux nre Seign' le Roi Prelatz Seign's & la cõmune ont ordinez en cest p̄sent plement, tenuz a Westmuster le Dymenge p̄chein devant la feste de la Conv̄sion de Seint Paul, a tenir & publier ov̄tement pmy le Roialme ; Cestassavoir :

Primement ij en chescun Countee Denglet're soient assignez, p' la garde de la pees, un Seign', & ov̄esꝗ lui trois ou quatre des meultz vauez du Countee, ensemblement ove ascuns sages de la ley, & cient poer de restreindre les mesfesours, riot's, & touz aut's baretto's, & de les p'suir, arester, p̄ndre, chastier, selonc leur t'spas ou mesprision ; & de faire emprisoner, & duement punir selonc la ley & custumes du Roialme, & selonc ce qils ꝯront mieltz affaire p lor discrecions & bon avisement ; & auxint de eux enformer & denquere de touz ceux qi ont este pilours & roboeurs es p̄ties de dela, & sont ore revenuz & vont vagantz, & ne veillent t'vailler come ils soleient avant ces hours ; & de p̄ndre & arester touz ceux qils p'ront trov̄ p endictement, ou p suspecion & les mettre en prisone & de p̄ndre de touz ceux [qi sont ¹] de bone fame, ou ils p̄ront trovez, soufficant seurete & meinprise de

⁴ qi ne sont *Lib. Sess. Westm.* IX; MS. *Catt. Nero* C. I; *and the Old Printed Copies.*

lo' bon port, devĩs le Roi & son poeple, & les aut̃s duement punir; au fin q̃ le poeple ne soit p tieux rioto's troble nendamage ne la pees enblemy, ne marchantz naut̃s passantz p les hautes chemyns du Roialme destourbez ne abaiez du pil q̃ p'ra avenir de tieux messesours: & auxint doier & I'miner a la suite le Roi, toite mañe de felonies & t̃spas faites en meisme le Countee, selonc les leys & custumes avantdites; & q̃ briefs doier & I'miner soient g̃ntes selonc les estatuz ent faites, mes q̃ les Justices q̃ enserront assignez soient nomez p la Court, & nemie p la pie. Et le Roi voet q̃ totes geñales enquerres avant ces heures g'ntez deinz seign'ies quesconqes p' les meschiefs & oppssions q̃ ont este faites au poeple p tieles enquerres, cessent outriement & soient repellez: Et q̃ fins q̃ sont affaire devant Justices, p' t̃spas fait p ascune psone, soient resonables & justes, eant regard au q'ntite du t̃spas & les causes p' queles eles sont faites.

Item accorde est q̃ prises desore ne soient faites p aut̃s q̃ p les p'veours le Roi, ma Dame la Roine & le Prince lour eisne filtz; & q̃ si Purveours des aut̃s facent tieu prises soit fait de eux come des gentz qi fount sanz garaunt, & lour fait jugge come chose faite contre la pees & la ley de la t̃re; & soient tieux qi se fount p'veours en la mañe duement puniz.

Item des p'veances faites al oeps la Royne & du Prince, du polaitĩ & dautres menuz choses, soit paiement fait en poigne s' la prise; & des aut̃s grosses p'veances deina le Mois ou sis simaignes en Countees ou ils ð'ront prises; & q̃ le nombre de tieux p'veours soit abregge, en tant come bonement p'ra p' eide & quiete du cõmune poeple.

Item porce q̃ viscontes & aut̃s ministres sovent arraient lour panels en tote mañe denquestes des gentz pcurez & pluis lointifs du Countee, qi nont conissance du fet dount lenqueste ẽra prise; Acorde est, q̃ tieu paneles soient faites des plus p̃scheins gentz, qi ne sont pas suspectes, ne pcurez; & q̃ les viscontes, Coroners & aut̃s ministres qi font alencontre soient puniz devant les Justices qi la dite enqueste p̃ndra, selonc la q'ntite de lour t̃spas, sibien devĩs le Roi come devĩs la pie, p' la q'ntite du damage qil ad suffert en tieu mañe.

Item est accorde, q̃ ceux qi ð'ront assignez de garder la pees eient poair denquere des mesures & auxint des pois, selonc lestatut ent fait lan du regne nr̃e Seign' le Roi vint & quint, en quel est contenu la forme q̃ sensuit. Porce q̃ t̃g'nt damage & desceit est fait au poeple p tant q̃ pluseurs Marchantz usent dachater & poiser laines & aut̃s marchandises p une pois qest apelle Aunsell; Acorde est & establi, q̃ celle pois appelle Aunsell entre achatour & vendour soit de tout ouste, & q̃ chescun vende & achate p balances; issint q̃ les balances soient owels & les leins & aut̃s marchandises owelement poisez p droit pois, et q̃ le sac de leine ne poise q̃ vint & sis peres, & chescun pere poise quatorze livres, & q̃ lestater de la balance ne encline ne a lune p̃tie ne al autre, & q̃ tou poids si soit acordant al estandard del Eschequer; et si nul Achatour face al encontre, soit greousement puny sibien a la suite de pie come a la suite nr̃e Seign' le Roi.

Item come contenu soit en la g'nt Chĩe, q̃ une mesure soit use pmy tut Englet̃re, la quele Chre nad mie este tenue bien en ce point avant ces heures; si est acorde & assentu, q̃ totes les mesures, cest assavoir bussel demy bussel & Pĩck, galon potel & quart, p tout Englet̃re deinz franchise & dehors

Behaviour towards the King and his People, and the other duly to punish; to the Intent that the People be not by such Rioters or Rebels troubled nor endamaged, nor the Peace blemished, nor Merchants nor other passing by the Highways of the Realm disturbed, nor [ put in the Peril which may happen *] of such Offenders: And also to hear and determine at the King's Suit all Manner of Felonies and Trespasses done in the same County according to the Laws and Customs aforesaid; and that Writs of Oyer and Determiner be granted according to the Statutes thereof made, and that the Justices which shall be thereto assigned be named by the Court, and not by the Party. And the King will, that all general Inquiries before this Time granted within any Seigniories, for the Mischiefs and Oppressions which have been done to the People by such Inquiries, shall cease utterly and be repealed : and that Fines, which are to be made before Justices for a Trespass done by any Person, be reasonable and just, having Regard to the Quantity of the Trespass, and the Causes for which they may be made.

and may hear and determine Felonies and Trespasses.

Commissions of general Inquiries shall cease.

Fines for Trespasses shall be reasonable.

ITEM, It is accorded, That [Taking *] shall not be from henceforth made by other than the Purveyors of the King, of the Queen, and of the Prince their eldest Son ; and that if any other Man's Purveyors make such Takings, it shall be done of them as of People which do without Warrant, and their Deed judged as a Thing done against the Peace and the Law of the Land ; and such as do make themselves Purveyors in such Manner shall be duly punished.

II<br>No Purveyance except for the King, the Queen, and the King's eldest Son.

ITEM, Of Purveyances made to the Use of the Queen, and of the Prince, of Poultry and of other small Things, Payment shall be made in Hand upon the Taking ; and of other great Purveyances within the Month or Six Weeks, in the Counties where they shall be taken ; and that the Number of such Purveyors be abridged in as much as conveniently may, for the Aid and Quietness of the Common People.

III.<br>When Purveyances for the Queen &c. shall be paid for.

ITEM, Because that the Sheriffs and other Ministers often do array their Panels in all Manner of Inquests, of People procured, and most far off [from *] the Counties, which have no Knowledge of the Deed whereof the Inquest shall be taken ; It is accorded, That such Panels shall be made of the next People, which shall not be suspect nor procured ; and that the Sheriffs, Coroners, and other Ministers which do against the same shall be punished before the Justices that take the said Inquest according to the Quantity of their Trespass, as well against the King as against the Party, for the Quantity of the Damage which he hath suffered in such Manner.

IV.<br>Panels of Inquests shall be of the Neighbourhood.

ITEM, It is accorded, That they which shall be assigned to keep the Peace shall have Power to inquire of Measures, and also of Weights, according to the Statute thereof made the five-and-twentieth Year of the Reign of our Lord the King, wherein is contained the Form that followeth ; "Whereas great Damage and Deceit is done to the People, for that divers Merchants use to buy and weigh Wools and other Merchandises, by a Weight which is called Auncel ; It is accorded and established, That this Weight called Auncel betwixt Buyers and Sellers, shall be wholly put out ; and that every Person do sell and buy by the Balance, so that the Balance be even, and the Wools and other Merchandizes evenly weighed by right Weight, so that the Sack of Wool weigh no more but xxvi. Stones, and every Stone to weigh xiiij. l. and that the Beam of the Balance do not bow more to the one Part than to the other ; and that the Weight be according to the Standard of the Exchequer ; and if any Buyer do the contrary, he shall be grievously punished, as well at the Suit of the Party, as at the Suit of our Lord the King."

V.<br>Justices of the Peace shall inquire of Weights and Measures, according to the Statute 25 Edw. III. stat. 5. cb. 9.

ITEM, Whereas it is contained in the Great Charter, that one Measure be used through the Realm, which Charter hath not been holden well in this Point before this Time ; It is accorded and assented, That all the Measures, that is to say, Bushel, Half Bushel, Peck, Gallon, Pottle, and Quart, through (*) England, within

VI.<br>All Measures shall be according to the King's Standard, &c.

* put in feat by peril which might happen     'Takings     ' of     * all

App. 11

**Application of the Forfeitures.**

be present, or of the Lords of the Fairs and Markets, and other Places where such Cloths shall be found defective, or of their Stewards or Bailiffs, or of the Constables of the Towns and Places aforesaid, by Indenture betwixt them duly to be made; which Indentures shall be every Year at the Feast of St. Michael delivered into the Exchequer, by them which so shall make the said Delivery, to the Intent there to charge the Aulnegers and Collectors aforesaid, by whom such Defaults ought to have been searched, corrected, and mended, and be not, but commonly maintained and concealed in all Parts; for which Third Part that pertaineth to the King as his Forfeiture by force of the Statutes made in Times past, the Aulnegers and Collectors aforesaid, in every County and Place where such Cloths defective shall be found, for the Pain against the said Offences and Concealment, shall make Gree of their own Money to our Lord the King in his Exchequer, of the Value of the same Third Part; so that as well of the same Third Part as of the Remnant of the said Cloth, the King shall be wholly answered at his said Exchequer.

**X.**
**Trial of Assise for Rent out of Lands lying in Two Counties.**

ITEM, It is ordained and assented, That an Assise of Novel Disseisin shall be from henceforth granted and made of Rent behind, due of Tenements being in divers Counties, to be holden in the Confine of the Counties, within which the Tenements be; and thereupon the Assise taken and tried by People of the said Counties in the same Manner as is done of a Common of Pasture being in one County, and appendant to Tenements in another County; and that as well of Disseisins done in Time past, as of Disseisins yet to be done; and that Writs thereupon at the Suit of the Plaintiffs be made from henceforth in the Chancery without any Manner of Contradiction, in a due Form.

**XI.**
**The Statutes 5 Ric. II. c. 4, 5. and 6 Ric. II. c. 7, 11, 12, concerning Fishmongers, Victuallers, and Vintners, repealed.**

ITEM, Whereas in divers Parliaments holden at Westminster, the Fifth and Sixth Years of our said Lord the King, divers Ordinances and Statutes of Fishers of London and other Victuallers were made, and also of Vintners, and of the Sale of Wines, and thereupon the same Ordinances and Statutes, with the Pains in them contained, were published and proclaimed throughout the Realm, as in the said Statutes and Ordinances more plainly may appear: Nevertheless for certain Causes, at the Requeft of the Commons of England the Ordinances and Statutes of Fishers, Vintners, and Victuallers, made in the Years aforesaid, shall be wholly annulled and repealed, and shall lose their Effect and Strength: Nevertheless saving to the King all the Forfeitures of Wines for the Time past that to him pertaineth by virtue of the same Ordinances and Statutes : Provided always, that all the ['Vintners and '] Victuallers, as well Fishers as other coming with their Victuals to the City of London, shall be from henceforth under the Governance and Rule of the Mayor and Aldermen of the said City for the Time being, as in Time past it hath been used.

**Victuallers of London shall be under the Rule of the Mayor and Aldermen.**

**XII.**
**Stat. 3 Ric. II. c. 3. recited;**

ITEM, Whereas late in the Parliament holden at Westminster, the Third Year of the Reign of our said Lord the King, at the Request of the Commons, and by the Assent of the Lords Temporal, it was ordained and assented, and upon a grievous Pain prohibited, that no Subject of the King nor other Person, of what Estate or Condition he were, should take, neither receive from thenceforth, within the Realm of England, Procuracy, Letter of Attorney, ne Ferm, nor any other Administration by Indenture, or in any other Manner, of any Person receiving any Benefice of Holy Church within the Realm, but only of the King's Subjects of the same Realm, without the especial Grace and express Licence of our said Lord the King, upon a certain Pain contained in the said Statute; It is assented and agreed by the same Lords, That the same Statute shall keep his

**confirmed and extended to Aliens holding Benefices in England;**

¹ *Wines, and the*

---

soient ṗsentz ou des ꝑs des feires & marchees, & auꝑs lieux ou tielx draps defectives ꝓront trovez, ou de lo's Seneschalx & Bailiifs ou des Conestables des villes & lieux avantditz p endentures ent entre eux duement affaires; les queles endentures soient chescun an a la feste de Seint Michel livrez en lescheqir p ceux qensi ferront la dite livrez, al effect de charger illoeqs les Alneours & coillours avantditz p queux tielx defautes dueussent estre ꝯchez chastiez & amendez & ne sont my einz cõement maintenuz ou concelez toutz ptz; pur quele tierce ṗie qapptient au Roi come sa forfaiture p force de lestatutz devant ore faitz les alneo' & coillo' avantditz, en chescun Countee & lieu ou tielz draps defectives ꝓront trovez p' peine encontre lo's ditz mal fait & concelement, facent gree de lo's ꝑpres deniers a nre dit ꝟ le Roi en son Eschqir de la value de celle tierce ṗie, issint q̃ siõ de mesme la tierce ṗie come del remenant du dit draꝑ nre ꝟ le Roi soit entierement resp[ond]uz a son Eschqir avantdit.

**x.**

Item est ordeignez & assentuz qassise de Novele Disseisine soit desore gnte & faite de rent aderiere, due des teñz esteantz es divses Countees a tenir en la confyne des Countees deinz queux les teñz sont, & sur ce lassise prise & triee p gentz des ditz Countees en mesme la maðe come est fait du cõe de pasture esteantz en un Countee & appendante au teñz en autre Countee, & ce auxi avant des disseisines faites devant cete heure, come de disseisines unqore affaire, & q̃ briefs sur ceo a la p'suyte des pleinifs soient desore faitz en la Chauncellerie sanz nulle maðe de cont'diccion en due forme.

**xj.**

Item combn q̃ nadgairs en divses plementz tenuz a Westm̃ les ans du regne nre dit ꝟ le Roi quint & sisme, furent faitz divses ordinances, & estatutz des pessoners de Londres & dau'ts vitaillers & auxint des vineters & la vente des vins, & sur ce mesmes les ordinances & estatutz oveꝗ les peynes en ycelles contenuz furent publiez & ꝓclamez pmy le Roialme sicome en les ditz ordinances & estatutz pluis pleinement purra apparoir; Nientmeyns p' ꝯteins enchesons a la requeste des Cões Denglet're sur ceo especialment faite, est assentuz & accordez q̃ mesmes les ordinances & estatutz des Pessoners Vineters & Vitaillers, faitz en les ans desuisditz, soient de tout anientiz & repellez & pdent lour force & ꝟtue; Sauvez nientmeins a nre ꝟ le Roi touts les forfaitures des vins a lui apptenantes p ꝟtue de mesmes les ordinances & estatutz qantal temps passez. Purveuz touz foitz q̃ toutz les [vins '] & vitaillers siõn Pessoners come au'ts ove leur vitailles venantz a la dce Citee de Londres, soient desore desouz le gov̄naile [& reulle '] des Meir & Aldermannes de la Citee avand̃e p' le temps esteantz come aunciennement y soleient estre.

**M. 18.**

Item come nadgairs en plement tenuz a Westm̃ lan du regne nre dit ꝟ le Roi tierce, a la requeste des Cões & p assent des ꝑs temporels, estoit ordeignez & assentuz & sur grevouse peyne defunduz q̃ null liege le Roi nautre ṗsone quelconq̃ de quel estat ou condicion qil fuist, ꝓndroit ne receiv[r]oit delors enavant deinz le Roialme Denglet're pcuracie, fre datto'ne, ne ferme, nautre administraciõ p endenture nen autre maðe quelconq, de nulle ṗsone dascun benefice de Seinte Esglise deinz le dit Roialme fors tantseulement des lieges nre ꝟ le Roi de mesme le Roialme sanz especiale g'ce & exꝓsse congie de nre ꝟ le Roi sur ꝯteine peine comprise en lestatut avantdit, assentuz est ore & accordez p mesmes les ꝑs q̃ mesme lestatut tiegne ses

**xij.**

¹ *Vinters Old Printed Copies.*
² *Interlined on the Roll.*

force & ptue en toutz points; et outre ceo est auxint assentuz q̃ ai aacun alien eit purchacez ou desore purchace aacun benefice de Seinte Esglise Dignite ou autre & en ppre paone pigne possession dicelle ou loccupie de fait, deinz mesme le Roialme, soit il a son oeps ppre, ou al oeps dautri sanz especiale congie du Roi, soit il compris en mesme lestatut, & outre ceo encourge en toutz points tielx peines & forfaiture come sont ordeignez p un autre estatut fait en lan xxvᵉ del regne luy noble Roi E. aiel nr̃e eᵗ le Roi qore est, contre ceux qi purchacent pvisions dabbeies ou Priories; et enoutre au fyn q̃ tielx licences ne se facent desore enavant, le Roi voet & comande a toutz aes lieges & autres qils lour abstiegnent de cy enavant de luy prier daacuna tiela licences doner; et si voet auxi le Roi luy mesmes abstiegner de doner aacune tiele licence, durantes les guerres horspris au Cardinal de Naples ou a autre especiale peone a qi le Roi soit p especiale cause tenuz.

xiij. 
Item aes ordeignez & assentuz & le Roi defende q̃ desoremes nult hõme chivache deinz le Roialme armez, encontre la forme de lestatut de Norhamptoñ sur ce fait, ne ovesq̃ lancegay deinz mesme le Roialme, les queux lancegayes soient de tout ousten deinz le dit Roialme come chose defendue p nr̃e eᵗ le Roi, sur peine de forfaiture dicelx lancegaies armures & autᵗ herneys quelconqes es maynz & possession de celluy qi les portᵃ desore deinz mesme le Roialme contre cestz estatut & ordinances sanz especiale congie de Roi nr̃e eᵗ.

xiiij. 
Item aes briefs de p̃munire faᵗ est assentuz & accordez q̃ ceux ꝟ queux tielx briefs sont portez, & qi sont de p̃sent hors de Roialme & sont de bone fame & sient faitz lo' geñalx atto'nes devant lo' deptir, q̃ le Chaunceller [Denglet̃re⁎] pur le temps esteant, p ladvis des Justices purra g̃ntier q̃ mesmes les peones purront apparoir & responde & faire & resceivre ce q̃ la ley demande, p lo' geñalx atto'nes avantdiz siavant come es autres cas & querelez; et ceux peones qi decy enavant passeront p licence nr̃e eᵗ le Roi & sient auxint de bone fame, q̃ a lo' requeste le dit Chaunceller p ladvis des Justices lour purra g̃ntier defaire lo' geñalx atto'nes en la Chancellerie p patent du Roi devant lo' passer, [a responder⁎] sibn es ditz briefs de p̃munire faᵗ, come en autᵗ querelez en quel cas toutes voies soit exp̃sse mencion [faite¹] des briefs & querelez de p̃munire faᵗ; et celle patente ensi faite, purront des lors les ditz atto'nes en absence de lo' Meistres, responder p eux & autᵗ atto'nes desouz eux, devant quelconq, juge du Roialme & faire & resceivre el dit cas, siavant come en nult autre cas nientcontresteant aacun estatut fait a contr'ie avant ces heures.

Item sur la grevouse pleinte qest faite des meynteno's des querelez & chaumpto's; est ordeignez & assentuz q̃ lestatutz ent faitz en les ans du regne le Roi Edward tiel nr̃e dit eᵗ le Roi primer & quart, et auxint en lan de nr̃e eᵗ le Roi qore est primer, soient tenuz & gardez & duement executz en toutz pointz.

Item est assentuz & le Roi defende estroitement q̃ decy enavant nulle paone aliene ou denszein de quelconq, estat ou condition qil soit amesne ou envoie ou face amesner ou envoier p p̃re ou p mer hors du Roialme Denglet̃re aa aacunes pᵗies Descoce en prive ne en appt aacune maᵗe darmure de blee de breex ne dautre vitaille ou dautre refresshchement quelconq,, sur peine de forfaiture de mesmes les vitailles armures & des autres choses avantdites ensemble avec, les niefs vesseulx charettes & chivalx qi les portent ou amenent, ou de la ꝟroie value dicelles, si enai ne soit q̃ le

⁎⁎¹ Interlined on the Roll.

---

Force and Effect in all Points; and moreover it is assented, That if any Alien have purchased, or from henceforth shall purchase any Benefice of Holy Church, Dignity, or other Thing, and in his proper Person take Possession of the same, or occupy it himself within the Realm, whether it be to his own proper Use, or to the Use of another, without especial Licence of the King, he shall be comprised within the same Statute; and moreover shall incur all Pains and Forfeitures in all Points as is before ordained by another Statute made the Five and twentieth Year of the noble King Edward the Third, Grandfather to our Lord the King that now is, against them that purchase Provisions of Abbeys or Priories; and to the Intent that such Licences shall not be from henceforth made, the King willeth and commandeth to all his Subjects and other, that they shall abstain them from henceforth to pray him for any such Licence to be given; and also the King himself will refrain to give any such Licence during the Wars, except to the Cardinal of Naples, or to some other special Person to whom the King is beholden for a special Cause.

ITEM, It is ordained and assented, and also the King doth prohibit, That from henceforth no Man shall ride in Harness within the Realm, contrary to the Form of the Statute of Northampton thereupon made, neither with Launcegay within the Realm, the which Launcegays be clearly put out within the said Realm, as a Thing prohibited by our Lord the King, upon Pain of Forfeiture of the said Launcegays, Armours, and other Harness, in whose Hands or Possession they be found that bear them within the Realm, contrary to the Statutes and Ordinances aforesaid, without the King's special Licence.

ITEM, In Writs of Præmunire facias, It is assented and agreed, That they against whom such Writs be sued, and who at this Time be out of the Realm, and be of good Fame, and have made their general Atturnies before their departing, that the Chancellor of England for the Time being, by the Advice of the Justices, may grant, that the same Persons may appear to answer, to do, and to receive that Thing which the Law demandeth, by their general Atturnies aforesaid, as well as in other Causes and Quarrels; and those Persons which from henceforth shall pass by the King's Licence, and be of good Fame, that at their Request the Chancellor, by the Advice of the Justices, may grant to them to make their general Atturnies in the Chancery by the King's Patent, before their Passage, to answer as well in the said Writs of Præmunire facias, as in other Writs and Plaints; in which Case express Mention shall be made at all Times of the Writs and Plaints of Præmunire facias; and this Patent so made, the said Atturnies from henceforth, in Absence of their Masters, may answer [for them, and make¹] other Atturnies under them, before any Judge of the Realm, [to⁎] do and receive in the said Case as much as in any other Case or Matter, notwithstanding any Statute made to the contrary heretofore.

ITEM, For the grievous Complaint that is made of Maintainers of Quarrels and Champertors; It is ordained and assented, That the Statutes thereof made in the First and Fourth Years of King Edward, Grandfather to our Lord the King that now is, and also in the First Year of our Lord the King that now is, shall be holden and kept, and duly executed in all Points.

ITEM, It is assented, and the King straitly defendeth, That from henceforth no Person, Alien nor Denizen, of whatsoever Estate or Condition that he be, shall carry nor send, nor do to be carried nor sent, by Land nor by Sea, out of the Realm of England, to any Parts of Scotland, privily nor apertly, any Manner of Armour, Corn, Malt, or other Victuals, or any other refreshing, upon Pain of Forfeiture of the same Victuals, Armours, and other Things aforesaid, together with the Ships, Vessels, Carts, and Horses which shall bring or carry the same, or of the very Value of the same, except so it be

¹ *by themselves and*    ⁎ *and*

---

who shall also be liable to the Penalties of 25 Ed.III. st. 5. c. 22.

The King's Licence to the contrary shall not be asked for.

XIII. No Man shall ride armed contrary to the Statute 2 Edw. III. chapter 3.

XIV. For enabling Parties out of the Realm to appoint Attornies in Writs of Præmunire.

XV. Statutes 1 Edw. III. stat. 2. c. 14; 4 Ed.III c.11; 1 Ric. II. c. 4; against Maintenance, &c. confirmed.

XVI. No Armour or Victual shall be sent into Scotland without Licence of the King; on Pain of Forfeiture thereof.

that the King do give his special Licence to the contrary. And to the Intent that these Ordinances be duly kept and put in due Execution, It is also assented, that he which after Proclamation thereof made, espy and prove that any hath offended or forfeit in any Point against the Form of said Ordinance, shall have the Third Part of the said Forfeitures wholly to his own Use (¹).

**XVII.** *When Mainpernors shall be liable in Damages by Delay.*

ITEM, It is assented and accorded, That in Writs of Debt, Trespass, and Account, and in all other Cases where Mainprise and Writs of Supersedeas be grantable, that if the Persons [comprised *] come not before the Judges at a Day comprised in the same Mainprise, and by so much the Plaintiff is put to Delay and Loss, the said Mainpernors shall be answerable to the Plaintiffs of a certain Sum of Silver, to be limited by the Discretion and Advice of the said Judges, having Consideration to the Quality and Quantity of the Damages of the Parties, and of the Things in Demand. And this Ordinance of Mainpernors shall endure in Assay till the next Parliament only.

[² And therefore We command you that as well the said Statute of Winchester, four times in each Year from henceforth, in Manner as above is ordained, as the other Statutes and Ordinances above written, in all the Cities, Boroughs, Market Towns, and other notable laces within your Bailiwick, where it shall seem to you most expedient, within Franchise and without, you do cause to be proclaimed on our behalf, and to be published and duly kept and observed according to the Form and Effect of the same. Given under the Witness of our Great Seal at our Palace of Westminster the Twenty-sixth Day of November, in the Seventh Year of our Reign.³]

Like Commands of the King are directed to the several Sheriffs throughout England, under the same Date.

¹ *for his labour* * *mainprised*
² *Former Translations read only thus :*
And therefore We command you, &c. Dated, &c.

Roi n̄re ſᵉ ꝑent donne ſa licence eſpeciale a cont̄rie. Et au fyn q̃ ceſte ordinance ſoit duement garded & mys en bone execucion eſt auxint aſſentuz q̃ celluy qi aꝑs q̃ proclamacion ent ſoit faite purra eſpier & ꝑver qaecun eit meſpris, ou forfait en aſcun point contre la forme de ceſte ordinance, eit la tierce ptie des dites forfaitures en̄ement a ſon ꝑpre oeps ꝑ' ſon ꞇ'vaille.

Item eſt aſſentuz & accordez q̄en briefs de dette trespas & de accompte, & en toutz autres cas ou maynprise & brief de Supersedeas ſont g̃ntables, ſi les perſones maunpriſez ne viegnent mye devant les Juges au joᵉ compris en meſme la meynprise, & ꝑ tant le pleintif ſoit mys en delay & pde, ſoient les ditz meinp̄nors reſpoignables as pleintifs dune c̄teine ſome, (¹) a limiter ꝑ la diſcrecion & adviſ des ditz Juges, eiantz conſideracion a la qualitee & quantitee des damages du ptie & de la chose en demande. Et ſi durera ceste ordinance des mainpno's en aſſaie, tanq, al ꝑchein plement tantſoulement.

Et purce vous mandons q̃ ſibn le dit Eſtatut de Wyncestre quatre foitz chescun an decy enavant ꝑ maſſe q̃ deſſus eſt ordeignez, come les autres Eſtatutz & ordinances deſſuſeſcritz en toutz les Citees Burghs villes marchees & autres lieux notables deinz vꝛe baillie ou vous verrez q̃ mieutz ſoit affaire deinz franchise & dehors, facez ꝑclamer deꝑ nous & publier & duement garder & tenir ſelonc la forme & effect dicelles. Don̄ ꝑ teſmoignance de n̄re g̃nt Seal a n̄re Paleys de Westm̄ avantdit le xxvjᵐᵉ jour de Novembre lan de n̄re regne ſeptiſme.

Conſimilia mandata ꝓ dirigunt' ſingulis Vicecomit̄bᵹ ꝑ Angl ſub eadem dat̄.

¹ *dargent Old Printed Copies.*

---

## Anno 8° RICARDI, II. A.D. 1384.

### Statutū apud Ꝡeſtm̄ anno octavo editū.

#### STATUTE MADE AT WESTMINSTER IN THE EIGHTH YEAR.

TO the Honour of God, and at the Request of the Commonalty of the Realm of England made to our Lord the King in his Parliament holden at Westminster in the Morrow of St. Martin, the Eighth Year of his Reign ; the same our Lord the King of the Assent of the Prelates, Great Men, and Commons aforesaid, hath caused to be made in the same Parliament, a certain Statute for the common Profit of the said Realm, and especially for the good and just Governance, and due Execution of the Common Law, in the Form following.

**I.** *Liberties of the Church, and Statutes confirmed.*

FIRST, It is [ordained and enacted,*] that Holy Church have all her Liberties ; and that the Great Charter, and the Charter of the Forest, the Statutes of Purveyors and Labourers, and all other Statutes and Ordinances heretofore made and not repealed, shall be holden and observed, and put in due Execution according to the Form and Effect of the same.

**II.** *No Lawyer shall be a Judge in his own Country.*

ITEM, It is [ordained and assented,*] That no Man of Law shall be from henceforth Justice of Assises, or of the common Deliverance of Gaols in his own Country ; and that the Chief Justice of the Common Bench be assigned amongst other to take such Assises, and deliver Gaols ; but as to the Chief Justice of the King's Bench, it shall be as for the most part of an hundred Years last past was wont to be done.

¹ * *accorded and statuted* MS. *Tr.* 2.

*Ex Rot. Stat. in Turr. Lond. II. m.* 18.

AD honorem dei & requiſic̄oem c̄oitatis regni Angl ſc̄am d̄no Regi in pliamento ſuo tento apud Weſtm̄ in Craſtino Sc̄i Martini anno regni ſui octavo, idem d̄n̄s Rex de aſſenſu Prelatoꝗ Magnatū & C̄oitatis ꝓd̄c̄e quoddam ſtatutū in eodem pliamento ꝓ c̄oi utilitate d̄c̄i regni & ꝑſertim ꝓ bona & juſta gub̄nac̄oe ac debita execuc̄oe c̄ois legis fieri fecit in forma ſubſequenti :

In primis concordatū eſt & ſtatutū q̄d ſc̄a eccl̄ia h̄eat om̄es lib̄tates ſuas, & q̄d Magna Carta & Carta de Foreſta, Statuta de ꝗviſorib; & laboratorib; & om̄ia alia ſtatuta & ordinac̄oes ante hec t̄epora edita & minime revocata teneant' obſervent' & execuc̄oi debite demandent' juxta formam & effc̄m eodem.

Item concordatū eſt & ſtatutū q̄d nullus homo de lege ſit decet̄o Juſtic̄ aſſiſaꝗ vel c̄ois delib̄ac̄ois gaolaꝗ in ꝑpria pr̄ia ſua et q̄d capitalis Juſtic̄ de c̄o Banco aſſignet' int̄ alios ad h̄oi aſſiſas capiend & ad gaolas deliband ſet quoad capitalem Juſtic̄ de Banco Regis fiat ſicut ꝓ majori pte Centū annoꝗ pꝛ ꝑ̃itoꝗ fieri conſuevit.

Ward of Farringdon-Within may elect an Alderman, wise, sufficient, and able to govern the said Ward Within, and to be named the Alderman of the Ward of Farringdon-Within; and that between this and the said Feast of Saint Gregory the People of the Ward of Farringdon-Without may elect another Alderman, wise, sufficient, and able to govern the said Ward Without; and to be named the Alderman of the Ward of Farringdon-Without: And that the said Two Aldermen so elected may be established and not removed, except for Cause reasonable, as is ordained and granted by our said Lord the King in this Parliament, of the other Aldermen of the said City.

garde de Farndoñ dedeins puissent eslire un Alderman sage sufficeant & able p' govñer mesme la garde dedeins, & estre nome lalderman̄ de la garde de Farndoñ dedeins; et q̃ pentre cy & le dit fest de Seint Gregoire les gentz de la garde de Farndoñ dehors puissent eslire un autre Aldirman sage sufficeant & able p' govñer mesme la garde dehors, & estre nomez lalderman de la garde de Farndoñ dehors. Et q̃ les ditz deux Aldermans issint eslux puissent estre estͣblix & nemye remoez si noun p cause resonable, come ordeinez est & g'ntez p n̄re dit s' le Roi en cest plement des aut̃s Aldermans du dite Citee.

---

For the proclaiming the Statute.

THE King to the Sheriff of Kent, Greeting. A certain Statute, in our last Parliament holden at Westminster, by Us with the Assent of the Great Men and Commons of our Realm of England there assisting Us, made, We do send to you in Form Patent; Commanding that the same Statute and all and singular the Articles in the same contained, in the Cities, Boroughs, Market Towns, and other Places within your Bailiwick, where you shall see it to be most expedient, you do cause to be publicly proclaimed, and as far as in you lieth, to be firmly and inviolably observed. Witness the King at Westminster, the first Day of June.

By the King Himself and Council.

Like Writs are directed to the several Sheriffs throughout England ; and to John Duke of Aquitain and Lancaster, or to his Chancellor in the same Duchy of Lancaster, under the same Date.

R̃ Vic̃ Kanc̃, saltm. Quoddam statutum in ultimo pliamento ñro apud Westm̃ tento p nos de assensu Magnatum & Cōitatis regni ñri Angl' nobiscum ibidem tunc assistenciū editū tibi mittim̃ in forma patentī ; Mandantes qd Statutum illud & omñes & singulos articulos in eodem contentos, in Civitatibus Burgis Villis m̃catoriis & aliis locis infra balliṽ tuam ubi melius expediri videris, publice pclamari & quantum ad te pͣtinet firmit̃ & inviolabilit̃ observari fac̃. T. R̃. apud Westm̃ primo die Junii.

p ipm̃ Regem & consilium.

Consimilia br̃ia dirigunt' singulis Vicecomitib; p Angl' ; ac Johi Duci Aquit̃ & Lancastr̃ vel ejus Cancellario in eodem Ducatu Lancastr̃ sub eadem data.

D pclamaϑe statutoᵖ pclamand.

---

Anno 20° RICARDI. II.    A.D. 1396-7.

---

### Statutū de Anno vicesimo.

### STATUTE of the Twentieth Year.

In Margine Rotuli.

THE KING at his Parliament holden at Westminster in the Feast of Saint Vincent, the Twentieth Year of his Reign, by the Assent of the Prelates, Lords, and Commons of his Realm [of England,] assembled in the same present Parliament, for the Quietness and Tranquillity of his People, hath made certain Statutes and Ordinances in the Form which followeth :

Recital of St. 7 R. II. c. 13.

FIRST, Whereas in a Statute made the Seventh Year of the Reign of the King that now is, it is ordained and assented, That no Man shall ride armed within the Realm, against the Form of the Statute of Northampton thereupon made, nor with Launcegays within the same Realm ; and that the said Launcegays shall be utterly put out within the said Realm, as a Thing prohibited by the King, upon Pain of Forfeiture of the same Launcegays, Armours, or any other Harness, in the Hands and Possession of them that bear them, from henceforth within the same Realm against the same Statutes and Ordinances, without the King's special Licence :

*Ex Rot. Stat. in Turr. Lond.* II. m. 4.

LE ROY en son parlement tenuz a Westm̃ en la feste de Seint Vincent lan de son roialme vintisme, del assent des Prelatz s̃rs & Cōmunes de son roialme en mesme le parlement, pur quiete & t̃nquillite de son poeple ad fait c̃teins estatutz & ordenances qensuient.

Prim̃ement, come un estatut fait lan septisme du regne n̄re Seignur le Roy soit ordeignez & assentuz q̃ nutt hōme chivache deins le Roialme armez contre la fourme de lestatut de Norhamptoñ sur ce fait, ne ovesc̃ lancegaye deins mesme le roialme, et q̃ les ditz lancegayes soient de tout oustez deins le dit Roialme, come chose defendue par le Roy sur peyne de forfaiture dicelles lancegayes armures & aut̃s hernoys quelconques, es mayns & possessiō dycelx qui les porͭta delors deinz mesme le Roialme encontre ycelles estatutz & ordenances sanz esp̃iale congie du Roy :

Nr̃e Seignur le Roy considerant le grant clamour a luy
fait en cest p̃sent plement de ce q̃ le dit estatut nest
mye tenuz, Si ad ordeignez & establiz en mesme le
plement q̃ les ditz estatutz soient pleinement tenuz &
gardez & duement executz; et q̃ les ditz lancegayes
soient tout out̃ment oustez sur la peine contenue en
le dit estatut de Northamptoñ & outre de fair fyn &
ranceon au Roy. Et outre ce q̃ nuĺĺ ĺ', Chivaler nautre
petit ne grant aile ne chivache p̃ noet ne jour armez
ne porte Palet ne chapeĺ de ferre nautre armure sur
la peine susd̃te; Sauvez & exceptz les officñ & Mi-
nistres du Roy enfaisantz leur offices. Et outre ce le
Roy voet & ad ordeignez q̃ lestatut fait lan de son
regne prisñe de liv̄ee des Chaperons soit tenuz & gardez
sur la peine contenue en mesme lestatut & sur peine
destre emprisonez & de fair fyn & ranceon au Roy.

Item q̃ Vadletz appellez Yomen ne nuĺĺ auĺ de
meindre estat qesquier ne use ne porte nuĺĺ signe ne
liv̄ee appelle liv̄ee de compaignie dascun ĺ' deins le
roialme, sil ne soit menial & familier ou officer conti-
nuel de son dit ĺ' et q̃ les Justices de la paix' aient
poair denquer de ceux q̃ font a lencontre & de les
punir selonc leur discrecion.

Item le Roy voet & defende q̃ nuĺĺ ĺ' nautre du
pais petit ne grant ne soit seant en Bank ovesq̃ les
Justices as assises p̃ndre en leur sessions es Countees
Denglet̃re sur grief forfaiture v̄s le Roy; Et ad chargez
ses ditz Justices qils ne soeffrent le contraire estre fait.

Item q̃ come il soit contenuz en un estatut de ĺ'
Edward nadgairs Roy Denglet̃re Aiel a nr̃e ĺ' le Roy
qorest lan de son regne vynt & oetisme, q̃ nulle man̄e
de nief q̃ soit frette dev̄s Englet̃re ou aillours soit
artez de venir a nul port Denglet̃re ne y dem̃er contre
le gree des Mestres & Mariñs dicelle, ou des Marchantz
as queux les biens sont, et si tielx niefs veignent de
gree ou soient chacez p̃ tempeste ou auĺ infortune ou
meschief a ascun port Denglet̃re & les Meistres &
mariñs ou Marchantz de mesmes les niefs voillent
vendre & deliv̄er p̃tie de leur m̃chandises p̃ loure bone
volunte, bien lise a chescuny tieles m̃chandises achatre
franchement sanz empeschement en le port ou tieles
niefs viendront, tout ne soient les m̃chandises mises a
la t̃re pur vendre; Et q̃ les Meistres Mariñs & Mar-
chantz, ap̃s ce qils av̄ont issint venduz ce q̃ lour plerra
de leur ditz biens & paie ent la custume, puissent
f̃unchement deptier & aler ove lour niefs & tout le
remenant de lour biñs pla ou lour plerra sanz cus-
tume ent paier : Nr̃e Seignur le Roy p̃' la quiete &
ease de son poeple voet q̃ le dit estatut soit tenuz &
gardez en toutz pointz & duement executz nient con-
treesteant ascune ordeignance ou usage a cont̃rie.

Item pur ce q̃ les Cõmunes cunt fait compleint q̃
plusours g̃ntz meschiefs extorsions & disease sont faitz
p̃ div̄ses gentz de mauveis condicion q̃ de leure auĉto-
ritee demesne p̃ignont & font p̃ndre roialment chivalx
& auĺs choses & bestes hors de leur charues charettes
& mesons, disantz & imaginantz qils sont a chivaucher
en hastifs messages ou bosoignes, la ou en v̄ite ils ne
sont aucunement privez de nulle bosoigne ou message,
mes soulement en deceite & subtilite p̃' p̃ndre chivalx

---

Our Lord the King, considering the great Clamour
made to him in this present Parliament, because that
the said Statute is not holden, hath ordained and esta-
blished in the said Parliament, That the said Statutes
shall be fully holden and kept, and duly executed; and
that the said Launcegayes shall be clear put out upon
the Pain contained in the said Statute of Northampton,
and also to make Fine and Ransom to the King. And
moreover, that no Lord, Knight, nor other, little nor
great, shall go nor ride by Night nor by Day armed,
nor bear [Sallet'] nor Skull of Iron, nor [of'] other
Armour, upon the Pain aforesaid ; save and except the
King's Officers and Ministers in doing their Office.
And Moreover, the King will and hath ordained, that
the Statute made the First Year of his Reign, of Live-
ries of Hats, shall be holden and kept upon the Pain
contained in the same Statute, and upon Pain to be im-
prisoned, and make Fine and Ransom to the King.

ITEM, That no Varlets called Yeomen, nor none
other of less Estate than Esquire, shall use nor bear no
[Sign of Livery'] called Livery of Company of any
Lord within the Realm, unless he be menial and fami-
liar or continual Officer of his said Lord. And that the
Justices of the Peace shall have Power to enquire of
them, which do to the contrary, and them to punish
according to their Discretion.

ITEM, The King doth will and forbid, That no
Lord, nor other of the Country, little nor great, shall
sit upon the Bench with the Justices to take Assises, in
their Sessions in the Counties of England, upon great
Forfeiture to the King ; and hath charged his said Jus-
tices, that they shall not suffer the contrary to be done.

ITEM, Whereas it is contained in a Statute of the
late King Edward, Grandfather to the King that now
is, the xxviij Year of his Reign, That no Manner of
Ship, which is freighted toward England, or elsewhere,
shall be compelled to come to any Port of England, nor
there to tarry against the [Agreement'] of the Masters
and Mariners of the same, or of the Merchants to whom
the Goods be ; and if such Ships come of their own
Good-will, or be driven by Tempest, [Casualty, or other
Misfortune,'] to any Port of England, and the Masters
or Mariners, or Merchants of the same Ships, will sell or
deliver Part of their Merchandizes with their Good-will,
it shall be lawful to every Person to buy such Mer-
chandizes freely without Impeachment in the Port where
such Ships shall come, albeit the Merchandizes be not
[put to Sale to the Land ;"] And the Masters, Mariners,
and Merchants, after that they have so sold so much as
pleaseth them of their said Goods, and the Custom
thereof paid, may freely depart and go with their Ships,
and all the Remnant of their Goods, where it shall
please them, without paying thereof Custom : Our said
Lord the King, for the Quietness and Ease of his People,
willeth, That the said Statute shall be holden and kept
in all Points, and duly executed, notwithstanding any
Ordinance or Usage to the contrary.

ITEM, Forasmuch as the Commons have made Com-
plaint, that many great Mischiefs, Extortions, and Op-
pressions be done by divers People of evil Condition,
which of their own Authority take and cause to be taken
royally Horses and other Things, and Beasts out of their
Wains, Carts, and Houses, saying and devising that they
be to ride on hasty Messages and Business, where of
Truth they be in no wise privy of any Business or
Message, but only in Deceit and Subtilty by such Colour

*Margin notes (right):*

Confirmation thereof.

No Man shall ride or go armed.

The Statute 1 Ric II. c.7, touching giving of Liveries, confirmed.

II. Liveries of Companies restrained.

III. None shall sit upon the Bench with Justices of Assise.

IV. Recital of St. 28 Edw. III. chapter 13, concerning Merchants Strangers.

Confirmation thereof.

V. Penalty for taking Horses, &c. for the King's Service, with-out Warrant.

*Footnotes (bottom):*

¹ *Prestle*  ² Omit this word.  ³ *Badge or Livery*  ⁴ Will  
⁵ or other Misfortune or Mischief,  ⁶ put to land, to sell.

**1409.**

*Membrane 24d—cont.*

Jan. 20.
Westminster.
To the sheriffs of London. Writ of *supersedeas*, and order by mainprise of William Carneby, John Laweson, William Clifforde and Henry Cotes, each of London ' wever,' to set free Adam ' Jonesservant Boston cooke,' if taken at the several suits of Richard Meryot of London ' goldsmyth ' and Thomas Totenham averring threats.

Jan. 26.
Westminster.
John Bolyngbroke esquire to Master John Kyngton clerk, William Wilyngham parson of Ketilthorp and Simon Fouler. Recognisance for 40*l.*, to be levied etc. in Notynghamshire.

Feb. 7.
Westminster.
To the sheriff of York. Order upon sight etc. to cause proclamation to be made, that no man of whatsoever estate or condition shall under pain of forfeiture take over wool, corn or other merchandise in any places by the sea called ' crykes ' or any other places, known ports excepted, without special licence of the king.
Like writs to the sheriffs of the following counties etc. :

| | |
|---|---|
| Kent. | Devon. |
| Suthampton. | Cornwall. |
| Essex. | Somerset. |
| Norffolk and Suffolk. | Bristol. |
| Surrey and Sussex. | |

Also to the chancellor of the county palatine of Lancastre.

### *MEMBRANE* 23d.

Jan. 25.
Westminster.
To the sheriffs of Norwich. Writ of *supersedeas*, and order by mainprise of John Alderforde, William Champeneys, Thomas Dounham and William Folkys of Norffolk to set free Alan Buntrell of Norwich ' corsour,' if taken at suit of the king and Nicholas Castel esquire for leaving the service of Nicholas Castel before the term agreed.

Feb. 4.
Westminster.
To the sheriffs of London. Writ of *supersedeas*, by mainprise of John Jay, Robert Aby, William Skendelby and Thomas Leefe of Suthwerke co. Surrey, in favour of John Welles of Suthwerke ' whittawer ' at suit of John Fuller of London ' glover ' averring threats.

Jan. 30.
Westminster.
To the mayor and sheriffs of London. Order upon sight etc. to cause proclamation to be made, on the king's behalf forbidding any man of whatsoever estate or condition to go armed within the city and suburbs, or any except lords, knights and esquires with a sword, and the king's will is that one sword and no more be borne after each of these, under pain of forfeiting armour and swords, or there to make unlawful assemblies, disputes, affrays or riots, and order to arrest all whom they may find so doing after the proclamation, with their armour and swords, and commit them to the nearest prison, there to abide until the king shall take order for their deliverance ; as the king has information that great number of disputes etc. are made within the city by certain lieges gathering

1409.

*Membrane 23d—cont.*

in such assemblies with hauberks, swords and other arms and armour contrary to divers statutes and other ordinances, and in these days more than were used to be in times past, in contempt of the king, to the terror and disturbance of the people and contrary to the peace, and his will is that peace be cherished there and elsewhere within the realm.                                   By K. and C.

Edmund Hamden, John Buktoft clerk, Walter Gayton, John Skrevan and John Kenwoldmerssh to Elizabeth la Vache late the wife of Philip la Vache knight. Grant that she shall not be troubled by them, their heirs or assigns for any waste now or hereafter made in the manor of Hognorton co. Oxford, whereof she is tenant for life with reversion to them, but shall be discharged of all action for waste therein. Dated 1 January 10 Henry IV.

*Memorandum* of acknowledgment, 6 February.

Henry ate Grene, otherwise 'Leycestre heraude,' to Thomas Fereby clerk and John de Pokelynton, their heirs and assigns. Charter indented with warranty of the three messuages, lands, wood etc. in the town and county of Hertforde which he had by feoffment of Maud Blakwelle his mother, sometime wife of Robert Blakewelle, and the reversion thereof after the death of William Blakewelle and Joan his wife, reserving to the grantor and his assigns during his life, with remainder to the grantees, the chamber on the right hand side just within the gate of one of those messuages wherein his mother lately dwelt, and a stable to that chamber adjacent, also the chamber there between the kitchen and the garden, with free ingress and egress, under a condition for defeasance of this grant if John de Pokelynton, his heirs and assigns, pay not 30*l.* to the grantor or his attorney, namely 10*l.* at Easter next, 10*l.* at Michaelmas following and 10*l.* at the Purification following, any clause in this charter and any money paid notwithstanding. Witnesses: Nicholas Schosse bailiff of Hertforde, Master Thomas Ferrour, John Carpenter, Henry Fuller, John Fleccher, William Lythyng. Dated Hertforde, 2 February 1408, 10 Henry IV.

*Memorandum* of acknowledgment, 7 February.

Feb. 9.
Westminster.

To the treasurer and the barons of the exchequer. Writ of *supersedeas omnino* in respect of any process against William Banastre, appointed with others, upon an information that John Kyghlay and John Kent banished Englishmen, Wybert Freton a banished Frenchman, the captain of Boulogne, John Burnet, William Ryncelyn and the captain of Normandy of France, and Uter Jonessone banished from Flanders committed and attempted at sea great number of robberies and misdeeds, contrary to the truce between England and France and to the appointment made at Lenlyngham by the ambassadors of England and France, whereby war might be like to arise, to arrest those robbers and evildoers, their accomplices and partisans and others of Seint

<div style="float:left">One Half of the Fines and Forfeitures to be unto Their Majefties, and the other Half to the Informer.

Meafurer of Salt, and Culler of Fifh.</div>

A N D further it is Enacted by the Authority aforefaid, That all Fines, Penalties, and Forfeitures arifing by force and virtue of this Act, fhall be, the one Half to Their Majefties, towards the Support of the Government of this Province, and the other Half to him or them that fhall inform and fue for the fame in any of Their Majefties Courts of Record within this Province.

B E it further Enacted by the Authority aforefaid, That there be a Meafurer of Salt, and Culler of Fifh in every Sea-port Town within this Province, to be appointed, as aforefaid, who being likewife fworn for the faithful Difcharge of that Office, fhall cull all merchantable Fifh, and meafure all Salt that fhall be imported and fold out of any Ship or other Veffel, and fhall have Three-half Pence for every Hogfhead of Salt by him fo meafured, to be paid, the one Half by the Buyer, the other Half by the Seller; and One Peny *per* Quintal for every Quintal of merchantable Fifh by him culled to be paid, one Half by the Buyer, and the other Half by the Seller.

---

<div style="float:left">Nº 6.

Continued 22 Aug. 1693.

Curfing and Swearing.

Prefumption.

Drunkenefs.</div>

## An Act for the Punifhing of Criminal Offenders.

B E it Enacted and Ordained by the Governor, Council, and Reprefentatives, in General Court Affembled, by the Authority of the fame, That if any Perfon or Perfons fhall prophanely Swear or Curfe in the hearing of any Juftice of the Peace, or fhall be thereof convicted by the Oaths of Two Witneffes, or Confeffion of the Party, before any Juftice or Juftices of the Peace, every fuch Offender fhall forfeit and pay unto the Ufe of the Poor of the Town where the Offence fhall be committed, the Sum of Five Shillings; and if the Offender be not able to pay the faid Sum, then to be fet in the Stocks, not exceeding Two Hours: And if any Perfon fhall utter more prophane Oaths or Curfes at the fame time, and in hearing of the fame Perfon or Perfons, he fhall forfeit and pay to the Ufe aforefaid, the Sum of Twelve Pence for every Oath or Curfe after the firft, or be fet in the Stocks Three Hours.

P R O V I D E D, That every Offence againft this Law fhall be complained of, and proved, as aforefaid, within Thirty Days next after the Offence committed.

F U R T H E R it is Enacted by the Authority aforefaid, That every Perfon convicted of Drunkennefs by View of any Juftice of Peace, Confeffion of the Party, or Oaths of Two Witneffes, fuch Perfon fo convicted, fhall forfeit and pay unto the Ufe of the Poor of the Town where fuch Offence is committed, the Sum of Five Shillings for every fuch Offence; and if the Offender be unable to pay the faid Sum, to be fet in the Stocks, not exceeding Three Hours, at the Difcretion of the Juftice or Juftices before whom the Conviction fhall be: And upon a fecond Conviction of Drunkennefs, every fuch Offender, over and above the Penalty aforefaid, fhall be bound with Two Sureties in the Sum of Ten Pounds, with Condition for the good Behaviour; and for want of fuch Sureties, fhall be fent to the Common Goal until he find the fame.

P R O V I D E D, That no Perfon fhall be impeached or molefted for any Offence againft this Act, unlefs he fhall be thereof Prefented, Indicted, or Convicted, within Six Months after the Offence committed.; and the Juftice or Juftices before whom Conviction of any of the aforefaid Offences fhall be, are hereby impowered and authorized to reftrain or commit the Offender, until the Fine impofed for fuch Offence be fatisfied; or to caufe the fame to be levied by Diftrefs and Sale of the Offender's Goods, by Warrant directed to the Conftable,

<div style="text-align:right">returning</div>

Digitized from Best Copy Available

returning the Overplus ( if any be. )  All such Fines to be levied within One Week next after such Conviction, and delivered to the Select-men, or Overseers of the Poor, for the Use of the Poor, as aforesaid.

It is further Enacted and Ordained by the Authority aforesaid, That whosoever shall steal or purloin any Money, Goods, or Chattels, being thereof convicted by Confession, or sufficient Witness upon Oath, every such Offender shall forfeit treble the Value of the Money, Goods, or Chattels so stoln or purloined, unto the Owner or Owners thereof; and be further punished, by Fine or Whipping, at the Discretion of the Court or Justices that have Cognizance of such Offence, not exceeding the Sum of Five Pounds, or Twenty Stripes : And if any such Offender be unable to make Restitution, or pay such Threefold Damages, such Offender shall be enjoyned to make Satisfaction by Service; and the Prosecutor shall be, and hereby is impowered to dispose of the said Offender in Service to any of Their Majesties Subjects, for such Term as shall be assigned by the Court or Justices before whom the Prosecution was. And every Justice of the Peace in the County where such Offence is committed, or where the Thief shall be apprehended, is hereby authorized to hear and determine all Offences against this Law : Provided, that the Damage exceed not the Sum of Forty Shillings. And if any Person shall commit Burglary by breaking up any Dwelling-house, Ware-house, Shop, Mill, Malt-house, Barn, Out-house, or any Ship or other Vessel lying within the Body of the County, or shall rob any Person in the Field or High-ways, every Person so offending shall, upon Conviction, be branded on the Forehead with the Letter *B* ; and upon a second Conviction, shall be set upon the Gallows for the space of One Hour, with a Rope about his Neck, and one End thereof cast over the Gallows, and be severely Whipt, not exceeding Thirty nine Stripes; and upon a third Conviction of the like Offence, shall suffer the Pains of Death, as being Incorrigible; and shall likewise, upon the first and second Convictions, pay treble Damages to the Party injured, as is provided in case of Theft.

And it is further Enacted by the Authority aforesaid, That if any Man commit Fornication with any single Woman, upon due Conviction thereof, they shall be fined unto Their Majesties, not exceeding the Sum of Five Pounds; or be corporally punished by Whipping, not exceeding Ten Stripes apiece, at the Discretion of the Sessions of the Peace, who shall have Cognizance of the Offence.  And he that is accused by any Woman to be the Father of a Bastard Child, begotten of her Body, she continuing constant in such Accusation, being examined upon Oath, and put upon the Discovery of the Truth in the time of her Travail, shall be adjudged the Reputed Father of such Child, notwithstanding his Denial, and stand charged with the Maintenance thereof, with the Assistance of the Mother, as the Justices in the Quarter-Sessions shall order; and give Security to perform the said Order, and to save the Town or Place where such Child is born, free from Charge for its Maintenance; and may be committed to Prison until he find Sureties for the same, unless the Pleas and Proofs made and produced on the behalf of the Man accused, and other Circumstances, be such as the Justices shall see reason to judge him innocent, and acquit him thereof, and otherwise dispose of the Child : And every Justice of the Peace, upon his Discretion, may bind to the next Quarter-Sessions him that is charged or suspected to have begotten a Bastard Child ; and if the Woman be not then delivered, the Sessions may order the Continuance or Renewal of his Bond, that he may be forth-coming when the Child is born.

Further it is Enacted by the Authority aforesaid, That every Justice of the Peace in the County where the Offence is committed, may cause to be staid and arrested all Affrayers, Rioters, Disturbers, or Breakers of the Peace, and such as shall ride or go armed Offensively before any of Their Majesties Justices, or other Their Officers or Ministers doing their Office, or elsewhere, by

*Marginal notes:*
Theft.
Burglary and Robb'ry.
Fornication.
Reputed Father of a Bastard.
Power of the Justice of Peace.

Digitized from Best Copy Available

by Night or by Day, in Fear or Affray of Their Majesties Liege People ; and such others as shall utter any Menaces or Threatning Speeches ; and upon View of such Justice or Justices, Confession of the Party, or other legal Conviction of any such Offence, shall commit the Offender to Prison, until he find Sureties for the Peace and good Behaviour, and seize and take away his Armour or Weapons, and shall cause them to be apprized and answered to the

Breach of the Peace.

King as forfeited : And may further punish the Breach of the Peace, in any Person that shall smite or strike another, by Fine to the King, not exceeding Twenty Shillings, and require Bond with Sureties for the Peace, or bind the Offender over to answer it at the next Sessions of the Peace, as the Nature or

Forcible Entry and Detainer.

Circumstance of the Offence may be ; and may make Enquiry of forcible Entry and Detainer, and cause the same to be removed, and make out Hue and Cries after Runaway Servants, Thieves, and other Criminals.

Lying and Libelling.

And it is further Enacted by the Authority aforesaid, That if any Person or Persons of the Age of Discretion ( which is accounted Fourteen Years, or upwards ) shall wittingly and willingly make or publish any Lye or Libel, tending to the Defamation or Damage of any particular Person, make or spread any false News or Reports, with Intent to abuse and deceive others, every such Person or Persons offending in any of the Particulars before mentioned, and being duly convicted thereof before One or more Justices of the Peace, shall be fined according to the Degree of such Offence, not exceeding the Sum of Twenty Shillings for the first Conviction, and find Sureties for the good Behaviour : And if the Party be unable to pay the said Fine, then to be set in the Stocks, not exceeding Three Hours, or be corporally punished by Whipping, at the Discretion of the Justice or Justices before whom the Conviction shall be, according as the Circumstances or Nature of the Offence shall be ; and the said Justice or Justices may restrain and commit the Offender until he pay the said Fine, and find Sureties for the good Behaviour, or may cause the Fine to be levied by Distress and Sale of the Offender's Goods ; and the Party or Parties grieved or injured by reason of any of the Offences aforesaid, shall or may take his or their Suit against any such Offender or Offenders in any Court of Record.

Forgery.

It is further Enacted by the Authority aforesaid, That if any Person or Persons, upon his or their own Head or Imagination, or by false Conspiracy and Fraud with others, shall wittingly, subtilly, and falsely forge or make, or subtilly cause, or wittingly assent to be forged or made, any false Deed, Conveyance, or Writing sealed, or the Will of any Person or Persons in Writing, to the Intent that the Estate of Free-hold or Inheritance, Right, Title, or Interest of any Person or Persons, of, in, or to any Lands, Tenements, or Hereditaments, shall or may be molested, troubled, defeated, recovered, or charged, or shall, as is aforesaid, forge, make, or cause or assent to be made or forged, any Obligation, or Bill Obligatory, Letter of Attorney, or any Acquittance, Release, or other Discharge of any Debt, Account, Action, Suit, Demand, or other Thing Personal ; or if any Person or Persons shall pronounce, publish, or shew forth in Evidence, any such false and forged Deed, Conveyance, Writing, Obligation, Bill Obligatory, Letter of Attorney, Acquittance, Release, or Discharge, as true, knowing the same to be false and forged, as is aforesaid, to the Intent above remembred, and shall be thereof convicted, either upon Action or Actions of Forger of false Deeds to be founded upon this Act at the Suit of the Party grieved, or otherwise according to the Order and due Course of Law, or upon Bill or Information, that then every such Offender shall pay unto the Party grieved his double Costs and Damages, to be found and assessed in such Court where the said Conviction shall be ; and also shall be set upon the Pillory in some Market-Town, or other open Place, and there to have One of his Ears cut off, and also shall have and suffer Imprisonment by the Space of One whole Year without Bail or Mainprize ; and the Party or Parties grieved by reason

Digitized from Best Copy Available

terposition disarmed of her natural weapons, free argument and debate, errors ceasing to be dangerous when it is permitted freely to contradict them :

II. BE it enacted by the General Assembly, That no man shall be compelled to frequent or support any religious worship, place, or Ministry whatsoever, nor shall be enforced, restrained, molested, or burthened in his body or goods, nor shall otherwise suffer on account of his religious opinions or belief; but that all men shall be free to profess, and by argument to maintain, their opinions in matters of religion, and that the same shall in no wise diminish, enlarge, or affect their civil capacities.

III. AND though we well know that this Assembly elected by the people for the ordinary purposes of legislation only, have no power to restrain the Acts of succeeding Assemblies, constituted with powers equal to our own, and that therefore to declare this Act to be irrevocable, would be of no effect in law; yet we are free to declare, and do declare, that the rights hereby asserted, are of the natural rights of mankind, and that if any Act shall be hereafter passed to repeal the present, or to narrow its operation, such Act will be an infringement of natural right.

*Marginal notes:*
No man compelled to frequent or support any religious worship. All men free to profess, and by argument to maintain their religious opinions.

Declaration that the rights by this Act asserted, are of the natural rights of mankind.

---

## General Assembly, begun and held at the Public Buildings, in the City of *Richmond*, on *Monday*, the 16th Day of *October*, in the Year of our Lord, 1786.

### C H A P. XXI.

#### An Act forbidding and punishing Affrays.

[Passed the 27th of November, 1786.]

BE it enacted by the General Assembly, That no man, great nor small, of what condition soever he be, except the Ministers of Justice in executing the precepts of the Courts of Justice, or in executing of their office, and such as be in their company assisting them, be so hardy to come before the Justices of any Court, or other of their Ministers of Justice, doing their office, with force and arms, on pain, to forfeit their armour to the Commonwealth, and their bodies to prison, at the pleasure of a Court; nor go nor ride armed by night nor by day, in fairs or markets, or in other places, in terror of the Country, upon pain of being arrested and committed to prison by any Justice on his own view, or proof by others, there to abide for so long a time as a Jury, to be sworn for that purpose by the said Justice, shall direct, and in like manner to forfeit his armour to the Commonwealth; but no person shall be imprisoned for such offence by a longer space of time than one month.

*Marginal note:* Punishment of persons going armed before Courts of Justice, or the Ministers of Justice, or in fairs or markets in terror of the Country.

### C H A P. XXII.

#### An Act against Conspirators.

[Passed the 27th of November, 1786.]

BE it declared and enacted by the General Assembly, That Conspirators be they that do confederate and bind themselves by oath, covenant, or other alliance, that every of them shall aid and bear the other falsely and maliciously, to move or cause to be moved any indictment or information against another on the part of the Commonwealth, and those who are convicted thereof at the suit of the Commonwealth, shall be punished by imprisonment and amercement, at the discretion of a Jury.

*Marginal note:* Who shall be deemed conspirators.

24627
North Carolina. Laws, Statutes, etc., 1792.
A Collection of the Statutes of the Parliament of England
in Force in ... North Carolina.
Newbern, 1792. xxvi, 424, [3] pp.
AAS copy.

# A
# COLLECTION
## OF THE
# STATUTES
#### OF THE PARLIAMENT O.
# ENGLAND
#### IN FORCE IN THE STATE OF
# NORTH-CAROLINA.



PUBLISHED ACCORDING TO A RESOLVE OF THE GENERAL ASSEMBLY,

By FRANCOIS-XAVIER MARTIN, Esq.

COUNSELLOR AT LAW.

*NEWBERN:*

FROM THE EDITOR's PRESS.

*1792.*

## CHAP. VIII.

*Nothing shall be taken for Beaupleader.*

ITEM, Whereas some of the realm have grievously complained, that they be grieved by Sheriffs, naming themselves the King's approvers, which take money by extortion for Beaupleader, the King will, that the statute of Marlebridge shall be observed and kept in this point.

## CHAP. XIV.

*None shall commit Maintenance.*

ITEM, Because the King desireth that common right be administered to all persons, as well poor as rich, he commandeth and defendeth, that none of his Counsellors, nor of his house, nor none other of his Ministers, nor no great man of the realm by himself, nor by other, by sending of letters, nor otherwise, nor none other in this land, great nor small, shall take upon them to maintain quarrels nor parties in the country, to the let and disturbance of the common law.

Statutes made at Northampton, tribus Septimanis Paschae, in the Second Year of the Reign of Edward the Third, and in the Year of our Lord 1328.

## CHAP. I.

*A Confirmation of the Great Charter and the Charter of the Forest.*

[*Unnecessary to be inserted.*]

## CHAP. III.

*No Man shall come before the Justices, or go or ride armed.*

ITEM, It is enacted, that no man great nor small, of what condition soever he be, except the King's servants in his presence, and his Ministers in executing of the King's precepts, or of their office, and such as be in their company assisting them, and also upon a cry made for arms to keep the peace, and the same in such places where such acts happen, be so hardy to come before the King's Justices, or other of the King's

Ministers doing their office with force and arms, nor bring no force in an affray of peace, nor to go nor ride armed by night nor by day, in fairs, markets, nor in the presence of the King's Justices, or other ministers, nor in no part elsewhere, upon pain to forfeit their armour to the King, and their bodies to prison at the King's pleasure. And that the King's Justices in their presence, Sheriffs and other ministers, in their bailiwicks, Lords of Franchise, and their bailiffs in the same, and Mayors and Bailiffs of cities and boroughs, within the same cities and boroughs, and borough-holders, constables and wardens of the peace within their wards shall have power to execute this act. And that the Justices assigned, at their coming down into the country, shall have power to enquire how such officers and lords have exercised their offices in this case, and to punish them whom they find that have not done that which pertain to their office.

## CHAP. V.

### The Manner how Writs shall be delivered to the Sheriff to be executed.

ITEM where it was ordained by the statute of Westminster the second, that they which will deliver their writs to the Sheriff shall deliver them in the full county, or in the rere county, and that the Sheriff or Under-Sheriff shall thereupon make a bill : it is accorded and established, that at what time or place in the county a man doth deliver any writ to the Sheriff or to the Under-Sheriff, that they shall receive the same writs, and make a bill after the form contained in the same statute, without taking any thing therefore. And if they refuse to make a bill, others that be present shall set to their seals, and if the Sheriff or Under-Sheriff do not return the said writs, they shall be punished after the form contained in the said statute. And also the Justices of Assize shall have power to enquire thereof at every man's complaint, and to award damages, as having respect to the delay, and to the loss and peril that might happen.

## CHAP. VI.

### Justices shall have Power to punish Breakers of the Peace.

ITEM, as to the keeping of the peace in time to come, it is ordained and enacted that the statutes made in time past, with the statute of Winchester, shall be observed and kept in every point : and where it is contained in the end of said statute of Winchester, that the Justices assigned shall have power to enquire of defaults, and to report to the King in his next parliament, and the King to remedy it, which no man hath yet seen, the same Justices shall have power to punish the offenders and disobeyers.

O

on faid fence, till it comes to the land improved by *George Sumner* ; then through faid land nearly the fame courfe, till it comes to the fouth-weft corner of faid *George Sumner*'s home meadow, fo called ; then turning and running eafterly in faid meadow, as the ditch which forms the fence is made, till it comes to the fouth end of *Benjamin Hawes*'s meadow ; then in the line between faid *Hawes*'s meadow, and the land of *William Richards* ; then in the line between faid *Richards*'s home lot, and the meadow lots, till it comes to *Cumming*'s brook, fo called ; thence on faid brook, till it comes to the line between *Stoughton* and *Sharon* ; thence on faid line till it comes to *Neponfet river* ; thence wefterly on faid river, till it comes to *Traphole brook* ; thence on faid brook, till it comes to the bounds firft mentioned—fhall be confidered as *one Common and General Field* ; and that the proprietors of faid lands, their heirs and fuccefiors be, and they hereby are incorporated and invefted with all the powers and privileges which the proprietors of Common and General Fields by Law are invefted with.

[This Act pafied *January* 22, 1795.]

CHAP. II.

An Act for repealing an Act, made and pafied in the year of our Lord, one Thoufand fix Hundred and Ninety-two, entitled, "An Act for punifhing Criminal Offenders," and for re-enacting certain Provifions therein.

Act repealed.

BE it enacted by the Senate and Houfe of Reprefentatives, in General Court affembled, and by the authority of the fame, That the faid Act be, and hereby is repealed, and made wholly null and void.

Juftices of the Peace empowered.

*And be it further enacted by the authority aforefaid,* That every Juftice of the Peace, within the county for which he may be commifioned, may caufe to be ftaid and arrefted, all affrayers, rioters, difturbers, or breakers of the peace, and fuch as fhall ride or go armed offenfively, to the fear or terror of the good citizens of this Commonwealth, or fuch others as may utter any menaces or threatening fpeeches, and upon view of fuch Juftice, confeffion of the delinquent, or other legal conviction of any fuch offence, fhall require of the offender to find fureties for his keeping the Peace, and being of the good behaviour ; and in want thereof, to commit him to prifon until he fhall comply with fuch requifition : And may further punifh the breach of the Peace in any perfon that fhall affault or ftrike another, by fine to the Commonwealth, not exceeding *twenty fhillings*, and require fureties, as aforefaid, or bind the offender, to appear and anfwer for his offence, at the next Court of General Seffions of the Peace, as the nature or circumftances of the cafe may require.

[This Act pafied *January* 29, 1795.]

CHAP.

**1801.** co unty, shall proceed against such offender, in the same manner as is heretofore prescribed for vagrants.

Keepers of certain gaming tables deemed vagrants. 1811, c. 112, s. 1, 2.

3. *Be it enacted,* That all and every keeper or keepers, exhibitor or exhibitors, of either of the gaming tables commonly called A. B. C. or E. O. tables, or faro bank, or of any other gaming cloth table, or bank of the same, or like kind, under any denomination whatever, shall be deemed and treated as a vagrant, and moreover it shall be the duty of any judge or justice of the peace, by warrant under his hand, to order such gaming table or cloth to be seized and publicly burned or destroyed ; said warrant shall be directed to some one constable within the county, whose duty it shall be, forthwith to execute the same : *Provided,* That nothing herein contained, shall be so construed as to extend to billiard tables.

Penalty for harboring vagrants. April 1784, c. 34, s. 4.

4. *Be it enacted,* That it shall not be lawful for any house keeper to harbor any idle person of the character aforesaid, for any longer time than is heretofore specified, under the penalty of twenty dollars for every such offence, to be recovered by warrant before any justice of the peace of the county where the offence is committed.

Duty of the justices herein. Apl. 1784, c. 34. 1811, c. 112, s. 1, 2.

5. *Be it enacted,* That it shall be the duty of each justice of the peace, on information being made on oath to him or them, that there is a person or persons of the aforesaid description, loitering in his or their county, then and in that case he or they shall issue his or their warrant against such person or persons agreeable to this act : *And provided,* he or they shall neglect or refuse so to do, it shall be deemed a misdemeanor in office, for which he or they shall be impeachable, and on conviction be removed from office.

Penalty for failing.

Proceedings against persons going armed contrary to this act.

6. *Be it enacted,* That if any person or persons shall publicly ride or go armed to the terror of the people, or privately carry any dirk, large knife, pistol or any other dangerous weapon, to the fear or terror of any person, it shall be the duty of any judge or justice, on his own view, or upon the information of any other person on oath, to bind such person or persons to their good behaviour, and if he or they fail to find securities, commit him or them to jail, and if such person or persons shall continue so to offend, he or they shall not only forfeit their recognizance, but be liable to an indictment, and be punished as for a breach of the peace, or riot at common law.

Felony to maim or disfigure any person, &c. Dec. 1754, ch. 15. 1807, ch. 73, s. 13.

7. *Be it enacted,* That if any person or persons shall unlawfully cut out or disable the tongue, put out an eye, slit a nose, bite or cut off a nose, ear or lip, or cut off or disable any limb or member, or stab any person whatsoever, in doing so, to maim, wound or disfigure in any of the manners before mentioned, such person or persons so offending, their counsellors, aiders and abettors, knowing of, and privy to the offence, shall be and are hereby declared to be felons, and shall suffer as in case of felony : *Provided nevertheless,* he or they shall be entitled to benefit of clergy, and be further liable to an action of damages to the party injured.

## CHAPTER LXXVI.

An Act describing the power of Justices of the Peace in Civil and Criminal Cases.

SEC. 1. BE *it enacted by the Senate, and House of Repre-* General jurisdiction of Justices of the Peace, and their duty in criminal cases, in arresting, trying, recognizing and committing offenders. *sentatives, in Legislature assembled,* That it shall be within the power, and be the duty of every Justice of the Peace within his county, to punish by fine not exceeding five dollars, all assaults and batteries that are not of a high and aggravated nature, and to examine into all homicides, murders, treasons, and felonies done and committed in his county, and commit to prison all persons guilty, or suspected to be guilty of manslaughter, murder, treason or other capital offence ; and to cause to be staid and arrested, all affrayers, rioters, disturbers or breakers of the peace, and such as shall. ride or go armed offensively, to the fear or terror of the good citizens of this State, or such others as may utter any menaces or threatening speeches; and upon view of such Justice, confession of the delinquent, or other legal conviction of any such offence, shall require of the offender to find sureties to appear and answer for his offence, at the Supreme Judicial Court, or Circuit Court of Common Pleas, next to be held within or for the same county, at the discretion of the Justice, and as the nature or circumstances of the case may require : and for his keeping the peace, and being of the good behaviour, until the sitting of the Court he is to appear before ; and to hold to bail all persons guilty or suspected to be guilty of lesser offences which are not cognizable by a Justice of the Peace; and require sureties for the good behaviour of dangerous and disorderly persons; and commit all such persons as shall refuse so to recognize, and find such surety or sureties as aforesaid ; and take cognizance of, or examine into all other crimes, matters and offences, which by particular laws are put within his jurisdiction.

SEC. 2. *Be it further enacted,* That all fines and forfeitures Breaches of the bye-laws of towns may be prosecuted before Justices of the Peace. accruing for the breach of any bye-law, in any town within this State, may be prosecuted for, and recovered before any Justice of the Peace in the town or county where the offence shall be committed, by complaint or information, in the same way and manner other criminal offences are prosecuted before the Justices of the Peace within this State.

SEC. 3. *Be it further enacted,* That any person aggrieved Persons aggrieved may appeal to the C. Court of Com. Pleas. at the sentence given against him, by any justice of the Peace, may appeal therefrom to the next Circuit Court of Common Pleas to be held within the same county, and shall, before his Must recognize with sureties, appeal is granted, recognize to the State in such reasonable sum, not less than twenty dollars, as the Justice shall order, with sufficient surety or sureties for his prosecuting his appeal ; and shall be held to produce the copy of the whole process, and produce copies of case and all writings filed before the Justice, at the Court appeal- at C. C. Common Pleas.

Failing to prosecute his appeal, his default to be entered.

ed to. And if he shall not there prosecute his appeal, and produce the copies as aforesaid, the Court shall order his default to be noted upon their record. And the said Court may

Court may order such case to be laid before Grand Jury, or arrest appellant, and affirm sentence, &c.

order the same case to be laid before the Grand Jury, or may issue an attachment against the body of such appellant, and cause him thereby to be brought before them, and when he is so in Court, shall affirm the sentence of the Justice against him, with all additional costs.

Justices may command assistance of sheriff, deputies and constables at riots, affrays, &c.

Sec. 4. *Be it further enacted,* That each Justice shall have authority to command the assistance of every Sheriff, Deputy Sheriff, Constable, and all other persons present at any affray, riot, assault or battery, and may fine any person refusing such assistance, in a sum not exceeding six dollars; to be disposed of for the use of the town where the offence shall be committed; and levied by warrant of distress on the offender's goods and chattels, and for want thereof on his body.

Justices may, on their own view, (in absence of sheriff, deputies or constables,) require any person to apprehend offenders.

Sec. 5. *Be it further enacted,* That any Justice of the Peace for the preservation thereof, or upon view of the breach thereof, or upon view of any other transgression of law, proper to his cognizance, done or committed by any person or persons whatever, shall have authority, (in the absence of the Sheriff, Deputy Sheriff or Constable,) to require any person or persons to apprehend and bring before him such offender or of-

Penalty for refusing to obey such Justice.

fenders. And every person so required, who shall refuse or neglect to obey the said Justice, shall be punished in the same manner as for refusing or neglecting to assist any Sheriff, Deputy Sheriff or Constable in the execution of his office as afore-

If the Justice be *known* or *declared*—plea of ignorance of his office not admissible.

said. And no person who shall refuse or neglect to obey such Justice, to whom he shall be known, or declare himself to be a Justice of the Peace, shall be admitted to plead excuse on any pretence of ignorance of his office.

Justices may grant subpœnas for witnesses in criminal cases:

Sec. 6. *Be it further enacted,* That Justices of the Peace within their respective counties, be, and they are hereby authorized and empowered to grant subpœnas for witnesses in all criminal causes pending before the Supreme Judicial Court and Circuit Court of Common Pleas, and before themselves

But not on behalf of the State without consent of Attorney General, or County Attorney, except before himself.

or any other Justice: *Provided,* That no Justice of the Peace shall grant subpœnas for witnesses to appear in any Court, except before himself, to testify on behalf of the State, unless by the request of the Attorney General or County Attorney. And all Sheriffs, Constables and other officers are directed and empowered to serve any warrant issuing from a Justice of the Peace.

Justices to account annually to State, County and Town Treasurers for all fines, &c.

Sec. 7. *Be it further enacted,* That the Justices of the Peace shall account annually with the Treasurer of the State, the Treasurer of their respective counties, and the town Treasurer, as the case may be, for all fines by them received or

Penalty for neglect.

imposed, upon pain of forfeiting the sum of thirty dollars, to be sued for and recovered by the Treasurer of the State, the county or town Treasurer for the time being, to which the said fines may respectively belong.

Sec. 8. *Be it further enacted,* That all civil actions, where-in the debt or damage does not exceed twenty dollars, (and wherein the title of real estate is not in question, and special-ly pleaded by the defendant,) shall, and may be heard, tried, adjudged and determined by any Justice of the Peace within his county ; and the Justices are severally empowered to grant summons, capias and attachment, at the request of any per-son applying for the same, directed to some proper officer within the same county, empowered by law to execute the same. And such summons or capias and attachment shall be duly served by such officer, seven days at the least before the day therein set for trial, otherwise the party sued shall not be held to answer thereon ; and if after such process shall be duly served, the party sued, after being duly called, shall not appear to answer to the same suit, the charge against him in the declaration shall be taken to be true, and the Justice shall give judgment against him for such damages as he shall find the plaintiff to have sustained, with costs ; and if the person sued shall appear to defend the suit or oppose the same, the Justice shall award such damages as he shall find the plaintiff to have sustained : *Provided,* That no more damages than the sum of twenty dollars shall be awarded in any action origin-ally brought or tried before a Justice of the Peace ; but if the plaintiff shall not support his action, shall fail to prosecute, or become nonsuit, the Justice shall award to the party sued, his reasonable costs, taxed as the law directs. And upon all judgments given by a Justice of the Peace in civil actions, he shall award execution thereon in form by law prescribed.

*Justice's juris-diction in civil actions, (where title to real es-tate is not in question,) to extend to 20 dollars.*

*Justices may is-sue summons, capias, attach-ment, &c.*

*—to be served seven days be-fore trial.*

*Proceedings be-fore Justice.*

*Judgment, &c. if plaintiff pro-vail.*

*Damages not to exceed 20 dol-lars.*

*Judgment in case defendant prevail.*

*Execution.*

Sec. 9. *Be it further enacted,* That the amount of the sum or several sums, specified, expressed or supposed to be de-manded by the plaintiff in his declaration, shall not be con-sidered as any objection against the Justice's jurisdiction, pro-vided the ad damnum, or damage is not laid or stated to ex-ceed twenty dollars.

*Justice to have jurisdiction where the ad damnum does not exceed 20 dollars.*

Sec. 10. *Be it further enacted,* That any party aggrieved at the judgment of any Justice of the Peace, in a civil action, where both parties have appeared and plead, may appeal therefrom to the next Circuit Court of Common Pleas to be held within the same county ; and shall before his appeal is allowed, recognize with a surety or sureties, in such reasona-ble sum as the Justice shall order, not exceeding thirty dol-lars, to pay all intervening damages and costs, and to prose-cute his appeal with effect ; and shall be held to produce a copy of the whole case, at the Court appealed to, and both parties shall be allowed to offer any evidence upon the trial at the Circuit Court of Common Pleas, in the same manner as if the cause had been originally commenced there. And no other appeal shall be had on such action after one trial at the Circuit Court of Common Pleas. And the Circuit Court of Common Pleas, when any person recognized as before men-

*Party aggriev-ed may appeal to C. C. Com-Pleas.*

*—Must recog-nize to prose-cute.*

*and produce co-pies at C. C. C.*

*Pleas.*

*Proceedings in that Court.*

*No further ap-peal.*

*Defendant in trespass failing to bring for-*

*ward the action according to his recognizance.—Plaintiff to have his damages.*
tioned to bring forward an action of trespass, doth neglect to do it, upon complaint thereof made in writing by the plaintiff, shall give judgment for such sum in damages, as the plaintiff hath declared for, together with all reasonable costs which accrued both in the same Court and before the Justice. And

*Appellant failing to prosecute, on complaint judgment may be affirmed.*
the Circuit Court of Common Pleas shall, when any appellant thereto shall fail to prosecute his appeal, or if he shall neglect to produce a copy of the case, affirm the former judgment upon the appellee's complaint, and award such additional damages as shall have arisen in consequence of the said appeal, and cost.

*In action of trespass when defendant pleads title to real estate—mode of proceeding before Justice.*
SEC. 11. *Be it further enacted,* That when an action of trespass shall be brought before any Justice of the Peace, and the defendant shall plead the general issue, he shall not be allowed to offer any evidence that may bring the title of real estate in question. And when the defendant in any such action shall plead the title of himself or any other person in justification, the Justice upon having such plea plead, shall order the defendant to recognize to the adverse party in a reasonable sum, with sufficient surety or sureties to enter the said action at the next Circuit Court of Common Pleas to be holden within the same county, and to prosecute the same in the same manner as upon an appeal from a Justice's judgment; and if such pleader shall refuse so to recognize, the Justice shall render judgment against him, in the same manner as if he had refused to make answer to the same suit. And either

*Appeal allowed in such cases from C. C. C. Pleas to S. J. Court.*
party in such cause, shall be allowed to appeal from the judgment of the Circuit Court of Common Pleas, in the same manner as if the suit had been originally commenced there.

*General issue may be plead in all actions before Justices and special matter given in evidence except where title to real estate is relied on by defendant.*
SEC. 12. *Be it further enacted,* That in all civil actions triable before a Justice of the Peace, except such actions of trespass wherein the defendant means to avail himself, by pleading the title of himself or any other person under whom he claims in justification of the trespass or trespasses alleged to be committed on real estate; the defendant shall be entitled to all evidence, under the general issue, which by law he might avail himself of under any special plea in excuse or justification, any law, usage or custom to the contrary notwithstanding.

*Justices may grant subpœnas in all civil actions.*
SEC. 13. *Be it further enacted,* That each Justice of the Peace may grant subpœnas for witnesses in all civil actions and causes pending before the Supreme Judicial Court, Circuit Court of Common Pleas, Court of Sessions, and before him or any other Justices, and in all civil actions and causes

*May adjourn their Courts by proclamation:*
pending before arbitrators or referees. And every Justice of the Peace shall have power by public proclamation to adjourn the trial of any action brought before him, from time to time,

*No Justice to be of counsel in any suit before himself.*
when equity may require it; but he shall not be of counsel to either party, or undertake to advise or assist any party in suit before him.

SEC. 14. *Be it further enacted,* That when an executor or administrator shall be guilty of committing waste, whereby he is rendered unable to pay the judgment recovered before any Justice of the Peace, against the goods and estate of the deceased in his hands, out of the same, the Justice may proceed against the proper goods and estate of such executor or administrator, in the same manner as the Circuit Court of Common Pleas are empowered to do. *{In case of waste by executor or administrator, Justice of C. C. Pleas may proceed as in such cases.}*

SEC. 15. *Be it further enacted,* That each Justice of the Peace shall keep a fair record of all his proceedings; and when any Justice of the Peace shall die before a judgment given by him is paid and satisfied, it shall be in the power of any Justice of the Peace in the same county to grant a scire facias upon the same judgment, to the party against whom such judgment was rendered up, for him to show cause if any he hath, why execution should not be issued against him. And although the costs and debt awarded by the deceased Justice when added together, shall amount to more than twenty dollars, it shall be no bar upon such scire facias, but judgment shall be given thereon for the whole debt and cost, together with the cost arising upon the scire facias. *Provided always,* That either party may appeal from the judgment as in other personal actions, where judgment is given by a Justice of the Peace. And every Justice of the Peace who shall have complaint made to him, that a judgment given by a Justice of the same county then deceased, remains unsatisfied, shall issue his summons to the person in whose possession the record of the same judgment is, directing him to bring and to produce to him the same record; and if such person shall contemptuously refuse to produce the same record, or shall refuse to be examined respecting the same, upon oath, the Justice may punish the contempt by imprisonment, until he shall produce the same, or until he submits to be examined as aforesaid; and when the Justice is possessed of such record, he shall transcribe the same upon his own book of records, before he shall issue his scire facias; and shall deliver the original back again to the person who shall have produced it, and a copy of such transcription, attested by the transcribing Justice, shall be allowed in evidence in all cases, where an authenticated copy of the orignal might be received. *{Justice to keep record of his proceedings. When Justice shall die before a judgment given by him is satisfied, what proceedings to be had. Appeal allowed to either party. Justice to whom complaint is made in such cases, may summon the person possessing the record to produce it. Punishment for refusal so to do. Duty of the Justice when the record is produced, to transcribe it into his own records. Copy of such transcript to be evidence.}*

SEC. 16. *Be it further enacted,* That all Justices of the Peace before whom actions may be commenced under former commissions, and such commissions shall expire before judgment shall be rendered thereon, or judgment being rendered, the same remains in whole or in part unsatisfied, such Justices of the Peace who shall hereafter have their said commissions seasonably renewed, and being duly qualified agreeably to the Constitution of this State, to act under such commissions, be and they hereby are authorized and empowered to render judgment, and issue execution on all such ac- *{Justices, whose commissions expire before judgment or satisfaction, may proceed, under a new commission, seasonably obtained, to render judgment, &c.}*

tions, commenced as aforesaid, in the same manner as if the commissions under which such actions may be commenced, were in full force.

[Approved March 15, 1821.]

———:oo:———

## CHAPTER LXXVII.

An Act providing a speedy Method of recovering Debts, and for preventing unnecessary costs attending the same.

*Justices may take recogniz- ances for debts.* SEC. 1. BE it enacted by the Senate and House of Representatives, in Legislature assembled, That every Justice of the Peace in this State shall have power within his county to take recognizances for the payment of debts of any person who shall come before him for that purpose: which recognizance may be in substance as follows:—

*Form of recog- nizance.* Know all men, that I, A. B. of          , in the County of          , do owe unto C. D. of          , the sum of          , to be paid to the said C. D. on the          day of          ; and if I shall fail of the payment of the debt aforesaid, by the time aforesaid, I will and grant that the said debt shall be levied of my goods and chattels, lands and tenements, and in want thereof of my body.  Dated at          , this          day of          , in the year of our Lord          .  Witness, my hand and seal          A. B.

ss. Acknowledged the day and year last abovesaid. Before E. F. Justice of the Peace.

*To be recorded by the Justice.* SEC. 2. Be it further enacted, That every Justice of the Peace taking any such recognizance, shall immediately record the same at large in a book to be kept by him for that purpose; and after the same is recorded, may deliver it to *Execution may issue thereon within 3 years.* the Conusee; and upon the Conusee's lodging the same with the said Justice, at any time within three years from the time when the same is payable, and requesting a writ of execution, it shall be the duty of such Justice to issue a writ of execution thereon for such sum as shall appear to be due on the same; which writ of execution shall be in substance as follows:

State of Maine.

(SEAL.) To the Sheriff of the County of          , or his deputy, or either of the Constables of the town of          , in said County,          Greeting.

*Form of execu- tion.* Because A. B. of          , in the County of          , on the          day of          , in the year of our Lord          before E. F. Esq. one of the Justices of the Peace for the said County of          , acknowledged that he was indebted to C. D. of          , in the county of          in the sum of          which he ought to have paid on the          day of          , and          remains unpaid as it is said          : We command you therefore, that of the goods, chattels or real estate of the said A. B. within your precinct, you cause to be paid and satisfied unto the said C. D. at the value

# TITLE FIFTEENTH.

## Of Justices of the Peace.

CHAPTER 97.   General powers, duties and jurisdiction of justices in criminal cases.

        98.   Jurisdiction in bastardy cases.

        99.   Justices' jurisdiction in civil cases of debt.

       100.   Justices' jurisdiction in trespass cases.

       101.   Justices' jurisdiction in cases of forcible entry and detainer; and of holding over.

## CHAPTER 97.

### GENERAL POWERS, DUTIES AND JURISDICTION OF JUSTICES IN CRIMINAL CASES.

SEC. 1. Number in the several counties.
    2. Power to issue process.
    3. To keep records. Adjournments.
    4. To issue subpoenas.
    5. To administer oaths.
    6. To punish contempts.
    7. To arrest without warrant.
       To commit or bind to appear.
       Form of commitment.
       Form of binding TO KEEP THE PEACE.
    8. Power to punish assaults and batteries.
       Form of binding to ANSWER CHARGE.
       Binding witnesses to appear.
    9. To permit parties to settle cases of assault and battery.
   10. Not to receive fine or costs.
       To put it in charge of a constable.
   11. To certify fines to the auditor. Penalty.
   12. Power to BIND OVER FOR THREATS.
   13. To cause arrests of peace breakers, &c., &c.
   14. To fine drunkards and swearers.
   15. To punish those who resist authority.
   16. Mode of proceeding in criminal cases.
   17. After arrest.
   18. The examination.
   19. The commitment or binding to appear. Binding witnesses.
   20. To deliver recognizances to clerk of the peace. Fee.

SEC. 21. To indorse the names of witnesses.
   22. To arrest persons complained against.
   23. Warrant may be executed in any county.
   24. Bail for appearance; how taken; by whom.
       Commitment in default of bail.
   25. How discharged from prison on bail.
   26. Capital cases; when bail may be taken
   27. Bail in other cases; how determined.
   28. How taken by sheriff. &c.
   29. SEARCH WARRANTS, when and how to be issued.
       Complaint must be in writing.
       Warrant; how directed.
       When it may be executed at night.
   30. Power of justice to try certain offences by slaves.
   31. Power of two justices to try slaves.
       Order on master to pay restitution, &c.
       Service of notice on master; verification.
   32. Power to punish Sabbath breaking.
   33. Duty of representatives of a deceased justice to deliver records; penalty.
   34. Duty of justice to give transcripts, copies, &c.; penalty.
       Originals may be required by the court.
   35. Duty to attend elections; penalty.

### Number.

**2003**
**Number.**

SEC. 1. The number of justices of the peace now allowed by the constitution and laws, shall, two-thirds of each house of the legislature concurring, continue to be in the several counties, as follows:

**New Castle.**

in New Castle county twenty, of whom one shall reside in Red Lion hundred, within one mile of Delaware City, one in the town of St.

**Kent.**
**Sussex.**

Georges, and one in Christiana hundred; in Kent county eighteen; and in Sussex county twenty, one of whom shall reside within two miles of Cannon's Ferry.

### General powers and duties.

**2004**
**May issue process.**

SEC. 2. Justices of the peace may issue all writs, warrants and process proper to carry into effect the powers granted to them; and

**Forms.**

when no form is prescribed by statute, they shall frame one in con-

formity with the law, in substance; and, when substantially right, such process shall not be invalid for any defect in form. All sheriffs, deputy-sheriffs, coroners and constables are required duly to serve all legal writs, warrants and process to them directed by any justice of the peace.

SEC. 3. Each justice of the peace shall keep a record of all his judicial proceedings in criminal as well as civil cases. <span>2005 Records.</span>

He shall have power to adjourn cases on trial before him, taking security for the appearance of the party complained against. <span>2006 Adjournments.</span>

SEC. 4. He may issue summonses for witnesses in all cases pending before himself, and in all civil cases pending before any magistrates, referees, arbitrators, or other persons authorized to examine witnesses. <span>2007 Subpoenas.</span>

SEC. 5. He may administer oaths in all cases where an oath is required by law. <span>2008 Oaths.</span>

SEC. 6. Every justice of the peace may punish such disorderly conduct as shall interrupt any judicial proceedings before him, or before referees appointed by him, or which shall be a contempt of his authority, by fine not exceeding ten dollars, or by imprisonment in the jail of the county not exceeding ten days. <span>2009 Power to punish contempts.</span>

SEC. 7. Every justice of the peace may, as a conservator of the peace, upon view of any affray, riot, assault, or battery, within his county, without any warrant in writing command the assistance of any sheriff, deputy-sheriff, coroner, or constable, and of all other persons present, for suppressing the same, and arresting all who are concerned therein, and may commit or bind them to surety of the peace and for their appearance at the proper court. <span>2010 Power to arrest without warrant.</span>

A commitment may be in this form:— <span>2011 Commitment.</span>

——— *County, ss. The State of Delaware: To A. B., constable, and to the keeper of the jail of said county: this is to command you the said constable forthwith to convey and deliver into the custody of the keeper of said jail the body of C. D. charged, before E. F. a justice of the peace for said county, on oath by G. H. with* (here state the offence), *and you the said keeper of the jail are hereby required to receive the said C. D. into your custody in said jail, and him there safely keep until he be thence delivered by due course of law.*

{L. S.} *Given under my hand and seal this ——— day of ——— A. D., 18—.* J. P.

Binding to *keep the peace* and for appearance at court may be in this form: <span>2012 Binding TO KEEP THE PEACE.</span>

——— *County, ss. State of Delaware.* BE IT REMEMBERED, *that C. D., of ——— hundred, and R. S. and T. W., of ——— hundred, in said county, personally appeared before E. F., a justice of the peace for said county, and acknowledged to owe the State of Delaware the sum of ——— dollars, to be levied on their goods and chattels, lands and tenements respectively, for the use of the said State:* UPON CONDITION, *that if the above bound C. D. be and appear before the next Court of General Sessions of the Peace and Jail Delivery, to be held*

*at ——, for the county aforesaid, there to answer such matters as
shall be objected against him by G. H., and shall in the mean time
keep the peace and be of good behavior towards all the people of this
State, and especially towards the said G. H., and shall not depart
the court without leave thereof, then this recognizance to be void, other-
wise to be in full force and virtue.*

*Taken, signed and acknowledged before E. F., a justice of the peace
for said county, the —— day of ——, A. D., 18—.*

**2013**
**Power to**
**punish as-**
**saults and**
**batteries.**

SEC. 8. Every justice of the peace may punish by fine, not ex-
ceeding ten dollars, all assaults and batteries, and other breaches
of the peace punishable by any law of the State, when the offence
is not of a high or aggravated nature: *provided,* that the defendant
shall, in writing, submit to his decision: *and provided also,* that af-
ter hearing, he shall consider that the case ought not to be submit-
ted to a higher jurisdiction; otherwise he shall commit, or bind, the
defendant for his appearance at the proper court to answer the
charge, and shall also bind the witnesses for their appearance and
may require surety of them, if necessary. He may also punish, by
such fine, any offence against an authorized ordinance of a city, or
town.

**2014**
**Binding to**
**ANSWER**
**CHARGE.**

Binding for appearance *to answer* may be thus:—

*—— county, ss.  The State of Delaware.  BE IT REMEMBERED,
that C. D., of —— hundred, and R. S. and T. W., of —— hun-
dred, in said county, personally appeared before E. F., a justice of
the peace for said county, and acknowledged to owe the State of Dela-
ware the sum of —— dollars, to be levied on their goods and chat-
tels, lands and tenements respectively for the use of the said State:
UPON CONDITION, that if the above bound C. D., be and appear before
the next Court of General Sessions of the Peace and Jail Delivery, to
be held at ——, for the county aforesaid, there to answer such mat-
ters and things as shall be objected against him, and particularly
touching a charge (here state the offence charged) said to have been
committed by the said C. D., at —— hundred, in said county, on
the —— day of ——, and shall not depart the court without
leave thereof; then this recognizance to be void, otherwise to be in full
force and virtue.*

*Taken, signed and acknowledged before E. F., a justice of the peace
for said county, the —— day of——, A. D., 18—.*

**2015**
**Binding a**
**witness to**
**appear.**

Binding a *witness* for appearance may be in the same form, sub-
stituting for the words "there to answer such matters," &c., down
to "and shall not depart the court," the words "*as a witness for the
State.*"  A recognizance, when taken by a justice of the peace, or a
judge out of court, shall be signed by the parties bound.

**2016**
**Parties may**
**settle as-**
**saults and**
**batteries.**

SEC. 9. In every case of assault and battery the justice may per-
mit the parties to settle the matter; and either discontinue the pro-
ceedings or annul any recognizance, on payment of costs.

**2017**
**Not to re-**
**ceive fines.**

SEC. 10. He shall, in no case, receive a fine, or costs, imposed by
him; but upon imposing any fine, he shall charge a constable present
with the defendant, and enter the constable's name on his docket,

and if the fine and costs be not paid, the constable shall convey said defendant to jail, for which a copy of the judgment shall be a sufficient warrant.

SEC. 11. Every justice of the peace shall transmit to the auditor of accounts, by mail, on the first Tuesday of April and October in each year, a duly certified list of the cases in which any fine, or forfeiture, has been imposed by him before that time; stating the party, the fine, and the name and place of residence of the constable chargeable. Any neglect of this duty shall be deemed a misdemeanor, and shall be punished by fine not exceeding one hundred dollars; and the court shall, on conviction of such justice, transmit a copy of the record to the general assembly. *2018 To certify fines to auditor.* *Penalty.*

SEC. 12. Whoever shall threaten to kill, or wound, another, or to injure him in person, or estate, shall, on proof of such threats, before a justice of the peace, either by the oath of the party threatened, or otherwise, and on affidavit, by the said party, that he believes, from such threatening, he is in danger to be hurt in body, or estate, be bound to surety of the peace, and for his appearance at the next Court of General Sessions for the county. *2019 Power to bind over for THREATS*

SEC. 13. Any justice of the peace may also cause to be arrested and bind to surety of the peace all affrayers, rioters, breakers and disturbers of the peace, and all who go armed offensively to the terror of the people, or are otherwise disorderly and dangerous. *2020 To cause arrests.*

SEC. 14. He may also cause to be arrested any drunken person, or any person who, in his hearing, shall profanely swear by the name of God, Christ Jesus, or the Holy Spirit; and such person, being thereof convicted by view of the justice, or other proof, shall be fined by him fifty cents for every such profane oath, and fifty cents for every such offence of being drunk. *2021 Drunkards; swearers.*

SEC. 15. If any person, arrested by warrant, or order, of any court of justice, magistrate, or justice of the peace, shall use abusive, railing, or threatening speeches against such court, magistrate, or justice, or shall resist, or assault, any person executing, or aiding in the execution of any such warrant, or order, he shall be fined by such court, magistrate, or justice, any sum not exceeding fifteen dollars. *2022 To punish those who resist authority.*

SEC. 16. When complaint is made in due form to a justice, alleging that an offence has been committed, the justice shall carefully examine the complainant on oath, or affirmation, and if he considers there is probable ground for the accusation, he shall issue his warrant. *2023 Proceedings in criminal cases; complaint.*

A warrant of arrest may be in this form: *2024 Warrant of arrest.*

—— *County, ss.    The State of Delaware,*
               *To any constable of said county, greeting:*

*Whereas G. H. of* —— *hath upon oath* (or affirmation) *before me, a justice of the peace of said county declared that on the* —— *day of* —— *at* —— (state the offence charged) *and that he hath just cause to suspect and doth suspect C. D. of* —— *hundred, of committing the said offence: You are therefore hereby commanded to take the said*

43

*C. D. and bring him before me, or some other justice of the peace of the county, forthwith, to answer said charge.*

{ L. S. } *Witness the hand and seal of the said justice, the ———— day of ——— A. D. 18—.*

**2025**
**How directed.**
In case of emergency, the warrant may be directed to the sheriff, or coroner, or to any person the justice may name.

**2026**
**Proceeding on arrest.**
SEC. 17. Upon the arrest of any person so charged, the justice, before whom he is brought in the county where the offence was committed, shall try the case so far as to determine whether the defendant ought to be discharged, or bound for his appearance at court, or held to answer finally before the justice; in which last case, the justice shall proceed to hear fully and to determine the case. But if the matter be not properly cognizable before the justice for final decision, he shall commit, or bind the party for his appearance at the court having cognizance of the case.

**2027**
**Examination.**
**Voluntary declarations**
SEC. 18. He shall examine the party accused, taking his voluntary declarations, without threats, or promises, and shall also examine the witnesses in the presence of the accused.

**2028**
**In felonies to be in writing.**
If the offence is a felony, he shall reduce the examination of the accused to writing, and read it to him, and offer it for his signature. The justice shall sign it.

**2029**
**Testimony in writing.**
He shall also reduce to writing the testimony of each witness, if material, read it to him in the presence of the accused, sign it, and require the witness to sign it. In case of the death of the witness, it shall be evidence on the trial.

**2030**
**Commitment; or binding to appear.**
SEC. 19. If he considers there is probable ground for the accusation, he shall, in case of a capital crime, commit the accused for trial, and in any other case bind him, with sufficient surety, for his appearance at the next Court of General Sessions of the Peace and Jail Delivery for the county where the offence is alleged to have been committed; and, if he do not give such surety, shall commit him for trial. But when the accused is carried before a justice in another county than that wherein the warrant was issued, he shall be held to surety for his appearance, of course.

**2031**
**Binding the witnesses.**
He shall also bind material witnesses for their appearance, without surety, unless he believes the witness will not appear, and that the loss of his testimony ought not to be risked; in which case, he may require surety and may commit the witness if it be not given.

**2032**
**[2014, &c.]**
Such binding of the accused, and of the witnesses, shall be by recognizance, as provided in section 8.

**2033**
**To deliver recognizances, &c.**
SEC. 20. Each justice of the peace shall deliver every recognizance, examination and deposition, by him taken, touching any offence, to the clerk of the peace of his county ten days before the next Court of General Sessions, if the court do not sit sooner; and if so, then at the session of the court. For this service, he shall

**Fee.**
receive one dollar from the county if the service be rendered ten days before the court.

**2034**
**Names of witnesses to be indorsed.**
SEC. 21. He shall indorse on the recognizance the names of the material witnesses, and the clerk shall issue subpœnas for their ap-

pearance on the first day of the court, or otherwise as the attorney general may direct.

SEC. 22. Every justice shall cause to be arrested, on proper complaint, all persons found within his county charged with any offence; and all persons who, after committing any offence in such county, shall escape out of the same.

*2035 Duty to arrest persons complained against.*

SEC. 23. A warrant of arrest, issued by a justice in one county, may be executed in any county of the State; and the constable, or officer, having it in hand, may command aid as in his own county; but he shall, upon request, carry the defendant before some justice of the county, where he is arrested, to be bailed, if he offer sufficient bail and the offence is bailable; otherwise he shall convey him from the county in execution of his warrant.

*2036 Warrant, where executed.*

SEC. 24. In criminal cases, bail for the appearance of the accused, except when taken by the sheriff, or officer to whom process is directed, and security for the appearance of a witness, shall be given by recognizance. Each judge of the Superior Court, and every justice of the peace shall have authority to take such recognizance; and when so taken out of court, the recognizance shall be signed by the recognizors. When a person is committed for want of bail, or security, the sum required shall be set down on the commitment.

*2037 Bail for appearance, how taken.*

*By whom.*

*Commitment.*

SEC. 25. A person, so committed, shall be discharged upon giving sufficient bail, or security; and any judge, or justice, may require such person to be brought before him for that purpose.

*2038 How discharged.*

SEC. 26. A capital offence shall not be bailable; but the Court of General Sessions of the Peace and Jail Delivery, when in session, or any judge thereof in vacation, may admit to bail a person accused of such offence before indictment found, if, upon full inquiry, it appears that there is good ground to doubt the truth of the accusation. On such inquiry, the justice, or officer who committed the accused, shall be summoned, and care shall be taken to hear the proper witnesses.

*2039 Capital cases.*

*When bail may be taken.*

SEC. 27. When a person arrested by virtue of process issued upon an indictment, or presentment, except for a capital crime, and except process returnable forthwith, offers sufficient bail, it shall be taken, and the person discharged. The court awarding the process, or any judge thereof, or the attorney general, may determine the sum in which bail shall be taken, and set it down on the process; or if no sum be so determined, the officer issuing the process shall set down what sum he deems reasonable for bail.

*2040 Bail in other cases.*

*How determined.*

SEC. 28. Bail shall be taken by the sheriff, or officer to whom the process is directed, by a joint and several bond executed, by the accused and his bail, to the State, in the sum set down for bail upon the process, with condition, in substance, *that if the accused shall appear in the court, mentioned in the process, at the place and time of the return thereof, to answer as expressed therein, and shall not depart the court without leave, the said bond shall be void.* Bond so taken, shall be returned with the process, and, if default be made, it shall be recorded thereon in the same manner as in the case of a recognizance.

*2041 How taken by sheriff.*

**2042**
**Search warrants, when and how to be issued.**
SEC. 29. Any justice of the peace, or other magistrate authorized to issue warrants in criminal cases, may, within the limits of his jurisdiction, issue his warrant to search any house, or place, for property stolen, or concealed, or for forged, or counterfeited coins, bank bills, or other writings, or for any instrument, or materials, for making the same, and in other cases and for persons when such search is authorized by law, in the manner prescribed by this section and not otherwise, namely:

**2043**
**Complaint in writing.**
The application, or complaint, shall be in writing, signed by the complainant and verified by his oath, or affirmation. It shall designate the house, or place, to be searched, and the owner, or occupant thereof (if any), and shall describe the things, or persons sought, as particularly as may be, and shall substantially allege the offence committed by, or in relation to such person, or thing, or the cause for which said search is made, and that the complainant has probable cause to suspect, and does suspect that the same is concealed in the house, or place, designated.

**2044**
**How directed.**
The warrant may be directed to any proper officer, or to any other person by name, for service; it shall recite the essential facts alleged in the complaint, and may be made returnable before the magistrate, or justice, issuing it, or before any other magistrate, or justice, before whom it shall also direct to be brought the person, or thing, searched for, if found, and the person in whose custody, or possession, the same may be found, to be dealt with according to law.

**2045**
**When it may be executed at night.**
A search warrant shall not authorize the person executing it to search any dwelling-house in the night time, unless the magistrate, or justice, shall be satisfied that it is necessary in order to prevent the escape, or removal, of the person, or things, to be searched for; and then the authority shall be expressly given in the warrant.

**2046**
**Power to try offences by SLAVES.**
SEC. 30. Justices of the peace shall severally have jurisdiction to try and punish any slave who shall join, or be wilfully present at any riot, rout, or unlawful assembly, or who shall commit an assault and battery on any person, or who shall, without the special permission of his master, go armed with any dangerous weapon. In every case of conviction under this section, the justice shall give judgment against the master for the costs of the prosecution, and may issue execution thereon as upon a judgment for debt.

**Judgment for costs.**

**2047**
**Power of two justices to try offences by SLAVES.**
SEC. 31. Any two justices of the peace for the county shall have jurisdiction to try and punish any slave for the offence of stealing, taking and carrying away any goods, chattels effects, bank note, money, bill, promissory note, check, order, bond, or written contract for the payment of money, or delivery of goods, or of receiving, or concealing, any such stolen property knowing it to be stolen, or taken by robbery.

**2048**
**Order on master to pay costs, &c.**
The justices, on conviction of such slave, shall assess the value of the property, so stolen or concealed, unless it shall have been restored, and tax the costs; and shall make an order that the master pay the same, and shall commit the slave until payment, or sale, as provided in chapter 80.

App. 41

They shall indorse on any process for the arrest of a slave under this section, an order that the constable shall serve a copy of such process on the master as provided in respect to an original summons.

<div style="text-align:right">2049<br>Service on master.<br>[2006]</div>

The trial shall not proceed, without the appearance of the master, until the return of the service of such copy is duly verified.

<div style="text-align:right">2050<br>To be verified.</div>

SEC. 32. Justices of the peace shall severally have jurisdiction of the several offences mentioned in section 4, of chapter 131, being violations of the Sabbath day; and may proceed therein upon their own view, or on other competent evidence.

<div style="text-align:right">2051<br>[2902, &c.]</div>

SEC. 33. Upon the death of a justice, or expiration of his term of office, and the appointment of another, it shall be the duty of such justice, or his executors, or administrators, to deliver all his dockets and records, within three months, to his successor in office, if appointed within that time; and if not, then with one of the nearest justices of the same county. The neglect of this duty shall be a misdemeanor punishable by fine of fifty dollars; and the Superior Court may name the justice to whom the delivery shall be made, and enforce an order for such delivery by fine and imprisonment.

<div style="text-align:right">2052<br>Duty of executors of a justice in respect to his records.<br><br>Penalty.</div>

SEC. 34. It is the duty of a justice of the peace, upon request and payment, or tender, of the legal fee, to make and certify, under his hand and seal, a true transcript of all the docket entries in any cause before him, or upon any record in his possession, or if specially required, a full and true copy of all the records, entries, process and papers in or touching such cause; and such transcript, or copy, shall be received in evidence in any court.

<div style="text-align:right">2053<br>Duty of justice to give TRANSCRIPT.<br><br>Or full copies.</div>

Upon an appeal, a transcript shall be sufficient, unless a full copy be specially requested. Upon a certiorari, the justice shall make a full copy of the entire record and proceedings.

<div style="text-align:right">2054<br>On appeals.<br>On certiorari.</div>

If any justice of the peace shall, upon such request and payment, or tender, of the lawful fees, refuse or neglect to perform the duty above required, or shall falsely certify any such transcript, or full copy, or shall use any fraud, falsehood, or deceit, in making the same, he shall be deemed guilty of a misdemeanor, and shall be fined not exceeding one hundred dollars, and shall be liable to the party aggrieved in double damages.

<div style="text-align:right">2055<br>Penalties.</div>

The Superior Court may, in a proper case, supported by affidavit, require the production of the original record.

<div style="text-align:right">2056<br>Originals may be required.</div>

SEC. 35. Every justice of the peace shall attend, at the place of election in his hundred, on the day of every general election, or special election, from the opening to the closing of the poll, and shall take care that the peace shall be kept, and that the election shall not be interrupted, or disturbed.

<div style="text-align:right">2057<br>Duty to attend elections.</div>

If any justice shall refuse, or wilfully neglect, to perform this duty, or to obey the lawful commands of the inspector of such election, he shall be deemed guilty of a misdemeanor and shall be fined one hundred dollars.

<div style="text-align:right">2058<br>Penalty.</div>

Challenges.        SEC. 9. That in the trial of all causes under the provisions
of this act, each party shall have the right to challenge per-
emptorily three jurors and no more.

Panel how         SEC. 10. When, from any cause whatever, the panel shall
completed.        not be completed, or the jurors are not present, it shall be the
duty of the sheriff, by order of the court, to complete said
panel by summoning such members.

SEC. 11. That all laws or parts of laws in conflict herewith
are hereby repealed, and this act shall be in force from and
after its passage.

[Translation.]

---

## An Act prohibiting the carrying of Weapons, concealed or other-wise.

Be it enacted by the Legislative Assembly of the Territory
of New Mexico:

Carrying wea-     SECTION 1. That, from and after the passage of this act, it shall
pons prohibit-    be unlawful for any person to carry concealed weapons on their
ed.               persons, of any class of pistols whatever, bowie knife (cuchillo
de cinto), Arkansas toothpick, Spanish dagger, slung-shot, or
any other deadly weapon, of whatever class or description they
may be, no matter by what name they may be known or called,
under the penalties and punishment which shall hereinafter be
described.

First conviction  SEC. 2. Be it further enacted: That if any person shall car-
fine.             ry about his person, either concealed or otherwise, any deadly
weapon of the class and description mentioned in the preceding
section, the person or persons who shall so offend, on conviction,
which shall be by indictment in the district court, shall be
fined in any sum not less than fifty dollars, nor more than one
hundred dollars, at the discretion of the court trying the cause,
on the first conviction under this act; and for the second con-
Second convic-    viction, the party convicted shall be imprisoned in the county
tion. imprison-   jail for a term of not less than three months, nor for more
ment.             than one year, also at the discretion of the court trying the
cause.

son dispuestos ántes. En los condados de San Miguel, Rio Arriba, y Bernalillo, el primer lúnes de Marzo y Setiembre, y continuará una semana si los negocios no están dispuestos ántes. En los condados de Santa Ana, Socorro, y Doña Ana, el primer lúnes de Mayo, Setiembre y Noviembre, y continuará una semana si los negocios no están dispuestos ántes.

SEC. 9. Que en el juicio de todas las causas bajo las provisiones de este acto, cada una de las pártes tendrán derecho de desechar perentoriamente tres jurados y no mas. *Recusas.*

SEC. 10. Cuando, por cualquiera causa que sea, un jurado no está completo, ó no están presentes, será el deber del alguacil mayor, por órden de la corte, de llenar dicho jurado citando tales miembros. *Lista, como se completa.*

SEC. 11. Que todas las leyes, ó partes de leyes, en conflicto [con esto,] son por este abrogadas, y este acto tendrá efecto desde y despues de su pasaje.

Aprobado Febrero 2 de 1860.

------

### Un Acto prohibiendo el porte de Armas ocultas ó de otra manera.

Decrétese por la Asamblea Legislativa del Territorio de Nuevo Méjico:

SECCION 1ª. Que desde y despue del pasaje de este acto no será legal para que ninguna persona porte armas sobre sus personas, ninguna pistola de cualesquiera clase que sea, ni bowie knife (cuchillo de cinto) Arkansas toothpick, daga española, huracana, ó cualesquiera otra arma mortífera de cualesquiera clase ó descripcion que sea, no importa el nombre que tuviere con que fuere conocida ó llamada, bajo las penas y castigos que sean en este acto despues descritas. *Porte de armas prohibido.*

SEC. 2. Decrétese ademas: Que si cualesquiera persona portare sobre su persona, ya sea oculta ó de otra manera, cualesquiera arma mortífera de la clase y descripcion mencionada en la seccion anterior, la persona ó personas que así ofendan, sobre conviccion, la cual será por querella legal en la corte de distrito, será multada en cualesquiera suma que no baje de cincuenta pesos, ni pase de cien pesos, á la discrecion de la corte *Primera conviccion, multa.*

**Penalty for discharging or drawing weapons.**

SEC. 3. Be it further enacted: That if any person shall discharge or draw any deadly weapon, of the class or description set forth in the first section of this act, in any baile or fandango, or in any other public assembly whatever, the person who shall so offend, on conviction thereof, which shall be by indictment in the district court, shall be fined in any sum not less than one hundred dollars, nor more than three hundred, at the discretion of the court trying the cause, or imprisoned in the county jail for a term not less than three months nor more than one year.

**Penalty for cutting or wounding in assemblies.**

SEC. 4. Be it further enacted: That if any person in any baile or fandango, or in any public assembly of whatever class or description it may be, shall fire off or discharge any firearm of the class mentioned in the first section of this act, or shall cut or wound any person with any description of deadly weapon mentioned in the first section of this act, in any baile or fandango, or in any other public assembly, and any death shall result from said cut or wound so given, the person who shall so wound or cut, on conviction, shall be considered guilty of murder in the first degree, and shall suffer the penalty of death in the said first degree.

**In case of death, to be deemed murder**

**Duty of sheriffs and constables to arrest.**

SEC. 5. Be it further enacted: That it shall be the duty of the sheriffs, their deputies, or constables, to arrest and take all persons who shall be found with deadly weapons of the class and description mentioned in the first section of this act, and present them to some justice of the peace, or other authority, to be examined; and it shall also be the duty of the judges of the district courts to cause, at the first term to be held in each county, the sheriffs and their deputies to take an oath that they will truly and faithfully comply with the provisions of this act, and that they will arrest at all times every person who shall violate any of the provisions of this act.

**Sheriffs and constables to take oath.**

**Officers excused.**

SEC. 6. Be it further enacted: That none of the provisions of this act shall be applied to the sheriffs, their deputies, or constables, in the execution of any process of the courts, or to conductors of the mail, or to persons when actually on trips from one town to another in this Territory; *provided,* that nothing in this act shall be so construed as to permit the conductors of mails, or travellers, to carry any deadly weapons, as mentioned

**Travellers excused.**

que conozca la causa en la primera conviccion bajo esta ley; y por la segunda conviccion, la parte convicta será encarcelada en la cárcel del condado por un término que no baje de tres meses ni pase de un año, tambien á la discrecion de la córte que conozca en la causa. **Segunda conviccion, encarcelamiento.**

Sec. 3. Decrétese además: Que si cualesquiera persona disparare ó sacare cualquier arma mortífera, de la clase ó descripcion citada en la primera seccion de este acto, en cualesquiera baile ó fandango, ó en cualesquiera otra reunion pública, de la clase que sea, la persona que así ofenda, sobre conviccion de lo mismo, la causa será por querella legal en la corte de distrito, será multada en una suma que no baje de cien pesos, ni pase de trescientos, á la discrecion de la córte que conozca en la causa, ó será encarcelada en la cárcel del condado por un término que no baje de tres meses, ni pase de un año. **Disparando armas, pena de.**

Sec. 4. Decrétese además: Que si cualesquiera persona en algun baile ó fandango, ó en otra concurrencia pública de la clase y descripcion que sea, disparare ó descargare alguna arma de fuego de la clase mencionada en la seccion primera de este acto, ó que cortare ó hiriere á alguna persona con cualesquiera descripcion de armas mortíferas mencionadas en la primera seccion de este acto, en algun baile ó fandango, ú otra concurrencia pública, y resultare alguna muerte de la tal herida ó cortada así dada, la persona que así hiriere ó cortare, sobre conviccion, será considerada culpada de muerte en el primer grado, y sufrirá la pena de muerte en dicho primer grado. **Hiriendo en reuniones públicas, pena de.**

**Muerte en primer grado.**

Sec. 5. Decrétese además: Que será el deber de los alguaciles mayores, sus diputados, ó condestables, de arrestar y tomar toda persona que sea hallada con armas mortíferas, de la clase y descripcion mencionadas en la primera seccion de este acto, y presentar lasá algun juez de paz, ú otra autoridad, para su examinacion; y tambien será el deber de los jueces de distrito de causar, en la primera corte que sea tenida en cada condado, que los alguaciles mayores y sus diputados presten juramento que ellos bien y fielmente cumplirán con las provisiones de este acto, y arrestarán en todo tiempo á todas las personas que violaren cualesquiera de las provisiones de este acto. **Deberes de los alguaciles, y ofensores de dar fianzas.**

Sec. 6. Decrétese además: Que ninguno de los provisos de este acto serán aplicables al alguacil mayor, sus diputados, ó **Viajeros, &a., esceptuados.**

7

in the first section of this act, on their persons, after they shall have arrived at the town or settlement.

**Judges to give this act in charge.**

SEC. 7. Be it further enacted: That it shall be the duty of the several judges of the district court to give this act specially in their charges to the grand juries at each term of the court; and further, it shall be the duty of the grand juries, at each term of the court, to make a special report whether there has been any violation of the provisions of this act in their counties since the last term of the court.

**Repealing clause.**

SEC. 8. That all laws or parts of laws in conflict with this act are hereby repealed, and this act shall be in force and take effect from and after its passage.

**To be published.**

SEC. 9. That the Secretary of the Territory of New Mexico be required to have this law published in the Santa Fé Gazette, as soon as possible, for six successive weeks, for the information of the people.

[Translation.]

---

### An Act regulating Mercantile Copartnerships.

Be it enacted by the Legislative Assembly of the Territory of New Mexico:

**Who may enter into.**

SECTION 1. That any two or more persons in this Territory may, and when they shall think proper, bind themselves mutually, for a certain time and under certain conditions, to do and follow at the same time various negotiations on their own common account and risk, or at that of each one of the partners respectively, as well in the losses as in the profits that may arise from said copartnership.

**Good faith to be observed.**

SEC. 2. The copartners or associates shall act in good faith, placing punctually in the concern the capital or services as stipulated, under the penalty of indemnifying the others for the damages which may arise.

**Articles what to contain and before whom made.**

SEC. 3. The contract of copartnership should be made before any court of record, or the clerk thereof, of the several counties by means of an indenture, authorized by any court of record or the clerk thereof, which shall contain the chris-

ny persons as they shall think fit, not exceeding seven, to make orders from time to time, such as may be suitable and beneficial for every town, village, hamlet, or neighbourhood, for preventing all harms by swine, in town, meadows, pastures and gardens, in any respect, and to impose penalties according to their best discretions.

## Chap. VIII.

# An Act appointing some new Commissioners of the Highways.

WHEREAS there was an act made in the year 1682, for the county of Monmouth, to enable Col. Lewis Morris, John Bound, and Joseph Parker, to lay out highways, passages, ferry's, and making bridges and such like; there being three of those persons disenabled for the true performance of the said services, *be it therefore enacted* by the Governor, Council and Deputies now met and assembled, and by the authority of the same, that John Frogmerton, John Slocame, and Nicholas Brown, in the stead and room of Col. Lewis Morris, John Bound, and Joseph Parker, be made capable and hereby invested with the same power to all intents and purposes in the said premises, as the aforesaid Col. Lewis Morris, John Bound, and Joseph Parker, were by the said acts.

## Chap. IX.

# An Act against wearing Swords, &c.

WHEREAS there hath been great complaint by the inhabitants of this Province, that several persons wearing swords, daggers, pistols, dirks, stilladoes, skeines, or any other unusual or unlawful weapons, by reason of which several persons in this Province, receive great abuses, and put in great fear and quarrels, and challenges made, to the great abuse of the inhabitants of this Province. *Be it therefore enacted* by the Governor, and Council, and Deputies now met in General Assembly, and by authority of the same, that no person or persons within this Province, presume to send any challenge in writing, by word of mouth,

19

or message, to any person to fight, upon pain of being imprisoned during the space of six months, without bail or mainprize, and forfeit ten pounds; and whosoever shall except of such challenge, and not discover the same to the Governor, or some publick officer of the peace, shall forfeit the sum of ten pounds; the one moiety of the said forfeiture to be paid unto the Treasurer for the time being, for the public use of the Province, and the other moiety to such person or persons as shall discover the same, and make proof thereof in any court of record within this Province, to be recovered by the usual action of debt, in any of the said courts. *And be it further enacted* by the authority aforesaid, that no person or persons after publication hereof, shall presume privately to wear any pocket pistol, skeines, stilladers, daggers or dirks, or other unusual or unlawful weapons within this Province, upon penalty for the first offence five pounds, and to be committed by any justice of the peace, his warrant before whom proof thereof shall be made, who is hereby authorized to enquire of and proceed in the same, and keep in custody till he hath paid the said five pounds, one half to the public treasury for the use of this Province, and the other half to the informer: And if such person shall again offend against this law, he shall be in like manner committed upon proof thereof before any justice of the peace to the common gaol, there to remain till the next sessions, and upon conviction thereof by verdict of twelve men, shall receive judgment to be in prison six month, and pay ten pounds for the use aforesaid. *And be it further enacted* by the authority aforesaid, that no planter shall ride or go armed with sword, pistol, or dagger, upon the penalty of five pounds, to be levied as aforesaid, excepting all officers, civil and military, and soldiers while in actual service, as also all strangers, travelling upon their lawful occasions thro' this Province, behaving themselves peaceably.

or when the amount or value thereof does not exceed twenty dollars, the same may be prosecuted for by complaint before a police court or a justice of the peace, who shall have jurisdiction thereof, concurrently with the court of common pleas and the municipal court.

Benefit of clergy and petit treason abolished.
1784, 56 & 69.

SECT. 15. The plea of benefit of clergy, and the distinction between murder and petit treason, are abolished, and the last named offence shall be prosecuted and punished as murder.

# TITLE II.

## Of proceedings in criminal cases.

CHAPTER 134. Of proceedings to prevent the commission of crimes.
CHAPTER 135. Of the arrest and examination of offenders, commitment for trial, and taking bail.
CHAPTER 136. Of indictments and proceedings before trial.
CHAPTER 137. Of trials in criminal cases.
CHAPTER 138. Of appeals, new trials, and exceptions, in criminal cases.
CHAPTER 139. Of judgments in criminal cases, and the execution thereof.
CHAPTER 140. Of coroners inquests.
CHAPTER 141. Of the taxation, allowance and payment of costs in criminal prosecutions.
CHAPTER 142. General provisions concerning proceedings in criminal cases.

## CHAPTER 134.

### OF PROCEEDINGS TO PREVENT THE COMMISSION OF CRIMES.

SECTION
1. Officers, authorized to keep the peace.
2. Complaint, how made.
3. Arrest.
4. Trial—Recognizance to keep the peace.
5. Party, when to be discharged.
6. Refusing to recognize, to be committed.
7. Complainant, when to pay costs.
8. Payment of costs in other cases.
9. Appeal allowed.
10. On appeal, witnesses to recognize.
11. Proceedings upon an appeal.
12. Recognizance, when to remain in force.

SECTION
13. Persons committed for not recognizing, how discharged.
14. Recognizances to be transmitted to the court.
15. " when to be required, on view of the court or magistrate.
16. Persons who go armed, may be required to find sureties for the peace, &c.
17. Court may remit part of penalty forfeited.
18. Surety may surrender his principal, who may recognize anew.

Officers' authorized to keep the peace.

SECTION 1. The justices of the supreme judicial court, the justices of the court of common pleas, justices of police courts, in vaca-

tion as well as in open court, and also all justices of the peace, shall have power to cause all laws, made for the preservation of the public peace, to be kept, and in the execution of that power, may require persons to give security to keep the peace, or for their good behavior, or both, in the manner provided in this chapter.

SECT. 2.  Whenever complaint shall be made to any such magistrate, that any person has threatened to commit an offence against the person or property of another, the magistrate shall examine the complainant, and any witnesses who may be produced, on oath, and reduce such complaint to writing, and cause the same to be subscribed by the complainant. *Complaint, how made.*

SECT. 3.  If, upon examination, it shall appear that there is just cause to fear that any such offence may be committed, the magistrate shall issue a warrant under his hand, reciting the substance of the complaint, and requiring the officer, to whom it may be directed, forthwith to apprehend the person complained of, and bring him before such magistrate, or some other magistrate or court having jurisdiction of the cause. *Arrest. 1794, 26, § 2.*

SECT. 4.  When the party complained of is brought before the magistrate, he shall be heard in his defence, and he may be required to enter into a recognizance, with sufficient sureties, in such sum as the magistrate shall direct, to keep the peace towards all the people of this Commonwealth, and especially towards the person requiring such security, for such term as the magistrate may order, not exceeding six months, but shall not be bound over to the next court, unless he is also charged with some other offence, for which he ought to be held to answer at such court. *Trial. Recognizance to keep the peace. 4 Mass. 497. 8 Mass. 73. 2 B. & A. 278. 1833, 63, §§ 1, & 2.*

SECT. 5.  Upon complying with the order of the magistrate, the party complained of shall be discharged. *Party, when to be discharged.*

SECT. 6.  If the person, so ordered to recognize, shall refuse or neglect to comply with such order, the magistrate shall commit him to the county jail, house of correction, or house of industry, during the period for which he was required to give security, or until he shall so recognize ; stating, in the warrant, the cause of commitment, with the sum and the time for which security was required. *Refusing to recognize, to be committed. 1833, 63, § 1*

SECT. 7.  If, upon examination, it shall not appear that there is just cause to fear that any such offence will be committed by the party complained of, he shall be forthwith discharged ; and if the magistrate shall deem the complaint unfounded, frivolous or malicious, he may order the complainant to pay the costs of prosecution, who shall thereupon be answerable to the magistrate and the officer for their fees, as for his own debt. *Complainant when to pay costs.*

SECT. 8.  When no order respecting the costs is made by the magistrate, they shall be allowed and paid, in the same manner as costs before justices in criminal prosecutions ; but in all cases, where a person is required to give security for the peace, or for his good behavior, the court or magistrate may further order that the costs of prosecution, or any part thereof, shall be paid by such person, who shall stand committed, until such costs are paid, or he is otherwise legally discharged. *Payment of costs in other cases. 1824, 128, § 2. 1834, 151, § 4.*

SECT. 9.  Any person aggrieved by the order of any justice of the peace, or of a police court, requiring him to recognize as afore- *Appeal allowed. 1833, 63, § 1.*

said, may, on giving the security required, appeal to the court of common pleas, next to be held in the same county, or, in the city of Boston, to the municipal court.

**On appeal, witnesses to recognize.**    SECT. 10.    The magistrate, from whose order an appeal is so taken, shall require such witnesses, as he may think necessary to support the complaint, to recognize for their appearance at the court to which the appeal is made.

**Proceedings on appeal.**    SECT. 11.    The court, before which such appeal is prosecuted, may affirm the order of the justice, or discharge the appellant, or may require the appellant to enter into a new recognizance, with sufficient sureties, in such sum, and for such time, as the court shall think proper, and may also make such order, in relation to the costs of prosecution, as may be deemed just and reasonable.

**Recognizance, when to remain in force.**    SECT. 12.    If any party appealing shall fail to prosecute his appeal, his recognizance shall remain in full force and effect, as to any breach of the condition, without an affirmation of the judgment or order of the magistrate, and shall also stand as a security for any costs, which shall be ordered, by the court appealed to, to be paid by the appellant.

**Persons committed for not recognizing, how discharged.**    SECT. 13.    Any person, committed for not finding sureties, or refusing to recognize, as required by the court or magistrate, may be discharged by any judge or justice of the peace, on giving such security as was required.

**Recognizances to be transmitted to the court.**    SECT. 14.    Every recognizance, taken pursuant to the foregoing provisions, shall be transmitted by the magistrate to the court of common pleas for the county, or, in the city of Boston, to the municipal court, on or before the first day of the next term, and shall be there filed of record by the clerk.

**— when to be required on view of the court or magistrate.**    SECT. 15.    Every person who shall, in the presence of any magistrate mentioned in the first section of this chapter, or before any court of record, make an affray, or threaten to kill or beat another, or to commit any violence or outrage against his person or property, and every person, who in the presence of such court or magistrate, shall contend with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognize for keeping the peace, or being of good behavior, for a term not exceeding three months, and in case of refusal, may be committed, as before directed.

**Persons who go armed may be required to find sureties for the peace, &c. 1794, 26, § 2.**    SECT. 16.    If any person shall go armed with a dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without reasonable cause to fear an assualt or other injury, or violence to his person, or to his family or property, he may, on complaint of any person having reasonable cause to fear an injury, or breach of the peace, be required to find sureties for keeping the peace, for a term not exceeding six months, with the right of appealing as before provided.

**Court may remit part of penalty. 7 Mass. 397. 1810, 80.**    SECT. 17.    Whenever, upon a suit brought on any such recognizance, the penalty thereof shall be adjudged forfeited, the court may remit such portion of the penalty, on the petition of any defendant, as the circumstances of the case shall render just and reasonable.

**Surety may surrender his**    SECT. 18.    Any surety in a recognizance to keep the peace, or for good behavior, or both, shall have the same authority and right

to take and surrender his principal, as if he had been bail for him in *principal, who may recognize anew.*
a civil cause, and upon such surrender shall be discharged, and exempt from all liability, for any act of the principal subsequent to such surrender, which would be a breach of the condition of the recognizance ; and the person, so surrendered, may recognize anew, with sufficient sureties, before any justice of the peace, for the residue of the term, and thereupon shall be discharged.

# CHAPTER 135.

## OF THE ARREST AND EXAMINATION OF OFFENDERS, COMMITMENT FOR TRIAL, AND TAKING BAIL.

SECTION
1. Officers, empowered to act under this chapter.
2. Complaints, warrants, and summonses for witnesses.
3. In what counties warrants may be executed.
4. Prisoners, when to be brought before magistrate, on arrest, &c.
5. Magistrate, if he take bail, to return the recognizance to court, &c.
6. Officer, how to proceed if prisoner is not bailed
7, 8. Prisoner when to be carried to the county whence the warrant issued.
9. Magistrate may adjourn the examination, &c.
10. In case of default, magistrate to certify recognizance to C. C. Pleas.
1  Proceedings, when the party fails to recognize.
12, 13, 14. Manner of conducting the examination.

SECTION
15. Testimony may be reduced to writing.
16. Prisoner, when to be discharged.
17.   "    when to be bailed, or committed.
18. Witnesses to recognize.
19. Witnesses, when to recognize with sureties.
20. Recognizances of married women and minors.
21. Witnesses, refusing to recognize, to be committed.
22. Prisoners, by whom let to bail.
23. Examining magistrate may have associates.
24. Examinations and recognizances to be returned.
25. Commitments, when to be superseded, and recognizances discharged.
26. Orders therefor, how to be filed, and effect thereof.
27, 28, 29, 30. Proceedings on forfeited recognizances.

SECTION 1.  For the apprehension of persons charged with offences, the justices of the supreme judicial court, justices of the court of common pleas, justices of any police court, in vacation as well as in term time, and all justices of the peace, are authorized to issue process, to carry into effect the provisions of this chapter. *Officers, empowered to act under this chapter.*

SECT. 2.  Upon complaint, made to any such magistrate, that a criminal offence has been committed, he shall examine on oath the complainant, and any witnesses produced by him, and shall reduce the complaint to writing, and shall cause the same to be subscribed by the complainant ; and if it shall appear that any such offence has been committed, the court or justice shall issue a warrant, reciting the substance of the accusation, and requiring the officer, to whom it shall be directed, forthwith to take the person accused, and to bring him before the said court or justice, or before some other court or magis- *Complaints, warrants, and summonses for witnesses.*

the condition, without an affirmation of the judgment or order of the magistrate, and shall also stand as a security for any costs which shall be ordered by the court appealed to, to be paid by the appellant.

§ 13. Any person committed for not finding sureties, or refusing to recognize as required by the court or magistrate, may be discharged by any judge or justice of the peace on giving such security as was required. *Not recognizing, how discharged.*

§ 14. Every recognizance taken in pursuance of the foregoing provisions shall be transmitted by the magistrate to the district court for the county on or before the first day of the next term, and shall be there filed of record by the clerk. *Recognizances transmitted to court.*

§ 15. Any person who shall, in the presence of any magistrate mentioned in the first section of this statute, or before any court of record, make an affray, or threaten to kill or beat another, or to commit any violence or outrage against his person or property, and every person who, in the presence of such court or magistrate, shall contend, with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognize for keeping the peace and being of good behavior, for a term not exceeding six months, and in case of refusal may be committed as before directed. *When required on view of court, &c.*

§ 16. If any person shall go armed with a dirk, dagger, sword, pistol or pistols, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury, or violence to his person, or to his family, or property, he may, on complaint of any other person having reasonable cause to fear an injury or breach of the peace, be required to find sureties for keeping the peace for a term not exceeding six months, with the right of appealing as before provided. *Persons going armed to give security, &c.*

§ 17. Whenever, upon a suit brought on any such recognizance, the penalty thereof shall be adjudged forfeited, the court may remit such portion of the penalty on the petition of any defendant, as the circumstances of the case shall render just and reasonable. *Part of penalty remitted.*

§ 18. Any surety in a recognizance to keep the peace or for good behavior or both, shall have the same authority and right to take and surrender his principal as if he had been bail for him in a civil cause, and upon such surrender shall be discharged and exempt from all liability for any act of the principal subsequent to such surrender, which would be a breach of the condition of the recognizance; and the person so surrendered may recognize anew, with sufficient sureties, before any justice of the peace for the residue of the term, and thereupon shall be discharged. *Surety may surrender principal.*

# AN ACT making general provisions concerning crimes and punishments.

§ 1. That every person who shall be aiding in the commission of any offence, which shall be a felony either at common law or by any statute now made, or which shall be hereafter made, or who shall be accessory thereto before the fact, by counselling, hiring or otherwise procuring such felony to be committed, shall be punished in the same manner as is or shall be prescribed for the punishment of the principal felon. *Accessory to felony before the fact, how punished.*

refusing to recognize, as required by the court or magistrate, may be discharged by any judge or justice of the peace, on giving such security, as was required.

CHAP. 169.

may be taken after commitment.

SECT. 14. Every recognizance, taken pursuant to the foregoing provisions, shall be transmitted to the district court, on or before the first day of the next ensuing term, and shall there be filed by the clerk, as of record.

Return of such recognizance.

SECT. 15. Whoever, in the presence of any magistrate, mentioned in the second section of this chapter, or before any court of record, shall make any affray or threaten to kill or beat another, or commit any violence against his person or property, or shall contend, with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognize for keeping the peace, or being of the good behavior for a term, not exceeding three months, and, in case of refusal, may be committed to prison as before directed.

When magistrate may require sureties, without a formal complaint, &c.

SECT. 16. Any person, going armed with any dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without a reasonable cause to fear an assault on himself, or any of his family or property, may, on the complaint of any person having cause to fear an injury or breach of the peace, be required to find sureties for keeping the peace for a term, not exceeding one year, with the right of appeal as before provided.

Persons going armed, without reasonable cause.
1821, 76, § 1.

SECT. 17. In a suit, on such recognizance taken in a criminal case, if a forfeiture is found or confessed, the court, on petition, may remit the penalty, or such part of it as they may think proper, on such terms as they may think right.

Power of court, to remit the penalty of a recognizance.
1821, 50, § 4.

SECT. 18. Any surety in a recognizance may surrender the principal in the same manner, as if he had been his bail in a civil cause, and, on such surrender, shall be discharged from all liability for any act of the principal after such surrender, which would be a breach of the recognizance; and, upon such surrender, the principal may recognize anew with sufficient surety or sureties for the residue of the term, before any justice of the peace, and shall thereupon be discharged.

Sureties on recognizances may surrender their principals as in case of bail in civil actions.

# CHAPTER 170.

OF THE POWER AND PROCEEDINGS OF JUSTICES OF THE PEACE IN CRIMINAL CASES.

SECT. 1. Justices may require aid, on view, without a warrant.
2. Their jurisdiction.
3. When a justice shall issue his warrant.
4. Examination, on trial, of the party accused.
5. Of commitment or binding over to a higher court.
SECT. 6. Duty of justices, as to arrests, and examinations into treasons, felonies, &c.
7. Trial and sentence within their jurisdiction.
8. Respondent may appeal; but required to recognize.
9. To carry up copies of the case.

# TITLE XXXI.

### OF PROCEEDINGS IN CRIMINAL CASES.

Chapter 162. Of Proceedings to prevent the Commission of Crime.
Chapter 163. Of the Arrest and Examination of Offenders, commit-
            ment for Trial and taking Bail.
Chapter 164. Of Indictments and Proceedings before Trial.
Chapter 165. Of Trials in Criminal Cases.
Chapter 166. Of new Trials and Exceptions in Criminal Cases.
Chapter 167. Of Coroners' Inquests.
Chapter 168. Of Judgments in Criminal Cases and the Execution
            thereof.
Chapter 169. Of Fees of Officers and Ministers of Justice in Criminal
            Cases.
Chapter 170. Miscellaneous Provisions concerning Proceedings in
            Criminal Cases.

## CHAPTER 162.

#### OF PROCEEDINGS TO PREVENT THE COMMISSION OF CRIME.

*Officers author-*
*ized to keep the*
*peace.*

SECTION 1. The justices of the supreme court, judges of county courts, circuit court commissioners, all mayors and recorders of cities, and all justices of the peace, shall have power to cause all laws made for the preservation of the public peace, to be kept, and in the execution of that power, may require persons to give security to keep the peace, in the manner provided in this chapter.

*Complaint, how*
*made.*

SEC. 2. Whenever complaint shall be made in writing and on oath, to any such magistrate, that any person has threatened to commit any offence against the person or property of another, it shall be the duty of such magistrate to examine such complainant, and any witnesses who may be produced, on oath, to reduce such examination to writing, and to cause the same to be subscribed by the parties so examined.

*Arrest.*

SEC. 3. If it shall appear from such examination, that there is just reason to fear the commission of any such offence, such magistrate shall issue a warrant under his hand, directed to the sheriff or any constable of the county, reciting the substance of the complaint, and commanding him forthwith to apprehend the person so complained of, and bring him before such magistrate.

*Trial, recogni-*
*zance.*
*4 Mass., 497.*
*8 do., 73.*
*2 B. & A., 278.*

SEC. 4. When the party complained of is brought before the magistrate, he shall be heard in his defence, and he may be required to enter into a recognizance with sufficient sureties, in such sum as the magistrate shall direct, to keep the peace towards all the people of

this state, and especially towards the person requiring such security, for such term as the magistrate may order, not exceeding one year, but shall not be bound over to the next court, unless he is also charged with some other offence, for which he ought by law to be held to answer at such court.

SEC. 5. Upon complying with the order of the magistrate, the party complained of shall be discharged. *Party, when discharged.*

SEC. 6. If the person so ordered to recognize, shall refuse or neglect to comply with such order, the magistrate shall commit him to the county jail, during the period for which he was required to give security, or until he shall so recognize; stating in the warrant the cause of commitment, with the sum and the time for which such security was required. *Refusing to recognize, to be committed.*

SEC. 7. If, upon examination, it shall not appear that there is just cause to fear that any such offence will be committed by the party complained of, he shall be forthwith discharged; and if the magistrate shall deem the complaint unfounded, frivolous or malicious, he shall order the complainant to pay the costs of the prosecution, who shall thereupon be answerable to the magistrate and the officer *(officers)* for their fees, as for his own debt. *Complainant, when to pay costs.*

SEC. 8. When no order respecting the costs is made by the magistrate, they shall be allowed and paid in the same manner as costs before justices in criminal prosecutions; but in all cases where a person is required to give security to keep the peace, the court or magistrate may further order that the costs of prosecution, or any part thereof, shall be paid by such person, who shall stand committed, until such costs are paid, or he is otherwise legally discharged. *Payment of cost in other cases.*

SEC. 9. Any person aggrieved by the order of any justice of the peace, requiring him to recognize as aforesaid, may, on giving the recognizance to keep the peace required by such order, appeal to the circuit court for the same county. *Appeal allowed.*

SEC. 10. The justice from whose order an appeal is taken, shall require such witnesses as he may think necessary to support the complaint, to recognize for their appearance at the court to which the appeal is made. *Witnesses to recognize.*

SEC. 11. The court before which such appeal is prosecuted, may affirm the order of the justice, or discharge the appellant, or may require the appellant to enter into a new recognizance, with sufficient sureties, in such sum, and for such time, not exceeding one year, as the court shall think proper, and may also make such order in relation to the costs of prosecution, as may be deemed just. *Court may affirm order of justice, or discharge appellant, &c.*

SEC. 12. If any party appealing shall fail to prosecute his appeal, his recognizance shall remain in full force and effect, as to any breach of the condition, without an affirmation of the judgment or order of the justice, and shall also stand as a security for any costs which shall be ordered by the court appealed to, to be paid by the appellant. *Recognizance, when to remain in force.*

SEC. 13. Any person committed for not finding sureties, or refusing to recognize, as required by the court or magistrate, may be discharged by any judge, circuit court commissioner or justice of the peace, on giving such security as was required. *Person committed how discharged.*

SEC. 14. Every recognizance, taken pursuant to the foregoing provisions, shall be transmitted by the magistrate to the clerk of the circuit court for the county, within twenty days after the taking thereof, and on or before the next term of such court, and shall be filed by such clerk. *Recognizance to be transmitted to clerk of court.*

Breach of peace
in presence of
magistrate, &c.

SEC. 15. Every person who shall, in the presence of any magistrate mentioned in the first section of this chapter, or before any court of record, make an affray, or threaten to kill or beat another, or to commit any violence or outrage against his person or property, and every person who, in the presence of such court or magistrate, shall contend with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognize for keeping the peace, for a term not exceeding six months, and in case of refusal, may be committed as before directed.

Person going
armed to find su-
reties for the
peace.

SEC. 16. If any person shall go armed with a dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury, or violence to his person, or to his family or property, he may, on complaint of any person having reasonable cause to fear an injury or breach of the peace, be required to find sureties for keeping the peace, for a term not exceeding six months, with the right of appealing as before provided.

Court may remit
part of penalty.
7 Mass., 397.

SEC. 17. Whenever upon a suit brought on any recognizance entered into in pursuance of this chapter, the penalty thereof shall be adjudged forfeited, the court may remit such portion of the penalty, on the petition of any defendant, as the circumstances of the case shall render just and reasonable.

Surety may sur-
render his prin-
cipal, effect of
surrender.

SEC. 18. Any surety in a recognizance to keep the peace, shall have the same authority and right to take and surrender his principal as in other criminal cases, and upon such surrender shall be discharged and exempt from all liability for any act of the principal subsequent to such surrender, which would be a breach of the condition of the recognizance ; and the person so surrendered may recognize anew, with sufficient sureties, before any justice of the peace or circuit court commissioner for the residue of the term, and shall thereupon be discharged.

---

# CHAPTER 163.

## OF THE ARREST AND EXAMINATION OF OFFENDERS, COMMITMENT FOR TRIAL AND TAKING BAIL.

What officers
may issue pro-
cess for the arrest
of offenders, &c.

SECTION 1. For the apprehension of persons charged with offences, excepting such offences as are cognizable by justices of the peace, the justices of the supreme court, judges of the county courts, circuit court commissioners, mayors and recorders of cities, and all justices of the peace, shall have power to issue process and to carry into effect the provisions of this chapter.

Complainant, &c.
to be examined.

SEC. 2. Whenever complaint shall be made to any such magistrate, that a criminal offence, not cognizable by a justice of the peace, has been committed, he shall examine on oath the complainant, and any witnesses who may be produced by him.

Proceedings if it
appear that an
offence has been
committed.

SEC. 3. If it shall appear from such examination, that any criminal offence, not cognizable by a justice of the peace, has been committed, the magistrate shall issue a warrant, directed to the sheriff or any constable of the county, reciting the substance of the accusation, and

# TITLE III.

## OF PROCEEDINGS IN CRIMINAL CASES.

Chap. 14. Of proceedings to prevent the commission of crimes.
      15. Of arrest and commitment.
      16. Of coroners' inquests.
      17. Of bail in criminal cases.
      18. Of examining courts.
      19. Of grand juries.
      20. Of indictments, presentments and informations, and process thereon.
      21. Of trial and its incidents.
      22. Of exceptions, writs of error and execution of judgment.
      23. Of taxation and allowance of costs.
      24. Of contempts of court.
      25. Of general provisions concerning proceedings in criminal cases.
      26. Of criminal proceedings against slaves, free negroes and mulattoes.

## CHAP. XIV.

### OF PROCEEDINGS TO PREVENT THE COMMISSION OF CRIMES.

SECTION
1. Officers authorized to keep the peace.
2. Complaint, how made.
3. Arrest.
4. Trial. Recognizance to keep the peace.
5. Party, when discharged.
6. Refusing to recognize, to be committed.
7. Complainant when to pay costs.
8. Payment of costs in other cases.
9. Appeal allowed.
10. On appeal, witnesses to recognize.
11. Proceedings on appeal.

SECTION
12. Recognizance, when to remain in force.
13. Persons committed for not recognizing, how discharged.
14. Recognizances to be transmitted to court.
15. Recognizances, when to be required on view of the court or magistrate.
16. Persons who go armed may be required to find sureties of the peace, &c.
17. Persons not of good fame to give surety for good behaviour.

1. The judges of the supreme court of appeals, the judges of the general court throughout the commonwealth, all justices of the peace and commissioners in chancery within their respective jurisdictions, shall have power to cause all laws made for the preservation of the public peace, to be kept, and in the execution of that power, may require persons to give security to keep the peace, or for their good behaviour, or both, in the manner hereinafter provided. *Officers authorized to keep the peace. Power to require security for behaviour.*

2. Whenever complaint shall be made to any such magistrate that there is good cause for fear that any person intends to commit an offence against the person or property of another, the magistrate shall examine the complainant and any witnesses who may be produced on oath, and reduce such complaint to writing, and cause the same to be subscribed by the complainant. *Complaint how made.*

3. If upon examination, it shall appear that there is just cause to fear that any such offence may be committed, the magistrate shall issue a warrant under his hand, reciting the substance of the complaint, and requiring the officer to whom it may be directed, forthwith to apprehend the person complained of, and bring him before such magistrate, or some other magistrate having jurisdiction of the cause. *Arrest.*

**Trial.**
**Recognizance to keep peace.**

4. When the party complained of is brought before the magistrate, he shall be heard in his defence, and he may be required to enter into a recognizance, with sufficient sureties, in such sum as the magistrate shall direct, to keep the peace towards all the people of this commonwealth, and especially towards the person making the complaint, for such term as the magistrate may order, not exceeding twelve months, but shall not be bound over to the next court, unless he is also charged with some other offence, for which he ought to be held to answer at such court.

**Party when discharged.**

5. Upon complying with the order of the magistrate, the party complained of shall be discharged.

**Refusing to recognize, to be comitted.**

6. If the person so ordered to recognize shall refuse or neglect to comply with such order, the magistrate shall commit him to the jail during the period for which he was required to give security, or until he shall so recognize, stating in the warrant the cause of commitment, with the sum and the time for which security was required.

**Defendant when discharged.**
**Complainant when to pay costs.**

7. If upon examination it shall not appear that there is just cause to fear that any such offence will be committed by the party complained of, he shall be forthwith discharged; and if the magistrate shall deem the complaint unfounded, frivolous or malicious, he may order the complainant to pay the costs of the prosecution, and thereupon award execution against him for the same.

**Payment of costs in other cases.**

8. When no order respecting the costs is made by the magistrate, they shall be allowed and paid in the same manner as costs before justices in criminal prosecutions; but in all cases where a person is required to give security for the peace, or for his good behaviour, the court or magistrate may further order that the costs of prosecution, or any part thereof, shall be paid by such person, who shall stand committed until such costs are paid, or he is otherwise legally discharged.

**Appeal against order to recognize allowed.**

9. Any person aggrieved by the order of any justice of the peace requiring him to recognize as aforesaid, may, on giving the security required, appeal to the county or corporation court next to be holden for the said county or corporation.

**On appeal, witnesses to recognize.**

10. The magistrate from whose order an appeal is taken, shall require such witnesses as he may think necessary to support the complaint, to recognize for their appearance at the court to which the appeal is made.

**Proceedings on appeal.**

11. The court before which such appeal is prosecuted, may affirm the order of the justice, or discharge the appellant, or may require him to enter into a new recognizance, with sufficient sureties, in such sum, and for such time, as the court shall think proper; and

**Costs.**

may also make such order in relation to the costs of prosecution as may be deemed just and reasonable.

**Recognizance to be valid unless appeal prosecuted.**

12. If any party appealing shall fail to prosecute his appeal, his recognizance shall remain in full force and effect, as to any breach of the condition, without any affirmation of the order of the magistrate, and shall also stand as a security for any costs which shall be ordered by the court appealed to, to be paid by the appellant.

**Persons committed for not recognizing, how discharged.**

13. Any person committed for not finding securities, or refusing to recognize as required by the court or magistrate, may be discharged by any judge or justice of the peace on giving such security as was required, or by the county court, on such terms as the court may deem reasonable.

**Recognizances returned to court.**

14. Every recognizance taken pursuant to the foregoing provisions, shall be transmitted by the magistrate to the court of the county on or before the first day of the next term thereof, and shall be there filed of record by the clerk.

15. Every person who shall, in the presence of any magistrate, mentioned in the first section of this act, or before any court of record, make an affray, or threaten to kill or beat another, or to commit any violence or outrage against his person or property, and every person who, in the presence of such court or magistrate, shall contend with hot and angry words, to the disturbance of the peace, may be ordered without process or any other proof, to recognize for keeping the peace, or being of good behaviour, for a term not exceeding six months, and in case of refusal may be committed as before directed. *Recognizances required for offences in presence of magistrate or court.*

16. If any person shall go armed with any offensive or dangerous weapon, without reasonable cause to fear an assault or other injury, or violence to his person, or to his family or property, he may be required to find sureties for keeping the peace for a term not exceeding twelve months, with the right of appealing as before provided. *Persons armed, required to find sureties. Appeal allowed.*

17. Such persons as are not of good fame may be required to give sufficient surety of their good behaviour for such term, not exceeding twelve months, as the magistrate requiring it may order. *Persons not of good fame to give surety.*

---

## CHAP. XV.

### OF ARREST AND COMMITMENT.

SECTION
1. Officers empowered to act.
2. Complaints, warrants and summonses.
3. Offence committed in another county.
4. In what county warrant may be executed.
5. Prisoner, when to be brought before magistrate on arrest.
6. Magistrate, if he take bail, to return recognizance, &c.
7. Officer, how to proceed if prisoner not bailed.
8. Prisoner, when to be carried to county whence warrant issued.
9. Same subject.
10. Magistrate may adjourn examination.
11. In case of default, recognizance to be certified.
12. Proceedings when party fails to recognize.
13. 14. 15. } Manner of conducting examination.
16. Testimony to be reduced to writing.

SECTION
17. When prisoner to be discharged.
18. When to be bailed or committed.
19. If party entitled to examination, &c.
20. If not so entitled, and triable on indictment, &c.
21. If party charged be free negro, &c.
22. Duty of magistrate, &c.
23. Witnesses to recognize.
24. Witnesses, when to recognize with sureties.
25. Recognizances of minors, &c.
26. Witnesses refusing to recognize.
27. Magistrate may associate others.
28. Prisoner by whom let to bail.
29. Recognizances, &c. to be returned.
30. Commitments, &c. when to be discharged.
31. Orders therefor, how to be filed &c.
32. 33. 34. 35. } Proceedings on forfeited recognizances.
36. Right of surety to surrender principal.
37. To whom to be surrendered.
38. When to the court.

1. For the apprehension of persons charged with offences, the judges of the general court, and all justices of the peace in vacation as well as in term time, are authorized to issue process to carry into effect the provisions of this act. *Process to arrest for offences, by whom issued.*

2. Upon complaint made to any such magistrate that a criminal offence has been committed, he shall examine on oath the complainant and any witnesses produced by him, and shall reduce the complaint to writing, and cause the same to be subscribed by the complainant; and if it shall appear that any such offence has been com- *Examination on complaint.*

17

as are necessary to bring the case within the provisions of law, issue a warrant to bring the person so charged before the same, or some other court or magistrate within the territory, to answer such complaint as in other cases.

**When person charged to give recognizance.**

SEC. 4. If, upon examination of the person charged, it shall appear to the court or magistrate, that there is reasonable cause to believe that the complaint is true, and that such person may be lawfully demanded of the governor, he shall, if not charged with a capital crime, be required to recognize with sufficient sureties, in a reasonable sum, to appear before such court or magistrate at a future day, allowing a reasonable time to obtain the warrant of the executive, and to abide the order of the court or magistrate; and if such person shall not so recognize, he

**When to be committed.**

shall be committed to prison, and be there detained until such day, in like manner as if the offence charged had been committed within this territory; and if the person so recognizing shall fail to appear according to the condition of his recognizance, he shall be defaulted, and the like

**Forfeiture of recognizance.**

proceedings shall be had as in the case of other recognizances entered into before such court or magistrate; but if such person be charged with a capital crime, he shall be committed to prison, and there detained until the day so appointed for his appearance before the court or magistrate.

**When discharged.**

SEC. 5. If the person so recognized or committed, shall appear before the court or magistrate upon the day ordered, he shall be discharged unless he be demanded by some person authorized by the war-

**May be delivered on warrant of executive, &c.**

rant of the executive to receive him, or unless the court or magistrate shall see cause to commit him, or to require him to recognize anew, for his appearance at some other day and if, when ordered, he shall not so recognize, he shall be committed and detained as before provided; whether the person so discharged shall be recognized, committed, or discharged, any person authorized by the warrant of the executive, may at all times, take him into custody, and the same shall be a discharge of the recognizance, if any, and shall not be deemed an escape.

**Complainant liable for costs, &c.**

SEC. 6. The complainant in such case, shall be answerable for the actual costs and charges, and for the support in prison, of any person so committed, and shall advance to the jailor one week's board, at the time of commitment, and so from week to week, so long as such person shall remain in jail, and if he fail so to do, the jailor may forthwith discharge such person from his custody.

---

# CHAPTER 112.

## OF PROCEEDINGS TO PREVENT THE COMMISSION OF CRIMES.

SECTION
1. What officers to cause public peace to be kept.
2. Proceedings when complaint is made to magistrate.

SECTION
3. Magistrate when to issue warrant.
4. Proceedings upon examination, before magistrate.
5. Defendant may have counsel.

| SECTION | SECTION |
|---------|---------|
| 6. Defendant when to enter into recognizance. | 15. After commitment, how defendant may be discharged. |
| 7. Defendant when to be discharged. | |
| 8. Defendant when to be committed. | 16. Recognizance to be transmitted to district court. |
| 9. Defendant when to be discharged. | |
| 10. Costs by whom paid. | 17. When person may be ordered to recognize without warrant. |
| 11. Appeal when allowed. | |
| 12. When magistrate may require witnesses to recognize. | 18. Persons carrying offensive weapons, how punished. |
| 13. District court how to proceed upon such appeal. | 19. Suit brought on recognizance. |
| 14. When appellant fails to prosecute appeal, recognizance to be in force. | 20. Surety may take and surrender principal in recognizance. |

SEC. 1. The judges of the several courts of record, in vacation as well as in open court, and all justices of the peace, shall have power to cause all laws made for the preservation of the public peace, to be kept, and in the execution of that power, may require persons to give security to keep the peace, or for their good behavior, or both, in the manner provided in this chapter. *What officers to cause public peace to be kept.*

SEC. 2. Whenever complaint shall be made to any such magistrate, that any person has threatened to commit an offence against the person or property of another, the magistrate shall examine the complainant and any witness who may be produced, on oath, and reduce such complaint to writing and cause the same to be subscribed by the complainant. *Proceedings when complaint is made to magistrate.*

SEC. 3. If upon examination, it shall appear that there is just cause to fear that any such offence may be committed, the magistrate shall issue a warrant under his hand, reciting the substance of the complaint, and requiring the officer to whom it may be directed, forthwith to apprehend the person complained of, and bring him before such magistrate or some other magistrate or court, having jurisdiction of the cause. *Magistrate when to issue warrant.*

SEC. 4. The magistrate before whom any person is brought upon charge of having made threats as aforesaid, shall as soon as may be, examine the complainant and the witnesses to support the prosecution, on oath, in the presence of the party charged, in relation to any matters connected with such charge, which may be deemed pertinent. *Proceedings upon examination before magistrate.*

SEC. 5. After the testimony to support the prosecution, the witnesses for the prisoner, if he have any, shall be sworn and examined, and he may be assisted by counsel in such examination, and also in the cross examination of the witnesses in support of the prosecution. *Defendant may have counsel.*

SEC. 6. If upon examination it shall appear that there is just cause to fear that any such offence will be committed by the party complained of, he shall be required to enter into a recognizance and with sufficient sureties, in such sum as the magistrate shall direct, to keep the peace towards all the people of this territory, and especially towards the persons requiring such security, for such term as the magistrate shall order, not exceeding six months; but he shall not be ordered to recognize for his appearance at the district court, unless he is charged with some offence for which he ought to be held to answer at said court. *Defendant when to enter into recognizance.*

SEC. 7. Upon complying with the order of the magistrate, the party complained of shall be discharged. *Defendant when to be discharged.*

SEC. 8. If the person so ordered to recognize shall refuse or neglect to comply with such order, the magistrate shall commit him to the county jail during the period for which he was required to give security, or until he shall so recognize, stating in the warrant the cause of commitment, with the sum and time for which security was required. *Defendant when to be committed.*

SEC. 9. If, upon examination, it shall not appear that there is just cause to fear that any such offence will be committed by the party complained of, he shall be forthwith discharged; and if the magistrate shall *Defendant when to be discharged.*

deem the complaint unfounded, frivolous, or malicious, he shall order
the complainant to pay the costs of prosecution, who shall thereupon be
answerable to the magistrate and the officer for their fees as for his
own debt.

Costs by whom paid

SEC. 10.   When no order respecting the costs is made by the mag-
istrate, they shall be allowed and paid in the same manner as costs be-
fore justices in criminal prosecutions ; but in all cases where a person
is required to give security for the peace or for his good behavior, the
magistrate may further order the costs of prosecution or any part there-
of to be paid by such person,· who shall stand committed until such
costs are paid, or he is otherwise legally discharged.

Appeal when al-
lowed.

SEC. 11.   Any person aggrieved by the order of any justice of the
peace requiring him to recognize as aforesaid, may, on giving the se-
curity required, appeal to the district court next to be holden in the
same county, or that county to which said county is attached for judi-
cial purposes.

When magistrate
may require wit-
ness to recognize.

SEC. 12.   The magistrate from whose order an appeal is so taken,
shall require such witnesses as he may think necessary to support the
complaint, to recognize for their appearance at the court to which ap-
peal is made.

District court how
to proceed upon
such appeal.

SEC. 13.   The court before which such appeal is prosecuted, may
affirm the order of the justice or discharge the appellant, or may re-
quire the appellant to enter into a new recognizance, with sufficient
sureties, in such sum and for such time as the court shall think proper,
and may also make such order in relation to the costs of prosecution as
he may deem just and reasonable.

When appellant
fails to prosecute
appeal, recogni-
zance to be in force.

SEC. 14.   If any party appealing, shall fail to prosecute his appeal,
his recognizance shall remain in full force and effect as to any breach of
the condition, without an affirmation of the judgment or order of the
magistrate, and shall also stand as a security for any costs which shall
be ordered by the court appealed to, to be paid by the appellant.

After commitment,
how defendant may
be discharged.

SEC. 15.   Any person committed for not finding sureties, or refusing
to recognize as required by the court or magistrate, may be discharged
by any judge or justice of the peace on giving such security as was re-
quired.

Recognizance to be
transmitted to dis-
trict court.

SEC. 16.   Every recognizance taken in pursuance of the foregoing
provision, shall be transmitted by the magistrate to the district court for
the county, on or before the first day of the next term, and shall be
there filed of record by the clerk.

When person may
be ordered to re-
cognize without
warrant.

SEC. 17.   Any person who shall in the presence of any magistrate
mentioned in the first section of this chapter, or before any court of rec-
ord make an affray, or threaten to kill or beat another, or to commit any
violence or outrage against his person or property, and every person,
who, in the presence of such court or magistate, shall contend with hot
and angry words, to the disturbance of the peace, may be ordered with-
out process or any other proof, to recognize for keeping the peace, and
being of good behavior, for a term not exceeding six months, and in case
of a refusal, may be committed as before directed.

Persons carrying
offensive weapons
how punished.

SEC. 18.   If any person shall go armed with a dirk, dagger, sword,
pistol or pistols, or other offensive and dangerous weapon, without reas-
onable cause to fear an assault or other injury or violence to his person,
or to his family, or property, he may, on complaint of any other person
having reasonable cause to fear an injury or breach of the peace, be re-
quired to find sureties for keeping the peace, for a term not exceeding
six months, with the right of appealing as before provided.

Suit brought on re-
cognizance.

SEC. 19.   Whenever upon a suit brought on any such recognizances,
the penalty thereof shall be adjudged forfeited, the court may remit such

App. 64

portion of the penalty, on the petition of any defendant, as the circumstances of the case shall render just and reasonable.

SEC. 20. Any surety in a recognizance to keep the peace, or for good behavior, or both, shall have the same authority and right to take and surrender his principal, as if he had been bail for him in a civil case, and upon such surrender, shall be discharged and exempt from all liability for any act of the principal, subsequent to such surrender, which would be a breach of the condition of the recognizance; and the person so surrendered may recognize anew, with sufficient sureties, before any justice of the peace for the residue of the term, and thereupon shall be discharged. *Surety may take and surrender principal in recognizance.*

# CHAPTER 113.

## OF ARRESTS.

| SECTION | SECTION |
| --- | --- |
| 1. Arrest defined. | 12. Officer may break open door. |
| 2. Arrest how and by whom made. | 13. Arrest may be made at night. |
| 3. Every person must aid officer in making arrest. | 14. Officer must inform person of the cause of arrest. |
| 4. Arrest for felony or misdemeanor how made. | 15. Person breaking peace to be taken before justice. |
| 5. Arrest for felony or misdemeanor how made. | 16. Offences in presence of magistrate. |
| 6. Defendant how to be restrained. | 17. When private person may arrest person. |
| 7. Officer must inform defendant that he acts under authority. | 18. Must inform person the cause of arrest. |
| 8. Officer may use necessary force. | 19. Person making such arrest may break open door. |
| 9. Officer may break outer door to make arrest. | 20. Person arrested must be taken before magistrate. |
| 10. Officer may break outer door to make arrest. | 21. Defendant may be retaken if he escape. |
| 11. When officer may arrest person without warrant. | 22. Person pursuing may break open door, &c. |

SEC. 1. Arrest is the taking of a person into custody, that he may be held to answer for a public offence. *Arrest defined.*

SEC. 2. An arrest may be either,
1. By a peace officer under a warrant :
2. By a peace officer without a warrant :
3. By a private person. *Arrest how and by whom made.*

SEC. 3. Every person must aid an officer in the execution of a warrant, if the officer require his aid, and be present and acting in its execution. *Every person must aid officer in making arrest.*

SEC. 4. If the offence charged be a felony, the arrest may be made on any day and at any time of the day or night; if it be a misdemeanor, the arrest cannot be made on Sunday, or at night, unless upon the direction of the magistrate indorsed upon the warrant. *Arrest for felony or misdemeanor how made.*

SEC. 5. An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer. *Arrest for felony or misdemeanor how made.*

SEC. 6. The defendant is not to be subjected to any more restraint than is necessary for his arrest and detention. *Defendant how to be restrained.*

# CHAPTER XVI.

### PROCEEDINGS TO PREVENT COMMISSION OF CRIMES.

SEC. 1. Certain officers conservators of the public peace.
    2. Proceedings when complaint is made to magistrate.
    3. Magistrate, when to issue warrant.
    4. Proceedings on examination before magistrate.
    5. Privilege of defendant.
    6. Recognizance, when required.
    7. Defendant, when to be committed.
    8. Discharge of defendant; complainant, when to pay costs.
    9. In other cases, costs, how and when paid.
    10. Appeal, when allowed.
    11. When magistrate may require witnesses to recognize.
    12. Proceedings on appeal by district court.
    13. Consequence of appellant failing to prosecute appeal.
    14. After commitment, defendant may be discharged on giving security.
    15. Recognizance to be transmitted to district court.
    16. When person may be ordered to recognize without warrant.
    17. Armed persons, when required to find sureties.
    18. Suit on recognizance.
    19. Surety may surrender principal.

**Keeping the peace.** SEC. 1. The judges of the several courts of record, in vacation as well as in open court, and all justices of the peace, shall have power to cause all laws made for the preservation of the public peace, to be kept, and in the execution of that power, may require persons to give security to keep the peace, or for their good behavior, or both, in the manner provided in this chapter.

**When sureties may be required. 17 Wen. 181; 23 do. 639.** SEC. 2. Whenever complaint shall be made to any such magistrate, that any person has threatened to commit an offence against the person or property of another, the magistrate shall examine the complainant, and any witness who may be produced on oath, and reduce such complaint to writing, and cause the same to be subscribed by the complainant.

**Warrant to issue.** SEC. 3. If, upon examination, it shall appear that there is just cause to fear that such offence may be committed, the magistrate shall issue a warrant under his hand, reciting the substance of the complaint, and requiring the officer to whom it may be directed, forthwith to apprehend the person complained of, and bring him before such magistrate, or some other magistrate or court having jurisdiction of the cause.

**Examination** SEC. 4. The magistrate before whom any person is brought upon charge of having made threats as aforesaid, shall, as soon as may be, examine the complainant, and the witnesses to support the prosecution, on oath, in the presence of the party charged, in relation to any matters connected with such charge, which may be deemed pertinent.

**Privilege of defendant.** SEC. 5. After the testimony to support the prosecution, the witnesses for the prisoner, if he have any, shall be sworn and examined, and he may be assisted by counsel in such examination, and also in the cross-examination of the witnesses in support of the prosecution.

**Recognizance when required.** SEC. 6. If, upon examination, it shall appear that there is just cause to fear that any such offence will be committed by the party

complained of, he shall be required to enter into recognizance with sufficient sureties, in such sum as the magistrate shall direct, to keep the peace towards all the people of this territory, and especially towards the person requiring such security, for such term as the magistrate shall order, not exceeding six months; but he shall not be ordered to recognize for his appearance at the district court, unless he is charged with some offence for which he ought to be held to answer at said court.

SEC. 7. If the person so ordered to recognize, shall refuse or neglect to comply with such order, the magistrate shall commit him to the county jail during the period for which he was required to give security, or until he shall so recognize, stating in the warrant the cause of commitment, with the sum and time for which security was required. *When to be committed. 23 Wen. 639.*

SEC. 8. If, upon examination, it shall not appear that there is just cause to fear that any such offence will be committed by the party complained of, he shall be forthwith discharged; and if the magistrate shall deem the complaint unfounded, frivolous or malicious, he shall order the complainant to pay the costs of prosecution, who shall thereupon be answerable to the magistrate and the officer for their fees, as for his own debt. *Complainant when to pay costs.*

SEC. 9. When no order respecting the costs is made by the magistrate, they shall be allowed and paid in the same manner as costs before justices in criminal prosecutions; but in all cases where a person is required to give security for the peace, or for his good behavior, the magistrate may further order the costs of prosecution, or any part thereof, to be paid by such person, who shall stand committed until such costs are paid, or he is otherwise legally discharged. *Costs.*

SEC. 10. Any person aggrieved by the order of any justice of the peace, requiring him to recognize as aforesaid, may, within ten days after the decision of the justice, on giving the security required, appeal to the district court, next to be holden in the same county, or that county to which said county is attached for judicial purposes. *Appeal.*

SEC. 11. The magistrate, from whose order an appeal is to be taken, shall require such witnesses as he may deem necessary to support the complaint, to recognize for their appearance at the court to which appeal is made. *Witnesses when to recognize.*

SEC. 12. The court before which such appeal is prosecuted, may affirm the order of the justice, or discharge the appellant, or may require the appellant to enter into a new recognizance, with sufficient sureties, in such sum and for such time as the court shall think proper, and may also make such order in relation to the costs of prosecution, as it may deem just and reasonable. *Power of appellate court*

SEC. 13. If any party appealing, shall fail to prosecute his appeal, his recognizance shall remain in full force and effect, as to any breach of the condition, without an affirmation of the judgment or order of the magistrate, and shall also stand as security for any cost which shall be ordered by the court appealed to, to be paid by the appellant. *Failing to prosecute appeal.*

SEC. 14. Any person committed for not finding sureties, or refusing to recognise as required by the court or magistrate, may be dis- *Discharge of party committed.*

CHAP. 17. charged by any judge or justice of the peace, on giving such security as was required.

Recognizances when to be transmitted. SEC. 15. Every recognizance taken in pursuance of the foregoing provisions, shall be transmitted by the magistrate to the district court for the county, on or before the first day of the next term, and shall be there filed of record by the clerk.

Order to recognize without warrant. SEC. 16. Any person, who shall, in the presence of any magistrate mentioned in the first section of this chapter, or before any court of record, make an affray, or threaten to kill, or beat another, or to commit any violence or outrage against his person or property, and every person, who, in the presence of such court or magistrate, shall contend with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognize for keeping the peace, and being of good behavior for a term not exceeding six months, and in case of a refusal, may be committed as before directed.

Armed persons, when required to find sureties. SEC. 17. If any person shall go armed with a dirk, dagger, sword, pistol, or other offensive and dangerous weapon, without reasonable cause to fear an assault, injury, or other violence to his person, or to his family or property, he may, on complaint of any other person, having reasonable cause to fear an injury, or breach of the peace, be required to find sureties for keeping the peace for a term not exceeding six months, with the right of appealing as before provided.

Suit on recognizance. SEC. 18. Whenever on a suit brought on any such recognizance, the penalty thereof shall be adjudged forfeited, the court may remit such portion of the penalty on the petition of any defendant, as the circumstances of the case shall render just and reasonable.

Surety may surrender principal. SEC. 19. Any surety in a recognizance to keep the peace, or for good behavior, or both, shall have the same authority and right to take and surrender his principal, as if he had been bail for him in a civil case, and upon such surrender, shall be discharged and exempted from all liability for any act of the principal, subsequent to such surrender, which would be a breach of the condition of the recognizance; and the person so surrendered, may recognize anew with sufficient sureties, before any justice of the peace for the residue of the term, and thereupon shall be discharged.

# CHAPTER XVII.

### ARRESTS.

SEC. 1. Arrest defined.
   2. Arrest, how and by whom made.
   3. Every person must aid officer in making arrest, if required.
   4. Arrest for felony and misdemeanor, when may be made.
     5. As to what constitutes arrest.
   6. Officer may pursue fugitive into other counties.
   7. When an officer or private person may arrest without warrant.
   8. Arrest, how made in such case.
   9. Escape and capture of prisoner.

Arrest. SEC. 1. Arrest is the taking a person into custody, that he may be held to answer for a public offence.

Acts of assembly to be strictly pursued.

**192.** In all cases where a remedy is provided, or duty enjoined, or anything directed to be done by any act or acts of assembly of this commonwealth, the directions of the said acts shall be strictly pursued; and no penalty shall be inflicted, or anything done agreeably to the provisions of the common law in such cases, further than shall be necessary for carrying such act or acts into effect.(a)

Meaning of general terms.

**193.** Wherever anything is forbidden or directed by the provisions of this code, by using the general terms, any one, any person, the person, every person and such person, or the relative pronoun he, referring to such general term, the same prohibition or direction, if the contrary be not expressed, is extended to more persons than one, and to females as well as males doing or omitting the same act.(b)

# Criminal Procedure.

A. PROCEEDINGS TO DETECT THE COMMISSION OF CRIMES.

1. Writs of arrest, &c. Subpœnas. Expenses.
2. Escapes into another county.
3. Backing warrants. Bail. Removal.
4. Magistrates backing such warrants to be indemnified.
5. Disposition of property supposed to be stolen, found in the possession of one accused.
6. Surety of the peace.
7. Bail.
8. Surrender of bail.
9. Settlement of criminal cases.

B. INDICTMENTS AND PLEADINGS.

10. Grand jurors authorized to administer oaths.
11. Form of indictments. Formal objections to indictment to be made before the jury is sworn. Amendments on demurrer, &c.
12. Variances between written instruments, as produced and laid in the indictment, amendable.
13. Immaterial variances between indictment and proof amendable.
14. Manner of laying the ownership of property in cases of partners and joint owners.
15. Manner of charging frauds against partners and joint owners.
16. Manner of laying property of counties, cities, townships, &c.
17. Forms of indictment in cases of forging, stealing and embezzling, or cheating by false pretences.
18. Forms in other cases.
19. Intent to defraud particular persons need not be alleged or proven in cases of forging, uttering or false pretences.
20. In indictments for murder and manslaughter, means by which the injury was inflicted need not be specified.
21. Requisites of an indictment for perjury.
22. Requisites of an indictment for subornation of perjury.
23. Indictment for duelling.
24. Counts for receiving and stealing may be joined.
25. Issue and trial in criminal cases.
26. Prisoners standing mute.
27. Prosecutor's name to be indorsed on the indictment.
28. Distinct acts of embezzlement may be charged in the same indictment.
29. Nolle prosequi.
30. Pleas of autrefois convict or autrefois acquit.

C. COURTS OF CRIMINAL JURISDICTION.

31. Courts of oyer and terminer.
32. Quarter sessions. When causes to be certified to the oyer and terminer. Powers of the courts.
33. Writs of error and certiorari.

D. OF THE TRIAL.

34. Persons under bail not to be placed in the criminal bar.
35. Persons indicted for treason to have a copy of the indictment.
36. Peremptory challenges.

37. Challenges by the commonwealth.
38. How challenges are to be conducted.
39. How challenges are to be determined.
40. Of the trial of persons jointly indicted, and joint challenges.
41. How tales may be awarded and juries summoned.
42. Of juries de medietate linguæ.
43. Of the place of trial of treason.
44. Of the place of trial of accessories before the fact.
45. Of the place of trial of accessories after the fact.
46. Of felonious striking or poisoning in one county, and death in another.
47. Of felonious striking or poisoning in the state, and death out of the state.
48. Proof of offences committed near county lines.
49. Proof of offences committed during journeys.
50. Party indicted for felony or misdemeanor may be found guilty of attempt to commit the same.
51. Persons tried for misdemeanor not to be acquitted if the offence turn out to be felony.
52. Witnesses entitled to restitution to be competent.
53. Cure of defects in jury process by verdict.
54. Of the trial of prisoners committed.
55. Witnesses in forgeries.
56. Witnesses not to be imprisoned except in certain cases.
57. Bills of exceptions and writs of error allowed.
58. Written opinions to be filed.
59. Granting of writs of error regulated.
60. From whence writ of error shall issue.
61. Proceedings after affirmance or reversal of judgment.

E. OF COSTS.

62. Power of grand and petit jurors over costs.
63. Of the defendant's costs.
64. Of payment of costs generally.
65. Costs where separate bills are presented against joint offenders.

F. GENERAL PROVISIONS.

66. Insane prisoners. Jury to find the fact of insanity. Defendant to be detained in custody.
67. Where defendant is found insane upon arraignment.
68. Where prisoner brought up to be discharged appears to be insane.
69. Insane defendant to be delivered up to his friends or to the overseers, on security being given.
70. How expenses to be paid in such cases.
71. Civil actions against felons.
72. Executions upon sentences of restitution.
73. Outlawry.
74. Sentences of separate or solitary confinement.
75. Sentences of separate or solitary confinement of less than one year, and simple imprisonment.
76. Executions in capital cases.
77. Limitation of prosecutions.
78. Fines to be decreed to be paid to the state for the use of the county.

## A. PROCEEDINGS TO DETECT THE COMMISSION OF CRIMES.

Warrants of arrest, &c.

**1.** The judges of the supreme court, of the court of oyer and terminer and jail delivery, of the courts of quarter sessions, or any of them, shall and may direct their writs and precepts to the sheriffs and coroners of the several counties within this commonwealth, when need shall be, to take persons indicted for felonies, or other offences, before them, who may dwell, remove or be received into another county; and it shall

Subpœnas.

and may be lawful to and for the said judges, or any of them, to issue subpœnas into any county of the commonwealth, for summoning and bringing any person to give evidence in any matter or cause before them, or any of them, and to compel obedience to such writs, precepts or subpœnas, by attachment or otherwise, and under such pains and

192. Act 31 March 1860, § 183. P. L. 426.    193. Ibid. § 184.    1. Act 31 March 1860, § 1. P. L. 428.

system by the 13th section of the act of 22d April 1794, 3 Sm. 190; it will also be found in the punishments provided by the act of 23d April 1829, 10 Sm. 430. Report on the Penal Code 38.
(a) This section is taken from the 13th section of the act of

& R. 289. 11 S. & R. 345. Bright. R. 69. 13 S. & R. 426. 457. 5 R. 64. 1 Ash. 46. 7 Am. L. R. 620.
(b) This section explains the meanings of general terms which have been used for the sake of brevity. Report on the Penal Code 39.

penalties as other writs or subpœnas are or ought by law to be granted and awarded; and that it shall be lawful for said judges, or any of them, if they see fit to direct such writ, precept, summons, subpœna or attachments, to be executed by the sheriff of the county in which the same is awarded, which said writ, precept, summons or subpœna, shall be the sufficient warrant of such sheriff for executing the same throughout this commonwealth, as fully and effectually as if directed to, and executed by the sheriff of the proper county where issued: *Provided,* That the reasonable expenses of executing **Expenses.** such process, when issued on behalf of the commonwealth, shall be paid out of the funds of the county where issued; and the expenses of removing any person charged with having committed an offence in one county into another county, or of transporting any person charged with having committed any offence in this state from another state into this state for trial, or for conveying any person, after conviction, to the penitentiary, shall be paid out of the treasury of the county where the offence is charged to have been committed.(*a*)

2. Where any person charged with having committed any felony,(*b*) in any city or **Escapes into** county of this commonweath, shall go or escape into any other county thereof, it shall **another** and may be lawful for the president, or any judge of the court of common pleas in the **county.** county where the said person may be found, to issue his warrant, authorizing and requiring the sheriff of the said county, to take the said person and conduct him to the proper county, where the said felony is alleged to have been committed, the expenses of which shall be paid to the said sheriff by the county to which the said person is conducted.(*c*)

3. In case any person against whom a warrant may be issued by any judge or **Backing war-** alderman of any city, or justice of the peace of any county in this commonwealth, for **rants.** any offence there committed, shall escape, go into, reside or be in any other city or county out of the jurisdiction of the judge, alderman, justice or justices of the city or county granting such warrant as aforesaid, it shall and may be lawful for, and it is hereby declared to be the duty of any alderman, justice or justices of the city or county where such person shall escape, go into, reside or be, upon proof being made, upon oath or affirmation, of the handwriting of the judge, alderman, justice or justices granting such warrant, to indorse his or their name or names on such warrant, which shall be sufficient authority to the person or persons bringing such warrant, and to all other persons to whom such warrant was originally directed, to execute the same in such other city or county, out of the jurisdiction of the alderman, justice or justices, granting such warrant as aforesaid, and to apprehend and carry such offender before the alderman, justice or justices who indorsed such warrant, or some other alderman, justice or justices of such other city and county where such warrant was indorsed. And in case the offence **Bail.** for which such offender shall be so apprehended, shall be bailable in law by an alderman or justice of the peace, and such offender shall be willing and ready to give bail for his appearance at the next court of general jail delivery or quarter sessions, to be held in and for the city and county where the offence was committed, such alderman, justice or justices shall and may take such bail for his appearance, in the same manner as the alderman or justice of the peace of the proper city or county might have done; and the said alderman, justice or justices of the peace of such other city or county so taking bail, shall deliver or transmit such recognisance and other proceeding to the clerk of the court of general jail delivery or quarter sessions, where such offender is required to appear by virtue of such recognisance, and such recognisance and other proceedings shall be as good and effectual in law as if the same had been entered into, taken or acknowledged in the proper county where the offence was committed, and the same proceedings shall be had therein. And in case the offence for which such offender shall be apprehended in **Removal.** any other city or county, shall not be bailable in law by an alderman or justice of the peace, or such offender shall not give bail for his appearance at the proper court having cognisance of his crime, to the satisfaction of the alderman or justice before whom he shall be brought, then the constable or other person so apprehending such offender, shall carry and convey him before one of the aldermen or justices of the peace of the proper city or county where such offence was committed, there to be dealt with according to law.(*d*)

4. No action of trespass, or false imprisonment, or information, or indictment, **Magistrates** shall be brought, sued, commenced, exhibited or prosecuted by any person, against the **backing such** alderman, justice or justices, who shall indorse such warrant, for or by reason of his or **warrants to** their indorsing the same, but such person shall be at liberty to bring or prosecute his or **fied.** their action or suit against the alderman or justice who originally granted the warrant.(*e*)

5. When any person shall be accused before a magistrate, upon oath or affirma- **Disposition** **of property**

2. Act 31 March 1860, § 2. P. L. 429.　　　3. Ibid. § 3.　　　4. Ibid. § 4.　　　5. Ibid. § 5.

(*a*) This section is composed of the 8th section of the act of 22d May 1722. 1 Sm. 138; of the 14th section of the act of 23d September 1791, 3 Sm. 43; and of the 2d section of the act of 25th April 1846, P. L. 406. It is not proposed to repeal all the 8th section of the act of 1722, because part of it equally applies to civil as well as criminal proceedings. Report on the Penal Code 39. The county is not liable for the expenses incurred in an unsuccessful attempt to arrest a fugitive from justice, who has taken refuge in another state. 8 C. 540.

(*b*) This does not extend to misdemeanors; a fugitive charged with having committed a misdemeanor in another county can

only be arrested under the provisions of the succeeding section. Grant 218.

(*c*) This section is taken from the 3d section of the act of 4th of April 1807, 4 Sm. 393. Report on the Penal Code 39.

(*d*) A warrant issued by a justice of the peace in one county, and indorsed by a justice of another county, charging a misdemeanor to have been committed in the county whence the warrant issued, will not justify the detention of the offender in the jail of the county where the warrant was indorsed. Grant 218.

(*e*) The 3d and 4th sections are taken from the act of 16th April 1827, 9 Sm. 424. Report on the Penal Code 39.

**supposed to be stolen, found in the possession of one accused.** tion, of the crime of burglary, robbery or larceny, and the said magistrate shall have issued his warrant to apprehend such person or persons, or to search for such goods as have been described, on oath or affirmation, to have been stolen goods, if any shall be found in the custody or possession of such person or persons, or in the custody or possession of any other person or persons, for his, her or their use, and there is probable cause, supported by oath or affirmation, to suspect that other goods, which may be discovered on such search, are stolen, it shall and may be lawful for the said magistrate to direct the said goods to be seized, and to secure the same in his own custody, unless the person in whose possession the same were found shall give sufficient surety to produce

**Inventory.** the same at the time of his or her trial. And the said magistrate shall forthwith cause an inventory to be taken of the said goods, and shall file the same with the clerk of that court in which the accused person is intended to be prosecuted, and shall give public

**Notice.** notice in the newspapers, or otherwise by advertising the same in three or more public places in the city or county where the offence is charged to have been committed, before the time of trial, noting in such advertisement the said inventory, the person charged

**Restitution.** and time of trial. And if, on such trial, the accused party shall be acquitted, and no other claimant shall appear or suit be commenced, then, at the expiration of three months, such goods shall be delivered to the party accused, and he, she or they shall be discharged, and the county be liable to the costs of prosecution ; but if he be convicted of larceny only, and, after restitution made to the owner and the sentence of the court being fully complied with, shall claim a right in the residue of the said goods, and no other shall appear or claim the said goods, or any part of them, then it shall be lawful, notwithstanding the claim of the said party accused, to detain such goods for the term of nine months, to the end that all persons having any claim thereto may have full opportunity to come, and to the satisfaction of the court, prove their property in them : on which proof the said owner or owners, respectively, shall receive the said goods, or the value thereof, if from their perishable nature it shall have been found necessary to make sale thereof, upon paying the reasonable charges incurred by the securing the said goods and establishing their property in the same ; but if no such claim shall be brought and duly supported, then the person so convicted shall be entitled to the remainder of the said goods, or the value thereof, in case the same shall have been sold agreeably to

**When to be delivered to county commissioners.** the original inventory. But if, upon an attainder of burglary or robbery, the court shall, after due inquiry, be of opinion that the said goods were not the property of such burglar or robber, they shall be delivered, together with a certified copy of the said inventory, to the commissioners of the county, who shall indorse a receipt therefor on the original inventory, register the said inventory in a book, and also cause the same to be publicly advertised, giving notice to all persons claiming the said goods to prove their property therein to the said commissioners ; and unless such proof shall be made within three months from the date of such advertisement, the said goods shall be publicly sold, and the net moneys arising from such sale shall be paid into the county treasury for the use

**Disposition of proceeds.** of the commonwealth : *Provided always*, That if any claimant shall appear within one year, and prove his or her property in the said goods to the satisfaction of the commissioners, or in the case of dispute, shall obtain the verdict of a jury in favor of such claim, the said claimant shall be entitled to recover, and receive from the said commissioners, or treasurer, the net amount of the moneys paid as aforesaid into the hands of the said commissioners, or by them paid into the treasury of this commonwealth.(a)

**Surety of the peace.** 6. If any person shall threaten the person of another to wound, kill or destroy him, or to do him any harm in person or estate,(b) and the person threatened shall appear before a justice of the peace, and attest, on oath or affirmation, that he believes that by such threatening he is in danger of being hurt in body or estate, such person so threatening as aforesaid, shall be bound over, with one sufficient surety, to appear at the next sessions,(c) according to law, and in the meantime to be of his good behavior, and keep the peace toward all citizens of this commonwealth.(d) If any person, not being an officer on duty in the military or naval service of the state or of the United States shall go armed with a dirk, dagger, sword or pistol, or other offensive or dangerous weapon, without reasonable cause to fear an assault or other injury or violence to his family, person or property, he may, on complaint of any person having reasonable cause to fear a breach of the peace therefrom, be required to find surety of the peace as aforesaid.(e)

**Bail.** 7. In all cases the party accused, on oath or affirmation, of any crime or misdemeanor against the laws, shall be admitted to bail by one or more sufficient sureties, to be taken before any judge, justice, mayor, recorder or alderman where the offence charged has been committed, except such persons as are precluded from being bailed by the constitution of this commonwealth :(g) *Provided also*, That persons accused as aforesaid, of

---

6. Act 31 March 1860, § 6. P. L. 432.         7. Ibid. § 7.

(a) This section is taken from the 10th section of the act 23d September 1791, 3 Sm. 42. Report on the Penal Code 39.

(b) Surety of the peace is demandable of right by any individual who will make the necessary oath. 1 B. 102, n. See 1 Ash. 46. 2 P. 458.

(c) A committing magistrate has no authority to bind a person to keep the peace, or for his good behavior, longer than the next term of the court. 2 P. 458.

(d) Surety for good behavior may be ordered by the court, after the acquittal of a prisoner, in such sum. and for such length of time, as the public safety requires. 2 Y. 437,

339. 2 Hayw. 73–4. See 12 Eng. L. & Eq. 462.

(e) This section is partly taken from the act of 1700. 1 Sm. 5, the addition thereto provided by this section, against the unnecessarily carrying deadly weapons, is introduced from an obvious necessity, arising from daily experience and observation. Report on the Penal Code 39.

(g) A justice may take bail after commitment for trial. 6 W & S. 314. 2 P. 458. And see 7 W. 454. 5 B. 512. 1 Sm. 57. n A recognisance taken by a justice to answer the charge of arson is *coram non judice*, and void. Com. v. Philips, 2 U S. Law I. 316.

murder or manslaughter, shall only be admitted to bail by the supreme court or one of the judges thereof, or a president or associate law judge of a court of common pleas: persons accused, as aforesaid, of arson, rape, mayhem, sodomy, buggery, robbery or burglary, shall only be bailable by the supreme court, the court of common pleas, or any of the judges thereof, or a mayor or recorder of a city.(a)

8. All sureties, mainpernors, and bail in criminal cases, whether bound in recogni- *Surrender of* sances for a particular matter or for all charges whatsoever, shall be entitled to have a *bail.* bail-piece, duly certified by the proper officer or person before whom or in whose office the recognisance of such surety, mainpernors or bail shall be or remain, and upon such bail-piece, by themselves, or their agents, to arrest and detain, and surrender their principals, with the like effect as in cases of bail in civil actions;(b) and such bail-piece shall be a sufficient warrant or authority for the proper sheriff or jailor to receive the said principal, and have him forthcoming to answer the matter or matters alleged against him: *Provided*, That nothing herein contained shall prevent the person thus arrested and detained from giving new bail or sureties for his appearance, who shall have the same right of surrender hereinbefore provided.(c)

9. In all cases where a person shall, on the complaint of another, be bound by recog- *Settlement* nisance to appear, or shall, for want of security, be committed, or shall be indicted for *of criminal* an assault and battery or other misdemeanor, to the injury and damage of the party *cases.* complaining, and not charged to have been done with intent to commit a felony, or not being an infamous crime, and for which there shall also be a remedy, by action, if the party complaining shall appear before the magistrate who may have taken recognisance or made the commitment, or before the court in which the indictment shall be, and acknowledge to have received satisfaction for such injury and damage, it shall be lawful for the magistrate, in his discretion, to discharge the recognisance which may have been taken for the appearance of the defendant, or in case of committal, to discharge the prisoner, or for the court also where such proceeding has been returned to the court, in their discretion, to order a *nolle prosequi* to be entered on the indictment, as the case may require, upon payment of costs: *Provided*, That this act shall not extend to any assault and battery, or other misdemeanor, committed by or on any officer or minister of justice.(d)

## B. INDICTMENTS AND PLEADINGS.

10. The foreman of any grand jury, or any member thereof, is hereby authorized and *Grand jurors* empowered to administer the requisite oaths or affirmations to any witness whose name *may administer oaths.* may be marked by the district attorney on the bill of indictment.(e)

11. Every indictment shall be deemed and adjudged sufficient and good in law which *Form of* charges the crime substantially in the language of the act of the assembly prohibiting *indictments.* the crime, and prescribing the punishment, if any such there be, or, if at common law, so plainly that the nature of the offence charged may be easily understood by the jury. *Formal ob-* Every objection to any indictment for any formal defect, apparent on the face thereof, *jections to* shall be taken by demurrer, or on motion to quash such indictment, before the jury shall *indictments.* be sworn, and not afterward; and every court, before whom any such objection shall be *Amend-* taken for any formal defect, may, if it be thought necessary, cause the indictment to be *ments on* forthwith amended in such particular, by the clerk or other officer of the court, and *demurrer,* thereupon the trial shall proceed as if no such defect appeared.(g) *&c.*

---

8. Act 31 March 1860, § 8  P. L. 432.  9. Ibid. § 9.  10. Ibid. § 10.  11. Ibid. § 11.

(a) This section is a consolidation of the first clause of the act of 1705, 1 Sm. 56; and the first section of the act of 30th April 1832, P. L. 388. Report on the Penal Code 39.

(b) See 1 T. & H. Pr. 305-10.

(c) This section is taken from the 3d section of the act of 10th April 1848, P. L. 449. Report on the Penal Code 40.

(d) This section is an extension of the existing law of the 17th March 1806, 4 Sm. 318. Report on the Penal Code 40.

(e) This is taken from the 1st section of the act 5th April 1826, 9 Sm. 136. That witnesses, whose names had not been marked by the district attorney on the bill of indictment, were sworn and examined by the foreman of the grand jury, is not pleadable in bar; at most, it is only ground for a motion to quash. Tillard v. Com., 13 Leg. Int. 132.

(g) Sections 11 to 22 are all new, and are certainly not the least important in the proposed amendments of our penal system. The history of criminal administration abounds with instances in which the guilty have escaped, by reason of the apparently unreasonable nicety required in indictments. Lord Hale, one of the best, and most humane of English judges, long since remarked, that such niceties were "grown to be a blemish and an inconvenience in the law, and the administration thereof; that more offenders escaped by the easy ear given to exceptions to indictments, than by the manifestations of their innocence, and that the grossest crimes had gone unpunished, by reason of these unseemly niceties." The reason for recognising these subtilties by the common law, no doubt arose from the humanity of the judges, who, in administering a system in which the punishment of death followed almost every conviction of felony, were naturally disposed, in favor of life, to hold the crown to the strictest rules. Since, however, the reform of the penal laws, and the just apportionment of punishment to crimes according to their intrinsic atrocity and danger, the reason which led to the adoption of these technical niceties has ceased, and with the cessation of the reason, the technicalities themselves should be expunged from our system. The 11th section of this act proposes what the com-

missioners believe will be an effective remedy to this reproach of the common law, without depriving the accused of any proper privilege; it leaves him, at the outset of his trial. to determine whether he will question the relevancy of his accusation, or take issue on the merits of the charge; if he elects the latter, and is condemned, there seems neither moral nor legal fitness in permitting him to urge formal exceptions, which, if suggested, at an early period, would have been promptly corrected. The 12th and 13th sections are intended to meet cases of frequent occurrence, in which, although an indictment is strictly formal, yet, owing to some accidental slip in its preparation, it is found on the trial that the proofs do not entirely tally with the description of the instrument set forth in the indictment, or in the names of persons or places described therein. By the law as it now stands, where written instruments enter into the gist of the offence, as in forgery, passing counterfeit money, selling lottery tickets, sending threatening letters, &c., they are required to be set out in words and figures; the omission of a figure in an indictment for forgery is fatal. In the case of Com. v. Gillespie, 7 S. & R. 469, a mistake in spelling the name of "Burrall," which in the indictment was spelled "Burrill," was adjudged fatal after verdict. So, a variance between the names of the persons aggrieved, and places described in the indictment, and the proofs thereof on trial, will entitle the defendant to an acquittal, on the ground of the want of agreement between the allegata and the probata. The proposed sections authorize the courts to amend such verbal errors, if objected to; and thus terminate a class of technical niceties, which are a reproach to the rational administration of justice. The 14th and 15th sections avoid the existing necessity of setting forth, in indictments, the names of numerous individuals, owners of property feloniously or fraudulently taken, or maliciously injured or destroyed; it will serve to reduce the voluminousness of such indictments, and can do no possible injury to the defendant, who cannot be interested in the fact, whether one person is, or one hundred persons are the owners of property in regard to

Variances
between
written in-
struments
as produced
and laid in
indictment
amendable.

12. It shall be lawful for any court of criminal jurisdiction, if such court shall see fit so to do, to cause the indictment for any offence whatever, when any variance or variances shall appear between any matter in writing or in print, produced in evidence, and the recital or setting forth thereof in the indictment whereon the trial is pending, to be forthwith amended in such particular or particulars, by some officer of the court, and after such amendment the trial shall proceed in the same manner, in all respects, as if no such variance or variances had appeared.

Immaterial
variances
between
indictment
and proof
amendable.

13. If, on the trial of any indictment for felony or misdemeanor, there shall appear to be any variance between the statement of such indictment and the evidence offered in proof thereof, in the name of any place mentioned or described in any such indictment; or in the name or description of any person or persons or body politic or corporation therein stated, or alleged to be the owner or owners of any property, real or personal, which shall form the subject of any offence charged therein; or the name or description of any person or persons, body politic or corporate therein stated or alleged to be injured or damaged, or intended to be injured or damaged, by the commission of such offence; or in the Christian name or surname, or both Christian and surname, or other description whatsoever of any person or persons whomsoever therein named or described; or in the name or description of any matter or thing whatsoever therein named or described; or in the ownership of any property named or described therein; it shall and may be lawful for the court before whom the trial shall be had, if it shall consider such variance not material to the merits of the case, and that the defendant cannot be prejudiced thereby in his defence upon such merits, to order such indictment to be amended, according to the proof, by some officer of the court, both in that part of the indictment wherein said variance occurs, and in every other part of the indictment in which it may become necessary to amend; and after such amendment, the trial shall proceed in the same manner, in all respects, and with the same consequences, as if no variance had occurred. And every verdict and judgment which shall be given after making such amendment, shall be of the same force and effect, in all respects, as if the indictment had originally been in the same form in which it was after such amendment was made.

Manner of
laying the
ownership of
property in
cases of part-
ners and
joint own-
ers.

14. In order to remove the difficulty of describing the ownership of property, in the case of partners and joint owners, in any indictment for any felony or misdemeanor committed on or with respect to any money, chattels, bond, bill, note or other valuable security or effects belonging to or in the possession of any partners or joint owners, it shall be sufficient to aver that the particular subject-matter on which or with respect to which any such offence shall have been committed, to be the property of some one or more of the partners or joint owners named in the indictment, and of other persons being partners or joint owners with him or them, without stating any of the names of such other persons; and in any indictment for any felony or misdemeanor, committed on or with respect to any house or building whatsoever, belonging to or in the possession of any partners or joint owners, or for any felony or misdemeanor committed on or with

12. Act 31 March 1860, § 12. P. L. 433.          13. Ibid. § 13.          14. Ibid. § 14.

which he is charged with having committed a felony or misdemeanor. The 16th section refers to public property, and rests on the same principle as the fourteenth and fifteenth sections. The 17th and 18th sections will enable the criminal pleader to simplify hereafter the forms of indictments in forgery, and facilitate him in averring instruments necessary to be recited in any other indictment. The 12th and 13th sections contemplate the amendment of indictments, framed according to the existing law, where an accidental error occurs between the instrument and names described, and those offered in proof. These sections strike at the root of the evil sought to be eradicated, by giving the pleader the option to prepare his indictment in such a way as to avoid, altogether, such difficulties; which can be done with ordinary care and caution. The 19th section contemplates avoiding the necessity of specifically describing the parties intended to be defrauded, and the embarrassing the proofs, in any case, with a question not really material to the issue. In forgeries, uttering and passing forged money, and in cheating by false pretences (the crimes contemplated by the section), the gist of the offence is, that the act charged was committed with an intent to defraud; an indictment containing that averment, should be sufficient, without requiring the pleader to go into the description of who was the party intended to be defrauded; a mistake in whom would acquit the accused, although the jury should be convinced that he had forged or uttered false money, or had been guilty of cheating by false pretences, with intent to defraud. The 20th section, providing for indictments for murder and manslaughter, from the nature and consequences of these offences, require that a somewhat detailed explanation of the reasons which have led to their introduction should be given. By the common law, in an indictment for murder, it is essentially necessary to set forth, particularly, the manner of the killing and the means by which it was effected; if a person be indicted for one species of killing, as by poisoning, he cannot be convicted by evidence of a different species of death, as by shooting, starving or strangling. A few cases will serve to illustrate how far this principle has been carried. In Rex v. Kelly, 1 Mood. Cro. Cas. 113, decided in 1825, the indictment charged that the prisoner struck the deceased with a piece of brick, and it appeared probable that the prisoner had not struck with the brick, but that he struck with his fist, and that the deceased fell from the blow upon a piece of brick, and that the fall on the brick was the cause of the death; it was unanimously held by the twelve judges of England, on a case reserved, that the cause of the

death had not been truly stated, and the prisoner was discharged. So, in Rex v. Martin, 5 C. & P. 128, where the indictment charged the wound to have been inflicted by a blow with a hammer, held in the prisoner's hand, and it appeared that the injury might have been occasioned by a fall against the lock or key of a door, it was held, that if the injury was occasioned by a fall against the lock or key of a door, produced by the act of the defendant, the indictment was not sufficient. In Rex v. Hughes, 5 C. & P. 126, decided in 1832, the prisoner was indicted for an attempt to murder, by shooting the injured party with a pistol loaded *with a leaden bullet*; on the trial, no evidence was produced to actually prove that the pistol was loaded with a leaden bullet, none having been found either in the wound, or in the room where the wound was inflicted; the surgeon, examined in the case, testified that the wadding, if rammed tight, might have produced the effect without any ball; in this state of the evidence, the court ruled, that the indictment was not sufficiently proved, and the defendant was acquitted. It is true, that the courts have drawn a distinction, which rendered their rulings in indictments for homicide, as to the manner and cause of the death, more reconcilable with reason, to wit: that where the instrument laid in the indictment, and the instrument proved, are of the same nature and character, there is no variance, as if the wound is charged to have been inflicted with a dagger or knife, proof is sufficient which establishes the wound to have been inflicted with a sword, spear or the like; so, if the indictment allege a death by one kind of poison, proof of death by another kind of poison will support it. The section under consideration proposes to go one step in advance of this doctrine, by declaring that it shall hereafter be sufficient, in an indictment for murder, to charge that the defendant did feloniously, wilfully, and of his malice aforethought, kill and murder the deceased; without going into the details of the cause and manner of the death, which the cases cited show only tends to create unnecessary difficulties on the trial, and often results in the complete defeat of justice. The 21st and 22d sections are intended to simplify indictments for perjury and subornation of perjury, which are now extremely voluminous and technical; these characteristics of indictments for these crimes, are so familiar to all criminal lawyers, as to render it unnecessary to enter into any details on the subject. The sections recommended for adoption will remedy these evils, and place indictments for these crimes on a rational footing. Report on the Penal Code 40–3.

respect to any property being in any such house or building, it shall be sufficient to aver that the particular house or building on or with respect to which, or on or with respect to the property being in which, any such offence shall have been committed, is the property of some one or more of the partners or joint owners named in the indictment, and of other persons being partners or joint owners with him or them, without stating any of the names of such other persons.

15. With regard to frauds committed against partners and joint owners, it shall be sufficient in any indictment for any felony or misdemeanor committed with intent to defraud any partners or joint owners, to allege that the act was committed with intent to defraud any one or more of the partners or joint owners named in the indictment, and and other persons being partners or joint owners with him or them, without stating any of the names of such other persons. *(Manner of charging frauds against partners and other persons being partners or joint owners.)*

16. With respect to property belonging to counties, cities, townships and districts, it shall be sufficient in any indictment for any felony or misdemeanor committed on or with respect to any goods, chattels, furniture, provisions, clothes, tools, utensils, materials or things whatsoever, which have been or at any time shall be provided for or at the expense of any county, city, township or district, to be used in any court, jail, house of correction, almshouse, or other building or place, or in any part thereof respectively, or to be used for the making, altering or repairing of any bridge or road, to aver that any such things are the property of such county, city, township or district. *(Manner of laying property of counties, cities, townships, &c.)*

17. In any indictment for forgery, uttering, stealing, embezzling, destroying or concealing, or obtaining by false pretences, any instrument, it shall be sufficient to describe such instrument by any name or designation by which the same may be usually known, or by the purport thereof, without setting out any copy or fac-simile thereof, or otherwise describing the same or the value thereof. *(Forms of indictment in cases of forging, stealing, embezzling, &c.)*

18. In all other cases whatsoever in which it shall be necessary to make any averment in any indictment, as to any instrument, whether the same consists wholly or in part of writing, print or figures, it shall be sufficient to describe such instrument by any name or designation by which the same may be usually known, or by the purport thereof, and in such manner as to sufficiently identify such instrument, without setting out any copy or fac-simile of the whole or any part thereof. *(Forms in other cases.)*

19. It shall be sufficient in any indictment for forging, uttering, offering, disposing of, or putting off any instrument whatsoever, or for obtaining or attempting to obtain any property by false pretences, to allege that the defendant did the act with intent to defraud, without alleging the intent of the defendant to be to defraud any particular person ; and on the trial of any of the offences in this section mentioned, it shall not be necessary to prove any intent on the part of the defendant to defraud any particular person, but it shall be sufficient to prove that the defendant did the act charged with an intent to defraud. *(Intent to defraud particular persons, need not be alleged or proven in certain cases.)*

20. In any indictment for murder or manslaughter, it shall not be necessary to set forth the manner in which, or the means by which the death of the deceased was caused, but it shall be sufficient in every indictment for murder, to charge that the defendant did feloniously, wilfully and of his malice aforethought, kill and murder the deceased ; and it shall be sufficient in every indictment for manslaughter, to charge that the defendant did feloniously kill and slay the deceased.(a) *(Indictments for murder and manslaughter.)*

21. In every indictment for wilful and corrupt perjury, it shall be sufficient to set forth the substance of the offence charged, and in what court, or before whom the oath or affirmation was taken, averring such court or person or body to have competent authority to administer the same, together with the proper averment, to falsify the matter wherein the perjury is assigned, without setting forth the information, indictment, declaration or part of any record or proceeding, other than as aforesaid, and without setting forth the commission or authority of the court, or person, or body before whom the perjury was committed. *(Requisites of indictment for perjury.)*

22. In every indictment for subornation of perjury, or for corrupt bargaining, or contracting with others to commit wilful and corrupt perjury, it shall be sufficient to set forth the substance of the offence, without setting forth the information, indictment, declaration or part of any record or proceedings, and without setting forth the commission or authority of the court, or person or body before whom the perjury was committed, or was agreed or promised to be committed. *(Requisites of indictment for subornation of perjury.)*

23. In cases arising under the laws of this commonwealth for the restraint of the horrid practice of duelling, it shall be sufficient to form an indictment generally, against either of the principals for challenging another to fight at deadly weapons, and notwithstanding it may appear on the trial that the defendant only accepted the challenge, it shall be sufficient to convict and render him liable to the penalties of the law ; and in like manner an indictment against the seconds may be framed generally, for carrying and delivering a challenge, and proof of the mere act of fighting, and the defendant being present thereat, shall be sufficient to convict the defendant upon an indictment so framed ; and if the duel shall take place within this commonwealth, the mere fact of fighting shall be full and complete evidence of the charges, respectively, of giving or receiving, or of carrying or delivering a challenge, without other proof thereof.(b) *(Indictment for duelling.)*

15. Act 31 March 1860, § 15.  P. L. 434.
16. Ibid. § 16.
17. Ibid. § 17.
18. Ibid. § 18.
19. Ibid. § 19.
20. Ibid. § 20.
21. Ibid. § 21.
22. Ibid. § 22.
23. Ibid. § 23.

(a) An indictment drawn in conformity with the provisions of this section is not in conflict with the constitutional proviso, that "in all criminal prosecutions, the accused shall have a right to be informed of the nature and cause of the accusa-
against him." 1 Wr. 109.     (b) This section is taken from the 3d section of the act of 31st March 1806, 4 Sm. 354.  Report on the Penal Code 42.

Counts for stealing and receiving, may be joined.

24. In every indictment for feloniously stealing property, it shall be lawful to add a count for feloniously receiving the said property, knowing it to have been stolen; and in any indictment for feloniously receiving property, knowing it to have been stolen, it shall be lawful to add a count for feloniously stealing said property; and it shall be lawful for the jury trying the same, to find a verdict of guilty either of stealing the property, or of receiving the same, knowing it to have been stolen; and if such indictment shall have been preferred and found against two or more persons, it shall be lawful for the jury who shall try the same, to find all or any of the said persons guilty of either stealing the property or of receiving it, knowing it to have been stolen, or to find one or more of the said persons guilty of stealing the property, and the other or others of them guilty of receiving it, knowing it to have been stolen.(a)

Issue and trial in criminal cases.

25. In all cases of felony the prisoner shall be arraigned, and where any person on being so arraigned shall plead not guilty, every such person shall be deemed and taken to put himself upon the inquest or country for trial, without any question being asked of him how he will be tried, and the inquest shall be charged only to inquire whether he be guilty or not guilty of the crime charged against him, and no more. And wherever a person shall be indicted for treason or felony, the jury impannelled to try such person shall not be charged to inquire concerning his lands, tenements or goods, nor whether he fled for such treason or felony.(b)

Prisoners standing mute.

26. If any prisoner shall, upon his arraignment for any offence with which he is indicted, stand mute, or not answer directly, or shall peremptorily challenge above the number of persons summoned as jurors for his trial to which he is by law entitled, the plea of not guilty shall be entered for him on the record,(c) the supernumerary challenges shall be disregarded, and the trial shall proceed in the same manner as if he had pleaded not guilty, and for his trial had put himself upon the country.(d)

Prosecutor's name to be indorsed on indictment.

27. No person shall be required to answer to any indictment for any offence whatsoever, unless the prosecutor's name, if any there be, is indorsed thereon; and if no person shall avow himself the prosecutor, the court may hear witnesses, and determine whether there is a private prosecutor, and if they shall be of opinion that there is such a prosecutor, then direct his name to be indorsed on such indictment.(e)

Distinct acts of embezzlement may be charged in same indictment.

28. It shall be lawful in cases of embezzlement by clerks, servants or other persons in the employ of another, to charge in the indictment, and proceed against an offender for any distinct acts of embezzlement, not exceeding three, which may have been committed by him against the same master or employer, within the space of six calendar months, from the first to the last of such acts, and in every such indictment, except where the offence shall relate to a chattel, it shall be sufficient to allege the embezzlememt to be of money, without specifying any particular coin or valuable security; and such allegation, so far as regards the description of the property, shall be sustained, if the offender shall be proved to have embezzled any amount, although the particular species of coin or valuable security of which such amount was composed, shall not be proved, or if he shall be proved to have embezzled any piece of coin or valuable security, or any portion of the value thereof, although such piece of coin or valuable security may have been delivered to him in order that some part of the value thereof should be returned to the party delivering the same, and such part shall have been returned accordingly.(g)

Nolle prosequi.

29. No district attorney shall, in any criminal case whatsoever, enter a *nolle prosequi*, either before or after bill found, without the assent of the proper court in writing first had and obtained.(h)

Plea of autrefois convict, or autrefois acquit.

30. In any plea of *autrefois acquit*, or *autrefois convict*, it shall be sufficient for any defendant to state, that he has been lawfully convicted or acquitted, as the case may be, of the offence charged in the indictment.(i)

---

24. Act 31 March 1860, § 24. P. L. 436.
25. Ibid. § 25.
26. Ibid. § 26.
27. Ibid. § 27.
28. Ibid. § 28.
29. Ibid. § 29.
30. Ibid. § 30.

---

(a) This section is new, and is intended to remedy difficulties arising from the common law doctrines in relation to the joinder of offences and joint offenders. At common law, a felony and a misdemeanor, such as burglary and receiving stolen goods, could not be regularly joined; in larceny, counts for receiving were sometimes added, but the practice was regarded as of doubtful legality, until in the cases of Rex v. Galloway, 1 Mood. Cro. Cas. 234, and of Rex v. Madden, 1 Mood. Cro. Cas. 277, it was decided to be erroneous. In Pennsylvania, the uniform practice has been to unite counts for larceny and receiving, but in no other kind of felonious taking has such joinder been permitted. So, at common law, if two persons are charged with jointly receiving stolen goods, a joint act of receiving must be proved; proof that one received in the absence of the other, and afterwards delivered to him, will not suffice. Rex v. Messingham. 1 Mood. Cro. Cas. 257. The proposed section will obviate these technical difficulties, as it permits a count for receiving to be joined with all indictments for felonious taking, and authorizes the conviction of one or more of several persons, jointly indicted, for felonious taking or receiving, either as principals or receivers, according to their actual guilt. Report on the Penal Code 43.

(b) This section is new, and has been introduced to dispense with the useless forms which prevail in some of our criminal courts, following the ancient practice of the common law. Report on the Penal Code 43.

(c) Where a plea of "not guilty" is entered under this section, for a prisoner who stands mute, and there is a trial and

judgment, he cannot subsequently assign for error any matters appertaining to the prosper. venire, drawing, summoning and returning of jurors, &c.; such case is within the 53d section of this act. 5 Wh. 67, 78.

(d) This section is taken from the 5th section of the act of 23d September 1791, 3 Sm. 40. Report on the Penal Code 44.

(e) This section is taken from one of the clauses of the act of 1705. 1 Sm. 56. The old law has been so amended as to enable the court to determine the question, in any case, whether there is such a prosecutor, and who he is, and if any, to order his name to be indorsed on the indictment. Report on the Penal Code 44. If there be no proof of a prosecutor, the defendant must plead without such indorsement. 1 D. 5.

(g) The provisions of this section are necessary for preventing the difficulties that may be hereafter experienced in the prosecution of the various fraudulent embezzlements prescribed against by the "Act to consolidate, revise and amend the penal laws of this commonwealth," and particularly by the 107th section thereof (tit. "Crimes" 107), against such embezzlement by clerks, servants and other persons in the employ of others Report on the Penal Code 44.

(h) This section is taken from the proviso to the 1st section of the act of 3d May 1850, P. L. 654. Report on the Penal Code 44. See tit. "District Attorneys," 10, note a.

(i) This section proposes in favor of the accused, to simplify the pleas of heretofore acquitted, and heretofore convicted, and thus relieve them from all technical embarrassments; it is new. Report on the Penal Code 44

## C. COURTS OF CRIMINAL JURISDICTION.

31. The courts of oyer and terminer and general jail delivery shall have power—(a) *Courts of oyer and terminer.*
I. To inquire by the oaths and affirmations of good and lawful men of the county, of all crimes committed, or triable in such county.

II. To hear, determine and punish the same, and to deliver the jails of such county of all prisoners therein, according to law.

III. To try indictments found in the quarter sessions, and certified by the said court according to law; and the said courts shall have exclusive jurisdiction and power to try and punish all persons charged with any of the crimes herein enumerated, which shall be committed within the respective county, to wit:

(1.) All persons charged with any murder or manslaughter, or other homicide, and all persons charged with being accessory to any such crime.

(2.) All persons charged with treason against the commonwealth.

(3.) All persons charged with sodomy, buggery, rape or robbery, their counsellors, aiders and abettors.

(4.) All persons charged with the crime of voluntarily and maliciously burning any building, or other thing, made punishable in the same manner as arson.(b)

(5.) All persons charged with mayhem, or with the crime of cutting off the tongue, putting out the eye, slitting the nose, cutting off the nose, cutting off a lip, cutting off or disabling any limb or member of a person, by lying in wait, or with malice aforethought, and with intent in so doing to maim or disfigure such person, and their aiders and abettors and counsellors.

(6.) All persons charged with burglary.

(7.) Every woman who shall be charged with having endeavored privately, either by herself or the procurement of others, to conceal the death of any issue of her body, male or female, which, if it were born alive, would be by law a bastard, so that it may not be known whether such issue was born dead or alive, or whether it was murdered or not.

(8.) All persons charged with the second or any subsequent offence of receiving, harboring or concealing any robber, burglar, felon or thief, or with the crime of receiving or buying any goods or chattels, which shall have been feloniously taken or stolen, knowing the same to be so taken or stolen.

32. The courts of quarter sessions of the peace shall have jurisdiction and power within the respective counties— *Quarter sessions.*

I. To inquire, by the oaths or affirmations of good and lawful men of the county, of all crimes, misdemeanors and offences whatsoever, against the laws of this commonwealth, which shall be triable in the respective county.

II. To inquire of, hear, determine and punish, in due form of law, all such crimes and misdemeanors and offences, whereof exclusive jurisdiction is not given, as aforesaid, to the courts of oyer and terminer of such county.

III. To take, in the name of the commonwealth, all manner of recognisances and obligations heretofore taken and allowed to be taken by any justice of the peace; and they shall certify such as shall be taken, in relation to any crime not triable therein, to the next court of oyer and terminer having power to take cognisance thereof.

IV. To continue, or discharge the recognisance and obligations of persons bound to keep the peace, or to be of good behavior, taken as aforesaid, or certified into such court by any justice of the peace of such county, and to inquire of, hear and determine, in the manner hitherto practised and allowed, all complaints which shall be found thereon.

V. The courts of quarter sessions shall also have jurisdiction in cases of fines, penalties or punishments, imposed by any act of assembly, for offences, misdemeanors or delinquencies, except where it shall be otherwise expressly provided and enacted.

VI. The said courts shall also have and exercise such other jurisdiction and powers, not herein enumerated, as may have been heretofore given to them by law.

Whenever any indictment shall be found in any court of quarter sessions, for any crime or offence not triable therein, it shall be the duty of said court to certify the same into the court of oyer and terminer next to be holden in such county, there to be heard and determined in due course of law. *When causes to be certified to the oyer and terminer.*

The judges of the county courts of oyer and terminer and quarter sessions, and every of them, shall have power to direct their writs or precepts to all or any of the sheriffs or other officers of any of the counties, cities, boroughs or towns corporate of this commonwealth, to arrest and bring before them persons indicted for felonies and other offences, and amenable to the respective court; each of said courts shall have power to award process to levy and recover such fines, forfeitures and amercements, as shall be imposed, taxed or adjudged by them respectively; each of the said courts shall have full power and authority to establish such rules for regulating the practice thereof respectively, and for expediting the determination of suits, causes and proceedings therein, as in their *Powers of the courts.*

31. Act 31 March 1860, § 31. P. L. 437.    32. Ibi l. § 32.

(a) The 31st and 32d sections are transcripts from the 14th, 15th, 16th, 17th, 18th, 20th, 21st and 22d sections of the act of 16th June 1836, P. L. 790. It has been thought proper, although left unrepealed, to introduce them here, in order to render these bills a complete consolidation of our statute laws relating to crimes, punishments and criminal procedure. As questions of jurisdiction frequently present themselves in criminal courts, the laws defining and establishing such jurisdiction have their proper place here. The laws in reference to the constitution of these courts are to be found in the "Act relative to the organization of the courts of justice," passed April 14, 1834, P. L 333; these have not been interfered with. Report on the Penal Code 44.

(b) See 8 Pittsburgh Leg. J. 290.

discretion they shall judge necessary or proper: *Provided*, That such rules shall not be inconsistent with the constitution and laws of this commonwealth; each of the said courts is empowered to issue writs of subpœna, under their official seal, into any county of this commonwealth, to summon and bring before the respective court any person to give testimony in any cause or matter depending before them, under the penalties hitherto appointed and allowed, in any such case, by the laws of this commonwealth.

*Writs of error and certiorari.*

33. Every person indicted in any court of quarter sessions, or in any county court of oyer and terminer and general jail delivery, may remove the indictment, and all proceedings thereon, or a transcript thereof, into the supreme court by a writ of certiorari, or a writ of error, as the case may require: *Provided*, That no such writ of certiorari, or writ of error shall issue, or be available, to remove the said indictment and proceeding thereupon, or a transcript thereof, or to stay execution of the judgment thereupon rendered, unless the same shall be specially allowed(*a*) by the supreme court, or one of the justices thereof, upon sufficient cause to it or him shown,(*b*) or shall have been sued out, with the consent of the attorney-general; which special allowance or consent shall be in writing, and certified on the said writ.(*c*)

## D. OF THE TRIAL.

*Persons under bail not to be placed in the criminal bar.*

34. No person who may hereafter be arraigned on any indictment, and who shall be bound by recognisance to appear and abide by the judgment of the court, shall be placed within the prisoner's bar to plead to such indictment, or be confined therein during his trial; and all persons shall have an opportunity of a full and free communication with their counsel.(*d*)

*Persons indicted for treason to have copy of indictment.*

35. Every person indicted for treason shall have a copy of the indictment(*e*) and a list of the jury and the witnesses to be produced on the trial for proving such indictment, mentioning the names and places of abode of such jurors and witnesses, delivered to him three whole days before the trial.(*g*)

*Peremptory challenges.*

36. On the trial of any indictment for treason or misprision of treason, murder, manslaughter, concealing the death of a bastard child, rape, robbery, burglary, sodomy, malicious maiming and arson, the accused shall be at liberty to challenge, peremptorily, twenty of the jurors, and on the trial of all other indictments the accused shall be at liberty to challenge, peremptorily, four of the jurors.(*h*)

*Challenges by the commonwealth.*

37. The commonwealth shall have the right, in all cases, to challenge, peremptorily, four persons,(*i*) and every peremptory challenge beyond the number allowed by law in any of the said cases, shall be entirely void, and the trial of such person shall proceed as if no such challenge had been made.

*How challenges are to be conducted.*

38. All challenges in criminal proceedings shall be conducted as follows, to wit: the commonwealth shall challenge one person, and then the defendant shall challenge one person, and so alternately, until all the challenges shall be made; but if the commonwealth shall refuse to make any challenge, the defendant shall, nevertheless, have the right to challenge the full number allowed him by law.

*How to be determined.*

39. When a challenge for a cause assigned shall be made in any criminal proceeding, the truth of such cause shall be inquired of and determined by the court.(*k*)

*Trial of persons jointly indicted, and joint challenges.*

40. In all cases in which two or more persons are jointly indicted for any offence, it shall be in the discretion of the court to try them jointly or severally, except that in cases of felonious homicide, the parties charged shall have the right to demand separate trials; (*l*) and in all cases of joint trials, the accused shall have the right to the same

---

33. Act 31 March 1860, § 33. P. L. 439.
34. Ibid. § 34.

35. Ibid. § 35.
36. Ibid. § 36.

37. Ibid. § 37.
38. Ibid. § 38.

39. Ibid. § 39.
40. Ibid. § 40.

(*a*) A writ of error issued without a special allocatur will be quashed. 2 S. & R. 453. 2 Wh. 113. So, also, if the allocatur be obtained before sentence. 10 S. & R. 319.

(*b*) It is never granted on mere technical matters, not going to the merits. 2 Barr 244. 3 S. & R. 199. 3 Y. 39. 6 B. 403. 4 B. 424. 1 Wh. 525. There must be strong ground to believe that if the case be not removed, some important principle of law, or the plain justice of the case, will be violated. 4 Pittsburgh Leg. J. 668.

(*c*) This section is taken from the 7th section of the act of 13th April 1791, 3 Sm. 30; and the 9th section of the act of 16th June 1836, P. L. 787. Report on the Penal Code 44.

(*d*) This section is taken from the act of 28th March 1808, 4 Sm. 529. Report on the Penal Code 45.

(*e*) The caption is a portion of the indictment, and a copy of it must be furnished to the prisoner. 2 D. 342.

(*g*) The word "trial" here means the trying of the cause by the jury, and not the arraignment and pleading preparatory to such trial by the jury. 4 Mas. 232. This section is taken from the 29th section of the act of congress of 30th April 1790. Brightly's U. S. Dig. 221.

(*h*) The 36th, 37th, 38th and 39th sections are intended to supply the 152d, 153d, 154th, 155th and 156th sections of the act of 14th April 1834, P. L. 368. The changes therein, in reference to challenges, are, that by the 36th section of this act the number of challenges allowed the accused in treason is twenty, whereas by the 152d section of the act of 1834, thirty-five challenges are allowed; and that by the 154th section of the act of 1834, the commonwealth is interdicted from challenging, without cause, in any case of felony, whereas by the 37th section of the present act, the commonwealth is only interdicted from challenging peremptorily in the cases enumerated in the 36th section, to wit: treason, misprision of treason, murder, manslaughter, concealing the death of a bastard child, rape, robbery, burglary, sodomy, malicious maiming and arson; and all other felonies and misdemeanors, is allowed the same num-

ber of challenges as the defendant, to wit: four. The object of thus extending to the commonwealth the right of challenging, in the minor felonies, the same number of jurors as the defendant, arises from the fact, that by the present code a large number of offences, which were misdemeanors at common law, are now made felonies; hence, the excluding of the commonwealth from the right of challenge in any felony, is almost totally to deprive her of the right of challenge. In the practical administration of criminal justice, the right of the commonwealth to challenge four jurors peremptorily, is of the deepest importance; it is not an uncommon thing to find in a panel of jurors, one or more persons pledged to the defendant by personal or social sympathies, or influenced in his favor by worse motives; the right to peremptorily challenge four jurors, is the security of the public against such contingencies. The 39th section of the present act assigns to the court the authority of determining upon the truth and sufficiency of challenges for cause. Report on the Penal Code 45.

(*i*) This provision is not in conflict with the clause in the constitution, which provides "that trial by jury shall be as heretofore, and the right thereof shall remain inviolate." 1 Wr. 45.

(*k*) The power to challenge for cause may be exercised at any time before the oath is tendered to the jury. 11 H. 12. It is good cause of challenge that the juror has conscientious scruples on the subject of capital punishment. 17 S. & R. 155. Or that he has formed and expressed an opinion upon the evidence in the cause. 14 S. & R. 292. See 2 W. & S. 262. 1 Cranch C. C. 452. Or that the juror has been suppœnaed as a witness by the prisoner. 7 W. 585. Or that he is a tenant of one of the parties. 8 W. 304. Or that he had grossly misbehaved himself on a former occasion, declaring that he had tried to acquit any one the judge desired to have convicted; and that he was "a profane man, and would as lief swear on a spelling book as on the Bible." 11 H. 12.

(*l*) See 1? C. 505.

number of peremptory challenges to which either would be entitled if separately tried, and no more.(a)

41. All courts of criminal jurisdiction of this commonwealth shall be and are hereby authorized and required, when occasion shall render the same necessary,(b) to order a *tales de circumstantibus,* either for the grand or petit jury,(c) and all talesmen shall be liable to the same challenges, fines and penalties as the principal jurors: *Provided,* That nothing herein contained shall repeal or alter the provisions of an act passed the 20th day of April 1858, entitled, "An act establishing a mode of drawing and selecting jurors in and for the city and county of Philadelphia."(d)

*How tales may be awarded and juries summoned.*

42. No alien shall, in any criminal case whatsoever, be entitled to a jury *de medietate linguæ,* or partly of strangers.(e)

*Of juries de medietate linguæ.*

43. The trial of all treason against the commonwealth, committed out of the jurisdiction of the state, shall be in the county where the offender is apprehended, or into which he shall first be brought.(g)

*Place of trial for treason.*

44. If any person shall become an accessory before the fact, to any felony, whether the same be a felony at common law, or by virtue of any act of assembly now in force or hereafter to be in force, such person may be indicted, tried, convicted and punished in all respects as if he were a principal felon.(h)

*Of accessories before the fact.*

45. If any person shall become an accessory after the fact, to any felony, whether the same be a felony at common law, or by virtue of any act of assembly now in force, or that may be hereafter in force, he may be indicted and convicted as an accessory after the fact, to the principal felon, together with the principal felon, or after the conviction of the principal felon, or may be indicted and convicted of a substantive felony, whether

*Of accessories after the fact.*

41. Act 31 March 1860, § 41. P. L. 440.  42. Ibid. § 42.  43. Ibid. § 43.  44. Ibid. § 44.  45. Ibid. § 45.

(a) This section is new, and is introduced to settle a question in criminal practice, which has produced difficulty. At common law, upon a joint trial, each prisoner may challenge his full number, and every juror challenged as to one, is withdrawn from the panel as to all the prisoners on trial, and thus, in effect, the prisoners in such a case possess the power of peremptory challenge to the aggregate of the numbers to which they are respectively entitled. The embarrassments from defect of jurors, resulting from the exercise of this right by numerous defendants jointly indicted, led the courts, at a very early period, to determine that they had the power, against the will of the prisoners, to sever the panel, and try them severally, if they insisted upon their right of several challenges. This settled the question that prisoners, jointly indicted, could, against their wishes, be tried separately; but whether prisoners, jointly indicted, could demand a *separate* trial, presented another question; some insisting that they possess such a right; others contending that such severance is a matter of sound discretion, to be exercised by the court, with that due regard and tenderness to prisoners, which characterizes our criminal jurisprudence; and this latter we regard as the better opinion. In the section under consideration this doctrine has been adopted, except as to cases of joint indictments for felonious homicide, in which it is proposed to give the accused the positive right to demand separate trials; in cases of joint trials, it is also proposed to limit the number of the challenges, of all the prisoners, to the number each would be entitled to if separately tried, and no more. As prisoners jointly indicted for felonious homicide have, by this section, the right to sever in their trials, persons so circumstanced will not be affected by this latter provision, in cases of joint trial, as their being so tried is a matter resting entirely in their own choice. Report on the Penal Code 45.

(b) The court may direct a special venire to issue to two citizens, instead of the sheriff or coroner, whenever in their opinion, the nature of the case requires it. 15 Leg. Int. 325.

(c) It is an irregularity to call talesmen, unless it appear of record, that the regular panel was exhausted, and an order for talesmen made; but such irregularity, if not objected to, is cured by the verdict, under the 53d section. 10 H. 94.

(d) This section is a summary of the 144th, 145th, 146th, 147th and 148th sections of the act of 14th April 1834, P. L. 367; which sections have been left unrepealed, as they apply equally to civil as well as criminal proceedings. Report on the Penal Code 46.

(e) This section is taken from the 149th section of the act of 14th April 1834. P. L. 368; which has also been left unrepealed for the same reason. Report on the Penal Code 46.

(g) This section is new, and necessary in the event of trials of treason against the state hereafter taking place. Report on the Penal Code 46.

(h) The principle of this section, which prescribes the same punishment against accessories before the fact in felony, under the various synonymes of aiders, abettors, counsellors, comforters, &c., as against principals, is familiar to our criminal legislation: it is found in the 7th section of the act of 1718. 1 Sm. 113; in the 21 section of the act of 8th March 1780, 1 Sm. 499; in the 2d, 3d and 5th sections of the act of 5th April 1790, 2 Sm. 531; and in the 4th section of the act of 23d April 1829, 10 Sm. 431. There is, therefore, nothing new in the principle of this section, which is founded on the theory of the moral guilt of the accessory before the fact being equal to that of the principal offender. The new principle in the section is that which makes the accessory before the fact, guilty of a substantive offence, and which subjects him to punishment for his crime, without postponing it until the conviction of the actual perpetrator; or more precisely speaking, which abolishes in felonies the technical distinction now existing between accesso-

ries before the fact and principal offenders. This was always the law as regards misdemeanors in which there are no accessories, all being regarded by law as principals; in felony, however, except in certain cases about to be noticed, an accessory cannot be tried before the conviction or outlawry of his principal, unless tried with him. In felonies of frequent occurrence, this was found a great and serious evil, which called for and received partial legislative correction; as early as the act of the 31st May 1718, 1 Sm. 105, it was provided that persons harboring, concealing or receiving robbers, burglars, felons or thieves, or receiving or buying any goods or chattels that should have been feloniously taken or stolen by any such robbers, &c., knowing the same to be stolen, might be proceeded against as is therein directed; and that if any such principal felon *could not be taken, so as to be prosecuted and convicted* for such offence, that nevertheless it shall be lawful to prosecute and punish every such person buying or receiving any goods stolen by such principal felon, knowing the same to be stolen, although the principal felon should not be convicted of the felony. This, however, embraced only one class of accessories, to wit, receivers of stolen goods, in cases where the principal was not amenable to justice; afterwards, by the act of 23d September 1791, 3 Sm. 41, it was provided "in all cases of felonies of death, robbery and burglary, it shall be lawful to punish *receivers* of such felons, robbers and burglars, by a fine and imprisonment, although the principal felons, robbers and burglars cannot be taken, so as to be prosecuted and tried for said offences; which conviction and sentence of said receivers shall exempt them from being prosecuted as accessories after the fact in case the principal felon, robber or burglar shall afterwards be taken and convicted. This act extended only to accessories after the fact, in cases in which the principals could not be taken.

The act of 11th April 1825, 8 Sm. 438, was passed to avoid a difficulty which afterwards arose in the prosecutions of receivers of stolen goods, in cases in which the principals were amenable to justice. The act of 1718 was taken from the 4th section of 4th and 5th Anne, chap. 31, which only authorized proceedings against such receivers before the conviction or attainder of their principals, when such principals could not be taken. Foster, in his discourse on accomplices, § 6, p. 373, says on this point: "I know attempts have been made, under various shapes, to prosecute the receiver as for a misdemeanor, while the principal hath been in custody and amenable, but not convicted; but I think such devices illegal." The act of 1825 solved the difficulty, by declaring that receivers of property, knowing it to have been feloniously stolen, may be prosecuted, although the principal be not before convicted, and whether he be amenable to justice or not.

It will thus be seen, that all our legislation with regard to the trial of accessories to felonies, before the conviction of their principals, applies only to accessories after the fact, a class of offenders who have had no primary connection with the original crime, and whose guilt only consists in having given comfort and succor to the actual offender after its perpetration; except in cases of receivers of stolen goods, this offence is often almost venial, consisting frequently in parents and friends, influenced by the ties of blood, or the impulses of affection, giving aid and comfort to an offender whose crime they abominate and deplore. It seems strange that the common law privilege, which exempted accessories from liability to justice until the conviction or attainder of the principal, should be taken away in cases of accessories after the fact, and left in those of accessories before the fact, whose guilt is always as great, and often much greater, than that of the principal. The 45th section proposes putting our statute laws on the subject of accessories to felonies in harmony with justice and reason. Report on the Penal Code 46-8.

17

the principal felon shall or shall not have been previously convicted, or shall or shall not be amenable to justice, and may thereupon be punished in like manner as any accessory after the fact to the same felony, if convicted as an accessory, may be punished; and the offence of such person, howsoever indicted, may be inquired of, tried, determined and punished, by any court which shall have jurisdiction to try the principal felon, in the same manner as if the act by reason of which such person shall have become accessory, had been committed at the same place as the principal felony: *Provided always*, That no person who shall be once duly tried for any such offence, whether as an accessory after the fact, or as for a substantive felony, shall be liable to be again indicted or tried for the same offence.(a)

**Felonious striking or poisoning in one county, and death in another.**
46. If any person hereafter shall be feloniously stricken, poisoned or receive other cause of death in one county, and die of the same stroke, poisoning or other cause of death in another county, then an indictment found therefor by jurors of the county where the death shall happen, shall be as good and effectual in law, as well against the principal in such murder as against the accessory thereto, as if the stroke, poisoning or other cause of death had been given, done or committed in the same county where such indictment shall be found; and the proper courts having jurisdiction of the offence shall proceed upon the same as they might or could do in case such felonious stroke, poisoning or other cause of death, and the death itself thereby ensuing, had been committed and happened all in one and the same county.(b)

**Felonious striking or poisoning in the state and death out of the state.**
47. If any person shall be feloniously stricken, poisoned or receive other cause of death within the jurisdiction of this state, and shall die of such stroke, poisoning or other cause of death at any place out of the jurisdiction of this state, an indictment therefor found by the jurors of the county in which such stroke, poisoning or other cause of death shall happen as aforesaid, shall be as good and effectual, as well against the principal in any such murder, as against the accessory thereto, as if such felonious stroke, poisoning or other cause of death, and the death thereby ensuing, and the offence of such accessory, had happened in the same county where such indictment shall be found; and the courts having jurisdiction of the offence shall proceed upon the same, as well against principal as accessory, as they could in case such felonious stroke, poisoning or other cause of death, and the death thereby ensuing, and the offence of such accessory, had both happened in the same county where such indictment shall be found.(c)

**Proof of offences committed near county lines.**
48. In order to obviate the difficulty of proof as to all offences committed near the boundaries of counties, in any indictment for felony or misdemeanor committed on the boundary or boundaries of two or more counties, or within the distance of five hundred yards of any such boundary or boundaries, it shall be sufficient to allege that such felony or misdemeanor was committed in any of the said counties; and every such felony or misdemeanor shall and may be inquired of, tried, determined and punished in the county within which the same shall be so alleged to have been committed, in the same manner as if it had been actually committed therein.(d)

**Proof of offences committed during journeys.**
49. In order to obviate the difficulty of proof as to offences committed during journeys from place to place, in any indictment for felony or misdemeanor committed on any person or on any property, upon any stage coach, stage, wagon, railway-car or other such carriage whatever, employed in any journey, it shall be sufficient to allege that such felony or misdemeanor was committed within any county or place through any part whereof such coach, wagon, cart, car or other carriage shall have passed in the course of the journey during which such felony or misdemeanor shall have been committed; and in all cases where the centre or other part of any highway shall constitute the boundaries of any two counties, it shall be sufficient to allege that the felony or mis-

46. Act 31 March 1860, § 46. P. L. 441.   47. Ibid. § 47.   48. Ibid. § 48.   49. Ibid. § 49.

(a) This section is only an extension of the existing laws, which, as will be seen from the preceding remarks, subjected accessories after the fact, and receivers, to punishment before the conviction or attainder of their principals. It embraces such accessories not only in common law felonies, but those created, or which hereafter may be created, by statute; it authorizes the conviction of such offenders either with or after the conviction of the principals, or for a substantive offence, whether the principal felon shall or shall not have been previously convicted, or shall or shall not be amenable to justice. It also provides for the case of a party becoming an accessory after the fact in one county to a felony committed in another; giving jurisdiction over the crime of such accessory to the courts of the county having jurisdiction over the crime of the principal offender. This provision supplies the 22d and 23d sections of the act of 1718, 1 Sm. 119, made, probably, to meet a doubt at common law, whether an accessory in one county to a felony in another, was indictable in either. Report on the Penal Code 48.

(b) This section has been introduced to remove a difficulty which might arise in a case of homicide, where a man had died in one county from an injury, or other cause of death, received in another county. Hawkins, in his Pleas of the Crown, book 2, chap. 25, § 36, says, that "at the common law, if a man had died in one county of a stroke received in another, it seems to have been the more general opinion that, regularly, the homicide was indictable in neither of them, because the offence was not complete in either, and no grand jury could inquire of what happened out of their county." This inconvenience was remedied by 2d & 3d Edward VI., chap. 24, by which it was enacted,

that in such cases the trial should take place in the county where the death happened. This statute is among those reported by the judges of the Supreme Court, as being in force in Pennsylvania; hence the expediency of this section to meet such a case, should it hereafter arise. Report on the Penal Code 49.

(c) In the case of a wound, or other cause of death, being given in this state, and the party receiving the same dying in another state (a thing which might very readily occur, as in the case of duels), by the existing law it is at least doubtful whether a prosecution for homicide could be maintained in either: Hawkins, book 1, chap. 31, §§ 11, 12. If a mortal injury, or poison is given or administered maliciously in the state, and death ensues therefrom out of the state, the act which caused the death, and the malice which influenced the act, the two great essential elements of felonious homicide, have been perpetrated and manifested within our jurisdiction; it seems, therefore, fitting, that in such cases, jurisdiction over the crime should be exercised by the state. The section is new, but manifestly necessary in any penal system claiming to be complete. Report on the Penal Code 49.

(d) The 48th and 49th sections are new; they are intended to obviate difficulties which occur in laying the county, where a crime has been committed, so near county lines, as to render it doubtful in which of two counties it has been actually perpetrated; and to obviate similar difficulties, where the crime has been committed during journeys or voyages by land or water, in carriages or vessels of any kind, which have passed through various counties in the journey or voyage during which the crime has been committed. The sections will be found of real practical value. Report on the Penal Code 49.

demeanor was committed in either of the said counties through, or adjoining to, or by the boundaries of any part whereof such coach, wagon, cart, car or other carriage shall have passed in the course of the journey during which such felony or misdemeanor shall have been committed; and in any indictment for any felony or misdemeanor, committed on any person or on any property on board any vessel whatsoever, employed in any voyage or journey on any navigable river, canal or inland navigation, it shall be sufficient to allege that such felony or misdemeanor was committed in any county or place through any part whereof such vessel shall have passed in the course of the voyage or journey during which such felony or misdemeanor shall have been committed; and in all cases where the side or bank of any navigable river or creek, canal or inland navigation, or the centre or other part thereof, shall constitute the boundary of any two counties, it shall be sufficient to allege that such felony or misdemeanor was committed in either of the said counties through, or adjoining to, or by the boundary of any part thereof, such vessel shall have passed in the course of the voyage or journey during which such felony or misdemeanor shall have been committed; and every such felony or misdemeanor committed in any of the cases aforesaid, shall and may be inquired of, tried, determined and punished in the county or place within which the same shall be so alleged to have been committed, in the same manner as if it had actually been committed therein.

50. If on the trial of any person charged with any felony or misdemeanor, it shall appear to the jury upon the evidence, that the defendant did not complete the offence charged, but was guilty only of an attempt to commit the same, such person shall not by reason thereof be entitled to be acquitted, but the jury shall be at liberty to return, as their verdict, that the defendant is not guilty of the felony or misdemeanor charged, but is guilty of an attempt to commit the same; and thereupon such person shall be liable to be punished in the same manner as if he had been convicted upon an indictment for attempting to commit the particular felony or misdemeanor charged in the indictment; and no person so tried as herein lastly mentioned, shall be liable to be afterward prosecuted for an attempt to commit the felony or misdemeanor for which he was so tried.(a) *Party indicted for felony or misdemeanor may be found guilty of attempt to commit the same.*

51. If on the trial of any person for any misdemeanor, it shall appear that the facts given in evidence amount in law to a felony, such person shall not by reason thereof be entitled to be acquitted of such misdemeanor; and no person tried for such misdemeanor shall be liable to be afterwards prosecuted for felony on the same facts, unless the court before whom such trial may be had shall think fit, in its discretion, to discharge the jury from giving any verdict upon such trial, and direct such person to be indicted for felony; in which case such person may be dealt with in all respects as if he had not been put upon his trial for such misdemeanor. *Persons tried for misdemeanor not to be acquitted if the offence turn out to be felony.*

52. No person shall be deemed and adjudged an incompetent witness on the trial of any indictment, for or by reason of such person being entitled, in the event of the conviction of the defendant, to a restitution of his property feloniously taken, or the value thereof, or if fraudulently obtained, to a pecuniary remuneration or compensation therefor, or for or by reason of such witness being liable and subject to the payment of the costs of prosecution.(b) *Witnesses entitled to restitution to be competent.*

53. No verdict in any criminal court shall be set aside, nor shall any judgment be arrested or reversed, nor sentence delayed, for any defect or error in the precept issued from any court, or in the venire issued for the summoning and returning of jurors, or for any defect or error in drawing, summoning or returning any juror, or panel of jurors,(c) but a trial, or an agreement to try on the merits,(d) or pleading guilty, or the general issue(e) in any case, shall be a waiver of all errors and defects in, or relative *Cure of defects in jury process by verdict.*

50. Act 31 March 1860, P. L. 442.     51. Ibid. § 51.     52. Ibid. § 52.     53. Ibid. § 53.

(a) The 50th and 51st sections are new, and intended to facilitate the conviction of offenders, and avoid unnecessary delay in the administration of criminal justice. By the law as it now stands, if on the trial of an indictment for felony, it appears that some circumstance is wanted to establish the complete technical offence, the prisoner must be acquitted, although the proofs are perfect of an attempt to commit the crime; and on the other hand, where the indictment charges an attempt to commit a crime, and the proof establishes that the crime has actually been committed, the American courts have generally held that the prisoner must be acquitted, because the misdemeanor charged, is merged in the felony proved. The operation of the first of these doctrines is best exemplified by decided cases. Lord Hale, in his Pleas of the Crown, vol. 1, p. 508, thus recites one of these cases: "A. hath his keys tied to the strings of his purse; B., a cut-purse, takes his purse, with the money in it, out of his pocket, but the keys which were hanged to his purse strings, hanged in his pocket; A. takes B. with his purse in his hand, but the strings hanged to his pocket by the keys; it was ruled that this was no felony, for the keys and purse strings hanged in the pocket of A., whereby A. had still in law the possession of his purse, so that *licet, cepit non asportavit.* So, where a thief went into a shop, took up some goods, intending to steal them, but before he had removed them from the spot on which they lay, discovered they were tied to the counter by a cord; upon being tried for stealing, it was held that the property never was either completely severed from the possession of the owner, nor completely in the possession of the prisoner, and he was acquitted." Sleigh's Criminal Law 29. In regard to the other doctrine sought to be changed by this section, viz.: that a misdemeanor charged is merged in a felony proved, it has been frequently held in this country that where, on an indictment for an assault, attempt or conspiracy, with intent to commit a felony, it appeared that the felony was actually committed, it was the duty of the court to charge the jury, that the misdemeanor had merged, and that the defendant must be acquitted. Wharton's American Criminal Law §§ 564, 2294. In England, however, this doctrine has been shaken, if not repudiated by the cases of Rex v. Neale, 1 Dennison's Cro. Cas. 36, and Rex v. Button, 11 Ad. & Ellis (N. S.) 829. The section under consideration will, if adopted, destroy the future operation of a subtle fiction, having no origin in substantial common sense. Report on the Penal Code 50.

(b) This section is taken from the act of 29th March 1809, 5 Sm. 48; and the 31st section of the act of 31st May 1718, 1 Sm 123. Report on the Penal Code 51.

(c) See 2 S. & R. 300. 4 P. L. J. 512.

(d) A trial on the merits is a waiver of all irregularities and defects in the mode of summoning and returning the jurors. 5 C. 429. After a trial it is too late to object to mistakes in the process as to the Christian and surname of some of the jurors by whom the verdict was rendered. 10 H. 94. If a person, not on the panel, is called, and permitted to sit, the irregularity is cured by this section. 3 H. 236. But if a stranger answer to the name of one of the panel, and is sworn as a juror, it is a mistrial, and not within the statute. Com. v. Spring, 10 Leg. Int. 54–6. 1 Am. L. R. 424. See 4 P. L. J. 521.

(e) If the prisoner stands mute, and the plea of not guilty is entered by the court, it is within the act. 5 Wh. 67. See 2 Ash. 90.

App. 80

or appertaining to the said precept, venire, drawing, summoning and returning of jurors.(*a*)

**Of the trial of prisoners committed.** 54. If any person shall be committed for treason or felony, or other indictable offence, and shall not be indicted and tried some time in the next term, session of oyer and terminer, general jail delivery, or other court where the offence is properly cognisable, after such commitment, it shall and may be lawful for the judges or justices thereof,(*b*) and they are hereby required on the last day of the term, sessions or court, to set at liberty the said prisoner upon bail, unless it shall appear to them, upon oath or affirmation, that the witnesses for the commonwealth, mentioning their names, could not then be produced; (*c*) and if such prisoner shall not be indicted and tried the second term, session or court(*d*) after his or her commitment, unless the delay happen on the application or with the assent of the defendant, or upon trial he shall be acquitted, he shall be discharged from imprisonment:(*e*) *Provided always*, That nothing in this act shall extend to discharge out of prison, any person guilty of, or charged with treason, felony or other high misdemeanor in any other state, and who by the constitution of the United States ought to be delivered up to the executive power of such state, nor any person guilty of, or charged with a breach or violation of the laws of nations.(*g*)

**Witnesses in forgeries.** 55. Upon the trial of any indictment for making or passing, and uttering, any false, forged or counterfeited coin, or bank note, the court may receive in evidence, to establish either the genuineness or falsity of such coin or note, the oaths or affirmations of witnesses who may, by experience and habit, have become expert in judging of the genuineness or otherwise, of such coin or paper, and such testimony may be submitted to the jury without first requiring proof of the handwriting or the other tests of genuineness, as the case may be, which have been heretofore required by law: and in prosecutions for either of the offences mentioned or described in the 164th, 165th, 166th and 167th sections of the "Act to consolidate, revise and amend the penal laws of this commonwealth,"(*h*)the courts shall not require the commonwealth to produce the charter of either of said banks, but the jury may find that fact upon other evidence, under the direction of the court.(*i*)

**Witnesses not to be imprisoned except in certain cases.** 56. No witness in any case who enters his or her recognisance, in such sum as the magistrate may demand, to appear and testify in such prosecutions as require his testimony, shall be committed to prison by the judge, alderman or magistrate before whom any criminal charge may be preferred: *Provided however*, That in all cases triable in the oyer and terminer, where a positive oath is made, reduced to writing and signed by the deponent, setting forth sufficient reasons or facts to induce the firm belief on the part of the judge, magistrate or alderman, that any witness will abscond, elope or refuse to appear upon the trial, that then and in such case the judge, magistrate or alderman may exact bail of said witness to testify.(*k*)

**Bills of exception and writs of error allowed.** 57. Upon the trial of any indictment for murder or voluntary manslaughter,(*l*) it shall and may be lawful for the defendant or defendants to except to any decision of the court upon any point of evidence or law,(*m*) which exception shall be noted by the court, and filed of record as in civil cases,(*n*) and a writ of error to the supreme court may be taken by the defendant or defendants, after conviction and sentence.(*o*)

54. Act 31 March 1860, § 54.  P. L. 443.  55. Ibid. § 55.  56. Ibid. § 56.  57. Ioid. § 57

(*a*) This section is a transcript of the act of 21st February 1814, 6 Sm. 111. The original act has been left unrepealed, and has been introduced here in order to give relative completeness to the code of criminal procedure. Report on the Penal Code 51.

(*b*) The application must be to the court in which the prisoners were indicted. 2 Wh 502. 3 Y. 204. 7 W. & S. 110.

(*c*) This section only applies where there has been wilful delay on the part of the commonwealth. 16 S. & R. 305. 7 W. 366. Not where the trial is delayed by the prisoner. 3 Y. 266. 16 S. & R. 304. 2 Wh. 501. 7 W. 366. 1 D. 9.

(*d*) A prisoner can only claim his discharge on the last day of the second term after his arrest, when there has been a competent and regularly constituted court before whom he could have been indicted and tried. 5 C. 129.

(*e*) The act was designed to prevent wrongful restraints of liberty growing out of the malice and procrastination of the prosecutor; but not to shield a prisoner, in any case, from the consequences of any delay made necessary by the law itself; and, therefore, where the array of grand jurors was quashed at two successive terms after the arrest of the prisoner, for informality in selecting and drawing them, he is not entitled to a discharge. 5 C. 129.

(*g*) This section is a transcript of the 3d section of the act of 18th February 1785, 2 Sm. 277. The words, "or other indictable offence," after the word "felony," have been introduced in order to harmonize the language of the law with the actual practice under it, which has been to extend the provisions of the 3d section of the habeas corpus act, not only to commitments for treason or felony, but to commitments for all criminal offences. Ex parte Walton, 2 Wh. 501. The only change in the proviso of this section is the substitution of the words, "the constitution of the United States," for the words, "the confederation," of the original section has also been left unrepealed, so as to avoid any unnecessary interference with this important law. The commissioners consider its introduction into this act is judicious, composing, as it does, so important an element in our criminal jurisprudence. Report on the Penal Code 51.

(*h*) See tit. "Crimes," pl. 173-6.

(*i*) This section is framed from the 3d section of the act of 4th May 1852, P. L. 574; and the 13th section of the act 25th March 1824, 8 Sm. 238. Report on the Penal Code 52.

(*k*) This section is taken from the act of 22d April 1856, P. L. 506. Report on the Penal Code 52.

(*l*) A bill of exceptions lies on the admission or rejection of evidence, on the trial of one charged by indictment with a criminal offence, other than murder or voluntary manslaughter, is not the subject of consideration on a writ of error, although the bill may have been sealed by the court below. 2 W. 285.

(*m*) The prisoner must show that a substantial error was committed on the trial, in the admission or rejection of evidence, by which he has been injured: it is not sufficient that an abstract or technical error has taken place. 5 C. 429.

(*n*) The supreme court is limited to a review of the points so noted and filed of record by the court below. 5 C. 429. 1 Wr. 108. The act does not authorize an exception to the charge of the court. Com. *v.* Jacoby, 6 Pittsburgh Leg. J. 178.

(*o*) Sections 57 to 61 are taken from the 1st, 2d, 3d, 4th and 5th sections of the act of 6th November 1856, P. L. 795. The changes made therein, consist in striking out the whole of the proviso to the 1st section, and so much of the 4th section as provides for the oath or affirmation required, being filed in the prothonotary's office of the proper district. The effect of the proposed amendment will be, to supersede the necessity of a party convicted of murder or manslaughter, making an oath that his application for a writ of error is not for the purpose of delay, and to correct the manifest inconsistency in the proviso, in authorizing a defendant, convicted of voluntary manslaughter, to enter bail to appear and abide the sentence of the court, when by the previous part of the section, no writ of error can issue until after conviction and sentence. The commissioners believe that the oath demanded will stop few, if any, persons convicted of murder or voluntary manslaughter, from suing out a writ of error, to obtain a reversal of their condemnation; they think that such a temptation to perjury should not be placed in the way of a party so situated. Experience shows that even in civil proceedings, such oaths have but little influence in preventing litigation; how much less must they

58. If during the trial upon any indictment for murder or voluntary manslaughter, the court shall be required by the defendant or defendants to give an opinion upon any point submitted and stated in writing, it shall be the duty of the court to answer the same fully, and file the point and answer with the records of the case.(a) *Written opinions to be filed.*

59. No such writ shall be allowed, unless special application be made therefor, and cause shown within thirty days after sentence pronounced; and if the supreme court be sitting in banc in any district, the application shall be made, and cause shown there; if the said court be not sitting, application may be made to, and cause shown before one of the judges of that court, and upon the allowance of such writ, the said court or judge shall fix a time and place for hearing the said case, which time shall not be more than thirty days thereafter; if the said court shall be at that time sitting in banc in any district of the state, the said court or judge, upon the allowance of any such writ, shall make all such proper orders, touching notice to the commonwealth, and paper-books, as may be considered necessary. *Granting of writs of error regulated.*

60. The writ of error shall issue from the prothonotary's office of the proper district, and all orders, decrees and judgments in the case shall also be entered of record there; but the application and final hearing may be made and had before the said supreme court while sitting in any other district. *Whence a writ of error to issue.*

61. Upon the affirmance of the supreme court of the judgment in any case, the same shall be enforced pursuant to the directions of the judgment so affirmed, and the said court may make any further order requisite for carrying the same into effect; and if the supreme court shall reverse any judgment, they shall remand the record, with their opinion, setting forth the causes of reversal, to the proper court for further proceeding. *Proceedings after affirmance or reversal of judgment.*

## E. OF COSTS.

62. In all prosecutions, cases of felony excepted, if the bill of indictment shall be returned "ignoramus," the grand jury returning the same shall decide and certify on such bill whether the county or the prosecutor shall pay the costs of prosecution; and in all cases of acquittals (b) by the petit jury on indictments for the offences aforesaid, the jury trying the same shall determine, by their verdict, whether the county,(c) or the prosecutor, or the defendant shall pay the costs,(d) or whether the same shall be apportioned between the prosecutor and the defendant, and in what proportions; and the jury, grand or petit, so determining, in case they direct the prosecutor to pay the costs or any portion thereof, shall name him in their return or verdict ;(e) and whenever the jury shall determine as aforesaid, that the prosecutor or defendant shall pay the costs, the court in which the said determination shall be made shall forthwith pass sentence to that effect, and order him to be committed to the jail of the county until the costs are paid, unless he give security to pay the same within ten days.(g) *Power of grand and petit jurors over costs.*

63. In all prosecutions where the petit jury trying the same shall acquit the defendant, and shall determine, by the verdict, that the prosecutor shall pay the costs(h) the defendant's bill for his subpœnas, serving the same, and attendance of his material and necessary witnesses, shall be included in the costs and paid accordingly.(i) *Of the defendant's costs.*

64. The costs of prosecution accruing on all bills of indictments charging a party with felony, returned "ignoramus" by the grand jury, shall be paid by the county; and the costs of prosecution accruing on bills of indictment charging a party with felony, shall, if such party be acquitted by the petit jury on the traverse of the same, be paid by *Payment of costs generally.*

58. Act 31 March 1860, § 58. P. L. 444.   59. Ibid. § 59.   60. Ibid. § 60.   61. Ibid. § 61.   62. Ibid. § 62.   63. Ibid. § 63.   64. Ibid. § 64.

have in a criminal proceeding, where the matter in issue is life or liberty! The privilege given in the proviso, in a case of voluntary manslaughter, of entering bail to appear to abide by the sentence of the court, is utterly irreconcilable with the main section itself, which gives the writ of error after conviction and sentence; if the commissioners are permitted to speculate upon the causes of the incongruity between the section and its proviso, they would be inclined to suppose that the proviso was one of those amendments hastily made and adopted, which sometimes occur in rapid legislation. The only manner in which the proviso and the section can be reconciled, would be to suppose that the legislature intended, in case of conviction and sentence for voluntary manslaughter, to permit the defendant, suing out a writ of error, to go at large on bail until the final judgment of the court of errors; such a feature is entirely new in a system of criminal jurisprudence, based upon the common law. If such a privilege is to be given to a convicted felon, there seems no good reason that it should be exclusively extended to felonious homicide; as has been heretofore remarked, the line between murder and voluntary manslaughter is often so nicely characterized, that it requires much technical acumen to discriminate the differences between them; surely in a community in which law ought to protect life by every possible means, a party convicted by the verdict of a jury of his peers, of voluntary and felonious homicide, should not be permitted to go at large, while the sentence against him remains unreversed and unrepealed. We ought not, in our anxiety to guard the rights of the offender, to forget those of the community, an error which seems gradually insinuating itself into penal legislation and administration; the reasoning on this subject might be extended, but the commissioners think they have said enough to recommend their proposed modification of this act to legislative favor. Report on the Penal Code 52.

(a) This section does require the court to write out its charge to the jury. Com. v. Jacoby, 6 Pittsburgh Leg. J. 178.

(b) If the act be charged to have been done feloniously, the jury have no power over the costs. 6 W. 530. Nor where an

indictment for a felony, a count for a misdemeanor is joined. 2 C. 154. The statute extends to the case of a defective indictment. 4 B. 194. 4 S. & R. 127. And to an acquittal on a plea of the statute of limitations. 2 C. 171. The jury cannot convict one of two defendants, and acquit the other, and direct the latter to pay the costs. 13 S. & R. 301. The court may set aside a verdict of acquittal, so far as it imposes costs on the prosecutor. 2 Gr. 66.

(c) If the jury acquit the defendant, and say nothing as to the costs, the county is not liable. 3 P. R. 365.

(d) This does not include the costs of a former bill, on which judgment was arrested. 2 C. 171.

(e) No person can be sentenced to pay costs as prosecutor, unless named by the jury. 7 W. 485. But where the grand jury ignored a bill for assault and battery, and directed the person upon whom it was alleged to have been committed, to pay the costs, it was held sufficient, although they omitted to designate him as prosecutor. Com. v. Carr. Quarter Sessions, Phila., 23 October 1847. MS. The act does not apply to persons concerned in prosecutions in their official capacity; 2 Am. L. R. 243; 11 Leg. Int. 58; and hence, in a prosecution for keeping a disorderly house, the jury cannot impose the costs on the constable who made the return. Com. v. Barr, Quarter Sessions, Lancaster, January 1848. MS.

(g) See 2 P. R. 240. 13 S. & R. 303. This section is taken from the 1st and 2d sections of the act of 8th December 1804. 4 Sm. 204; and the act of 12th April 1859. P. L. 528. The only change made in these laws is, that the like privilege of giving security for the payment of costs in ten days is given to the defendant, who, although acquitted, is ordered to pay the costs, as is given to the prosecutor in case he is ordered to pay the costs. Report on the Penal Code 53.

(h) If the jury acquit the defendant, and direct the costs of prosecution to be paid by the county, the latter is not liable for the attendance of the defendant's witnesses. 12 C. 317.

(i) This section is taken from the act of 9th February 1820, § 1. Report on the Penal Code 53.

the county,(*a*) and in all cases of conviction(*b*) of any crime, all costs(*c*) shall be paid by the party convicted ; but where such party shall have been discharged, according to law,(*d*) without payment of costs, the costs of prosecution shall be paid by the county ; and in cases of surety of the peace, the costs shall be paid by the prosecutor or the defendant, or jointly between them, or the county, as the court may direct.(*e*)

Costs where separate bills are presented against joint offenders.

65. In all cases where two or more persons have committed an indictable offence, the names of all concerned (if a prosecution shall be commenced) shall be contained in one bill of indictment, for which no more costs shall be allowed than if the name of one person only was contained therein.(*g*)

## F. GENERAL PROVISIONS.

Insane prisoners.

66. In every case in which it shall be given in evidence upon the trial of any person charged with any crime or misdemeanor, that such person was insane at the time of the

Jury to find the fact of insanity.

commission of such offence, and he shall be acquitted, the jury shall be required to find specially whether such person was insane at the time of the commission of such offence, and to declare whether he was acquitted by them on the ground of such insanity ; and

Defendant to be detained in custody.

if they shall so find and declare, the court before whom the trial is had shall have power to order him to be kept in strict custody, in such place and in such manner as to the said court shall seem fit, at the expense of the county in which the trial is had, so long as such person shall continue to be of unsound mind.(*h*)

Where defendant is found insane upon arraignment.

67. The same proceedings may be had, if any person indicted for an offence shall, upon arraignment, be found to be a lunatic, by a jury lawfully impannelled for the purpose ; or if, upon the trial of any person so indicted, such person shall appear to the jury, charged with such indictment, to be a lunatic, the court shall direct such finding to be recorded, and may proceed as aforesaid.

Where prisoner brought up to be discharged appears to be insane.

68. In every case in which any person charged with any offence shall be brought before the court to be discharged for want of prosecution, and shall by the oath or affirmation of one or more credible persons, appear to be insane, the court shall order the district attorney to send before the grand jury a written allegation of such insanity in the nature of a bill of indictment ; and thereupon the said grand jury shall make inquiry into the case, as in cases of crimes, and make presentment of their finding to said court thereon ; and thereupon the court shall order a jury to be impannelled to try the insanity of such person ; but before a trial thereof be ordered, the court shall direct notice thereof to be given to the next of kin of such person, by publication or otherwise, as the case requires, and if the jury shall find such person to be insane, the like proceedings may be had as aforesaid.

Insane defendant to be delivered to friends, &c.

69. If the kindred or friends of any person who may have been acquitted as aforesaid on the ground of insanity, or in the default of such, the guardians, overseers or supervisors of any county, township or place, shall give security in such amount as shall be satisfactory to the court, with condition that such lunatic shall be restrained from the commission of any offence by seclusion or otherwise, it shall be lawful for the court to make an order for the enlargement of such lunatic, and his delivery to his kindred or friends, or as the case may be, to such guardians, overseers or supervisors.

How expenses to be paid in such cases.

70. The estate and effects of every such lunatic shall, in all cases, be liable to the county for the reimbursement of all costs and expenses paid by such county in pursuance of such order ; but if any person acquitted on the grounds of insanity, shall have no estate or effects, the county, township or place to which such lunatic may be chargeable under the laws of this commonwealth relating to the support and employment of the poor, shall, after notice of his detention aforesaid, be liable for all costs and expenses as aforesaid, in like manner as if he had become a charge upon any township not liable for his support under the laws aforesaid.

Civil actions against felons.

71. In all cases of felony heretofore committed, or which may hereafter be committed, it shall and may be lawful for any person injured or aggrieved by such felony, to have and maintain his action against the person or persons guilty of such felony, in like manner as if the offence committed had not been feloniously done ; and in no case whatever, shall the action of the party injured, be deemed, taken or adjudged to be merged in the felony, or in any manner affected thereby.(*i*)

Executions upon sentences of restitution.

72. The imprisonment awarded as part of the punishment of any offender, shall not stop or avoid the awarding or taking out of execution to levy such respective sums recovered against them, as such offenders refuse or neglect to pay, when such writs are taken out, which executions shall be directed to the sheriff or coroner of the proper

---

65. Act 31 March 1860, § 65. P. L. 445.
66. Ibid. § 66.

67. Ibid. § 67.
68. Ibid. § 68.

69. Ibid. § 69.
70. Ibid. § 70.

71. Ibid. § 71.
72. Ibid. § 72.

(*a*) See 10 C. 440.

(*b*) This includes convictions for drunkenness and vagrancy. 4 C. 173. 5 C. 38. Provided the defendants be sentenced to hard labor, and the commitments follow the sentences as recorded. 12 C. 349. The case of a prosecutor on a bill returned ignoramus, is not within the act ; nor that of a defendant acquitted, but ordered to pay the costs by the petit jury ; nor where the prosecutor is ordered to pay costs on an acquittal. 4 S. & R. 541. Nor where the case is determined by nolle prosequi 12 S. & R. 94. 6 H. 493. Or the indictment is quashed. 3 R. 487. But it extends to cases where the party may be discharged under the insolvent laws ; or where judgment has been arrested, or reversed on error. 12 S. & R. 95. Or where the defendant has been pardoned after conviction. 7 S. & R. 449.

(*c*) This does not include costs of an attachment against a

witness, for contempt. 2 S. & R. 292.

(*d*) Unless the discharge be a legal one, the county is not liable. 6 P. L. J. 237.

(*e*) This section is a consolidation of the 11th and 15th sections of the act of 23d September 1791. 3 Sm. 43-4 ; and the 13th section of the act of 28th March 1814, 6 Sm. 229 ; and the 1st section of the act of 20th March 1797. 3 Sm 281 : and embraces the cases provided for by them. Report on the Penal Code 53.

(*g*) This section is taken from the act of 28th March 1805, 4 Sm. 235. Report on the Penal Code 54.

(*h*) Sections 66 to 70 are taken from the 58th, 59th, 60th, 61st and 62d sections of the act of 13th June 1836, P. L. 603. Report on the Penal Code 54. See 6 C. 522. 10 C. 184.

(*i*) This section is new ; its object is sufficiently manifest without further explanation Report on the Penal Code 54.

county, requiring him to levy the sums due upon such recoveries as aforesaid, of the lands and tenements, goods and chattels of such offenders, returnable to the next term or session of the court where such conviction was had, which shall be executed accordingly;(a) and the lands, goods and chattels thereby seized shall be sold and conveyed by the said officers, and such sales shall be as available and effectual in law as any other sales of land taken and sold for the payment of debts, by virtue of writs of execution awarded out of the courts of common pleas in the respective counties.(b)

73. If any person who hath been, or shall be legally indicted in any court of criminal *Outlawry.* jurisdiction within this commonwealth, of treason, felony of death, robbery, burglary, sodomy or buggery, or as accessories before the fact to any of the same offences, did not or will not appear to answer to such indictment, or having appeared, shall escape before trial, the same indictment, record and proceedings shall be removed by writ of certiorari *Certiorari.* into the supreme court of this commonwealth, and it shall and may be lawful for the same court to award a writ of capias, directed to the sheriff of the county where the fact shall be charged to have been committed ; and if the party indicted shall be supposed, *Capias.* by the indictment, to inhabit or be conversant in any other county, then also to the sheriff of such county ; which writ or writs shall be delivered to the said sheriff or sheriffs, at least two months before the day of the return thereof, commanding the said sheriff or sheriffs to take the person so indicted as aforesaid, if he may be found in his or their bailiwicks, and him safely keep, so that he may have his body before the justices of the said supreme court, at the next supreme court to be holden for the said commonwealth, to answer to the said indictment, or prosecute his traverse thereupon, as the case may be, and to be further dealt with as the law shall direct; and if the same sheriff or sheriffs shall make return to the same writ or writs of capias, that the person indicted as afore- *Alias capias.* said, cannot be found in his bailiwick, then, after such return, a second writ of capias may issue out of the said supreme court, and be delivered at least three months(c) before the return day thereof, to the sheriff of the county where the fact shall be charged to have been committed ; and in case the party shall be supposed, by the indictment, to inhabit or be conversant in any other county, then another writ of capias shall also issue, and be delivered at least three months before the return day thereof, to the sheriff of such county ; which writ or writs of capias shall be returnable before the justices of the same court,(d) on the first day of the second term next after the teste of the said second writ of capias, so that a term shall intervene between the teste of the return days of the same writ or writs, whereby the said sheriff or sheriffs shall be commanded to take the said person so indicted as aforesaid, if he may be found in his or their bailiwicks, and him safely keep, so that he may have his body before the justices of the said supreme court at the day of the return thereof, to answer or prosecute his traverse as aforesaid ; but if *Proclama-* he cannot be found in his or their bailiwicks, then to cause public proclamation to be *tion.* made on three several days(e) in one of the courts of quarter sessions of the peace to be held for the said counties respectively, between the teste and return days of the same writ or writs, that the party so indicted shall appear before the said justices of the said supreme court, at a supreme court to be holden at the time and place contained in the same writs, to answer such indictment or prosecute his traverse thereof, as the case may be, or through default thereof, he will at the return of the same writ or writs be outlawed, and attainted of the crime whereof he was indicted as aforesaid ; and the said second writ of capias, directed to the sheriff of the county where the crime hath been, or shall be charged to have been committed, shall contain a further clause commanding the said sheriff, in case the person indicted as aforesaid cannot be found in his bailiwick, *Advertise-* to cause public advertisement to be made in one or more of the public newspapers of *ment.* this state, once a week, in six succeeding weeks, between the teste and return of the said second writ of capias, specifying therein the coming of the said second writ of capias to his hands, with the teste thereof, and the time and place of return to be made thereof, naming the person indicted as aforesaid, with his addition of degree, mystery(g) and place of abode,(h) as contained in the writ, stating the nature of the offence charged against him, and commanding him to appear before the justices of the said supreme court, at the day and place directed by the said second writ of capias, to answer to the said indictment, or prosecute his traverse thereof, as the case may be, or through default thereof at the return of the said second writ of capias, he will be outlawed and attainted of the crime whereof he shall have been indicted as aforesaid ; and if upon the return *Attainder* of the same writ or writs last mentioned, by the said sheriff or sheriffs, that the directions of the said writ or writs had been fully complied with and pursued, and the person indicted as aforesaid shall not yield himself to one of the said sheriffs, so that he may have his body before the justices of the said supreme court at the day and place as directed by the said writ or writs, or having surrendered himself, shall escape from his custody, or having been bailed on his surrender or caption, shall not appear, so that through want of his appearance at the time and place the said supreme court shall appoint for his trial, no trial of his offence can be had, the justices of the said supreme court shall in either of these cases pronounce and declare the said person indicted as

73. Act 31 March 1860, § 73. P. L. 447.

(a) A conveyance made to elude the provisions of this section, would be fraudulent and void at common law.  5 B. 114.
(b) This section is taken from the 30th section of the act of 31st May 1718, 1 Sm. 122.  Report on the Penal Code 54.
(c) See 1 D. 88, 92.

(d) 1 D. 88, 92.
(e) 1 D. 88, 92.
(g) 2 D. 92.
(h) 2 D. 92.  1 D. 60.

aforesaid, and not appearing at the time and place appointed for his trial as aforesaid, to be outlawed and attainted of the crime whereof he shall have been indicted as afore-

**Accessories.** said; the said supreme court to pronounce the judgment of outlawry against the principal offender, previously to the declaration of outlawry against the accessory, against whom, in all other respects, it shall be lawful to carry on the proceedings together, and at the same time the said supreme court shall declare the legal punishment for the same

**Sentence.** crime; and wherever imprisonment shall be a part of the sentence for any of the said offences, the term thereof shall commence from the time the person outlawed shall, subsequent to his outlawry, actually be in the custody of the sheriff of the county where the offence was or shall be committed, which sentence shall be fully and particularly entered upon the records of the said supreme court; and the said sentence of outlawry

**Effect of outlawry.** shall have the legal effect of a judgment upon verdict or confession against the person so outlawed, for the offence whereupon he shall have been outlawed, unless and until the same outlawry shall be afterwards avoided by the judgment of the same court, on plea pleaded in the nature of a writ of error.

**How execution to be awarded.** When any person outlawed as aforesaid, shall be taken either by *capias utlagatum*, or otherwise, or being in the sheriff's custody, shall be brought to the bar of the supreme court, the court shall, upon the suggestion and prayer of the attorney-general, award execution(*a*) to be done upon him, unless the prisoner shall plead either *ore tenus*, or in writing, as his counsel shall advise, that he was not the person who was outlawed, or shall assign errors, in fact or in law, sufficient to prevent the award of execution, in which case the court shall proceed to determine the same either by an inquest or by their own judgment, agreeably to law; and the prisoner shall by such plea have all the benefit and advantage of all legal matters in his favor, as if he or she had brought a

**When outlawry may be reversed.** writ of error and had assigned the several matters pleaded as errors: *Provided*, If any person outlawed shall within the space of one year next after the outlawry pronounced against him, yield him to one of the justices of the supreme court, and offer to traverse the indictment whereon the said outlawry shall be pronounced as aforesaid, that then he shall be received to the same traverse; and being thereupon found not guilty, by the verdict of a jury, of the offence for which he shall have been outlawed as aforesaid, he shall be clearly acquitted and discharged of the said outlawry, and of all penalties and forfeitures by reason of the same, as fully as if no such outlawry had been had, anything hereinbefore contained to the contrary thereof notwithstanding.

**Costs.** All the costs and charges of the said proceedings to outlawry shall be borne and paid by the county where the crime is laid to have been committed: *Provided always*, That if the person or persons so outlawed shall have real or personal estate, the same or so much thereof as shall be necessary, shall be sold in the manner provided by the seventy-second section of this act, and the net proceeds of such sales shall be applied to the payment of the said costs and charges, or so far as the same shall extend, in exoneration of the county.(*b*)

**Sentences of separate or solitary confinement.** 74. Whenever any person shall be sentenced to imprisonment at labor by separate or solitary confinement, for any period not less than one year, the imprisonment and labor shall be had and performed in the state penitentiary for the proper district: *Provided*, That nothing in this section contained shall prevent such person from being sentenced to imprisonment and labor, by separate or solitary confinement, in the county prisons now or hereafter authorized by law to receive convicts of a like description: *And provided also*, That no convict shall be sentenced by any court of this commonwealth, to either of the penitentiaries thereof, for any term which shall expire between the fifteenth of November and the fifteenth of February of any year.(*c*)

**Sentences of less than one year, and simple imprisonment.** 75. No person shall be sentenced to imprisonment at labor, by separate or solitary confinement, for a period of time less than one year, except in the counties where, in the opinion of the court pronouncing the sentence, suitable prisons have been erected for such confinement and labor; and all persons sentenced to simple imprisonment for any period of time, shall be confined in the county jail where the conviction shall take place: *Provided*, That in the counties where suitable prisons for separate or solitary confinement at labor do not exist, and the sentence shall be for less than one year, simple

---

74. Act 31 March 1860, § 74. P. L. 449.             75. Ibid. § 75.

(*a*) 1 D. 87, 91.

(*b*) This section is taken from the 1st, 2d and 3d sections of the act of 23d September 1791, 3 Sm. 37, and is nearly a transcript thereof. They form in themselves as good a system of outlawry as can now be suggested, and are so skilfully and ably drawn, as to require no amendment of importance. Although proceedings in outlawry have been rarely resorted to in our state, yet they are indispensably necessary in every complete system of criminal jurisprudence. Report on the Penal Code 54.

(*c*) Whilst the 74th and 75th sections, except the proviso to the 74th section, are new in form, no material alteration is made in the law as it now stands. The 74th section requires that sentences of imprisonment at labor by separate or solitary confinement for a period of time not less than one year, shall be performed in the state penitentiary of the proper district, or in such county prisons as are now, or may hereafter be authorized to receive convicts of a like description; and the 77th section prohibits sentences of imprisonment at labor by separate or solitary confinement for a less period of time than one year, except in the counties where suitable prisons have been, or shall hereafter be erected for such confinement and labor,

This section also provides that in all cases where the sentence is for simple imprisonment only, the offender shall be confined in the county where the conviction shall take place. The sections taken together require: 1. That all persons sentenced to simple imprisonment, shall be confined in the county where the offender is convicted. 2. That no person shall be sentenced to imprisonment at labor by separte or solitary confinement for a less period than one year, except in the counties where, in the opinion of the court passing the sentence, prisons are provided suitable for such confinement and labor. 3. That all imprisonment at labor by separate or solitary confinement, where the sentences exceed one year, shall be in the state penitentiary for the proper district, except in the counties in whose prisons convicts of a like description are authorized to be imprisoned, and in those counties, such convicts may be sent to the county prisons as heretofore. The provision contained in the last proviso to the 74th section, is copied from the 1st section of the act of 18th February 1847, P. L. 126. Report on the Penal Code 54. In New York, a similar law to that contained in this proviso, was held to be merely directory, and a failure to comply with its requirements, not to avoid the sentence. 1 Parker 374.

imprisonment shall be substituted in all cases for the separate and solitary confinement at labor required by the "Act to consolidate, revise and amend the penal laws of this commonwealth."

76. Whenever, hereafter, any person shall be condemned to suffer death by hanging, for any crime of which he shall have been convicted, the said punishment shall be inflicted upon him within the walls or yard of the jail of the county in which he shall have been convicted; and it shall be the duty of the sheriff or coroner of the said county to attend and be present at such execution, to which he shall invite the presence of a physician, the district attorney of the county, and twelve reputable citizens, who shall be selected by the sheriff; and the said sheriff shall, at the request of the criminal, permit such ministers of the gospel, not exceeding two, as he may name, and any of his immediate relatives, to attend and be present at such execution, together with such officers of the prison, and such of the sheriff's deputies as the said sheriff or coroner, in his discretion, may think it expedient to have present; and it shall be only permitted to the persons above designated to witness the said execution: *Provided*, That no person under age shall be permitted, on any account, to witness the same. And after the execution, the said sheriff or coroner shall make oath or affirmation, in writing, that he proceeded to execute the said criminal, within the walls or yard aforesaid, at the time designated by the death warrant of the governor; and the same shall be filed in the office of the clerk of the court of oyer and terminer of the aforesaid county, and a copy thereof published in two or more newspapers, one, at least, of which shall be printed in the county where the execution took place.(a) *(Execution in capital cases.)*

77. All indictments which shall hereafter be brought or exhibited for any crime or misdemeanor, murder and voluntary manslaughter excepted, shall be brought or exhibited within the time and limitation hereafter expressed, and not after;(b) that is to say, all indictments and prosecutions for treason, arson, sodomy, buggery, robbery, burglary, perjury, counterfeiting, forgery, uttering or publishing any bank note, check or draft, knowing the same to be counterfeited or forged, shall be brought or exhibited within five years next after the offence shall have been committed; and all indictments and prosecutions for other felonies not named or excepted heretofore in this section, and for all misdemeanors, perjury excepted, shall be brought or exhibited within two years next after such felony or misdemeanor shall have been committed:(c) *Provided however*, That if the person against whom such indictment shall be brought or exhibited, shall not have been an inhabitant of this state, or usual resident therein, during the said respective terms for which he shall be subject and liable to prosecution as aforesaid, then such indictment shall or may be brought or exhibited against such person at any period within a similar space of time during which he shall be an inhabitant of, or usually resident within this state: *And provided also*, That indictments for misdemeanors committed by any officer of a bank, or other corporation, may be commenced and prosecuted at any time within six years from the time the alleged offence shall have been committed.(d) *(Limitation of prosecutions.)*

78. All fines imposed upon any party, by any court of criminal jurisdiction, shall be decreed to be paid to the commonwealth; but the same shall be collected and received, for the use of the respective counties in which such fines shall have been imposed as aforesaid, as is now directed by law.(e) *(Fines to be decreed to be paid to the state, for the use of the county.)*

76. Act 31 March 1860, § 76. P. L. 450.　　　77. Ibid. § 77.　　　78. Ibid. § 78.

(a) This section is taken from the act of 10th April 1834, P. L. 254. Report on the Penal Code 55.

(b) The finding of an informal presentment is not sufficient to take the case out of the statute. 1 Cranch C. C. 485. Nor will a former indictment, on which a nolle prosequi was entered. 3 McLean, 469.

(c) The limitation need not be specially pleaded; it may be taken advantage of on the general issue. 4 C. 259. See 3 Cranch C. C. 442. 5 Cranch C. C. 38, 60, 368.

(d) This section considerably extends the existing laws relating to the limitation of criminal prosecutions; these only relate to misdemeanors, in all of which, prosecutions must be commenced within two years, if the alleged offender is accessible to justice, except in forgeries, perjuries and misdemeanors by bank officers, the limitations in the latter cases being six years; the present section extends the principle to all crimes, murder and voluntary manslaughter excepted. Where the alleged offender is accessible to justice, prosecutions should not be unnecessarily delayed; such delays do not often take place from worthy motives; charges are often kept suspended over the heads of the accused to subserve the ends of the accuser, and the accused kept in a state of moral slavery, to which no human being should be subjected; it is true, that stale prosecutions are

looked upon with an unfavorable eye by courts and juries, but the very existence of this feeling in criminal tribunals is a strong argument in itself in favor of reasonable limitations in criminal prosecutions. In the more serious class of felonies and misdemeanors, the limitation has been extended to five years; in those of less maliguity, the limitation of two years has been adopted. The existing laws on this subject are the 1st section of the act of 10th April 1848, P. L. 428; the 7th section of the act of 16th April 1849, P. L. 664; the 36th section of the act of 25th April 1850, P. L. 575; the act of 10th March 1852, P. L. 124; and the act of 24th April 1857, P. L. 305. The act of 1852, which provides for a general limitation of two years in all cases of misdemeanors, forgeries and perjuries excepted, may be regarded as having repealed all antecedent laws; the act of 1857, though purporting by its title to be a repeal of the act of 1852, is only a modification thereof, extending the limitation in cases of prosecutions for misdemeanors of bank or other corporation officers to five years. Report on the Penal Code 55.

(e) This section is a re-enactment of the existing law, and is introduced here for the purpose of giving more completeness to the code. Report on the Penal Code 56.

# Cumberland Road.

1. Road accepted from the United States.
2. Appointment of superintendents. Term. Vacancies, how filled. Oath of office. Bond.
3. Superintendent in Fayette and Somerset counties.
4. Powers of the superintendents.
5. Compensation. Accounts.
6. Toll-gates to be erected. Tolls. May be commuted. Certain parties not to be charged toll.
7. When tolls may be increased. How payment may be enforced.
8. Rates of toll increased. Exemptions.
9. Suits for collection of tolls. Plea of non-joinder not to be received. Vehicles may be detained till tolls be paid.
10. Drivers to report number of passengers. Penalty for neglect.
11. Book of entries to be evidence of unpaid tolls.
12. Estimates to be made of tolls, not reported. Commutations. Evidence.
13. Penalty for fraudulent evasion of toll.
14. Commissioners to establish rules. Subject to approval of

the courts.
15. Tolls to be collected although no gates be passed. To be collected by action.
16. Location of gates may be changed. Rates of toll may be raised in certain cases.
17. Toll-gatherers to be appointed; who shall account quarterly. Commissioners to render annual accounts, on oath.
18. Tolls to be applied to preservation of road. Limitation of power to increase tolls.
19. Directors to be set up. Penalty for violation.
20. Penalty for delaying travellers, or demanding excessive tolls.
21. Penalty for injuring or obstructing road.
22. Toll-gatherers to keep accounts.
23. How penalties recoverable.
24. Penalty for driving rough-locked, &c.
25. Culverts to be constructed along the road.
26. Payment of salaries and expenses. Repairs of road.
27. When proceeds may be applied to payment of creditors.

Road accepted from U. S.
1. The surrender by the United States of so much of the Cumberland road as lies within the state of Pennsylvania, is hereby accepted by this state; and the commissioners to be appointed under this act are authorized to erect toll-gates on the whole or any part of said road, at such times as they may deem it expedient and proper to do so.

Appointment of superintendents.
2. At the first session happening after the passage of this act, it shall be the duty of the court of quarter sessions of Washington county to appoint a suitable person to be superintendent of that section of the Cumberland road within this commonwealth which lies between the Monongahela river and the Virginia state line; [and it shall also be the duty of the court of quarter sessions of Fayette county, at the first session of the said court happening after the passage of this act, to appoint a suitable person to be super-

Term.
intendent of that section of the Cumberland road within this commonwealth which lies between the Monongahela river and the Maryland state line;](a) which appointments

Vacancies, how filled.
shall severally continue for two years, if they shall discharge the duties hereinafter prescribed in a proper manner; and in case of the death, resignation or removal, the vacancy

Oath of office.
shall be filled by the same courts of the proper county: The said superintendents shall be sworn, in open court, to discharge the duties of their trust with honesty and fidelity;

Bond.
and shall, before entering upon the duties of their respective trusts, give bond, in such sum and with such security as the said respective courts may deem sufficient; the bonds to be given in the name of the commonwealth, and shall be conditioned for the faithful discharge of their trust in all things.

Superintendent in Fayette and Somerset counties.
3. The governor of this commonwealth shall appoint one person to be superintendent of said road, in Fayette and Somerset counties, for the term of two years from the date of said appointment, at a salary not exceeding two hundred dollars per annum, to be paid out of the tolls collected upon said road, whose duties shall be those of superintendent of said road, as now directed by the law of this commonwealth, authorizing the court of Fayette county to appoint a superintendent, approved the 22d day of April 1856.

Powers of the superintendents.
4. Each of the said superintendents so appointed, shall have over their respective sections of said road all the powers heretofore conferred upon commissioners of said road, and all the powers conferred upon superintendents by the fourth section of the act to which this is a supplement,(b) and also all the powers which have heretofore been conferred upon trustees authorized to be appointed for said road.

Compensation.
5. For compensation, the said superintendents shall each receive a certain per centage of the gross revenues of their respective sections, which per centage shall be ascertained and allowed by the court, at the end of each year; at which time it shall be the duty of

Accounts.
the said superintendents to make a full and just exhibit of the receipts and expenditures on their respective sections, to the court from which he received his appointment; which accounts, before they are certified, shall receive the consideration and examination of the court, and for this purpose the court may appoint an auditor, if necessary.

Toll-gates to be erected.
6. For the purpose of keeping so much of the said road in repair as lies within the state of Pennsylvania, and paying the expenses of collection and other incidental expenses, the commissioners shall cause to be erected on so much of the said road as passes within this state, at least six gates; and as soon as said gates and toll-houses shall be erected, it shall be the duty of the toll-collectors, and they are hereby required to demand and receive for passing the said gates, the tolls hereafter mentioned; and they may stop any person riding, leading or driving any horse, cattle, sulky, chair, phaeton,

1. Act 1 April 1835, § 3. P. L. 102.
2. Act 22 April 1856, § 1. P. L. 523.
3. Act 1 May 1861, § 1. P. L. 678.
4. Act 22 April 1856, § 2. P. L. 523.
5. Ibid. 3.
6. Act 4 April 1831, § 2. P. L. 419.

(a) See infra 3.

(b) See act 8 April 1848. P. L. 395-7

for the like offense, he shall be sentenced to be confined in the penitentiary for one year.

Id. ¿ 28.
1 Va. Cas. 151-2.
26. When any person is convicted of two or more offenses, before sentence is pronounced for either, the confinement to which he may be sentenced upon the second, or any subsequent conviction, shall commence at the termination of the previous terms of confinement.

Code Va., p. 815, ¿ 29.
10 Gratt. 755.
27. When a person is convicted of selling, or offering or exposing for sale, at retail, spirituous liquors, wine, porter, ale, or beer, or drink of like nature, and it is alleged in the indictment or presentment on which he is convicted, and admitted, or by the jury found, that he has been before convicted of the like offense, he shall be fined as provided in the third section of chapter thirty-two, and may, at the discretion of the court, be confined in jail not exceeding six months.

Acts of 1868, p. 124, ch. 149, ¿ 1.
28. No criminal prosecution for any felony or misdemeanor shall be maintained in the courts of this state against any person for any act done in the suppression of the late rebellion ; and it shall be a sufficient defense to such prosecution, to show that such act was done in obedience to the orders, or by the authority, of any civil or military officer of this state, or of the re-organized government of Virginia, or of the government of the United States ; or that said act was done in aid of the purposes and policy of said authorities, in retarding, checking, and suppressing the said rebellion.

---

# CHAPTER CLIII.

### FOR PREVENTING THE COMMISSION OF CRIMES.

SEC.
1. Conservators of the peace ; power to bind to good behavior.
2. ) Duty of, on complaint that a crime is in-
3. ) tended.
4. Proceedings when accused appears.
5. Right of accused to appeal.
6. ) Power of court upon such appeal, and when
7. ) the accused is committed.

SEC.
8. Person going armed with deadly weapon, when required to give recognizance, etc.
9. Affray, etc., in the presence of constable.
10. In presence of justice ; duty of justice where person brought before him, etc.
11. Proceedings where person suspected of unlawful retailing of spirituous liquors.

Code of Va., p. 817, ¿ 1.
Const. art. 7, ¿ 9.
Acts of 1863, p. 234, ch. 132, ¿ 1.
1. Every justice and constable shall be a conservator of the peace, within his county.  As such conservator, every justice shall have power to require from persons not of good fame, security for their good behavior for a term not exceeding one year.

Code Va., p. 817, ¿ 2.
2. If complaint be made to any justice, as such conservator, that there is good cause to fear that a person intends to commit an offense against the person or property of another, he shall examine on oath the complainant, and any witnesses who may be produced, reduce the complaint to writing, and cause it to be signed by the complainant.

Id. p. 818, ¿ 3.
Munf. 458.
3. If it appear proper, such justice shall issue a warrant, reciting the complaint, and requiring the person complained of forthwith to be apprehended and brought before him or some other justice.

4. When such person appears, if the justice, on hearing the parties, consider that there is not good cause for the complaint, he shall discharge the said person, and may give judgment in his favor against the complainant for his costs. If he consider that there is good cause therefor, he may require a recognizance of the person against whom it is, and give judgment against him for the costs of the prosecution, or any part thereof; and, unless such recognizance be given, he shall commit him to jail, by a warrant, stating the sum and time in and for which the recognizance is directed. The justice giving judgment under this section for costs may issue a writ of fieri facias thereon, if an appeal be not allowed; and proceedings thereupon may be according to the two hundred and twenty-seventh section of chapter fifty. *Code Va., p. 818, § 4.*

5. A person from whom such recognizance is required may, on giving it, appeal to the circuit court of the county; and in such case the officer from whose judgment the appeal is taken shall recognize such of the witnesses as he thinks proper. *Id. § 5.*

6. The court may dismiss the complaint, or affirm the judgment, and make what order it sees fit as to the costs. If it award costs against the appellant, the recognizance which he may have given shall stand as a security therefor. When there is a failure to prosecute the appeal, such recognizance shall remain in force, although there be no order of affirmance. On any appeal the court may require of the appellant a new recognizance, if it see fit. *Id. § 6.*

7. Any person committed to jail under this chapter may be discharged by the circuit court, or the judge thereof in vacation, upon such terms as may be deemed reasonable. *Id. § 7.*

8. If any person go armed with a deadly or dangerous weapon, without reasonable cause to fear violence to his person, family, or property, he may be required to give a recognizance, with the right of appeal, as before provided, and like proceedings shall be had on such appeal. *Id. § 8.*

9. If any person shall, in the presence of a constable and within his county, make an affray, or threaten to beat, wound, or kill another, or to commit violence against his person or property; or contend with angry words to the disturbance of the peace; or improperly or indecently expose his person; or appear in a state of gross intoxication in a public place; such constable, as such conservator, may, without warrant or other process, or further proof, arrest such offending person and carry him before some justice of the township in which such offense is committed, who, upon hearing the testimony of such constable and other witnesses, if any are then and there produced, if, in his opinion the offense charged be proved, shall require the offender to give a bond or recognizance, with security, to keep the peace and be of good behavior for a term not exceeding one year. *Id. § 9. Acts of 1863, p. 234–5, § 1.*

10. If any offense enumerated in the preceding section be com- *Id. p. 235, § 2.*

mitted in the presence of a justice within his county, or the offender being brought before him, the commission thereof be proved to his satisfaction, he may, besides requiring a bond or recognizance with security, as provided in the preceding section, impose a fine upon the offender not exceeding five dollars. If such bond or recognizance be not then and there given, or such fine be not then and there paid, the said justice shall commit the offender to the jail of his county, there to remain until such bond or recognizance be given, and such fine be paid; but no imprisonment under this section shall continue more than ten days, at the end of which the sheriff or jailor shall discharge the prisoner, unless he has been commanded by sufficient authority to detain him for some other cause.

Code of Va., p. 818, § 10.
Acts of 1865, p. 57, ch. 61.

11. If any justice suspect any person of selling, by retail, wine, or ardent spirits, or a mixture thereof, contrary to law; or of selling, or offering or exposing for sale, any intoxicating liquor, or keeping open any distillery, bar, office, stall, or room in his possession, or under his control, at which such liquor had theretofore usually been sold, or permitting any person to drink any intoxicating liquor at the same, on the day of an election, and within two miles of the place of such election, or during the night succeeding such day, contrary to the eleventh section of chapter five, such justice shall summon the person suspected of such offense, and such witnesses as he may think proper, to appear before him; and upon the person so suspected appearing, or failing to appear, if the justice, on examining the witnesses under oath, find sufficient cause, he shall direct the prosecuting attorney for the county to institute a prosecution against the person so suspected, and shall recognize the material witnesses, or cause them to be summoned, to appear at the next term of the circuit court of the county. Such justice may also require the person suspected to enter into recognizance to keep the peace and be of good behavior for a time not exceeding one year. If recognizance be given by the person so suspected, the condition thereof shall be deemed to be broken, if during the time for which it is given, such person shall sell, by retail, wine, or ardent spirits, or a mixture thereof, contrary to law, or violate in any particular the eleventh section of chapter five.

---

# CHAPTER CLIV.

## OF INQUESTS UPON DEAD BODIES.

SEC.
1. Duty of justice upon being notified of death by violence, etc.
2. Warrant and summons, how executed.
3. Jury formed; their oath.
4. How witnesses compelled to attend; how evidence taken.
5. Inquisition.
6. Inquisition, evidence, etc., returned; witnesses recognized.

SEC.
7. Justice to issue warrant for the arrest of accused, if not in custody.
8. When deceased a stranger, body to be buried, etc.; costs, how paid.
9. Justice may require physicians to attend inquest.
10. Penalty on justice for neglect of duty.
11. Inquest may be taken on Sunday.

days' imprisonment.

jail nor less than one day nor more than ten days, or both, in the discretion of the court or jury before whom the trial is had.

AN ACT REGULATING THE RIGHT TO KEEP AND BEAR ARMS.

12 Aug., 1870; took effect 12 Oct., 1870. Vol. 21, part 1, p. 63. Persons not to bear arms at public assemblies. Social intercourse and elections not to be made dangerous.

ART. 6511. [1] If any person shall go into any church or religious assembly, any school-room or other place where persons are assembled for educational, literary, or scientific purposes, or into a ball room, social party, or other social gathering, composed of ladies and gentlemen, or to any election precinct on the day or days of any election, where any portion of the people of this state are collected to vote at any election, or to any other place where people may be assembled to muster or to perform any other public duty, or any other public assembly, and shall have about his person a bowie-knife, dirk, or butcher-knife, or fire-arms, whether known as a six-shooter, gun, or pistol of any kind, such person so offending shall be deemed guilty of a misdemeanor, and on conviction thereof shall be fined in a sum not less than fifty or more than five hundred dollars, at the discretion of the court or jury trying the same: *Provided,* That nothing contained in this section shall apply to locations subject to Indian depredations: *And provided further,* That this act shall not apply to any person or persons whose duty it is to bear arms on such occasions in discharge of duties imposed by law.

Art. 6512.

Kinds of weapons prohibited.

Fine $50 to $500. Notes, 111, 167.

Scalp-lifting country excepted.

Armed officials.

12 April, 1871; took effect 12 June, 1871. Vol. 21, part 2, p. 25. Carrying arms a misdemeanor, punishable by fine and forfeiture, unless, &c. Patriots and militiamen excepted. Art. 6511.

AN ACT TO REGULATE THE KEEPING AND BEARING OF DEADLY WEAPONS.

ART. 6512. [1] Any person carrying on or about his person, saddle, or in his saddle-bags, any pistol, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured or sold for the purpose of offense or defense, unless he has reasonable grounds for fearing an unlawful attack on his person, and that such ground of attack shall be immediate and pressing; or unless having or carrying the same on or about his person for the lawful defense of the state, as a militiaman in actual service, or as a peace officer or policeman, shall be guilty of a misdemeanor, and, on conviction thereof, shall, for the first offense, be punished by fine of not less than twenty-five nor more than one hundred dollars, and shall forfeit to the county the weapon or weapons so found on or about his person; and for every subsequent offense may, in addition to such fine and forfeiture, be imprisoned in the county jail for a term not exceeding sixty days; and in every case of fine under this section the fines imposed and collected shall go into the treasury of the county in which they may have been imposed: *Provided,* That this section shall not be so construed as to prohibit any person from keeping or bearing arms on his or her own premises, or at his or her own place of business, nor to prohibit sheriffs or other revenue officers, and other civil officers, from keeping or bearing arms while engaged in the discharge of their official duties, nor to prohibit persons traveling in the state from keeping or carrying arms with their baggage: *Provided further,* That members of the legislature shall not be included under the term "civil officers" as used in this act.

Fine $25 to $100 for first offense.

Imprisonment for second offense. Notes 111, 167.

People at home and officials excepted.

Legislators not "civil officers."

Art. 6512. Justification must be immedi-

ART. 6513. [2] Any person charged under the first section of this act, who may offer to prove, by way of defense, that he was

CRIMINAL CODE.

1323

in danger of an attack on his person, or unlawful interference with his property, shall be required to show that such danger was immediate and pressing, and was of such a nature as to alarm a person of ordinary courage ; and that the weapon so carried was borne openly and not concealed beneath the clothing ; and if it shall appear that this danger had its origin in a difficulty first commenced by the accused, it shall not be considered as a legal defense. *ate and pressing danger; and weapon not concealed. Impending danger.*

ART. 6514. [3] If any person shall go into any church or religious assembly, any school-room, or other place where persons are assembled for amusement, or for educational or scientific purposes, or into any circus, show, or public exhibition of any kind, or into a ball-room, social party, or social gathering, or to any election precinct on the day or days of any election, where any portion of the people of this state are collected to vote at any election, or to any other place where people may be assembled to muster, or to perform any other public duty, (except as may be required or permitted by law,) or to any other public assembly, and shall have or carry about his person a pistol, or other firearm, dirk, dagger, slung-shot, sword-cane, spear, brass-knuckles, bowie-knife, or any other kind of knife manufactured and sold for the purposes of offense and defense, unless an officer of the peace, he shall be guilty of a misdemeanor, and, on conviction thereof, shall, for the first offense, be punished by a fine of not less than fifty, nor more than five hundred dollars, and shall forfeit to the county the weapon or weapons so found on his person ; and for every subsequent offense may, in addition to such fine and forfeiture, be imprisoned in the county jail for a term of not more than ninety days. *Attending public meetings armed an off'nse to be punished in like manner. Society protected and attempted civilization. Character of arms prohibited. Fine $50 to $100 for first offense, and imprisonment for perseverance.*

ART. 6515. [4] This act shall not apply to nor be enforced in any county of the state which may be designated in a proclamation of the governor as a frontier county, and liable to incursions of hostile Indians. *Governor may exempt frontier counties by proclamation.*

ART. 6516. [5] All fines collected under the provisions of this act shall be paid into the treasury of the county, and appropriated exclusively to the keeping in repair and maintenance of public roads, and all weapons forfeited to the county under the provisions of this act shall be sold as may be prescribed by the county court, and the proceeds appropriated to the same purpose. *Art. 6517. All fines under this act must be paid into county treasury.*

ART. 6517. [6] It shall be the duty of all sheriffs, constables, marshals, and their deputies, and all policemen and other peace officers, to arrest any person violating the first or third sections of this act, and to take such person immediately before a justice of the peace of the county where the offense is committed, or before a mayor or recorder of the town or city in which the offense is committed, who shall investigate and try the case without delay. On all such trials the accused shall have the right of a trial by jury, and of appeal to the district court; but, in case of appeal, the accused shall be required to give bond, with two or more good and sufficient sureties, in a sum of not less than one hundred, nor more than two hundred dollars, if convicted under the first section, and in a sum of not less than two hundred, nor more than one thousand dollars, if convicted under the third section of this act; said bond to be payable to the state of Texas, and approved by the magistrate, and conditioned that the defendant will abide the judgment of the district court that may be rendered *Peace officers to arrest offenders, &c. Jury trial and appeal allowed. Appeal bond. Payable to State.*

Forfeiture.

in the case; and in case of forfeiture the proceedings thereon shall be as is or may be prescribed by law in similar cases; and all moneys collected on any bond or judgment upon the same,

Art. 6516.

shall be paid over and appropriated as provided in the fifth section of this act.

Art. 6517.
Officer failing to arrest to be discharged.
Arts. 6512, 6514.

ART. 6518. [7] Any officer named in the sixth section of this act who shall refuse or fail to arrest any person whom he is required to arrest by said section on his own information, or where knowledge is conveyed to him of any violation of the first or third sections of this act, shall be dismissed from his office on conviction in the district court, on indictment or information, or by such other proceedings or tribunal as may be provided by law, and, in

And fined not more than $500.

addition, shall be fined in any sum not exceeding five hundred dollars, at the discretion of the court or jury.

District courts to have concurrent jurisdiction.

ART. 6519. [8] The district courts shall have concurrent jurisdiction under this act, and it is hereby made the duty of the several judges of the district courts of this state to give this act especially in charge to the grand juries of their respective counties.

Governor to publish the act.

ART. 6520. [9] It is hereby made the duty of the governor to publish this act throughout the state; and this act shall take effect and be in force from and after the expiration of sixty days after its passage.

## TITLE XIII.—OF OFFENSES AGAINST PUBLIC POLICY AND ECONOMY.

Arts. 2035–2038.

### CHAPTER I.—ILLEGAL BANKING AND PASSING SPURIOUS MONEY.

#### AN ACT CONCERNING PRIVATE CORPORATIONS.

2 Dec., 1871; took effect from passage. Vol. 21, part 3. p 82.
Officers to publish semi-annual returns; punishment for failure.
Arts. 5932–6011.

ART. 6521. [79] Every such corporation shall semi-annually, in the months of July and January, publish in one or more newspapers in the county where such corporation shall have its place of business, a statement, verified by the oath of its president or secretary, setting forth its actual financial condition, and the amount of its property and liabilities, under a penalty of five

How recovered.

hundred dollars to the state, to be recovered by indictment against the president, cashier, or directors, and shall also deposit a copy of said statement, verified as aforesaid, in the office of the secretary of state.

Arts. 2043.

### CHAPTER III.—OF SELLING TO INDIANS.

31 Aug., 1866.
Art. 6347 for caption.
Selling liquor to Indians.

ART. 6522. [408] If any person shall give or barter, or cause to be sold, given, or bartered, any ardent spirits, or any spirituous or intoxicating liquors, or firearms, or ammunition, to any Indian of the wild or unfriendly tribes, he shall be fined not less

Who may punish.

than ten nor more than one hundred dollars.  Justices of the peace and mayors shall have jurisdiction under this article.

### CHAPTER IV.—GAMING.

11 May, 1871;
took effect from passage. Vol. 21, part 3, p. 84.
Arts. 2046, 2054.

AN ACT TO AMEND AN ACT ENTITLED "AN ACT TO ADOPT AND ESTABLISH A PENAL CODE FOR THE STATE OF TEXAS," APPROVED AUGUST 26, A. D. 1856, AND TO REPEAL AN ACT ENTITLED "AN ACT TO AMEND ARTICLES 412 AND 418 OF AN ACT TO ADOPT AND ESTABLISH A PENAL CODE FOR THE STATE OF TEXAS," APPROVED DECEMBER 16, A. D. 1863.

Keeping a gaming table or bank punished.

ART. 6523. [412] If any person shall keep or exhibit, for the purpose of gaming, any gaming table or bank, of any name or

or order of the magistrate, and shall also stand as a security for any costs which shall be ordered by the court appealed to, to be paid by the appellant.

SEC. 14.   *Party committed, how discharged.*—Any person committed for not finding sureties or refusing to recognize as required by the court or magistrate, may be discharged by any judge or justice of the peace, on giving such security as was required.

SEC. 15.   *Recognizances to be transmitted to district court.*—Every recognizance taken in pursuance of the foregoing provision shall be transmitted by the magistrate to the district court for the county, on or before the first day of the next term, and shall be there filed or recorded by the clerk.

SEC. 16.   *When person may be ordered to recognize, without process.*—Any person who shall in the presence of any magistrate mentioned in the first section of this chapter, or before any court of record, make an affray or threaten to kill or beat another, or to commit any violence or outrage against his person or property, and every person, who in the presence of such court or magistrate shall contend with hot and angry words, to the disturbance of the peace, may be ordered, without process or any other proof, to recognize for keeping the peace, and being of good behavior, for a term not exceeding six months, and, in case of a refusal, may be committed as before directed.

SEC. 17.   *Carrying dangerous weapons, how punished.*—Whoever goes armed with a dirk, dagger, sword, pistol or pistols, or other offensive and dangerous weapon, without reasonable cause to fear an assault or other injury or violence to his person, or to his family or property, may, on complaint of any other person having reasonable cause to fear an injury or breach of the peace, be required to find sureties for keeping the peace, for a term not exceeding six months, with the right of appealing as before provided.

SEC. 18.   *Judgment on recognizance remitted, when.*—Whenever upon an action brought on any such recognizances, the penalty thereof is adjudged forfeited, the court may remit such portion of the penalty on the petition of any defendant, as the circumstances of the case render just and reasonable.

SEC. 19.   *Surety in recognizance may take and surrender principal—new recognizance may be given.*—Any surety in a recognizance to keep the peace, or for good behavior, or both, has authority and right to take and surrender his principal, and upon such surrender shall be discharged and exempted from all liability for any act of the principal subsequent to such surrender, which would be a breach of the condition of the recognizance ; and the person so surrendered may recognize anew with sufficient sureties, before any justice of the peace for the residue of the term, and thereupon shall be discharged.

3. If any judge or justice have notice of a riotous, tumultuous, or unlawful assembly in the county in which he resides, and fail to proceed immediately to the place of such assembly, or as near as he may safely, or fail to exercise his authority for suppressing it and arresting the offenders, he shall be fined not exceeding one hundred dollars.

4. If any person engaged in such assembly, being commanded as aforesaid to disperse, fail to do so without delay, any such judge or justice may require the aid of a sufficient number of persons, in arms or otherwise, and proceed, in such manner as he may deem expedient, to disperse and suppress such assembly, and arrest and secure those engaged in it.

5. If by any means, taken under authority of this chapter, to disperse any such assembly, or arrest and secure those engaged in it, any person present, as spectator or otherwise, be killed or wounded, any judge or justice exercising such authority, and every one acting under his order, shall be held guiltless; and if the judge or justice, or any person acting under the order of either of them, be killed or wounded in taking such means, or by the rioters, all persons engaged in such assembly shall be deemed guilty of such killing or wounding.

6. If any rioter pull down or destroy, in whole or in part, any dwelling house, or assist therein, he shall be confined in the penitentiary not less than one nor more than five years; and though no such house so be injured, every rioter, and every person unlawfully or tumultuously assembled, shall be confined in jail not more than one year and fined not exceeding one hundred dollars.

7. If a person carry about his person any revolver or other pistol, (See Acts 1872-3, ch. 226, § 168.) dirk, bowie knife, razor, slung shot, billy, metallic or other false Acts 1882, ch. 135. knuckles, or any other dangerous or deadly weapon of like kind or 7 Gratt. 597. 34 W. Va. 74. character, he shall be guilty of a misdemeanor, and fined not less than twenty-five nor more than two hundred dollars, and may, at the discretion of the court, be confined in jail not less than one nor more than twelve months; and if any person shall sell or furnish any such weapon as is hereinbefore mentioned to a person whom he knows, or has reason, from his appearance or otherwise, to believe to be under the age of twenty-one years, he shall be punished as hereinbefore provided; but nothing herein contained shall be so construed as to prevent any person from keeping or carrying about his dwelling house or premises, any such revolver or other pistol, or from carrying the same from the place of purchase to his dwelling house, or from his dwelling house to any place where repairing is done, to have it repaired, and back again. And if upon the trial of an indictment for carrying any such pistol, dirk, razor or bowie knife, the defendant shall prove to the satisfaction of the jury that he is a quiet and peaceable citizen, of good character and standing in the community in which he lives, and at the time he was found with such pistol, dirk, razor or bowie knife, as charged in the in-

dictment, he had good cause to believe and did believe that he was in danger of death or great bodily harm at the hands of another person, and that he was in good faith, carrying such weapon for self-defence and for no other purpose, the jury shall find him not guilty. But nothing in this section contained shall be so construed as to prevent any officer charged with the execution of the laws of the State, from carrying a revolver or other pistol, dirk or bowie knife.

Acts 1866, p. 23.     8. If any person shall wilfully disturb, molest or interrupt any literary society, school, or society formed for intellectual improvement, or any other school or society organized under the laws of this State, or any school, society, or meeting formed or convened for improvement in music, either vocal or instrumental, or for any moral and social amusement, the person so offending shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be fined not less than five dollars, and may be imprisoned in the county jail not exceeding ten days. (See ch. 149, sec. 19, of this code.)

Acts 1882, ch. 135.     9. If two or more persons under the name of "Red Men," "Regulators," "Vigilance Committee," or any other name or without a name combine or conspire together for the purpose of inflicting any punishment or bodily injury upon any other person or persons, or for the purpose of destroying, injuring, or taking and carrying away any property, real or personal, not their own, every such person, whether he has done any act in pursuance of such combination or conspiracy or not, shall be guilty of a misdemeanor and fined not less than fifty, nor more than five hundred dollars, and may, at the discretion of the court, be confined in jail not less than one nor more than twelve months.

Id.     10. If any person, in pursuance of such combination or conspir-
25 W. Va. 685. acy as is mentioned in the next preceding section, shall inflict any punishment or bodily injury upon another person, or shall destroy, injure, or take and carry away, any property, real or personal, not his own, he shall be guilty of a felony, and confined in the penitentiary not less than two nor more than ten years. And if, on the trial of an indictment under this section, it be proved that two or more persons, the defendant being one, were present, aiding and abetting in the commission of the offence charged therein, it shall be presumed that such offence was committed in pursuance of such combination or conspiracy, in the absence of satisfactory proof to the contrary. And all persons who shall be present, aiding and abetting, at the commission of any offence mentioned in this section, shall be deemed conspirators within the meaning of this, and the next preceding section.

Acts 1882, ch. 135.     11. No person called as a witness for the State on the trial of any person for an offence mentioned in either of the two next preceding sections, shall be excused from answering any question which may be asked him as such witness, and which would be otherwise legal and proper, on the ground that the answer to such question would or might degrade him, or expose him to punishment; but no such wit-

Factor appropriating cotton taken from bale.

§ 3266. Any factor, commission merchant, or agent, having the control of cotton, who appropriates to his own use any cotton taken from any bale under his control, with intent to defraud the owner thereof, must, on conviction, be punished, as if he had feloniously stolen such cotton.

Adulterating sugar.

§ 3267. Any person who mixes any foreign matter or thing with sugar, so as to deteriorate the quality thereof with intent to injure or defraud, must, on conviction, be fined not less than fifty or more than two hundred dollars, and may be imprisoned not more than three months.

Making or emitting bills for circulation.

§ 3268. Any person, private corporation, or association, who without authority of law, makes or emits any paper to answer the purposes of money, or for general circulation, such person, and each individual of such corporation or association, on conviction, must be fined not less than twenty or more than one hundred dollars, and may be imprisoned not more than twelve months.

Signing bills for circulation.

§ 3269. Any person in this state who signs any paper to be put in circulation as money, except under the authority of this state, or countersigns the same, must, on conviction, be fined in a sum not less than one hundred or more than five hundred dollars; and the signature of such person to any such paper must be taken as genuine, unless the fact of signing be denied on oath by the defendant.

Passing such paper.

§ 3270. Any person who passes or circulates any paper issued to answer the purposes of money, without authority of law, must, on conviction, be fined not less than twenty or more than one hundred dollars.

Passing bills under five dollars.

§ 3271. Any person who passes or circulates in this state, any bank bill of a less denomination than five dollars, not issued under the authority of this state, must, on conviction, be fined not exceeding fifty dollars.

Indictment for.

§ 3272. An indictment under the preceding section, which charges that the defendant did pass or circulate a bank bill under the denomination of five dollars, not issued under the authority of this state, is sufficient, without describing such bank bill; and proof that such bill on its face purported to be issued by the authority of any other state, or country, or by any bank, or corporation out of this state, or by any bank or corporation known to be out of this state, is sufficient without further proof.

Concealed weapons.

§ 3273. Any one who carries concealed about his person a bowie knife, or knife or instrument of the like kind or description by whatever name called, or air gun, must, on conviction, be fined not less than fifty or more than three hundred dollars.

The same.

§ 3274. Any one who carries concealed about his person a pistol, or any other description of fire arms, not being threatened with, or having good reason to apprehend an attack, or travelling, or setting out on a journey, must, on conviction, be fined not less than fifty nor more than three hundred dollars.

§ 3275. In an indictment under the preceding section, it *Indictment for.* is sufficient to charge that the defendant carried concealed about his person a pistol or other description of fire arms ; *Excuse.* and the excuse must be made out by the defendant, to the satisfaction of the jury.

§ 3276. Any person, who in any newspaper, handbill, or *Publishing another as a coward, &c.* other advertisement, written or printed, publishes or proclaims any person as a coward, or uses any other opprobrious or abusive language for not accepting a challenge to fight a duel, or for not fighting a duel, must, on conviction, be fined not less than two hundred or more than five hundred dollars, and imprisoned not less than six or more than twelve months.

§ 3277. The publisher or printer of any such newspaper, *Printer to give evidence.* or handbill, or other publication, may be required to testify against any defendant indicted under the preceding section; and refusing to give evidence, must be fined five hundred *Penalty for refusing.* dollars, and imprisoned until such fine is paid, and also imprisoned until he shall testify.

§ 3278. Any person who sells and delivers any poisonous *Selling poisons without labels.* substance, without having the word "poison" written or printed on the label attached to the vial, box or parcel in which the same is sold; or sells and delivers any tartar emetic, laudanum or morphine, without having the common name thereof, written or printed upon a label attached to the vial, box or parcel, containing the same, must, on conviction, be fined not more than one hundred dollars.

§ 3279. Any person who sells to any slave, or free child *Selling poisons to slaves or children.* under ten years of age, any drug, poisonous in its nature, without an order in writing from the owner or master of such slave, or the parent, guardian, or person standing in that relation to such child, designating the drug, either by name or by its effects, must, on conviction, be fined not more than two hundred dollars, and may be imprisoned not more than three months.

§ 3280. Any licensed retailer or other person, keeping fer- *Selling or giving liquor to students, &c.* mented, vinous or spirituous liquors for sale, who sells, gives or delivers to any student of any college, or pupil of any school or academy, or to any other person for the use of such student or pupil, any of such liquors, knowing the use for which it was intended, without the consent of the parent or guardian, or the person having the charge of such student or pupil, such retailer, or the person so selling, giving or delivering, must, on conviction, be fined not less than fifty or more than five hundred dollars.

§ 3281. Any licensed retailer or other person who sells, *To minors.* gives, or delivers to any minor any of the liquors specified in the preceding section, after notice from the parent, guardian, or person in charge of such minor, forbidding such sale, gift, or delivery, must, on conviction, be fined not less than fifty or more than five hundred dollars.

§ 3282. Any licensed retailer, who, after taking the affida- *Licensed retailer trad-* vit prescribed in section 105 knowingly sells any vinous *tailer trad-*

ing with slaves.

or spirituous liquors to any slave; or knowingly sells to or purchases from any slave any article or commodity, without the permission of the master or overseer of such slave; or knowingly permits the same to be done by his partner, clerk, or any other person about his premises; or knowingly permits any gaming to be carried on on his premises, must, on conviction, be imprisoned in the penitentiary not less than two or more than five years.

Selling or giving liquor to slaves.

§ 3283. Any person who sells, gives, or delivers to any slave any vinous or spirituous liquor, except on an order in writing, signed by the overseer or master of such slave, specifying the quantity to be sold, given, or delivered, must, on conviction, be fined not less than fifty dollars.

The same.

§ 3284. The provisions of the above section apply to licensed retailers as well as other persons.

Trading with slaves.
19 Ala., 19.

§ 3285. Any person who sells to or buys or receives from any slave, any other article or commodity of any kind or description, without the consent of the master, owner, or overseer of such slave, verbally or in writing, expressing the articles permitted to be sold to, or bought or received from such slave, first obtained, must, on conviction, be fined in not less than ten or more than two hundred dollars, and may be imprisoned not more than six months.

Evidence on indictment.

§ 3286. Upon the trial of indictments under the preceding and section 3283, evidence that the slave was seen in the night time, or on Sunday, going into a place where spirituous or vinous liquors or merchandize are sold, with an article of traffic, and coming out without the same; or that such slave was seen at such time, or on such day, immediately after coming out of such place, in possession of spirituous or vinous liquor, or merchandize of any kind, is presumptive evidence of the guilt of the defendant.

Employing slave or free negro to draw off or sell.

§ 3287. Any person keeping spirituous liquor for sale, who employs any slave or free person of color in drawing off or selling such liquor, must, on conviction, be fined not less than twenty-five or more than fifty dollars.

Duty of magistrate in relation to laws against retailing or trading with slaves.

§ 3288. Any justice or magistrate, whenever he has good reason to believe, or upon information on oath that any of the laws of this state against retailing or trading with slaves have been violated by any person, must forthwith issue a warrant of arrest against such person, and if the evidence proves the offence, must bind him over to answer therefor at the next circuit court, and on his failing to give bond must commit him.

Permitting slave or free negro to sample cotton.

§ 3289. Any person who employs or knowingly permits any slave or free person of color to sample any cotton, must, on conviction, be fined not less than fifty or more than one thousand dollars.

Owner may.

§ 3290. In indictments under the preceding section, the defendant may show in defence he was the owner of the cotton.

Prosecuting suits in the name of an-

§ 3291. Any person who prosecutes a suit in any of the courts in this state, in the name of another person, without

his consent, must, on conviction, be fined not less than five *other. Exceptions.*
hundred dollars.

§ 3292. The provisions of the preceding section do not *Refusing to obey sum-*
apply to a person having the beneficial interest using the *mons of offi-*
name of the person having the legal right, in cases where he *cer.*
cannot bring the action in his own name.

§ 3293. Any person summoned by any sheriff, or other
officer having authority, for the purpose of enabling such
officer to make an arrest, or to execute any duty devolving *Duty of the officer.*
upon him under any law in relation to public offences, who
refuses obedience to such summons, must, on conviction, be
fined not less than fifty or more than three hundred dollars.

§ 3294. It is the duty of the officer summoning such per-
son to present the offender to the next grand jury, and fail-
ing so to do, he must, on conviction, be fined not less than
twenty dollars.

---

## ARTICLE VII.

### *Offences against slaves.*

<table>
<tr><td>SEC.</td><td>SEC.</td></tr>
<tr><td>3295. Causing death of by whipping, is murder in the first degree.</td><td>3298. Indictments under preceding section.</td></tr>
<tr><td>3296. Causing death by whipping, &c., without intention to kill, murder in the second degree.</td><td>3299. Defendant entitled to a jury two-thirds of whom are slave holders.</td></tr>
<tr><td>3297. Inflicting or allowing cruel punishment, &c., failing to provide food, raiment, attention in sickness, &c.</td><td>3300. Assaults by any other person than the master.</td></tr>
</table>

§ 3295. Any person who with malice aforethought causes *Death of a slave by*
the death of a slave, by cruel whipping or beating, or by any *whipping,&c.*
inhuman treatment, or by the use of any weapon in its nature
calculated to produce death, is guilty of murder in the first
degree.

§ 3296. Any owner, overseer, or other person having the *Without in-*
right to correct any slave, who causes the death of such slave *tention to kill.*
by cruel whipping or beating, or by any other cruel or inhu-
man treatment, or by the use of any instrument in its nature
calculated to produce death, though without any intention to
kill, is guilty of murder in the second degree, and may be
guilty of murder in the first degree.

§ 3297. Any master, or other person standing towards the *Cruel pun-*
slave in that relation, who inflicts, or allows another to inflict *ishments; not feeding*
on him any cruel punishment, or fails to provide him with a *or clothing, &c.*
sufficiency of healthy food, or necessary clothing, or to pro-
vide for him properly in sickness or old age, or treats him
in any other way with inhumanity, on conviction thereof
must be fined not less than twenty-five or more than one
thousand dollars.

§ 3298. In indictments under the preceding section, it is *Indictments.*
sufficient to charge that the defendant did inflict on a slave

be made ; *And provided, also,* that the only questions to be sub- <span style="float:right">Title not ex-<br>aminable.</span>
mitted to and determined by the jury in trials for forcible entry,
or forcible detainer, shall be the possession and the force, with-
out regard to the merits of the title on either side.

§4413. Sec. XV. Any person having or carrying about his <span style="float:right">Carrying<br>concealed,<br>deadly wea-<br>pons.</span>
person, unless in an open manner and fully exposed to view, any
pistol, (except horseman's pistols,) dirk, sword in a cane, spear,
bowie-knife, or any other kind of knives, manufactured and sold
for the purpose of offence and defence, shall be guilty of a mis-
demeanor, and, on conviction, shall be punished by fine or im-
prisonment, or both, at the discretion of the court.

§4414. Sec. XVI. All other offences against the public peace, <span style="float:right">Other offen-<br>ces vs. pub-<br>lic peace.</span>
not provided for in this Code, shall be prosecuted and indicted
as heretofore, and the punishment, in every case, shall be by fine
or imprisonment in the common jail of the county, or both, at
the discretion of the court.

---

## TENTH DIVISION.

OFFENCES AGAINST THE PUBLIC MORALITY, HEALTH, POLICE AND
DECENCY.

| Section. | Section. |
|---|---|
| 4415. Bigamy. | 4435. Vagrants |
| 4416. Punishment on married person. | 4436. Common rogues. |
| 4417. On unmarried person. | 4437. Nuisances. |
| 4418. Incest. | 4438. Disinterring bodies. |
| 4419. Adultery. | 4439. Bastardy. |
| 4420. Lewdness. | 4440. Retailing without license. |
| 4421. Lewd houses. | 4441. Illegal marrying. |
| 4422. Disorderly houses. | 4442. Illegal voting. |
| 4423. Gaming houses. | 4443. Buying or selling votes. |
| 4424. Gaming tables. | 4444. Minor voting. |
| 4425. Gambling. | 4445. Adultery with negro. |
| 4426. Gaming with minors. | 4446. Whipping wife. |
| 4427. Gaming with clerks and bank offr's. | 4447. Interfering with religious worship. |
| 4428. Players—witnesses. | 4448. Retailing near church. |
| 4429. Judge's charge. | 4449. Working slaves on Sabbath. |
| 4430. Suspected houses. | 4450. Running freight trains on Sunday. |
| 4431. Unwholesome provisions. | 4451. Violating Sabbath. |
| 4432. Unwholesome bread, &c. | 4452. Fines from Sabbath-breakers. |
| 4433. Spreading small pox. | 4453. Bonds in case of vagrancy. |
| 4434. Violating quarantine. | 4454. Att'y or Sol'r—duty in such case. |

§4415. Sec. 1. Polygamy, or bigamy, shall consist in know- <span style="float:right">Polygamy<br>and bigamy.</span>
ingly having a plurality of husbands, or wives, at the same time.

shall be responsible for the payment of the expenses of his retention in jail.

## Rewards for the Apprehension of Escaped Prisoners. Act of February 1, 1860.

SECTION 1. When any person shall make his escape from any county of this Territory after having been sentenced by the court to suffer any penalty, it shall be the duty of the court to inform immediately the governor thereof, giving a description of such fugitive.

§ 2. The governor is hereby authorized to offer a reward, to be paid out of the funds of the Territory, to any person who shall find and deliver such fugitive: *Provided*, that such reward shall be at the will of the governor.

## Reward for Accused Persons. Act of 1874, Ch. 12.

SECTION 1. In cases of murder or other felony, when the person or persons accused of the crime shall be at large, the governor, when in his judgment it shall be necessary to secure the apprehension of the accused, shall be authorized to issue his proclamation offering a reward, not exceeding five hundred dollars, for the apprehension and delivery of the accused to the proper office.

§ 2. The auditor of public accounts is hereby authorized to draw a warrant on the treasury of the Territory, in favor of the person entitled to a reward, under the provisions of the preceding section, for the amount thereof, upon the presentation by such person of his account certified and approved by the governor.

## Deadly Weapons. Act of 1869, Ch. 32

SECTION 1. It shall be unlawful for any person to carry deadly weapons, either concealed or otherwise, on or about their persons within any of the settlements of this Territory, except it be in the lawful defense of themselves, their families or their property, and the same being then and there threatened with danger, or by order of legal authority, or on their own landed property, or in execution of an order of court.

§ 2. Deadly weapons, in the meaning of this act, shall be construed to mean all kinds and classes of pistols,

whether the same be a revolver, derringer, repeater, or any other kind or class of pistol; any and all kinds of bowie knives, daggers, poniards, butcher knives, dirk knives and all such weapons with which cuts can be given or by which wounds can be inflicted by thrusting, including sword canes and such sharp-pointed canes with which deadly thrusts can be given, and all kinds of slung-shots, and any other kinds of deadly weapon, by whatever name it may be called, by which a dangerous wound can be inflicted.

§ 3. The penalty for the violation of the preceding sections of this act shall not be less than ten dollars nor more than fifty dollars for each offense, or not less than ten days' imprisonment nor more than fifty days' imprisonment in the county jail, or both; such fine and imprisonment in the discretion of the jury trying the case.

§ 4. Any person who shall draw a deadly weapon on another, or who shall handle a deadly weapon in a threatening manner at or towards another, in any part of this Territory, except in the lawful defense of himself, his family, or his property, or by order of legal authority, upon conviction thereof before the proper tribunal, shall, for each offense, be fined in a sum not less than twenty-five dollars nor more than seventy-five dollars, or by imprisonment in the county jail for a term of not less than twenty days or more than sixty days, or be punished by both such fine and imprisonment, in the discretion of the jury trying the cause.

§ 5. Any person who shall draw or use any deadly weapon in any ball, dance, or other public gathering of the people, or near where any election authorized by law is being held in any part of the Territory, except it be in the lawful defense of himself, his family, or his property, or in obedience to legal authority, shall, upon conviction before the proper tribunal, be punished by a fine not less than fifty dollars nor more than one hundred dollars for each offense, or by imprisonment in the county jail for a term of not less than one month nor more than three months for each offense, or by both such fine and imprisonment, in the discretion of the jury trying the cause.

§ 6. Justices of the peace, as well as the District Court, shall have jurisdiction of all offenses under the preceding sections of this act; and in all cases of prosecution under this act, in which a plea of guilty shall be entered, the court shall proceed to hear and determine the case, and

shall assess the penalty, upon conviction, without the intervention of a jury, unless the accused shall demand a trial by jury. [As amended, 1876, Ch. 35.]

§ 7. A conviction of any person under this act shall not be a bar to a prosecution and conviction of the same person for an assault and battery, aggravated assault, assault with a deadly weapon, assault with intent to kill, or murder, manslaughter, or other crime, and where the words "weapons" or "deadly weapons" are used in this act, such word or words shall be construed to mean the weapons described in section two of this act.

§ 8. It shall not be necessary, in the trial of any cause arising under the provisions of this act, to prove that the person charged was not in the lawful defense of himself, his family or his property; but the accused must prove to the satisfaction of the jury that the act charged was done in the lawful defense of himself, his family, or his property, before the jury can acquit.

§ 9. Any lawful voter of the Territory may without a warrant arrest parties who may violate the preceding sections of this act, and take such persons before a justice of the peace of the county in which the offense was committed, for complaint and trial, and such trial shall be had as soon as possible, giving due time for summoning witnesses.

§ 10. All fines collected by virtue of the preceding sections of this act shall go, one-third to the Territory, one-third to the county in which the offense was committed, and one-third to the person or attorney who, on the part of the Territory, procured the conviction.

§ 11. Persons traveling may be permitted to carry arms within settlements or towns of this Territory, for one hour after arriving in such settlements or town, and while going out of such towns or settlements; and sheriffs and constables of the various counties of this Territory and their lawfully appointed deputies may carry weapons in the legal discharge of the duties of their respective office, when the same may be necessary, but it shall be for the jury to decide from the evidence whether such carrying of weapons was necessary or not, and for an improper carrying or using deadly weapons by any officer mentioned in this section, he shall be punished as other persons are punished for a violation of the preceding sections of this act.

§ 12. It shall be the duty of the keeper of each and

A. D. 1870. dred dollars, and one per cent. for all sums over that amount ; for search for each paper, fifteen cents ; for certificate and seal, fifty cents ; for copying papers on file in office, per copy sheet of one hundred words, twenty-five cents ; for final discharge of executor, administrator or guardian, two dollars ; for proceedings in dower, inclusive of all charges, twenty dollars ; for proceedings in lunacy, inclusive, five dollars.

Approved March 1, 1870.

---

No. 287.   AN ACT TO INCORPORATE THE COOPERS' TRADES-UNION, OF CHARLESTON.

SECTION 1. *Be it enacted* by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, Corporators. and by the authority of the same, That A. R. Mitchell, A. F. Gregorie, Edward Jones, James Chapman, and such other persons as may now, or hereafter shall be, associated with them, are hereby made and declared to be a body politic and corporate by the name and style of the Coopers' Trades-Union, of Charleston.

SEC. 2. That said Coopers' Trades-Union, of Charleston, shall have Powers and succession of officers and members according to its by-laws, and shall privileges. have power to make by-laws, not repugnant to the laws of the land, and to have, use and keep a common seal, and the same to alter at will, to sue and be sued, plead and be impleaded, in any Court in this State.   It is hereby empowered to retain, possess, and enjoy all such property, real and personal, as it may possess or be entitled to, or which shall hereafter be given, bequeathed to, or in any manner acquired by it, and to sell, alien, or transfer the same.

SEC. 3. That this Act shall be a public Act, and continue in force for the term of twelve years from the date of its ratification.

Approved March 1, 1870.

---

No. 288.   AN ACT TO DEFINE THE CRIMINAL JURISDICTION OF TRIAL JUSTICES.

SECTION 1. *Be it enacted* by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authortiy of the same, That Trial Justices shall have and exercise within their respective Counties all the powers, authority and jurisdiction, in criminal cases, hereinafter set forth.

SEC. 2. Trial Justices shall have jurisdiction of all offences which may Penalties be subject to the penalties of either fine or forfeiture not exceeding one not exceeding hundred dollars, or imprisonment in the Jail or Work House not exceeding thirty days, and may impose any sentence within those limits, singly or in the alternative.

SEC. 3. They may punish by fine not exceeding one hundred dollars, Assault and or imprisonment in the Jail or House of Correction not exceeding thirty battery. days, all assault and batteries, and other breaches of the peace, when the offence is not of a high and aggravated nature, requiring, in their judgment, greater punishment.

Rioters, &c.   SEC. 4. They may cause to be arrested all affrayers, rioters, disturbers

A. D. 1870.

and breakers of the peace, and all who go armed offensively, to the terror of the people, and such as utter menaces or threatening speeches, or otherwise dangerous and disorderly persons.

Persons arrested for any of said offences shall be examined by the Trial Justice before whom they are brought, and may be tried before him, and, if found guilty, may be required to find sureties of the peace, and be punished within the limits prescribed in Section 2, or, when the offence is of a high and aggravated nature, they may be committed or bound over for trial before the Court of General Sessions. *Sureties.*

SEC. 5. They shall have jurisdiction of larcenies, by stealing of the property of another, of money, goods or chattels, or any bank note, bond, promissory note, bill of exchange, or other bill, order or certificate ; or any book of accounts for or concerning money or goods due, or to become due, or to be delivered ; or any deed or writing containing a conveyance of land or any other valuable contract in force; or any receipt, release or defeasance ; or any writ, process or public record, if the property stolen does not exceed twenty dollars in value. *Larceny.*

SEC. 6. They shall have jurisdiction of the offences of buying, receiving or aiding in the concealment of stolen goods or other property, where they would have jurisdiction of the larceny of the same goods or property. *Stolen Goods.*

SEC. 7. They shall have jurisdiction of the offences of obtaining property by any false pretence, or by any privy or false token, or by any game, device, slight of hand, pretensions to fortune telling, trick or other means, by the use of cards or other implements or instruments, where they would have jurisdiction of a larceny of the same property, and may punish said offences the same as larceny. *False pretence.*

SEC. 8. They shall cause to be arrested all persons, found within their Counties, charged with any offence, and persons who, after committing any offence within the County, escape out of the same ; examine into treasons, felonies, grand larcenies, high crimes and misdemeanors ; and commit or bind over for trial those who appear to be guilty of crimes or offences not within their jurisdiction, and punish those guilty of such offences within their jurisdiction.

SEC. 9. All proceedings before Trial Justices, in criminal cases, shall be commenced on information, under oath, plainly and substantially setting forth the offence charged, upon which, and only which, shall a warrant of arrest issue. *When proceedings to commence.*

The information may be amended at any time before trial.

All proceedings before Trial Justices shall be summary, or with only such delay as a fair and just examination of the case requires.

SEC. 10. Every person arrested and brought before a Trial Justice charged with an offence within his jurisdiction, shall be entitled, on demand, to a trial by jury, to be selected in the manner indicated by Section 6 of the Act entitled "An Act to provide for the temporary appointment of Magistrates, and to define their powers and duties," ratified 24th day of September, A. D. 1868. *Trial by Jury.*

SEC. 11. Trial Justices are authorized to issue all necessary processes to carry their powers into effect, and may exercise all the powers heretofore conferred by law upon Magistrates.

SEC. 12. Every person convicted before a Trial Justice of any offence whatever, and sentenced, may appeal from the sentence to the next term *Appeal.*

A. D. 1870. of the Court of General Sessions for the County. The appellant shall be committed, to abide the sentence of said Court, until he recognizes to the State in such reasonable sum, and with such sureties, as the Court requires, with condition to appear at the Court appealed to, and at any subsequent term to which the case is continued, if not previously surrendered and discharged, and so, from term to term, until the final decree, sentence or order of the Court thereon; and to abide such final sentence, order or decree, and not depart without leave; and, in the meantime, to keep the peace, and be of good behavior.

SEC. 13. All Acts and parts of Acts inconsistent or supplied by this Act are hereby repealed.

Approved March 1, 1870.

---

No. 289.   AN ACT TO AUTHORIZE TRUSTEES TO INVEST FUNDS IN THE BONDS OF THE STATE OF SOUTH CAROLINA.

SECTION 1. *Be it enacted* by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authority of the same, That Guardians, Trustees, Administrators, Executors, Probate Judges, and Clerks of Courts, and all other persons holding funds in trust for investment, are hereby authorized to invest the same in bonds of the State of South Carolina. And they are hereby relieved from all responsibility for said investment, except for the safe keeping of the bonds: Provided, That as to officers of the Court, there be no order of the Court directing a different investment.

Approved March 1, 1870.

---

No. 290.   AN ACT TO FIX THE PER DIEM AND MILEAGE OF THE MEMBERS OF THE GENERAL ASSEMBLY.

*Be it enacted* by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authority of the same, That the members of the next General Assembly shall receive the same mileage and per diem as now allowed the members of the present General Assembly by the provisions of the Constitution of this State, as ratified by the people on the 14th, 15th and 16th days of April, 1868.

Approved March 1, 1870.

---

No. 291.   AN ACT TO INCORPORATE THE COMET LIGHT INFANTRY, AND THE RANDOLPH RIFLEMEN, BOTH OF THE CITY OF CHARLESTON, AND, ALSO, THE LINCOLN GUARDS, OF SAINT STEPHENS, AND THE SANTEE NATIONAL GUARDS.

SECTION 1. *Be it enacted* by the Senate and House of Representatives of the State of South Carolina, now met and sitting in General Assembly, and by the authority of the same, That Samuel Dickerson, P. L.

Corporators.

SEC. 2. *Be it further enacted*, That this Act take effect from and after its passage, the public welfare requiring it.

Passed December 12, 1871.

JAMES D. RICHARDSON,
*Speaker of the House of Representatives.*

JOHN C. VAUGHN, ·
*Speaker of the Senate.*

Received at Executive Office December 15, 1871, and approved December 15, 1871.

JOHN C. BROWN,
*Governor.*

---

## CHAPTER XC.

AN ACT to preserve the peace and prevent homicide.

SECTION 1. *Be it enacted by the General Assembly of the State of Tennessee*, That it shall not be lawful for any person to publicly or privately carry a dirk, sword cane, Spanish stiletto, belt or pocket pistol or revolver other than an army pistol, or such as are commonly carried and used in the United States Army, and in no case shall it be lawful for any person to carry such army pistol publicly or privately about his person in any other manner than openly in his hands, and any person guilty of a violation of the provisions of this section, shall be guilty of a misdemeanor, and subject to presentment or indictment, and, on conviction, shall pay a fine of not less than ten, nor more than fifty dollars, and may be imprisoned in the county jail not more than three months: *Provided, however*, the Court may commute the imprisonment altogether, and in lieu thereof, require the person convicted to give bond with approved security in not less than the sum of five hundren dollars, conditioned that he keep the peace for six months after such conviction. *(Not lawful to carry dirk sword cane, stiletto, or · pistol.)* *(To do so a misd'meanor)* *(Proviso.)*

SEC. 2. *Be it further enacted*, That it shall be the duty of all peace officers in the State, including Sheriffs, Deputy Sheriffs, Constables, Coroners, and Justices of the Peace, to see that the first section of this Act be strictly enforced, and it is hereby made their duty to report without delay any violation thereof, to the grand juries of their respective counties, and it shall be the duty of the grand juries to send for witnesses in all cases where they have good reason to believe there has been a violation *(Duty of peace offic'rs)*

6

# CHAPTER 52.

AN ACT to Prevent the Carrying of Fire Arms and Other Deadly Weapons.

*Be it enacted by the Council and House of Representatives of the Territory of Wyoming:*

**Carrying weapons within city, town or village limits, prohibited.** SECTION. 1. That hereafter it shall be unlawful for any resident of any city, town or village, or for any one not a resident of any city, town or village, in said Territory, but a sojourner therein, to bear upon his person, concealed or openly, any fire arm or other deadly weapon, within the limits of any city, town or village.

**Non-resident to be first notified.** SEC. 2. That if any person not a resident of any town, city or village of Wyoming Territory, shall, after being notified of the existence of this act by a proper peace officer, continue to carry or bear upon his person any fire arm or other deadly weapon, he or she, shall be deemed to be guilty of a violation of the provisions of this act and shall be punished accordingly.

**Violation of this act a misdemeanor.** **Penalty.** SEC. 3. Any person violating any of the provisions of this act shall be deemed guilty of a misdemeanor, and upon conviction thereof, shall be punished by a fine of not less than five dollars nor more than fifty dollars, and, in the default of the payment of any fine which may be assessed against him, shall be imprisoned in the county jail for not less than five days nor more than twenty days.

**In force.** SEC. 4. This act shall take effect and be in force from and after its passage.

Approved, December 2nd, 1875.

## LIII.—CARRYING WEAPONS.

SECTION
1907. Of what kind prohibited; exceptions.
1908. Weapons excepted, how to be carried; unlawful carrying a misdemeanor.
1909. Sale of weapons a misdemeanor; exception.
1910. Unlawful sale or carrying, how punished.

SECTION
1911. Justices failing to proceed against offenders, how punished.
1912. Officer failing to make arrest, how punished.
1913. In what courts offenders to be prosecuted.

SECTION 1907. Any person who shall wear or carry in any manner whatever as a weapon any dirk or bowie knife, or a sword, or a spear in a cane, brass or metal knucks, razor, or any pistol of any kind whatever, except such pistols as are used in the army or navy of the United States (jjj), shall be guilty of a misdemeanor. *Provided*, that officers whose duties require them to make arrests, or to keep and guard prisoners, together with the persons summoned by such officers to aid them in the discharge of such duties, while actually engaged in such duties, are exempted from the provisions of this act. *Provided, further,* that nothing in this act be so construed as to prohibit any person from carrying any weapon when upon a journey or upon his own premises (**).

SEC. 1908. Any person, excepting such officers or persons on a journey and on their premises as are mentioned in section 1907, who shall wear or carry any such pistol as is used in the army or navy of the United States, in any manner except uncovered and in his hand, shall be deemed guilty of a misdemeanor (kkk).

SEC. 1909. Any person who shall sell, barter or exchange, or otherwise dispose of, or in any manner furnish to any person, any dirk or bowie knife, or a sword or a spear in a cane, brass or metal knucks, or any pistol of any kind whatever, except such as are used in the army or navy of the United States, and known as the navy pistol, or any kind of cartridge for any pistol, or any person who shall keep any such arms or cartridges for sale, shall be guilty of a misdemeanor.

SEC. 1910. Any person convicted of a violation of any of the provisions of this act shall be punished by a fine of not less than fifty nor more than two hundred dollars.

SEC. 1911. Any justice of the peace in this state, who, from his own knowledge or from legal information, knows, or has reasonable grounds to believe, any person guilty of a violation of the provisions of this act, and shall fail or refuse to proceed against such person, shall be deemed guilty of a non-feasance in office, and, upon conviction thereof, shall be punished by the same fine and penalty provided in section 1910, and shall be removed from office (*).

SEC. 1912. Any officer in this state whose duty it is to make arrests, who may have personal knowledge of any person carrying arms contrary to the pro-

(jjj) See *Wilson v. State*, 33—557; *Holland v. State*, Ib., 560.
(**) An indictment need not negative the exceptions. *Walker v. State*, 35—386.
(kkk) SECS. 1907 and 1908 are not unconstitutional. *Haile v. State*, 38—561.
(*) See *State v. Graham*, 38—519.

SEC. 3.   This Act shall take effect from and after its pass-age.

Approved March 18, 1889.

---

No. 12.                       AN  ACT

Concerning the Transaction of Judicial Business on Legal Holi-days.

*Be it enacted by the Legislative Assembly of the Territory of Arizona:*

SECTION 1.   No Court of Justice shall be open, nor shall any Judicial business be transacted on any Legal Holiday, ex-cept for the following purposes:

1.   To give, upon their request, instructions to a Jury when deliberating on their verdict.

2.   To receive a verdict or discharge a Jury.

3.   For the exercise of the powers of a magistrate in a criminal action, or in a proceeding of a criminal nature; pro-vided, that the Supreme Court shall always be open for the transaction of business; and provided further, that injunctions, attachments, claim and delivery and writs of prohibition may be issued and served on any day.

SEC. 2.   All Acts and parts of Acts in conflict with this Act are hereby repealed.

SEC. 3.   This Act shall be in force and effect from and after its passage.

Approved March 18, 1889.

---

No. 13.                       AN  ACT

Defining and Punishing Certain Offenses Against the Public Peace.

*Be it Enacted by the Legislative Assembly of the Territory of Arizona:*

SECTION 1.   If any person within any settlement, town, village or city within this Territory shall carry on or about his person, saddle, or in his saddlebags, any pistol, dirk, dagger, slung shot, sword cane, spear, brass knuckles, bowie knife, or any other kind of knife manufactured or sold for purposes of offense or defense, he shall be punished by a fine of not less than twenty-five nor more than one hundred dollars; and in addition thereto, shall forfeit to the County in which he is con-victed, the weapon or weapons so carried.

SEC. 2.   The preceding article shall not apply to a per-son in actual service as a militiaman, nor as a peace officer

around the head of Panther Creek, to the divide between Hat Creek and Ellis Creek, thence on the divide between Hat and Ellis Creeks in an easterly direction to the Salmon River, thence up the main channel of said Salmon River to the place of beginning.

SEC. 2. This act to take effect and be in force, from and after its passage.

Approved February 4, 1889.

# CARRYING DEADLY WEAPONS.

## AN ACT

REGULATING THE USE AND CARRYING OF DEADLY WEAPONS IN IDAHO TERRITORY.

*Be it enacted by the Legislative Assembly of the Territory of Idaho, as follows:*

SECTION 1. That it is unlawful for any person, except United States officials, officials of Idaho Territory, County officials, Peace officers, Guards of any jail, and officers or employees of any Express Company on duty, to carry, exhibit or flourish any dirk, dirk-knife, sword, sword-cane, pistol, gun or other deadly weapons, within the limits or confines of any city, town or village or in any public assembly of Idaho Territory. Every person so doing is guilty of a misdemeanor and is punishable by fine not less than fifty dollars nor more than one hundred dollars, or by imprisonment in the county jail for a period of not less than twenty days nor more than fifty days, or by both such fine and imprisonment.

SEC. 2. One half of all fines collected under the provisions of this act shall be paid to the officer making the arrest, which amount shall be payment in full for his services. The other one half shall be paid into the Common School Fund of the county, after deducting the necessary costs of the prosecution of the case.

SEC. 3. All acts or parts of acts in conflict with this act are hereby repealed.

SEC. 4. This act shall take effect and be in force from and after its passage.

Approved February 4, 1889.

to repeal all acts inconsistent herewith,' and acts supple-
mentary and amendatory thereof, and to repeal all acts and
parts of acts inconsistent herewith," be and the same are
hereby amended so as to read as follows:


## TITLE III.

**Additional powers of council.**
SEC. 8. The common council in addition to the powers and
duties specially conferred upon them in this act, shall have
the management and control of the finances, rights and inter-
ests, and all property, real and personal, belonging to the
city, and make such orders and by-laws relating to the
same as they shall deem proper and necessary; and they shall
have the power within said city to enact, make, continue,
establish, modify, amend and repeal such ordinances, by-laws
and regulations as they may deem desirable within said city,
for the following purposes:

**Vice.**
First. To prevent vice and immorality, to preserve peace
and good order, to regulate the police of the city, to prevent
and quell riots, disturbances and disorderly assemblages;

**Disorderly houses.**
Second. To restrain and prevent disorderly and gaming
houses, and houses of ill-fame, all instruments and devices
used for gaming, and to prohibit all gaming and fraudulent
devices, and regulate or restrain billiard tables and bowling
alleys;

**Liquors.**
Third. To forbid and prevent the vending or other disposi-
tion of liquors and intoxicating drinks in violation of the laws
of the State, and to forbid the selling or giving to be drunk
any intoxicating liquors to any child or young person without
**Auctions.**
the consent of his or her parents or guardian and to prohibit,
restrain and regulate the sale of all goods, wares and personal
property at auction, except in cases of sale authorized by law,
and to fix the fees to be paid by and to the auctioneers;

**Exhibitions.**
Fourth. To prohibit, restrain, license and regulate all
sports, exhibitions of all natural or artificial curiosities, cara-
vans of animals, theatrical exhibitions, circuses or other pub-
lic performances and exhibitions for money;

**Nuisances.**
Fifth. To abate or remove nuisances of every kind, and to
compel the owner or occupant of any grocery, tallow-chandler
shop, butcher's stall, soap factory, tannery, stable, privy, hog
pen, sewer or other offensive or unwholesome house or place,
to cleanse, remove or abate the same from time to time, as
often as they may deem necessary for the health, comfort
**Dangerous buildings.**
and convenience of the inhabitants of the city. To compel the
owner, lessee or agent to remove buildings that are liable
to fall by reason of being burnt, decayed or not properly
erected;

**Location of slaughter houses.**
Sixth. To direct the location of all slaughter houses, mark-
ets and buildings for storing gunpowder or other combustible
materials, and to regulate the manner of keeping the same;

Seventh.   To regulate, restrain or prohibit the buying, sell- Firearms, combustibles, etc.
ing, carrying and using of firearms, weapons, gunpowder, fire-
crackers or fireworks, manufactured or prepared therefrom,
or from other combustible material, and the exhibition of
fireworks, and the discharge of firearms, and the lights in
barns, stables and other buildings, and to restrain and pro-
hibit the making of bonfires in streets, yards, alleys and other
public places;

Eighth.   To prevent the encumbering of streets, sidewalks, Encumbering streets.
crosswalks, lanes, alleys, bridges, aqueducts, wharves or slips
in any manner whatever;

Ninth.   to prevent and punish horse racing and immoder- Horse racing.
ate riding or driving in any street, and to authorize the stop-
ping and detaining of any person who shall be guilty of im-
moderate riding or driving in any street; and to prevent any
person from leaving a horse or horses or other animal stand-
ing upon the streets of said city without being securely tied,
held or fastened so as to prevent their escape;

Tenth.   To determine and designate the routes and grades Railroad grades, etc.
of any railroad to be laid in said city, and to regulate the use
of locomotives, engines and cars upon the railroads within the
city; to compel such railroads to erect and maintain safety
gates at street crossings;

Eleventh.   To regulate, restrain or prohibit bathing in any Bathing, etc.
public water, and to provide for (cleansing) cleaning Saginaw
river of driftwood and other obstructions;

Twelfth.   To restrain and punish drunkards, vagrants, Drunkards, vagrants, etc.
mendicants, street beggars and persons soliciting alms or sub-
scriptions for any purpose whatever;

Thirteenth.   To establish one or more pounds, and to re- Pounds.
strain, regulate or prohibit the running at large of horses,
cattle, swine and other animals, geese and poultry, and to
authorize the impounding and sale of the same for the penalty
incurred and the cost of their keeping and impounding;

Fourteenth.   To regulate or prevent the running at large Dogs.
of dogs; to impose taxes upon the owners of dogs and to pun-
ish dog fights and those engaged in aiding and abetting the
same, in the streets and elsewhere in said city.   To provide
for the issuing of licenses to the owners and keepers of dogs,
and to compel the owners and keepers thereof to pay for and
obtain such licenses; to require them to be muzzled and to
authorize the killing of dogs not licensed or running at large
in violation of the ordinances of the city; and to authorize
the killing of dogs impounded, which shall not be redeemed
within the time prescribed by the ordinance regulating the
same;

Fifteenth.   To prohibit any person from bringing and de- Carcasses, etc.
positing within the limits of said city any dead carcass or
other unwholesome or offensive substance, and to require the
removal and destruction thereof, if any person shall have on
his premises such substance or any putrid meats, fish, hides

vocations and trades, professions or callings, which are licensed by the State of Texas or which are taxed by said State; provided, that no tax assessed on such occupation, trade, vocation, profession or calling shall be more than one-half the amount levied thereon by said State, and said commission shall have the power to prescribe penalties against all persons pursuing any occupation, vocation, trade, profession or calling so taxed, without having first paid the tax due, and secured a proper license therefor.

(w)  *Riots.*—Power to prevent and suppress riots, affrays, noise, breach of the peace, assaults, disturbances or disorderly assembly in any public or private place within the limits of said city, and to provide punishment therefor; to prohibit and restrain the firing of guns, and pistols in the city limits, and to prohibit and restrain the carrying of pistols.

(x)  *Racing.*—To prevent and prohibit and suppress horse racing, immoderate or careless riding or driving in the streets of said city, or in any public place therein, to suppress racing in the streets of said city by means of animals or vehicles.

(y)  *Streets.*—To regulate the use of all streets, alleys, parks, squares, sidewalks and public grounds within said city, and to prevent and suppress all encroachments on said streets, sidewalks, alleys or parks or other public places, and to prevent and suppress all obstructions of every kind and character on the said streets, sidewalks, alleys, parks and other public grounds within said city.

(z)  *Saloons.*—Power to close drinking saloons, dramshops and other public places where intoxicating liquors are sold or given away, and to close any theater or variety show when necessary or expedient; to make and enforce all needful regulations for saloons, dramshops and other places where intoxicating liquors are sold or given away. The said commission shall have the power to prescribe by ordinance that no intoxicating liquors shall be sold or given away within the corporate limits of the said city, in any certain prescribed district in said corporaton in which there are more residences than business houses, said districts to be accurately defined by said ordinances.

Said commission shall have the power to cancel and forfeit any city license issued by said City of Marshall to the owner or proprietor of any saloon or other place where intoxicating liquors are sold, under such license, within the limits of said city upon conviction of the person owning such license, of any offense against the laws of Texas, or of the City of Marshall pertaining to such liquor business, or to the sale of liquor under such license, and after forfeiture of such license by said commission, no other license for the sale of spirituous, vinous or malt liquors shall be issued or sold by the said city unto such convicted person for the period of two years.

(aa)  *Theaters.*—Power to permit, regulate or forbid theaters, balls, variety shows and other public amusements, and to suppress the same whenever the preservation of order, tranquility or public safety may require.

(bb)  *Ticket Scalpers.*—To prevent and prohibit the sale by any other person than a duly authorized agent, of any non-transferable ticket, pass,

all the charges and remove the same for the period of twenty-four hours after the service of such notice, the said officer shall proceed to sell the same at public auction, first giving two days notice, by not less than five hand-bills conspicuously posted, of the time and place of said sale, which said notice shall also contain a brief description and the name of the owner or custodian thereof, if known.

SEC. 4.   If the owner or custodian shall not be known to said officer he shall immediately advertise the same for sale for at least three days prior to such sale, by three handbills conspicuously posted in said city, which said notice shall contain a description of the swine to be sold, where the same were taken up, the time and place of said sale.

SEC. 5.   The officer's fees for proceedings under this ordinance shall be as follows, to-wit:   One dollar per head for impounding the necessary expenses for keeping; twenty-five cents for each notice served, and twenty per cent of sales for selling.

SEC. 6.   From the proceeds of the sale 'of each hog or lot of swine belonging to one individual the officer shall pay the fees and expenses as hereinbefore provided for, and the balance if any there be, shall be paid to the city treasurer and be kept by him as a separate fund and shall only be paid out by warrant duly drawn and made payable to the party justly entitled thereto.

SEC. 7.   This ordinance shall take effect and be in force from and after its passage and approval.

Approved, April 16, A. D. 1872.

---

## ORDINANCE No. 7.

An Ordinance prohibiting the carrying of fire arms and concealed weapons.

SECTION 1.   *Be it ordained by the Mayor and Councilmen of the city of Nebraska City,* That it shall be, and it is hereby declared to be unlawful for any person to carry, openly or concealed, any musket, rifle, shot gun, pistol, sabre, sword, bowie knife, dirk, sword cane, billy, slung shot, brass or other metallic knuckles, or any other dangerous or deadly weapons, within the corporate limits of Nebraska City, Neb.; *Provided,* that nothing herein contained shall prevent the carrying of such weapon by a civil or military officer, or by a soldier in the discharge of his duty, nor by any other person for mere purposes of transportation from one place to another.

SECTION 2.   Upon complaint before the Police Judge that an offence in violation of this ordinance has been committed, he shall inquire into the circumstances of the case to determine whether the charge is well founded, and exercise his own discretion as to the dismissal thereof.   If the complaint shall be made good, and the

# CHAPTER 108.

CARRYING PISTOLS, BOWIE-KNIVES, ETC.

SECTION
1. Penalty imposed for carrying pistols, bowie-knives, etc.
2. Duty of the police to arrest all persons carrying such weapons.
3. Penalty imposed on police officer for failing to arrest persons carrying deadly weapons.

SECTION
4. Police Commissioners instructed to increase number of patrolmen to thirty-four.
5. Provisions against carrying deadly weapons do not extend to police officers.

SECTION 1. That every person found carrying a pistol, bowie-knife, dirk-knife, slung-shot, brass knucks or other deadly weapon, shall be deemed guilty of a misdemeanor, and, upon conviction of such first offense, shall be fined from ten to fifty dollars, at the discretion of the court, but upon conviction of every such subsequent offense, shall be fined fifty dollars; *Provided, however*, That no ordinary pocket-knife and common walking-canes shall be construed to be deadly weapons.

SEC. 2. That it shall be the duty of every police officer who sees any person or persons with, or knows of any person carrying, such deadly weapons, to immediately arrest every such person, that they may be dealt with according to the provisions of this act.

SEC. 3. That every police officer who may refuse or neglect to immediately arrest every such person seen with or known to be carrying such deadly weapons, shall be deemed guilty of dereliction of duty, and, upon conviction thereof, shall be dismissed from service, and any two respectable citizens shall be deemed competent to prefer charges to the proper authorities against such police officer for such dereliction of duty.

SEC. 4. To the end that the provisions of this act may be more fully carried out, the Police Commissioners be, and are hereby, instructed to increase the number of patrolmen to thirty-four, to be uniformed, paid and controlled in accordance with the present police law.

SEC. 5. It is expressly understood that the provisions of this act relating to carrying such deadly weapons as are mentioned in the preceding sections, do not extend to police or other officers, or persons that are entitled by law to carry

such deadly weapons, nor does it extend to the act of handling or moving such deadly weapons in any ordinary business way.

Sec. 6. That all laws and parts of laws in conflict with this act are hereby repealed, and this act to take effect from and after its passage, the public welfare requiring it.

Approved December 26, 1873.

---

# CHAPTER 109.

### SABBATH.

SECTION
1. No water-craft to unload on Sunday.
2. No vehicle to be laden on Sunday.
3. No grocery or other place of ordinary business to be kept open on the Sabbath; tavern-

SECTION
keepers and apothecaries excepted.
4. Vendors of ice, ice-cream, soda water, cigars and tobacco excepted.
5. No games allowed on Sunday.

SECTION 1. That if any owner or owners of any steamboat, keel-boat, barge or other water-craft, should load or unload, or cause to be laden or unladen, any such steamboat, keel-boat, barge or other water-craft, on the Sabbath day, within the limits of the corporation of Nashville, unless by the written permission of the Mayor, every person so offending shall forfeit and pay, on conviction thereof, not less than twenty-five nor more than fifty dollars for every such offense.

Sec. 2. That if any person or persons shall load, or cause to be laden, any wagon, cart or dray on the Sabbath day, with any article or package of merchandise, cotton, tobacco or any produce of the country, or unload, or cause to be unladen, any such wagon, cart or dray, or shall receive into his, her or their house, store or warehouse, any such article or package of merchandise, cotton, tobacco, or produce of the country, every person so offending shall forfeit and pay the sum of one dollar for each and every offense.

Sec. 3. That no person or persons shall be allowed to keep his, her or their grocery, dram-shop, confectionery or other place of ordinary business open on the Sabbath day, nor to sell any spirituous liquors on said day, or to deal out the same

Digitized by Google

the city limits for the purpose of seeing that said ordinance is not violated. That before entering, said Marshal or policeman shall first inform the owner, or person having control of said back yard, the purpose of such entry, and any such owner or person having charge or control of the same, who shall refuse or resist such entry shall thereupon be arrested, and upon conviction thereof, shall be fined in a sum not more than twenty-five dollars, nor less than five, or imprisonment not more than ten days. Approved Nov. 22, 1869.

34 Every owner or occupant of every store, hotel, bar-room, or public house of any kind, as also each and every person occupying a house having two rooms or more facing the street, shall hang a light outside of the door of his or their building, the first two and a half hours of every dark night, under a penalty of two dollars for the first offence and five dollars for each and every subsequent offence.

35 Every person who shall draw any species of fire-arms, or any sword or sword-cane, or knife, or dirk, or other deadly weapon upon the person of another within the limits of this city, unless in lawful defence of person or property, shall be fined not to exceed one hundred dollars, and imprisonment at the discretion of the Mayor, not to exceed ten days.

36 In future, no persons, except peace officers, and persons actually traveling, and immediately passing through Los Angeles city, shall wear or carry any dirk, pistol, sword in a cane, slung-shot, or other dangerous or deadly weapon, concealed or otherwise, within the corporate limits of said city, under a penalty of not more than one hundred dollars fine, and imprisonment at the discretion of the Mayor, not to exceed ten days.

It is hereby made the duty of each police officer of this city, when any stranger shall come within said corporate limits wearing or carrying weapons, to, as soon as possible, give them information and warning of this ordinance; and in case they refuse or decline to obey such warning by depositing their weapons in a place of safety, to complain of them immediately.

37 No person shall ride any mule, horse or other animals within the fire limits of this city, at a furious rate, or at a greater speed than eight miles per hour. Nor shall any person drive any wagon, carriage, or other vehicle, at a greater speed than as above stated. Nor shall any person leave any horse or mule, saddled or harnessed, loose in the aforesaid limits.

## ORDINANCE No. 268.

An Ordinance relating to the carrying of deadly weapons.

*Be it ordained by the Mayor and Councilmen of the city of Salina :*

SECTION 1.    That it shall be unlawful for any person to carry on or about his person any pistol, bowie knife, dirk, or other deadly or dangerous weapon, anywhere within the limits of the city of Salina, save and except as hereinafter provided.

SEC. 2.    This ordinance shall not apply to cases when any person carrying any weapon above mentioned is engaged in the pursuit of any lawful business, calling or employment and the circumstances in which such person is placed at the time aforesaid, are such as to justify a prudent man in carrying such weapon, for the defense of his person, property or family, nor to cases where any person shall carry such weapon openly in his hands, for the purpose of sale, barter, or for repairing the same, or for use in any lawful occupation requiring the use of the same.

SEC. 3.    Any person violating any of the provisions of this ordinance shall, upon conviction thereof before the police court, be fined in any sum not less that twenty-five nor more than one hundred dollars.

SEC. 4.    This ordinance shall take effect and be in force from and after its publication in pamphlet form.

Approved June 24th, 1879

WM. BERG, Mayor.

Attest:    E. E BOWEN, City Clerk.

I hereby certify the above and foregoing to be a true copy of an ordinance passed by the mayor and councilmen of the city of Salina on the 24th day of June, 1879. See page 97 of the Journal B for the record of the final vote on its passage.

[CITY SEAL.]                    E. E. BOWEN, City Clerk.

three months, or to both such fine and imprison-
ment.

§ 5. Any person who shall immoderately ride or Immoder-
ate driving
drive any horse or other animal whether attached and riding.
to a private or public ambulance or other vehicle
in any avenue, street, alley or lane in the city, shall
be subject to a fine of not less than five nor more
than fifty dollars, or to imprisonment in the peni- Penalty.
tentiary of the county for not less than ten nor
more than thirty days.

§ 6. Any person who shall solicit alms in the Soliciting
alms.
city for any purpose whatever, without permission
from the mayor, shall be subject to a fine of two
dollars or to imprisonment in the penitentiary of Penalty.
the county for ten days for each offense.

§ 7. Any person who shall carry about his or her Carrying
of deadly
person any dirk, bowie knife, sword or spear cane, weapons.
pistol, revolver, slung shot, jimmy, brass knuckles,
or other deadly or unlawful weapon, or shall use
any deadly or unlawful weapon, with intent to do
bodily harm to any person, shall be subject to a
fine of not less than twenty-five nor more than one Penalty.
hundred dollars, or to imprisonment in the peni-
tentiary of the county for not less than thirty days
nor longer than three months, or to both such fine
and imprisonment.

§ 8. Any person who shall ring any gong or bell Ringing of
gongs and
or cry any auction in any street, lane [or alley, or bells.
upon any sidewalk, or upon any piazza, step or

# UNLAWFUL CARRYING OF ARMS.

An Ordinance Prohibiting and Punishing the Unlawful Carrying of Arms.

SECTION 1. Be it ordained by the City Council of the City of Dallas, that if any person in the City of Dallas shall carry on or about his person, saddle, or in his saddle-bags, any pistol, dirk, dagger, slungshot, sword-cane, spear, or knuckles made of any metal or hard substance, bowie knife, or any other kind of knife manufactured or sold for purposes of offense or defense, he shall be punished by fine of not less than twenty-five nor more than two hundred dollars and shall be confined in the city prison not less than twenty nor more than sixty days.

SEC. 2. That the preceding section shall not apply to a person in actual service as a militiaman, nor to a peace officer, or policeman or person summoned to his aid, nor to a revenue or other civil officer engaged in the discharge of official duty, nor to the carrying of arms on one's own premises or place of business, nor to persons traveling, nor to one who has reasonable ground for fearing an unlawful attack upon his person, and the danger is so imminent and threatening as not to admit of the arrest of the party about to make such attack upon legal process.

SEC. 3. That all Ordinances or parts of Ordinances in conflict with this Ordinance be and the same are hereby repealed.

SEC. 4. That this Ordinance take effect from and after its passage.

Approved July 18, 1887.

## ORDINANCE NO. 11.

An ordinance relating to the public peace.

Be it ordained by the town council of the incorporated town of Checotah:

Section 1.   That it shall be a misdemeanor to do or cause to be done any of the following acts, and any person convicted thereof shall be fined not more than Twenty Five dollars.

Section 2.   To be connected with or participate in any masked ball not authorized by the mayor of the town.

Section 3.   To wear or carry any pistol of any kind whatever, or any dirk, butcher knife or bowie knife, or a sword, or a spear in a cane, brass or metal knuckles or a razor, slung shot, sand bag, or a knife with a blade over three inches long, with a spring handle, as a weapon.

Section 4.   To be drunk or in a state of intoxication in any public or private place within the town limits.

Section 5.   To use rude, boisterous, offensive, obscene or blasphemous language in any public place, or to make, aid, countenance, or assist in making any improper noise, disturbance, breach of the peace or diversion, or conduct one's self in a disorderly manner in any public place, or in any other place within the town limits.

Section 6.   To keep a disorderly house or place of public resort in the open air, or by making or causing to be made therein, loud or improper noises, or by collecting therein or permit the collection therein, or allow to remain therein, drunken, disorderly and noisy persons to the annoyance of others and the disturbance of the neighborhood, or to give admission, or cause to be given admission therein, to women of known ill repute or prostitutes, or fail to remove or expel such persons after being notified of their character.

Section 7.   To employ any device, noise or performance tending to the collection of persons on the streets or other places to the obstruction of the same, or to exhibit any tricks or legerdemain or other devices of like kind, or perform with bells, or-

City for any such purpose, shall forfeit and pay a penalty of not less than ten, nor more than fifty dollars for every such offense.

SEC. 192.   Every person who shall carry in said City, any steel or brass knuckles, pistol, or any slung shot, stiletto or weapon of similar character, or shall carry any weapon concealed on his person without permission of the Mayor or Superintendent of Police in writing, shall, on conviction, pay a penalty of not less than five, nor more than fifty dollars for every such offense.

## JURORS OF THE CITY COURT.

Section.
193. Penalty for neglecting to serve as juror when summoned.

*Be it ordained by the Court of Common Council of the City of New Haven:*

SEC. 193.   If any person chosen, drawn and summoned to serve on a jury at any session of the City Court of said City, in accordance with the provisions of the Charter of said City, shall make default of appearance, according to the direction of the summons, which shall have been duly served upon him, and returned to Court, he shall forfeit and pay a penalty of five dollars, unless on cause shown, said City Court shall excuse him therefrom.

## LAMPS.

Section.                            Section.
194. Court of Common Council   195. Unauthorized     interference
      may order lamps to be set         with lamps prohibited, etc. ;
      up.                                penalty.

*Be it ordained by the Court of Common Council of the City of New Haven:*

SEC. 194.   The Court of Common Council is hereby authorized to cause to be set up such lamps in the streets and public places in said City, for the purpose of




more than one hundred dollars for each and every offense.

SEC. 4. If any person shall expose for sale in any market, house, shop or elsewhere in this city, any emaciated, tainted or putrid meat or provision, which from these or other causes may be deemed unwholesome, every such person, on conviction, shall forfeit and pay a penalty of five dollars for each offense.

SEC. 5. No person shall steam, or boil, or in any way render any offal, tainted or damaged lard or tallow, or steam, boil or render any animal substance in such a manner as to occasion any offensive smell, or which by steaming, boiling or otherwise rendering will so taint the air so as to render it unwholesome to the smell within the limits of the city. Any person who shall violate the provisions of this section, shall, on conviction, be fined in a sum not less than ten dollars nor more than one hundred dollars.

## ARTICLE VII.

### CARRYING FIRE ARMS AND LETHAL WEAPONS.

SECTION 1. It shall be unlawful for any person in said city to keep or bear upon the person any pistol, revolver, knife, slungshot, bludgeon or other lethal weapon, except the officers of the United States, of the State of Wyoming, of Carbon County and of the City of Rawlins.

SEC. 2. Any person convicted of a violation of the preceding section shall be fined not exceeding one hundred dollars, or imprisoned in the city jail not exceeding thirty days.

SEC. 3. Persons not residing in said city shall





be notified of this Ordinance by the police or any citizen, and after thirty minutes from the time of notification, shall be held liable to the penalties of this article, in case of its violation.

SEC. 4. The city marshal and policemen of the city shall arrest, without warrant, all persons found violating the provisions of this article, and are hereby authorized to take any such weapon from the person of the offender and to imprison the offender for trial, as in case of violations of other Ordinances of said city.

SEC. 5. This ordinance shall be in force and take effect from and after its passage.

Revised, passed and adopted March 3, 1893.

CHAS. E. BLYDENBURGH,
President of Board.

Approved,
JOHN C. DAVIS,
Mayor.






SECTION.

80. Selling Wearing Apparel by Club Drawing.
81. Stealing Parts of a House.
82. Moving Houses with Unpaid Tax.
83. Time for Hauling Slops Along Street.
84. Dead Animals, Disposition of.
85. Traction and Threshing Engine on Paved Streets.
86. Manure not to be Thrown in Streets or Alleys; Limits; Provisions to Make Pen for.
87. Privy Vaults to be Cleaned and not to be Transferred.
88. Stables and Water Closets to be on Line of Alley.
89. Secondhand and Junk Dealers; Buying from Minors; Description book; Night Purchases.
90. Leaving Holes for Stagnant Water.
91. Advertisement on Street Poles.
92. Bicycle Riding Regulated; Sidewalks, Speed, Dismounting, by Threes, Alarm Bell.
93. Obstructing Streets or Walks; How Used by Merchants and Builders; Gutters not to be Obstructed; Debris to be Cleared.
94. Red Night Lights on Building Material on Street.

SECTION.

95. Hitching to Fire Hydrant or Pole with Alarm Box.
96. Ball Playing in Streets.
97. Running Water into Streets.
98. Throwing Rubbish into the Street.
99. Projections Over the Sidewalks.
100. Stringing Banners Across Streets.
101. Crowds Upon Sidewalks, Streets and Crossings.
102. Obstructing Crossings with Engines or Cars.
103. Digging and Leaving Holes in the Street.
104. Breaking Horses Upon Streets.
105. Leaving Horse, Mule or Ox on Street After Midnight.
106. Auction Sales not on Certain Streets.
107. Height of Telegraph, Telephone and Light-Wires, (20 ft.)
108. Building Lines Located by Engineer; Cellar-way Excavation; Power of Mayor and Council to Permit or Remove; Nuisance Declared and Abated; Penalty; Proviso for Parking Fence.
109. Injuring Shade or Ornamental Trees.
110. Public Vehicles; Limits Prohibited.
111. Take Effect.

## ORDINANCE NO. 1641.

An ORDINANCE relating to certain public offenses and fixing the penalty therefor.

*Be it ordained by the Mayor and Councilmen of the City of Wichita:*

### Drawing Deadly Weapons Upon Another. SEC-

TION 1. That any person, not an officer of the law in the execution of his duty, who shall in the city of Wichita, draw a pistol, revolver, knife or any other deadly weapon upon another person shall upon conviction, be fined not less than twenty-five dollars nor more than one hundred dollars.

### Carrying Unconcealed Deadly Weapons. SEC.

2. Any person who shall in the city of Wichita carry unconcealed, any fire-arms, slungshot, sheath or dirk knife, or any other weapon, which when used is likely to produce

death or great bodily harm, shall upon conviction, be fined not less than one dollar nor more than twenty-five dollars.

**Using or Carrying Bean Snapper.** SEC. 3. Any person who shall, in the city of Wichita, use or carry concealed or unconcealed, any bean snapper or like articles shall upon conviction be fined in any sum not less than one dollar nor more than twenty-five dollars.

**Carrying Concealed Deadly Weapons.** SEC. 4. Any person who shall in the city of Wichita, carry concealed about his person any fire-arm, slungshot, sheath or dirk knife, brass knuckles, or any weapon, which when used is likely to produce death or great bodily harm, shall upon conviction, be fined in any sum not exceeding one hundred dollars.

**Disturbing the Peace.** SEC. 5. Any person who shall in the city of Wichita, disturb the peace of the city, or any lawful assembly of persons, or of any neighborhood, family, person, or persons, shall upon conviction, be fined in any sum not exceeding one hundred dollars.

**Cursing and Using Violent Language.** SEC. 6. Any person who shall in the city of Wichita, curse, swear, quarrel or use violent or threatening language, or make any great noise, so as to disturb the peace of any person or neighborhood shall, upon conviction be fined in any sum not exceeding twenty-five dollars.

**Assault and Battery.** SEC. 7. Any person who shall, in the city of Wichita, assault and beat or wound another, shall be deemed guilty of an assault and battery and shall, upon conviction, be fined in any sum not exceeding one hundred dollars, or imprisonment in the city jail not exceeding three months.

**Provoking Another to Breach of Peace.** SEC. 8. Any person who shall, in the city of Wichita, by signs, words or gestures, provoke or attempt to provoke another to commit assault and battery or other breach of the peace, shall, upon conviction, be fined in any sum not less than three dollars, nor more than twenty-five dollars.

**Aiding Resistance or Escape from Officer.** SEC 9. Any person who shall, in the city of Wichita, in any

# ORDINANCE NO. 20.

## UNLAWFULLY CARRYING ARMS.

Be it ordained by the city council of the city of Mc-Kinney:

Sec 1. If any person in the limits of the city of McKinney shall carry on or about his person. saddle, or in his saddle bags, any pistol, dirk, dagger, slung-shot, sword-cane, spear or nuckles made of any metal or of any hard substance Bowie knife or any other knife manufactured or sold for the purposes of offense or defense, he shall be punished by fine not less than twenty-five nor more than two hundred dollars.

Sec. 2. The preceding section shall not apply to a person in actual service as a militiaman, nor to a peace officer or a policeman or person summoned to his aid, nor to a revenue or other civil officer engaged in the discharge of official duty, nor to the carrying of arms on one's own premises or place of business, nor to persons traveling, nor to one who has reasonable ground for fearing an unlawful attack upon his person, and the danger is so iminent and threatening as not to admit of the arrest of the party about to make such attack, upon legal process.

# ORDINANCE NO. 21.

## INDECENT PUBLICATION AND EXPOSURES.

Be it ordained by the city council of the city of Mc-Kinney:

That if any person within the limits of the city of Mc-Kinney, shall make, publish or print any indecent and obscene print, picture or written composition manifestly designed to corrupt the morals of the youth, or shall designedly make any obscene and indecent exhibition of his own or the person of another in public, he shall be fined not exceeding one hundred dollars.

some conspicuous place about his person, and said badge shall authorize the person holding the same to pursue such occupation only during good behavior, and at the pleasure of the mayor.

**Sec. 2.** The city marshal, on said person complying with Section 1 of this ordinance, shall designate a place or beat, on the public sidewalk or street, where the said person may pursue and follow his said occupation, *City marshal to designate place or stand.*

**Sec 3.** The badge provided for in Section 1 of this ordinance shall not be transferable. *Badge not transferable.*

**Sec. 4.** All persons permitted to pursue the occupation hereinbefore provided for shall be under the immediate supervision and control of the city marshal and police, and it shall be unlawful for any person to pursue and follow said occupation without first complying with Sections 1 and 2 of this ordinance; and it shall be unlawful to pursue said occupation at any other place or beat than that indicated by the city marshal. *Boot blacks under supervision of city marshal.*

**Sec. 5.** Any person violating any of the provisions of this ordinance shall be fined in any sum not exceeding five dollars ($5.00) for each offense. *Penalty affixed.*

------

## CHAPTER TEN.

### CONCEALED WEAPONS.

**Section 1.** If any person, within the corporate limits of the city of San Antonio, shall carry on or about his or her person, saddle, or in his saddle bags, any pistol, dirk, dagger, sling shot, sword cane, spear, or knuckles made of any metal *Carrying concealed weapons. Penalty.*

or any hard substance, bowie knife, or any other kind of knife manufactured or sold for purposes of offense or defense, he or she shall be punished by a fine of not less than twenty-five dollars ($25.00) nor more than two hundred dollars ($200.00).

What persons exempted.

**Sec. 2.** The preceding section shall not apply to a person in actual service as a soldier of the United States army or as a militia man, nor to a peace officer or policeman engaged in the discharge of official duty, or person summoned to his aid, or other person authorized or permitted by law to carry arms at the places therein designated, nor to a revenue or other civil officer engaged in the discharge of official duty, nor to the carrying of arms on one's own premises or place of business, nor to persons traveling, nor to one who has a reasonable ground for fearing an unlawful attack upon his person, where the danger is so imminent and threatening as not to admit of the arrest of the party about to make such attack, upon legal process.

## CHAPTER ELEVEN.

### DISORDERLY HOUSES.

Disorderly house defined.

**Section 1.** A disorderly house is one kept for prostitution, or where prostitutes are permitted to resort or reside, for the purpose of plying their vocation, or any theatre, play house or house where spirituous, vinous, or malt liquors are kept for sale, and prostitutes, lewd women, or women of bad reputation for chastity, are employed, kept in service, permitted to display or conduct themselves in a lewd, lascivious, or indecent manner, or to which persons resort for the purpose of smoking or in any manner using opium.

# CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2015, I electronically filed the foregoing Appendix of Historical Laws of *Amicus Curiae* Everytown for Gun Safety with the Clerk of the Court of the U.S. Court of Appeals for the D.C. Circuit by using the Appellate CM/ECF system. All participants are registered CM/ECF users, and will be served by the Appellate CM/ECF system.

*/s/ Deepak Gupta*
Deepak Gupta