No. 15-7057

# In the United States Court of Appeals for the District of Columbia Circuit

_____

Brian Wrenn, *et al.*,

*Plaintiffs-Appellees,*

v.

District of Columbia, *et al.*,

*Defendants-Appellants.*

On Appeal from the United States District Court
for the District of Columbia

## BRIEF OF MARYLAND, CALIFORNIA, CONNECTICUT, HAWAII, ILLINOIS, MASSACHUSETTS, AND NEW YORK IN SUPPORT OF APPELLANTS

Office of the Attorney
General of Maryland
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
Phone: (410) 576-7906
Fax: (410) 576-6955
mfader@oag.state.md.us
jauerbach@oag.state.md.us

BRIAN E. FROSH
*Attorney General of Maryland*

MATTHEW J. FADER
  *Of counsel* (not admitted in DC)
PATRICK B. HUGHES
  *Of counsel* (not admitted in DC)
JOSHUA N. AUERBACH
Assistant Attorneys General

Counsel for *Amicus Curiae* State of Maryland
Additional Counsel Listed on Inside Cover

(additional counsel continued from front cover)

KAMALA D. HARRIS
*Attorney General of California*
1300 I Street
Sacramento, California 95814

GEORGE JEPSEN
*Attorney General Of Connecticut*
55 Elm Street
Hartford, Connecticut 06106

DOUGLAS S. CHIN
*Attorney General of Hawaii*
425 Queen Street
Honolulu, Hawaii 96813

LISA MADIGAN
*Attorney General of Illinois*
100 West Randolph, 12th Floor
Chicago, Illinois 60601

MAURA HEALEY
*Attorney General of Massachusetts*
One Ashburton Place
Boston, Massachusetts 02108

ERIC T. SCHNEIDERMAN
*Attorney General of New York*
120 Broadway
New York, New York 10271

## Corporate Disclosure Statement

As states, all *amici* are governmental entities with no reportable parent companies, subsidiaries, affiliates, or similar entities under Fed. R. App. P. 26.1(a).

# TABLE OF CONTENTS

Page

Identity of *Amici Curiae* ............................................... 1

SUMMARY OF THE ARGUMENT ...................................... 2

ARGUMENT ............................................................... 4

I.   THE INDIVIDUAL RIGHT TO KEEP AND BEAR ARMS FOR SELF-DEFENSE PROTECTED BY THE SECOND AMENDMENT DOES NOT PRECLUDE REASONABLE REGULATION OF FIREARMS. ....................................... 4

II.  ASSUMING THE DISTRICT OF COLUMBIA'S LAW REGULATES CONDUCT WITHIN THE SCOPE OF THE SECOND AMENDMENT, THE CORRECT STANDARD UNDER THIS COURT'S PRECEDENTS IS INTERMEDIATE SCRUTINY. ....................................... 6

III. THE DISTRICT COURT MISAPPLIED THIS COURT'S INTERMEDIATE SCRUTINY STANDARD. ............................................... 11

IV.  PRIOR RESTRAINT DOCTRINE DOES NOT APPLY OUTSIDE OF THE FIRST AMENDMENT CONTEXT. ........................................ 18

CONCLUSION ............................................................ 21

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Board of Trustees of the State of New York v. Fox*, 492 U.S. 469 (1989)...............11

*Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175 (1968) ..............20

*City of Lakewood v. Plain Dealer Pub. Co.,* 486 U.S. 750 (1988).........................19

*Dearth v. Lynch*, 791 F.3d 32 (D.C. Cir. 2015) .................................................7, 16

*District of Columbia v. Heller*, 554 U.S. 570 (2008) ....................................2, 4, 5, 9

*Drake v. Filko,* 724 F.3d at 435 (3d Cir. 2013) ...............................10, 13, 17, 18, 20

*Heller v. District of Columbia*, 670 F.3d 1244
    (D.C. Cir. 2011) ..................................................... 2, 3, 6, 8, 9, 10, 11, 12, 13, 14

*Hightower v. City of Boston*, 693 F.3d 61 (1st Cir. 2012).......................................19

*Jackson v. City of San Francisco*, 746 F.3d 953 (9th Cir. 2014) ......................13, 14

*Kachalsky v. Cnty. of Westchester*, 701 F.3d 81 (2d Cir. 2012),
    *cert. denied*, 133 S. Ct. 1806 (2013)................. 7, 8, 9, 10, 13, 14, 17, 18, 19, 20

*McDonald v. City of Chicago*, 561 U.S. 742 (2010) ....................................2, 4, 5, 6

*National Rifle Ass'n v. Bureau of Alcohol, Tobacco, Firearms,*
    *& Explosives*, 700 F.3d 185 (5th Cir. 2012).............................................8, 13, 14

*Near v. Minnesota*, 283 U.S. 697 (1931) .................................................................20

*Peruta v. San Diego*, 742 F.3d 1144 (9th Cir. 2014),
    *vacated by* 781 F.3d 1106 (9th Cir. 2015)......................................................8, 18

*Schrader v. Holder*, 704 F.3d 980 (D.C. Cir. 2013) ...............................................16

*Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622 (1994)....................14, 15, 16

*Turner Broadcasting Sys., Inc. v. FCC*, 520 U.S. 180 (1997)...........5, 12, 14, 15, 16

*Tyler v. Hillside Cnty. Sheriff's Dep't*, 775 F.3d 308 (6th Cir. 2014),
    *rehearing en banc granted and opinion vacated* April 21, 2015 .......................9

*United States v. Chester*, 628 F.3d 673 (4th Cir. 2010)......................................8, 19

*United States v. Cruikshank*, 92 U.S. 542 (1876) ......................................................4

*United States v. Marzzarella*, 614 F.3d 85 (3d Cir. 2010)........................6, 8, 13, 14

*United States v. Masciandaro*, 638 F.3d 458 (4th Cir. 2011)...................8, 9, 10, 22

*United States v. Reese*, 627 F.3d 792 (10th Cir. 2010)...................................6, 8, 13

*United States v. Skoien*, 614 F.3d 638 (7th Cir. 2010) ...............................................6

*United States v. Williams*, 616 F.3d 685 (7th Cir. 2010)....................................8, 14

*Ward v. Rock Against Racism*, 491 U.S. 781 (1989)................................................11

*Woollard v. Gallagher*, 712 F.3d 865
    (4th Cir. 2013)......................................................... 6, 7, 8, 10, 13, 14, 17, 18, 20

*Wrenn v. District of Columbia*, __ F. Supp. 3d ___,
    2015 WL 3477748, at *6 (D.D.C. May 18, 2015).................................11, 12, 15

## Constitutional Provisions

U.S. Const., amend. I ......................................................................................passim

U.S. Const., amend. II......................................................................................passim

U.S. Const., amend. XIV ........................................................................................5

## Miscellaneous

Patrick J. Charles, *The Faces of the Second Amendment Outside the Home:
    History Versus Ahistorical Standards of Review*, 60 Clev. St. L. Rev. 1
    (2012)...............................................................................................................7

Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487 (2004) ...................................9

## Identity of *Amici Curiae*

Maryland, California, Connecticut, Hawaii, Illinois, Massachusetts, and New York file this brief pursuant to Rule 29(a) of the Federal Rules of Appellate Procedure. The *Amici* States seek to protect their sovereign prerogative to enact and implement legislation that advances their compelling interests in promoting public safety, preventing crime, and reducing the negative effects of firearm violence. The *Amici* States have each taken different approaches to addressing the problem of firearm violence based on determinations about what measures will best meet the needs of their citizens. They join this brief not because they necessarily believe the District of Columbia has chosen the optimal policy—or that the District's approach would necessarily be optimal for the *Amici* States—but because they believe that the challenged regulations represent a policy choice that the District is constitutionally free to adopt.

The enactment by states of reasonable firearm regulations that are substantially related to the achievement of an important governmental interest is fully compatible with the right to keep and bear arms protected by the Second Amendment. The *Amici* States also are concerned that the erroneous interpretation of the Second Amendment advanced by the district court in this case threatens to tie the hands of states in responding to real threats to public safety.

## SUMMARY OF THE ARGUMENT

The right to keep and bear arms recognized by the Supreme Court in *District of Columbia v. Heller* has never been interpreted as a "right to keep and carry any weapon whatsoever in any manner whatsoever and for whatsoever purpose." 554 U.S. 570, 626 (2008). The Supreme Court has also never implied that the Second Amendment precludes states from enacting reasonable firearms regulations to promote public safety. To the contrary, the Second Amendment limits, but "by no means eliminates," the ability of states to "experiment[] with reasonable firearms regulations." *McDonald v. City of Chicago*, 561 U.S. 742, 785 (2010).

The District of Columbia's requirement that applicants for a concealed handgun permit must have a "good reason" or "proper reason" to carry a handgun in public is such a reasonable regulation. Assuming that the law regulates conduct falling within the scope of the Second Amendment's protection, this Court has held that intermediate scrutiny applies to laws that do not severely burden the core Second Amendment right to possession of a handgun for self-defense in the home. The District of Columbia's law is thus constitutional so long as it is "substantially related to an important governmental objective." *Heller v. District of Columbia*, 670 F.3d 1244, 1257-58 (D.C. Cir. 2011) ("*Heller II*").

The district court correctly identified intermediate scrutiny as the applicable standard in this circuit, but then proceeded to misapply the standard in at least two

critical ways. To begin with, the district court treated intermediate scrutiny as effectively synonymous with the least-restrictive-alternative approach applied in the strict scrutiny context. Under intermediate scrutiny, however, the chosen means need not be the least restrictive means available to serve the District's interest; it is sufficient if they are reasonably or substantially related to that objective.

Furthermore, the district court mistakenly concluded that courts only owe deference to a legislature's judgment about whether there is a substantial government interest, not about whether the challenged regulation is a reasonable fit to such an interest. That conclusion is at odds with governing case law from the Supreme Court and this Court. Because it is not a court's responsibility to weigh the evidence to determine the best policy, judicial review is limited to determining if the legislature "has drawn reasonable inferences based on substantial evidence." *Heller II*, 670 F.3d at 1259 (internal quotation omitted).

Finally, the Appellees' contention below that the District's law should be analyzed under the framework of the prior restraint doctrine, which has been developed in the context of First Amendment challenges based on principles unique to free speech considerations, has been properly rejected by every Court that has considered it. The call for application of that doctrine in the Second Amendment context misapprehends both the purpose of the doctrine and important differences between the First and Second Amendments.

# ARGUMENT

## I. THE INDIVIDUAL RIGHT TO KEEP AND BEAR ARMS FOR SELF-DEFENSE PROTECTED BY THE SECOND AMENDMENT DOES NOT PRECLUDE REASONABLE REGULATION OF FIREARMS.

The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The right to keep and bear arms, though codified in the Second Amendment, predates the Bill of Rights; it is a pre-existing right that is neither "granted by the Constitution" nor "dependent upon that instrument for its existence." *Heller*, 554 U.S. at 592 (quoting *United States v. Cruikshank*, 92 U.S. 542, 553 (1876)). Thus, the scope of the right is not defined exclusively by the Second Amendment's text, but by the scope it was "understood to have when the people adopted [the amendment]." *Id.* at 634-35. As a result, although the text of the amendment does not set forth any limitation on the right, it has never been interpreted as "a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626.

The Supreme Court, in *Heller* and *McDonald*, repeatedly emphasized that the Second Amendment does not stand apart from other rights enumerated in the Constitution; it is neither "subject to an entirely different body of rules than the other Bill of Rights guarantees," *McDonald*, 561 U.S. at 780, nor is it a superior right entitled to more vigorous judicial enforcement. Just as the First Amendment is

4

subject to numerous limitations unstated in its text, the "Second Amendment is no different." *Heller*, 554 U.S. at 635. "Thus, we do not read the Second Amendment to protect the right of citizens to carry arms for *any sort* of confrontation, just as we do not read the First Amendment to protect the right of citizens to speak for *any purpose*." *Id.* at 595 (emphasis in original); *see also McDonald*, 561 U.S. at 802 (Scalia, J., concurring) ("No fundamental right—not even the First Amendment—is absolute.").

The codification of the right to keep and bear arms in the Second Amendment, and as incorporated against the states through the Fourteenth Amendment, necessarily "takes certain policy choices off the table," including a complete ban on the possession of all handguns kept for self-defense within the home. *Heller*, 554 U.S. at 636. But taking certain policy choices off the table does not leave the table completely bare. The people's democratically chosen representatives are not forbidden from considering every policy proposal that might in some way limit the use or enjoyment of even fundamental constitutional rights. Just as legislative judgments about economic matters "cannot be ignored or undervalued simply because [appellants] cas[t] [their] claims under the umbrella of the First Amendment," *Turner Broadcasting Sys., Inc. v. FCC*, 520 U.S. 180, 224 (1997) ("*Turner II*") (alterations in original; internal quotation omitted), so legislative judgments about matters of public safety cannot be ignored or undervalued when

challenged under the umbrella of the Second Amendment. Indeed, the Supreme Court has made clear that although constitutional protection of the Second Amendment right imposes "limits" on policy alternatives, it "by no means eliminates" the states' "ability to devise solutions to social problems that suit local needs and values." *McDonald*, 561 U.S. at 784-85. The Court has thus affirmed that "State and local experimentation with reasonable firearms regulations will continue under the Second Amendment." *Id.* at 785 (internal citation omitted).

II.  **ASSUMING THE DISTRICT OF COLUMBIA'S LAW REGULATES CONDUCT WITHIN THE SCOPE OF THE SECOND AMENDMENT, THE CORRECT STANDARD UNDER THIS COURT'S PRECEDENTS IS INTERMEDIATE SCRUTINY.**

This Court, like several other circuits, has adopted a two-pronged approach to analyzing Second Amendment claims. *Heller II*, 670 F.3d at 1252; *see also Woollard v. Gallagher*, 712 F.3d 865, 874-75 (4th Cir. 2013), *cert. denied*, 134 S. Ct. 422 (2013); *United States v. Reese*, 627 F.3d 792, 800-01 (10th Cir. 2010); *United States v. Marzzarella*, 614 F.3d 85, 89 (3d Cir. 2010); *United States v. Skoien*, 614 F.3d 638, 639-43 (7th Cir. 2010) (en banc). Under this approach, this Court "ask[s] first whether a particular provision impinges upon a right protected by the Second Amendment." *Heller II*, 670 F.3d at 1252. "[I]f it does, then [this Court] go[es] on to determine whether the particular provision passes muster under the appropriate level of constitutional scrutiny." *Id.*

As an initial matter, it is not clear that the District's "good reason" requirement regulates conduct protected by the Second Amendment. This Court, like many others, has not yet determined whether the protections afforded by the Second Amendment extend outside the home. *See Dearth v. Lynch*, 791 F.3d 32, 40-41 (D.C. Cir. 2015) (Henderson, J., dissenting) (recognizing that the scope of the Second Amendment outside the home remains undecided in this Circuit); *see also Woollard*, 712 F.3d at 867 (assuming but not deciding that right has some application outside the home); *Kachalsky v. Cnty. of Westchester*, 701 F.3d 81, 89, 96 (2d Cir. 2012), *cert. denied*, 133 S. Ct. 1806 (2013) (proceeding on the "assumption" that right has "*some* application" outside home).

Moreover, even assuming the pre-existing right codified in the Second Amendment does extend outside the home, that does not necessarily suggest that it includes a broad right to carry in public an easily-concealable, highly-lethal firearm based only on a subjectively-held belief that it may become useful for self-defense. To the contrary, the long history of significant restrictions on firearms in public demonstrates that the pre-existing right was not generally understood to extend so far. *See* Patrick J. Charles, *The Faces of the Second Amendment Outside the Home: History Versus Ahistorical Standards of Review*, 60 Clev. St. L. Rev. 1, 4, 8-40 (2012) (discussing the history of restrictions on the public carrying of firearms in the United States).

Assuming that the regulation at issue does implicate the protections of the Second Amendment, the provision is still constitutional if it "passes muster under the appropriate level of constitutional scrutiny." *Heller II*, 670 F.3d at 1252. The proper level of scrutiny, in turn, "depends on the nature of the conduct being regulated and the degree to which the challenged law burdens the right." *Id.* at 1257 (quoting *United States v. Chester*, 628 F.3d 673, 682 (4th Cir. 2010)). This Court has adopted intermediate scrutiny as the standard applicable to firearms regulations that implicate the Second Amendment but that do not impose a "substantial burden" on the "core right" protected by the Amendment. *Id.* at 1257-58. The vast majority of other circuits to consider the issue have come to the same conclusion. *See, e.g.*, *Woollard*, 712 F.3d at 878-79; *Kachalsky*, 701 F.3d at 96-97; *Marzzarella*, 614 F.3d at 97-98; *National Rifle Ass'n v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 207 (5th Cir. 2012); *United States v. Masciandaro*, 638 F.3d 458, 471 (4th Cir. 2011); *United States v. Williams*, 616 F.3d 685, 692 (7th Cir. 2010); *Reese*, 627 F.3d at 802.[1]

---

[1] Two circuit court panels have expressly rejected the application of intermediate scrutiny; both decisions were subsequently vacated, and the full courts have taken up consideration of those cases. In *Peruta v. San Diego*, a divided Ninth Circuit panel criticized the intermediate scrutiny standard adopted by the Second, Third, and Fourth Circuits. 742 F.3d 1144, 1175-78 (9th Cir. 2014), *vacated by* 781 F.3d 1106 (9th Cir. 2015). *En banc* review of that case is currently pending. Similarly, a Sixth Circuit panel adopted strict scrutiny for Second Amendment challenges, over the objection of a member of the panel who nonetheless concurred in the judgment, but that decision too has been vacated pending *en banc*

The District of Columbia's "good reason" requirement for concealed handgun permits does not impose a "substantial burden" on the Second Amendment's "core right." *Heller II*, 670 F.3d at 1257-58. "[T]he 'core lawful purpose' protected by the Second Amendment," as this Court has explained, is the right to keep a handgun "for the purpose of self-defense in the home." *Id.* at 1255 (quoting *Heller*, 554 U.S. at 630). The regulatory scheme in question applies exclusively outside of the home, and thus does not implicate that core right at all. According to this Court's precedents, that necessitates application of, at most, intermediate scrutiny.

Other circuit courts are in agreement: "The state's ability to regulate firearms . . . is qualitatively different in public than in the home." *Kachalsky*, 701 F.3d at 94. "[A]s we move outside the home," after all, "firearms rights have always been more limited because public safety interests often outweigh individual interests in self-defense." *Masciandaro*, 638 F.3d at 470. Indeed, "[t]here is a longstanding tradition of states regulating firearm possession and use in public because of the dangers posed to public safety." *Kachalsky*, 701 F.3d at 94-95 (citing Saul Cornell & Nathan DeDino, *A Well Regulated Right: The Early American Origins of Gun Control*, 73 Fordham L. Rev. 487, 502–16 (2004)). In light of this longstanding tradition and the risks to public safety if an individual uses firearms irresponsibly, the Second

---

consideration. *Tyler v. Hillside Cnty. Sheriff's Dep't*, 775 F.3d 308 (6th Cir. 2014), *rehearing en banc granted and opinion vacated* April 21, 2015.

Amendment should not, and does not, "handcuff[] lawmakers' ability to prevent armed mayhem in public places." *Masciandaro*, 638 F.3d at 471 (internal quotation marks omitted). Misreading the Second Amendment as doing so would risk allowing "some unspeakably tragic act of mayhem because in the peace of our judicial chambers we miscalculated as to Second Amendment rights." *Id.* at 475.

Applying essentially the same precepts adopted by this Court, three other circuits have already concluded that concealed carry laws similar to the District's are subject to, at most, intermediate scrutiny because they do not infringe on the Second Amendment's core right to self-defense in the home. *See Drake v. Filko,* 724 F.3d at 435-36 (3d Cir. 2013) (favoring intermediate scrutiny because "[i]f the Second Amendment protects the right to carry a handgun outside the home for self-defense at all, that right is not part of the core of the Amendment" (internal quotation marks omitted)); *Woollard*, 712 F.3d at 876 (applying intermediate scrutiny to Maryland's good-and-substantial-reason requirement for public carry because it involves conduct outside the home); *Kachalsky*, 701 F.3d at 96 ("Because our tradition so clearly indicates a substantial role for state regulation of the carrying of firearms in public, we conclude that intermediate scrutiny is appropriate in this case."). This Court's own precedent compels the same result here. *See Heller II*, 670 F.3d at 1257-58.

## III. The District Court Misapplied this Court's Intermediate Scrutiny Standard.

The district court correctly found that, assuming the Second Amendment right is implicated, the regulation at issue is subject to at most intermediate scrutiny. *Wrenn v. District of Columbia*, __ F. Supp. 3d ___, 2015 WL 3477748, at *6 (D.D.C. May 18, 2015). Thus, under this Court's articulation of intermediate scrutiny, the government was required to show that the challenged regulations are "substantially related to an important governmental objective." *Heller II*, 670 F.3d at 1258 (internal quotation omitted).

Drawing from cases applying intermediate scrutiny to content-neutral regulations under the First Amendment, this Court has instructed that the "fit" required between the challenged regulation and the governmental interest need not employ "the least restrictive means" available, but requires "a means narrowly tailored to achieve the desired objective." *Id.* (quoting *Board of Trustees of the State of New York v. Fox*, 492 U.S. 469, 480 (1989) and citing *Ward v. Rock Against Racism*, 491 U.S. 781, 782-83 (1989)). "The requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial governmental interest that would be achieved less effectively absent the regulation, and the means chosen are not substantially broader than necessary to achieve that interest."[2] *Id.* (quoting

---

[2] The *Amici* States observe that this particular formulation of the intermediate scrutiny standard differs from that adopted by other circuit courts. *See* discussion

11

*Ward*, 491 U.S. at 782-83).  Moreover, in determining whether a law satisfies intermediate scrutiny, this Court also "accord[s] substantial deference" to the legislature's judgment, but must "assure that, in formulating its judgments, [the legislature] has drawn reasonable inferences based on substantial evidence."  *Id.* at 1259 (quoting *Turner II*, 520 U.S. at 195).

Although the district court identified the correct standard, it misapplied the standard in two critical ways.  First, purporting to apply intermediate scrutiny, the district court in fact treated this Court's "narrowly tailored" requirement as effectively identical to the least-restrictive-alternative test employed under strict scrutiny.  Although the district court cited the correct standard at one point—referring obliquely to *Turner II*'s requirement that the statute "not burden the right *substantially* more than was necessary to further its important interests," *Wrenn*, 2015 WL 3477748 at *7 (emphasis added)—when the district court actually applied that standard, it omitted the word "substantially" and required the District to show that its law was "not broader than necessary to achieve its substantial government interest."  *Wrenn*, 2015 WL 3477748 at *7; *see also id.* at *6 (paraphrasing this Court's holding in *Heller II* as "the District of Columbia had to show that its firearms registration requirements were not broader than necessary to achieve its substantial

_____

below at pages 13-14.  However, in light of this Court's holding in *Heller II*, the *Amici* States accept this formulation as the governing standard in this case.

government interest"). In doing so, the district court effectively converted the intermediate scrutiny standard actually adopted by this Court and many of its sister circuits into strict scrutiny in all but name.

In applying the "narrowly tailored" element of this Court's intermediate scrutiny standard, this Court has explicitly held that, unlike under strict scrutiny, the government does not need to "employ[] . . . the least restrictive means." *Heller II*, 670 F.3d at 1258 (quoting *Fox*, 492 U.S. at 480). Other federal appellate courts have articulated the applicable standard somewhat differently,[3] but all of them generally require the government to demonstrate a fit that is reasonable, not perfect, between the challenged regulation and a government interest that is "important," "substantial," or "significant." *See, e.g.*, *Drake*, 724 F.3d at 436 (requiring a government objective that is "significant," "important," or "substantial" and a "fit" between the challenged regulation and the asserted objective that "need not be perfect," but is "reasonable" (footnote and internal quotations omitted)); *Woollard*, 712 F.3d at 878-79 ("fit" must be "reasonable, not perfect, and is shown by the State

_____

[3] These circuits do not use the term "narrowly tailored" to describe the intermediate scrutiny test applicable in the Second Amendment context. The Second Circuit has expressly rejected that term, *Kachalsky*, 701 F.3d at 97 (stating that "we are not required to ensure that the legislature's chosen means is 'narrowly tailored'"), and others simply do not use it, *see, e.g.*, *Marzzarella*, 614 F.3d at 97-98; *Woollard*, 712 F.3d 865; *National Rifle Ass'n*, 700 F.3d 185; *Jackson v. City of San Francisco*, 746 F.3d 953 (9th Cir. 2014); *Reese*, 627 F.3d 792, 804 n.4 (discussing "narrowly tailored" only in connection with the strict scrutiny analysis).

demonstrating that its interests are "substantially served by the challenged law" (internal quotations and citations omitted)); *Kachalsky*, 701 F.3d at 96-97 (upholding regulations if they are "substantially related to the achievement of an important government interest"); *see also Jackson*, 746 F.3d at 965 (summarizing common elements of various articulations of intermediate scrutiny as requiring the government's objective to be "significant, substantial, or important" and requiring "a reasonable fit between the challenged regulation and the asserted objective"); *National Rifle Ass'n*, 700 F.3d at 207 (government must demonstrate that "there is a reasonable fit between the law and an important government objective"); *Williams*, 616 F.3d at 692 (requiring a firearms regulation to be "substantially related" to an "important" objective).

Both this Court and these other circuits thus agree that the means chosen by the government need not be the least restrictive means available to serve the state's interest; rather, it is sufficient if they are substantially related to that objective. *See, e.g.*, *Woollard*, 712 F.3d at 878-79; *Kachalsky*, 701 F.3d at 97; *Marzzarella*, 614 F.3d at 97-9. What is more, the Supreme Court has expressly held that the intermediate scrutiny standard in the First Amendment context, on which this Court relied in *Heller II*, does not require "a regulation" to "be the least speech-restrictive means of advancing the Government's interest." *Turner Broadcasting Sys., Inc. v. FCC*, 512 U.S. 622, 662 (1994) ("*Turner I*"); *see also Turner II*, 520 U.S. at 217-18

14

(holding that a content-neutral regulation subject to intermediate scrutiny will not be invalidated just because "some alternative solution is marginally less intrusive on a speaker's First Amendment interests"). Instead, according to the Court, "the requirement of narrow tailoring is satisfied so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Turner I*, 512 U.S. at 662 (quotation and citations omitted); *Turner II*, 520 U.S. at 217-18. The district court thus erred by requiring the District of Columbia to "demonstrate that its 'good reason'/'proper reason' requirement is not broader than necessary to achieve its substantial government interest in preventing crime and protecting public safety." *Wrenn*, 2015 WL 3477748 at *7.

A second, closely related, error in the district court's reasoning is its view that deference is due to the legislature's judgment only when addressing the first prong of the intermediate scrutiny test—whether there is an important government interest at stake—and not in analyzing whether there is a reasonable fit between the challenged regulation and such interest. *See id.* Both the Supreme Court and this Court have refuted the district court's erroneous conclusion.

"In reviewing the constitutionality of a statute, courts must accord substantial deference to the predictive judgments of Congress." *Turner II*, 520 U.S. at 195. The Court in *Turner II* held that "[j]udgments about how competing economic interests are to be reconciled . . . are for Congress to make," and it is not for courts to "displace

[the legislature's] judgment . . . with our own, so long as its policy is grounded on reasonable factual findings supported by evidence that is substantial for a legislative determination." *Id.* at 224. Thus, when the Supreme Court's analysis in *Turner II* turned to the "fit" prong—actually reconciling competing economic interests, as opposed to just deciding whether the government's interest was substantial—the Court continued to defer to legislative judgment, emphasizing that the "record reflects a deliberate congressional choice to adopt the present levels of protection, *to which this Court must defer*." *Id.* at 218 (emphasis added). The Court also noted that the "less rigorous" intermediate scrutiny analysis "affords the Government latitude *in designing a regulatory solution*," *Turner II*, 520 U.S. at 213 (emphasis added), and allows the Government to "employ the means of its choosing," *id.* at 213-14.

Moreover, if the Supreme Court's decision in *Turner II* were not already clear enough, this Court has expressly held in the Second Amendment context that "[i]n assessing th[e] 'fit'" between the challenged regulation and the government's interest, it will "afford 'substantial deference to the predictive judgments of Congress.'" *Schrader v. Holder*, 704 F.3d 980, 990 (D.C. Cir. 2013) (quoting *Turner I*, 512 U.S. at 665); *see also Dearth*, 791 F.3d at 45 (Henderson, J., dissenting) (same). Deference to legislative judgments is accordingly owed with

respect to both identification of the government interest *and* the fit of the government's chosen means to further that interest.

Most other federal appellate courts have agreed with this Court that deference is owed to the legislature not only in determining whether important governmental interests are at issue, but also in determining whether the means chosen are a "reasonable fit" with or "substantially related to" those interests. *See, e.g.*, *Kachalsky*, 701 F.3d at 97 (in determining whether the challenged regulation "is substantially related to" the state's important governmental interests "'substantial deference to the predictive judgments of [the legislature]' is warranted" (quoting *Turner II*, 520 U.S. at 195)); *Drake*, 724 F.3d at 436-37 ("When reviewing the constitutionality of statutes, courts accord substantial deference to the [legislature's] predictive judgments." (internal quotation omitted)); *Woollard*, 712 F.3d at 881 (in assessing "reasonable fit," deferring to the "considered view of the General Assembly" that the regulation struck the appropriate balance with the government interests).

The district court thus improperly applied a standard that was tantamount to strict scrutiny to find that the District of Columbia's reasonable restrictions on the public carrying of firearms were not substantially related to an important government interest. In doing so, it failed even to discuss the intermediate scrutiny analysis of the only three non-vacated federal appellate court decisions to have

applied that analysis to similar laws—*Woollard*, *Kachalsky*, and *Drake*—while instead relying heavily on the Ninth Circuit's now (and then)-vacated decision in *Peruta* and the dissenting opinion in the Third Circuit's decision in *Drake*. *See Wrenn*, 2015 WL 3477748 at *7-8 & n.8 (citing *Peruta*, 742 F.3d at 1177 and *Drake*, 724 F.3d at 454 (Hardiman, C.J., dissenting) and declining to discuss the controlling decisions of the other circuits, which it found "uninstructive").

In fact, as the Fourth Circuit detailed in its decision in *Woollard*, laws such as that challenged here "advance[] the objectives of protecting public safety and preventing crime" in several ways. *Woollard*, 712 F.3d 879-80. They decrease the availability of handguns via theft, lessen the likelihood that basic confrontations will turn deadly, avoid the potentially-deadly confusion that can result from the introduction of a third person with a handgun into a confrontation between criminals and police, and curtail the presence of handguns during routine police-citizen encounters. *Id.* Assuming that the Second Amendment applies to the challenged law, the District of Columbia's "good reason"/"proper reason" requirement satisfies a correct application of intermediate scrutiny.

## IV. PRIOR RESTRAINT DOCTRINE DOES NOT APPLY OUTSIDE OF THE FIRST AMENDMENT CONTEXT.

The district court properly refused to apply First Amendment prior restraint doctrine in this case. Although this Court and a number of others have looked to First Amendment jurisprudence as a guide in identifying and articulating the

standard of scrutiny to be applied to Second Amendment challenges, there is no logical justification for "import[ing] the First Amendment's idiosyncratic doctrines wholesale into a Second Amendment context, where, without a link to expressive conduct, they will often appear unjustified." *Chester*, 628 F.3d at 687 (Davis, J., concurring); *see also Kachalsky*, 701 F.3d at 91 ("We are hesitant to import substantive First Amendment principles wholesale into Second Amendment jurisprudence.").

The doctrine of prior restraint, in particular, is "specific to the First Amendment and stems from the substantive First Amendment restrictions." *Hightower v. City of Boston*, 693 F.3d 61, 81 (1st Cir. 2012). "At the root of this long line of precedent is the time-tested knowledge that in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship." *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 759 (1988) (describing prior restraints as licensing laws granting officials "substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers"). To be a prior restraint, the challenged law "must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of . . . censorship." *Id.* The doctrine is tailored to the unique demands of the First Amendment, and has its roots in the centuries-old

"struggle in England, directed against the legislative power of the licenser, result[ing] in renunciation of the censorship of the press." *Near v. Minnesota*, 283 U.S. 697, 713 (1931).

No similar historical justification exists for applying the doctrine in the context of the Second Amendment right. Unlike in the First Amendment context, where the government can "adequately serve[]" its interests by imposing "penalties . . . after freedom to speak has been so grossly abused that its immunity is breached," *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 180-81 (1968), a government has no "adequate[]" remedy to redress the misuse of firearms. Such misuse, after all, may well result in an "unspeakably tragic act of mayhem," particularly "as one move[s] the right from the home to the public square." *Masciandaro*, 638 F.3d at 475-76. For these reasons, every court to consider the issue has refused to import the prior restraint doctrine into the Second Amendment. *See, e.g.*, *Drake*, 724 F.3d at 435; *Woollard*, 712 F.3d at 883 n.11; *Kachalsky*, 701 F.3d at 91-92.

What is more, as the Second Circuit has ably articulated, "this case would be a poor vehicle" for a prior restraint claim in any event. *Kachalsky*, 701 F.3d at 92. The "plaintiffs' complaint is not that the [good] cause requirement is standardless; rather, they simply do not like the standard—that licenses are limited to those with a special need for self-protection." *Id.* The District's good reason requirement is a

reasonable regulation of firearms well within the District's power to enact under the Second Amendment.

## CONCLUSION

The judgment of the United States District Court for the District of Columbia should be reversed.

Respectfully submitted,

BRIAN E. FROSH
Attorney General of Maryland

/s/ Joshua N. Auerbach
MATTHEW J. FADER
  *Of counsel* (not admitted in DC)
PATRICK B. HUGHES
  *Of counsel* (not admitted in DC)
JOSHUA N. AUERBACH
Assistant Attorneys General
Office of the Attorney General
200 St. Paul Place, 20th Floor
Baltimore, Maryland 21202
Phone: (410) 576-7906
Fax: (410) 576-6955
mfader@oag.state.md.us

September 3, 2015

Attorneys for *Amicus Curiae*
State of Maryland

Additional counsel listed on next page

Additional Counsel

KAMALA D. HARRIS
*Attorney General of California*
1300 I Street
Sacramento, California 95814

LISA MADIGAN
*Attorney General of Illinois*
100 West Randolph, 12th Floor
Chicago, Illinois 60601

GEORGE JEPSEN
*Attorney General of Connecticut*
55 Elm Street
Hartford, Connecticut 06106

MAURA HEALEY
*Attorney General of Massachusetts*
One Ashburton Place
Boston, Massachusetts 02108

DOUGLAS S. CHIN
*Attorney General of Hawaii*
425 Queen Street
Honolulu, Hawaii 96813

ERIC T. SCHNEIDERMAN
*Attorney General of New York*
120 Broadway
New York, New York 10271

**UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**
Type-Volume Limitation, Typeface Requirements, and Type Style Requirements

     This *Amicus Curiae* brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 4,875 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

     This *Amicus Curiae* brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because the brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

/s/ Joshua N. Auerbach
JOSHUA N. AUERBACH
Attorney for *Amicus Curiae*
State of Maryland

Dated: September 3, 2015

**CERTIFICATE OF SERVICE**

     I certify that on September 3, 2015, electronic copies of this brief were served on all parties registered through the CM/ECF system.

/s/ Joshua N. Auerbach
JOSHUA N. AUERBACH
Attorney for *Amicus Curiae*
State of Maryland

Dated: September 3, 2015