No. 15-7057
SCHEDULED FOR ORAL ARGUMENT NOVEMBER 20, 2015

## In the United States Court of Appeals for the District of Columbia Circuit

═══════════════════════════

BRIAN WRENN, JOSHUA AKERY, TYLER WHIDBY,
AND SECOND AMENDMENT FOUNDATION, INC.,

Plaintiffs-Appellees,

v.

DISTRICT OF COLUMBIA AND CATHY LANIER,

Defendants-Appellants.

═══════════════════════════

Appeal from an Order of the
United States District Court for the District of Columbia
The Hon. Frederick J. Scullin, Jr., Senior District Judge
(Dist. Ct. No. 1:15-cv-162-FJS)

───────────────────────

APPELLEES' SUPPLEMENTAL BRIEF

───────────────────────

Alan Gura
GURA & POSSESSKY, PLLC
105 Oronoco Street
Suite 305
Alexandria, VA 22314
703.835.9085/703.997.7665

October 5, 2015                    Counsel for Appellees

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

A.      PARTIES AND AMICI

Plaintiffs below were Brian Wrenn, Joshua Akery, Tyler Whidby, and Second Amendment Foundation, Inc. All plaintiffs are Appellees before this Court.

Defendants below were Cathy Lanier and the District of Columbia. All Defendants are Appellants before this Court.

No amici appeared in the District Court below.

Amici for Appellants in this Court are Brady Center to Prevent Gun Violence, Law Center to Prevent Gun Violence, Violence Policy Center, DC Appleseed Center for Law and Justice, DC for Democracy, DC Vote, League of Women Voters of the District of Columbia, Anthony A. Williams, Everytown for Gun Safety, and the states of California, Maryland, Illinois, Connecticut, Massachusetts, Hawaii and New York.

As of this writing, the National Rifle Association has filed notice of intent to appear as amicus for the Appellees.

B.   RULINGS UNDER REVIEW

The ruling under review is the Memorandum Decision and Order of the United States District Court for the District of Columbia, per the Hon. Frederick J. Scullin, Jr., Dist. Ct. Dkt. 13, entered May 18, 2015, granting Plaintiff-Appellees' motion for preliminary injunction. The decision is not yet reported, but is available at 2015 U.S. Dist. LEXIS 71383. The ruling under review being appealed is set forth in the Joint Appendix ("JA") at 228-50.

C.   RELATED CASES

The case on review has not been before this Court, and no related cases are known to be pending.

This case was related to *Palmer* v. *District of Columbia*, U.S. Dist. Ct., D.D.C. No. 09-1482-FJS. In *Palmer*, which involved the same Defendants, Plaintiff SAF, and Plaintiff SAF's members, the District Court struck down the city's statutory scheme addressing the carrying of handguns in public for self-defense. The District Court had enjoined the City's handgun carrying prohibition until a constitutional licensing system was in place. The case involved motions to enforce that order,

concerning the same regulations here at issue, which were pending before the District Court when this case was filed.

The two cases identified by amicus curiae Brady Center, et al., as related are not, in fact related. *Smith* v. *District of Columbia*, D.D.C. No. 1:15-CV-737-RCL, is a class action for damages arising from the City's enforcement of its previous handgun ban. As best as Plaintiffs understand it, *Common Purpose, USA, Inc.* v. *Lynch*, D.D.C. No. 1:15-CV-1327-KBJ, asserts, on a reading of the Federalist Papers, that the District of Columbia's firearms laws are unconstitutional because they tolerate private firearms ownership unconnected to militia service.

CORPORATE DISCLOSURE STATEMENT

Plaintiff-Appellant Second Amendment Foundation, Inc., ("SAF") has no parent corporations. No publicly traded company owns 10% or more of its stock.

SAF, a tax-exempt organization under § 501(c)(3) of the Internal Revenue Code, is a non-profit educational foundation incorporated in 1974 under the laws of the State of Washington. SAF seeks to preserve the effectiveness of the Second Amendment through educational and legal action programs. SAF has over 650,000 members and supporters residing throughout the United States.

# TABLE OF CONTENTS

Certificate as to Parties, Rulings, and Related Cases. . . . . . . . . . . . . . . i

Corporate Disclosure Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Summary of Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    I.      The "Judicial Duties" That Were the Subject of Judge
           Scullin's *Palmer* Designation and Assignment Included
           Ordinary Related Case Duties Under LCvR 40.5. . . . . . . . 6

    II.     Even if Judge Scullin Was Not Duly Appointed to This
           Case, His Order's Validity Cannot Be Questioned as He
           Acted as a Judge De Facto of the District Court. . . . . . . . 11

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

Cases

*Ball* v. *United States*,
    140 U.S. 118 (1891). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ex parte Ward*,
    173 U.S. 452 (1899). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Frad* v. *Kelly*,
    302 U.S. 312 (1937). . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9, 14-16

*Glidden Co.* v. *Zdanok*,
    370 U.S. 530 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*In re Brown*,
    346 F.2d 903 (5th Cir. 1965).. . . . . . . . . . . . . . . . . . . . . . . . . . 11

*In re IKO Roofing Shingle Prods. Liab. Litig.*,
    757 F.3d 599 (7th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Johnson* v. *Manhattan R. Co.*,
    289 U.S. 479 (1933). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Leary* v. *United States*,
    268 F.2d 623 (9th Cir. 1959) (en banc). . . . . . . . . . . . . . . . . 15, 16

*McDowell* v. *United States*,
    159 U.S. 596 (1895). . . . . . . . . . . . . . . . . . . . . . . . . . . . 11-13, 15

*Nguyen* v. *United States*,
    539 U.S. 69 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-15

*Authorities upon which we chiefly rely are marked with asterisks.

vi

Order, *Palmer* v. *District of Columbia*,
    D.D.C. 09-1482, Dkt. 92. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Palmer* v. *District of Columbia*,
    59 F. Supp. 3d 173 (D.D.C. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Rakes* v. *United States*,
    163 F.2d 771 (4th Cir. 1947) (per curiam) . . . . . . . . . . . . . . . 12, 13

*Ryder* v. *United States*,
    515 U.S. 177 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Two Guys from Harrison-Allentown, Inc.* v. *McGinley*,
    266 F.2d 427 (3d Cir. 1959). . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 12

*United States ex rel. Fehsenfeld* v. *Gill*,
    292 F. 136 (4th Cir. 1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States* v. *Royals*,
    777 F.2d 1089 (5th Cir. 1985).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States* v. *Teresi*,
    484 F.2d 894 (7th Cir. 1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States* v. *Wey*,
    895 F.2d 429 (7th Cir. 1990).. . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12


Statutes and Rules

28 U.S.C. § 294 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 9

28 U.S.C. § 296. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5-7, 9

LCvR 40.5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 7-10

LCvR 40.5(a)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

LCvR 40.5(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

LCvR 40.5(c)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Other Authorities

Defendant's Motion for Reassignment,
    *Smith* v. *District of Columbia*,
    D.D.C. No. 15-737, Dkt. 7 . . . . . . . . . . . . . . . . . . . . . . . . . 5

Petition, *In re Palmer*, D.C. Cir. No. 13-5317.. . . . . . . . . . . . . . . . . . . 2

INTRODUCTION

In answer to the Court's questions:

(1)     The July 1, 2011 Notice of Designation and Assignment,
designating Judge Scullin to "perform judicial duties" in
*Palmer* v. *District of Columbia*, D.D.C. No. 09-1482, bound
Judge Scullin to obey all valid court rules, without
exception. 28 U.S.C. § 296.[1] Among these, LCvR 40.5
obligated Judge Scullin, acting as the judge in *Palmer*, to
accept related case assignments. The July 1, 2011 Notice of
Designation and Assignment thus fully authorized Judge
Scullin to hear and decide this case for all purposes.

(2)     Even if Judge Scullin was not so authorized, jurisdiction
inheres in courts, not people. Because the District Court had
jurisdiction, and as Judge Scullin is an Article III judge who
could have been designated to the case, his order was in any
event plainly valid under the judge de facto doctrine.

---

[1]All statutory citations are to Title 28 of the United State Code
unless otherwise noted.

On August 6, 2009, Plaintiff-Appellee Second Amendment
Foundation, Inc. ("SAF") and four of its members brought suit against
Defendants-Appellants, challenging the District of Columbia's handgun
carry ban. *Palmer* v. *District of Columbia*, D.D.C. No. 09-1482. Cross-
motions for summary judgment stood fully briefed and ready for
decision as of October 6, 2009.

By July 1, 2011, the District Court having failed to decide the case,
the Chief Justice appointed Judge Scullin to "perform judicial duties" in
*Palmer* (among other cases), and "for such time as needed . . .
thereafter as required to complete unfinished business." Designation
and Assignment, *Palmer*, Dkt. 20. But years continued passing by, and
still nothing happened. *See* Petition, *In re Palmer*, D.C. Cir. No. 13-
5317.

On July 26, 2014, with *Palmer* poised to enter its sixth year, Judge
Scullin decided the case. Holding that people must have some way of
exercising the right to bear arms, Judge Scullin enjoined the District
from enforcing its carry prohibition "unless and until such time as the
District of Columbia adopts a licensing mechanism consistent with

constitutional standards enabling people to exercise their Second Amendment right to bear arms." *Palmer* v. *District of Columbia*, 59 F. Supp. 3d 173, 183 (D.D.C. 2014) (footnoted omitted).

The District responded by enacting the laws challenged in this case. And it appealed *Palmer* after having failed to obtain the District Court's reconsideration. Meanwhile, *Palmer* plaintiffs argued that the new laws were not new at all, and in any event did not comply with the injunction in that the "new" (old) licensing mechanism failed constitutional standards. They sought further relief from the District Court in *Palmer*, both in the form of another injunction, and by seeking to have the Defendants held in contempt of the *Palmer* injunction.

On February 3, 2015, while the *Palmer* enforcement motions were still pending, Plaintiffs brought this action. As required by LCvR 40.5(b)(2), Plaintiffs noticed the still-pending *Palmer* case as related.[2] Defendants were required to serve any objection to the related case designation with their "first responsive pleading or motion." *Id.* They

---

[2]"Civil, including miscellaneous, cases are deemed related when the earliest is still pending on the merits in the District Court and they . . . (ii) involve common issues of fact, or (iii) grow out of the same event or transaction . . . ." LCvR 40.5(a)(3).

never did so, despite moving for an extension of time on February 12, 2015 and answering on June 1, 2015.

Presumably, the Clerk of the District Court presented this case to Judge Scullin, as the judge presiding in *Palmer*, "the oldest related case." LCvR 40.5(c)(1). As part of his judicial duties in *Palmer*, it was for Judge Scullin to determine as an initial matter whether the cases were related, or whether he should transfer the new case back for reassignment. *Id.* But the Calendar and Case Management Committee would have randomly reassigned this case only if it agreed with Judge Scullin that the cases were unrelated. "If the Calendar and Case Management Committee finds that good cause for the transfer does not exist, it may return the case to the transferring judge." *Id.*

On May 18, 2015, the same day that Judge Scullin disposed of the outstanding motions in *Palmer*, plaintiffs in *Smith* v. *District of Columbia*, D.D.C. No. 15-737, prompted that case's assignment to Judge Scullin by noticing it as related to *Palmer*. The District of Columbia timely objected: "*Palmer* is no longer 'pending on the merits' because the District has withdrawn its appeal of that decision and the Court has denied plaintiffs' motions for contempt and for a permanent

injunction. *See Palmer* Docket [Doc. No. 92]." Defendant's Motion for Reassignment, *Smith* v. *District of Columbia*, D.D.C. No. 15-737, Dkt. 7 at 4.[3] *Palmer* was no longer pending "on the merits," because it was pending only the question of attorney fees. *Id.*

Judge Scullin agreed with the District's objection, and the District obtained its desired reassignment of *Smith* (to Judge Lamberth).

SUMMARY OF ARGUMENT

It is well-established that visiting district court judges enjoy the full authority, and have the same obligations under the host district's rules, as do resident judges. A regular judge of the District Court, assuming judicial duties in a case, cannot refuse a related case assignment under LCvR 40.5(c)(1) when the Calendar and Case Management Committee insists—and neither can a visiting judge. Related case assignments are simply part of the territory that comes with being a judge in any case.

A fair reading of the Chief Justice's designation, consistent with the liberal construction afforded Section 294 and Section 296's plain text, encompasses Judge Scullin's uncontested assignment to hear this case.

---

[3]The District's motion incorrectly stated that *Smith* plaintiffs had filed their designation on May 14. ECF shows otherwise.

There can be no serious question that this case was properly related to *Palmer.*

Moreover, even if Judge Scullin was not specifically designated to hear this case, there is no jurisdictional defect in his order. Jurisdiction inhered at all times in the District Court. As an Article III judge, Judge Scullin at least served as a proper judge de facto below.

ARGUMENT

I. THE "JUDICIAL DUTIES" THAT WERE THE SUBJECT OF JUDGE SCULLIN'S *PALMER* DESIGNATION AND ASSIGNMENT INCLUDED ORDINARY RELATED CASE DUTIES UNDER LCvR 40.5.

A visiting judge

> shall discharge [in the appointment's course] *all* judicial duties for which he is designated and assigned. He may be required to perform *any duty* which might be required of a judge of the court or district or circuit to which he is designated and assigned. Such justice or judge shall have *all the powers* of a judge of the court, circuit or district to which he is designated and assigned . . . .

Section 296 (emphasis added). Simply put, "[s]ection 296 provides . . . that a judge sitting by designation shall have all the powers of a judge of the district to which he is designated and assigned." *United States* v. *Royals*, 777 F.2d 1089, 1091 (5th Cir. 1985).

"No doubt [Judge Scullin] was under a duty to recognize and respect all valid rules of the District Court which were applicable to the proceedings before him," *Johnson* v. *Manhattan R. Co.*, 289 U.S. 479, 503 (1933), upon accepting the designation and assignment "to perform judicial duties" in *Palmer*. Among the valid rules "applicable to the proceedings before him" was the obligation to be assigned related cases, LCvR 40.5.

Rule 40.5 did not in any way conflict with Judge Scullin's designation. Certainly nothing in that designation suggests, contrary to Section 296's broad assignment of full judicial authority, that Judge Scullin would be deprived of this essential judicial function. Indeed, Rule 40.5 serves the same purpose as the statute pursuant to which Judge Scullin was assigned *Palmer*. Section 294 "was designed to avoid delays in the disposition of litigation and this section should be construed liberally to effect such a result." *Two Guys from Harrison-Allentown, Inc.* v. *McGinley*, 266 F.2d 427, 430 n.1 (3d Cir. 1959); *cf. United States ex rel. Fehsenfeld* v. *Gill*, 292 F. 136 (4th Cir. 1923) (predecessor statute "intended to have a liberal and elastic rather than a strict and rigid construction, to facilitate the business of the courts.").

Judge Scullin's Rule 40.5 obligations are not questioned by *Frad* v. *Kelly*, 302 U.S. 312 (1937). *Frad* explained the limits of a *temporal* assignment, by which a judge sits not, as here, for a particular cause, but for a period of time. After discussing the extent of the judge's authority "though the period of his service has expired," *id.* at 316, and what the judge might do "notwithstanding the termination of his period of service in the foreign district," *id.* at 317, the Court explained that after "the expiration of his term of service . . . no authority is given to hear a new matter even though that new matter may arise in the same case." *Id.*

No authority by the *temporal* designation, which had expired. Judge Scullin's appointment was different. It was not time-bound, but specific to, inter alia, *Palmer*, for *Palmer*'s duration and "thereafter as required to complete unfinished business" with respect to "judicial duties" in *Palmer*. These duties had not expired when, pursuant to said designated "judicial duties" and for no other reason, the Clerk assigned Judge Scullin this case, which LCvR 40.5 obliged the judge to accept.

Stated differently: had Judge Scullin been assigned *Palmer* under a *Frad*-type temporal designation, an argument might be made that

LCvR 40.5 could not extend the term of his designation beyond its expiration date. But here, nothing had expired—Judge Scullin was still around, under his *Palmer*-specific designation, when pursuant to that designation *and consistent with its obvious purpose*, he was asked to see the dispute through to its end.

Whatever the limits of temporal designations, this Court should not stretch *Frad* to announce a new rule whereby a district judge assigned for the specific purpose of resolving a particular, long-delayed case is somehow uniquely barred from hearing duly-assigned related cases. Doing so is not suggested by Section 294's text or that of the July 2011 designation, and would contradict Section 294's ordinary construction, Section 296's plain text, and common sense. A judge barred from hearing related claims is, respectfully, not as useful as a judge who can leverage years of thinking and learning about a complex situation into resolving follow-on claims. A judge that has spent many years handling a matter, and has become intimately familiar with a dispute and its contours, should see the dispute to its conclusion—even (and perhaps especially) if it continues under a different docket number.

The Chief Justice's *Palmer* designation properly bound Judge Scullin to follow LCvR 40.5's obligations. And without question, this case was related to *Palmer*. At the time this case was filed, Judge Scullin had before him in *Palmer*, with Defendants, Plaintiff SAF, and SAF members, the same basic facts and issues presented here concerning the constitutionality of these particular laws. Nobody doubted Judge Scullin's jurisdiction to enforce his July 24, 2014 order. *See* Order, *Palmer* v. *District of Columbia*, D.D.C. 09-1482, Dkt. 92, at 5. He might have decided the *Palmer* motions differently, but it was not for another judge to adjudicate these claims while they were still live before Judge Scullin in the earlier case.

Defendants, who knew how to object to *Palmer*-based related case assignments, consciously declined to do so here. Their *Smith* position is revealing, arguing that *Palmer* ceased to be "pending" when Judge Scullin disposed of the *Palmer* post-judgment motions. Those motions were pending when this case was filed, and remained pending for nearly three months after Plaintiffs' preliminary injunction motion stood fully briefed.

Judge Scullin was duly authorized to hear this case for all purposes.

## II. EVEN IF JUDGE SCULLIN WAS NOT DULY APPOINTED TO THIS CASE, HIS ORDER'S VALIDITY CANNOT BE QUESTIONED AS HE ACTED AS A JUDGE DE FACTO OF THE DISTRICT COURT.

"Jurisdiction is lodged in a court, not in a person. The judge, exercising the jurisdiction, acts for the court." *United States* v. *Teresi*, 484 F.2d 894, 898 (7th Cir. 1973) (quoting *In re Brown*, 346 F.2d 903, 910 (5th Cir. 1965)). "There is no constitutional provision restricting the authority of a District Judge to any particular territorial limits." *McDowell* v. *United States*, 159 U.S. 596, 598 (1895). Designated judges "exercise the jurisdiction of the court to the same extent as any judge in regular active service." *Teresi*, 484 F.2d at 898.

> Subject-matter jurisdiction is absent when a federal court may not issue a binding decree on a subject—perhaps because Congress has not authorized it, perhaps because the Constitution does not allow it. Which judicial officer presides . . . does not affect the court's subject-matter jurisdiction, for it has nothing to do with whether the tribunal may enter a judgment conclusively resolving this dispute.

*United States* v. *Wey*, 895 F.2d 429, 431 (7th Cir. 1990).

Thus, even if the District Court clerk erred in assigning this case to Judge Scullin, and Judge Scullin erred in accepting the assignment,

> [w]e do not have a "jurisdictional" problem of the kind that a tribunal must notice even though no party raised the problem. We have at most a mistaken interpretation of a law designating which judicial officer shall preside over which proceedings.

*Id.* The question here is whether Judge Scullin, if not properly designated, nonetheless exercised the District Court's jurisdiction.

The answer is found in the officer de facto doctrine, which "confers validity upon acts performed by a person acting under the color of official title even though it is later discovered that the legality of that person's appointment or election to office is deficient." *Nguyen* v. *United States*, 539 U.S. 69, 77 (2003) (quoting *Ryder* v. *United States*, 515 U.S. 177, 180 (1995)). "[T]he rule is well settled that where there is an office to be filled and one acting under color of authority fills the office and discharges its duties, his actions are those of an officer de facto and binding upon the public." *McDowell*, 159 U.S. at 601-02; *Ex parte Ward*, 173 U.S. 452, 454 (1899); *Two Guys*, 266 F.2d at 430 n.1.

"The rule is founded upon an obviously sound policy of preventing litigants from abiding the outcome of a lawsuit and then overturning it if adverse upon a technicality of which they were previously aware." *Glidden Co.* v. *Zdanok*, 370 U.S. 530, 535 (1962) (plurality opinion); *see, e.g.*, *Rakes* v. *United States*, 163 F.2d 771, 773 (4th Cir. 1947) (per curiam) ("[t]he parties having consented to the hearing of the motion by

Judge Hutcheson, we treat his finding as though it had been made after a proper statutory designation.")

"[M]isapplication of a statute providing for the assignment of already appointed judges to serve in other districts" does not rise to the level of a constitutional defect. *Ryder*, 515 U.S. at 182. "Typically, we have found a judge's actions to be valid de facto when there is a 'merely technical' defect of statutory authority." *Nguyen*, 539 U.S. at 77 (citations omitted). In *McDowell*, "the judge whose assignment had been questioned was otherwise qualified to serve, because he was 'a judge of the United States District Court, having all the powers attached to such office,' and because the Circuit Judge was otherwise empowered to designate him." *Nguyen*, 539 U.S. at 78 (citation omitted). And in *Ball* v. *United States*, 140 U.S. 118 (1891), judgment was valid when a visiting district judge designated for service during a judicial disability on the host court, but not a vacancy, continued holding court after the disability had unfortunately turned into a vacancy. "[E]rrors in designation do not spoil the action of the judge who actually renders decision." *In re IKO Roofing Shingle Prods. Liab. Litig.*, 757 F.3d 599, 601 (7th Cir. 2014) (citing *McDowell* and *Ball*).

The Supreme Court recently offered a broad view of which defects in a judge's authority are merely "technical," posing no impediment to the authority of a judge de facto, rather than substantive, and thus incompatible with the proper exercise of jurisdiction. Holding that an Article IV territorial judge could not serve on a Ninth Circuit panel, the Supreme Court explained that "[t]he difference between the irregular judicial designations" encompassed by the de facto doctrine and "impermissible" designations is "the difference between an action which could have been taken, if properly pursued, and one which could never have been taken at all." *Nguyen*, 539 U.S. at 79.

Judge Scullin, an Article III judge, "could have" decided the case had his designation been "properly pursued" (if it wasn't). The question as to his designation is a classic technicality. It does not "embod[y] weighty congressional policy concerning the proper organization of the federal courts." *Id.* (footnote omitted).

Of course, in order to render effective decisions, the judge de facto must act for the correct court—the court having jurisdiction over the subject matter. That was the jurisdictional problem in *Frad*—the visiting judge's temporal assignment having expired, he returned to his

home district, from where he sought to supervise probation in a matter arising in the visited district. But jurisdiction to supervise probation "is vested in the trial court and in no other." *Frad*, 302 U.S. at 318. The since-departed judge could not "from that other district" oversee the probation of someone he tried while visiting earlier. *Id.* "This jurisdiction is not divided between that court and a distant judge who sat by designation at the defendant's trial." *Id.*

There is no way to harmonize *Frad* with *Nguyen*, *McDowell*, and the entirety of the judge de facto doctrine, other than to understand that *Frad* turned on the judge having exercised the wrong court's jurisdiction. If *Frad* held void all judgments rendered by undesignated judges, there would be nothing left of the judge de facto doctrine.

Directly-on point stands *Leary* v. *United States*, 268 F.2d 623 (9th Cir. 1959) (en banc). In *Leary*, a New York judge designated for service in San Francisco undertook the trial of a matter before his designation had gone into effect. The appellant, citing *Frad*, claimed a jurisdictional defect in that the presiding judge acted outside the scope of his temporal assignment. The panel initially agreed with this view, but the en banc Ninth Circuit held that the visiting judge had been a valid

judge de facto.

> [I]n the *Frad* case, a judge who had once been a regularly designated judge in one district and had decided a case therein, attempted to decide, in another district (in which he regularly sat), a new matter arising in the same case. He purported to act on a matter in a district where such matter was not then pending. This differs from the instant case where the assigned judge proposed to act in a matter which was then properly within the court's subject matter jurisdiction.

*Leary*, 268 F.2d at 627. Judge Scullin, too, proposed to act in a matter properly before the District Court. He had not returned anywhere—*Palmer* was still pending before him months after he accepted this case.

*Leary* continued:

> In the instant case, however, the court which sought to exercise jurisdiction over appellant was the proper court. And the judge who empaneled the jury and conducted the proceeding was a duly sworn United States District Judge, a judicial officer moving under a proper and statutorily authorized designation to hold court in this Circuit in the Northern District of California, complete in all respects save as to the date he was to commence.

*Id.*

*Frad* has no jurisdictional relevance here because there is no question that Judge Scullin acted as a judge of the District Court for the District of Columbia. Because his designation was specific rather than temporal, it cannot be said that he acted "before" his appointment

began or "after" it had expired. Rather, Judge Scullin assumed judicial duties in this case while *Palmer* was still pending, and, plainly, as part of his judicial duties in that case.

Judge Scullin was, at the very least, a judge de facto.

The July 1, 2011 notice of designation and assignment authorized Judge Scullin to hear this case for all purposes. And if it did not, Judge Scullin validly exercised the District Court's jurisdiction as a judge de facto.

Dated:   October 5, 2015          Respectfully submitted,

                                  /s/ Alan Gura
                                  Alan Gura
                                  GURA & POSSESSKY, PLLC
                                  105 Oronoco Street, Suite 305
                                  Alexandria, VA 22314
                                  703.835.9085/703.997.7665


                                  Counsel for Appellees

CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of the Court's September 15, 2015 order because this brief contains 3,372 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and Circuit Rule 32(a)(1).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Corel Wordperfect in 14-point Century Schoolbook font.

/s/ Alan Gura
Alan Gura

CERTIFICATE OF SERVICE

I certify that on this 5th day of October, 2015, I filed the foregoing Brief electronically with the Clerk of the Court using the CM/ECF System. I further certify that I will submit the required paper copies to the Court. I further certify that counsel for Defendants-Appellants is a registered CM/ECF user and will be served via the CM/ECF system.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this the 5th day of October, 2015.


/s/ Alan Gura
Alan Gura

Counsel for Appellees